IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLAYNA G. TILLMAN,<br><br>                Plaintiff,<br>v.<br><br>THE PEPSI BOTTLING GROUP, INC.,<br>and TEAMSTERS LOCAL UNION 830,<br><br>                Defendants. | C.A. Number: 04-1314 |

## OPPOSITION OF DEFENDANT BOTTLING GROUP, LLC
## TO PLAINTIFF'S MOTION TO COMPEL

Bottling Group, LLC ("PBG") by and through it undersigned counsel, opposes Plaintiff's Motion to Compel for the reasons set forth below.

**I.  INTRODUCTION**

This is an employment case in which Plaintiff, a former employee of PBG, alleges discrimination, retaliation and violations of the Fair Labor Standards Act.

Discovery in this matter closed on December 1, 2006. On November 20, 2006, the Monday night before the Thanksgiving holiday, and one week before discovery was set to close, plaintiff noticed the depositions of eight current and former employees of PBG. (See Deposition Notices, attached as Exhibit A). The depositions were to take place between November 27, 2006, the Monday immediately following the Thanksgiving holiday, and December 7, 2006, six days after the close of discovery. Prior to November 20, 2006, despite his many telephone and e-mail communications with PBG's counsel, plaintiff's counsel never mentioned a desire to schedule the depositions of any witness, let alone eight. In fact, before

receiving the notices, PBG was completely unaware that plaintiff intended to depose any PBG witness.

On November 22, 2006, PBG sent plaintiff's counsel a letter explaining that PBG would be unable to produce the requested deponents during the following week and that counsel for PBG would be out of the office and unreachable until Tuesday, November 28, 2006. (See November 22 Letter, attached as Exhibit B).

PBG provided a very detailed explanation as to why plaintiff's deposition notices were unreasonable and why PBG could not and would not produce witnesses. (See Exhibit B). First, PBG explained that the discovery deadline is December 1, 2006, and PBG is not obligated to produce witnesses after the close of discovery. Second, because plaintiff's counsel was admitted pro hac vice in this matter on July 19, 2006, he should have been aware of the identities of the requested deponents for several months, as each of the requested deponents was listed as a potential witness in plaintiff's initial disclosures dated September 23, 2005 and/or plaintiff's responses to interrogatories dated December 5, 2005. Yet, plaintiff's counsel waited until the Monday evening before the Thanksgiving holiday, and a week before discovery was set to close, to request even a single deposition in this matter. Third, in the many telephone conversations and e-mail exchanges regarding discovery between PBG's counsel and plaintiff's counsel, plaintiff's counsel never once mentioned a desire to schedule depositions of any witness. Fourth, as of the date of the letter, PBG had been unable to reach counsel for Local 830 to determine whether he would be available to attend depositions on the requested dates as required for all deponents who are members of the union.[1]

---

[1] Further, Plaintiff's counsel was well-aware of the difficulty of coordinating the schedules of counsel for the parties, as it took over one month to schedule the resumption of plaintiff's deposition.

Additionally, five of plaintiff's notices were invalid, as they sought to depose witnesses at or after the December 1, 2006 discovery deadline set by this Court, and one of the notices was served less than five days before the proposed deposition date and thus was not compliant with Delaware Local Rule 30.1 and Federal Rule of Civil Procedure 6(a).

Thereafter, on November 22, 2006, plaintiff's counsel informed PBG by voicemail that he intended to ask this Court to extend the discovery deadline for the purpose of scheduling depositions, but did not intend to request that the deadline for dispositive motions be extended. (A transcript of the voicemail message is attached as Exhibit C). Two days later, on November 24, plaintiff's counsel sent PBG a letter stating that PBG's inability to produce the requested deponents between November 27 and December 4 was unreasonable. (See November 24 Letter, attached as Exhibit D).

On November 28, 2006, PBG responded to plaintiff's counsel's communications. (See November 28 Letter, attached as Exhibit E). PBG reiterated that it was unreasonable for plaintiff's counsel to expect that eight witnesses and counsel for both defendants would be available beginning on November 27. Additionally, PBG stated that it would oppose any request by plaintiff to extend the discovery deadline because the Court was clear at the scheduling conference that this case has a tight timeline. Nonetheless, in an effort to reach a mutual resolution, PBG agreed that despite the unreasonableness and ill timing of plaintiff's requests, PBG would attempt to produce the requested deponents if plaintiff's counsel, in addition to requesting an extension of the discovery deadline, would request that the Court extend the deadline for dispositive motions. (See Exhibit E). PBG did not ask plaintiff's counsel to request an extension of the trial deadline.

In the same letter, PBG also addressed plaintiff's additional claims that PBG's responses to plaintiff's first set of interrogatories and second set of documents requests were untimely and evasive. (See Plaintiff's Counsel's November 27 Letter, attached as Exhibit F). As to the timeliness issue, PBG explained that plaintiff served discovery requests on PBG by first class mail on October 20, 2006. As such, and pursuant to Federal Rules of Civil Procedure 33(b)(3), 34(b) and 6(e), PBG's responses were due on November 22, 2006. Because PBG's responses were mailed on November 22, 2006, they were timely. As to plaintiff's claim that PBG's responses were evasive, PBG countered that plaintiff's discovery requests were overbroad, harassing, unduly burdensome and otherwise objectionable. These objections notwithstanding, PBG produced over 1,500 responsive documents which addressed all of plaintiff's non-objectionable requests.

For the foregoing reasons and those stated herein, PBG respectfully requests that the Court deny Plaintiff's motion to compel.

## II.      RESPONSE TO AVERMENTS

PBG addresses each of Plaintiff's averments as follows:

1.      Admitted.

2.      Admitted.

3.      Denied. The notices were served on the evening of November 20, 2006. November 23, 2006 was a legal holiday, and November 25 and 26, 2006 were weekend days. As such, the November 27, 2006 notice, served less than five days before the proposed deposition date, was not rule compliant. See Del. Local Rule 30.1 and Fed. R. Civ. Pro. 6(a). Additionally, five of the notices sought to depose witnesses at or after the close of discovery. Further, the

deponents noticed for November 29-30, Sara Swartz and Scott Steiger, former PBG employees, reside and work outside of Delaware.

4. Denied as stated. By letter dated November 22, 2006, PBG informed plaintiff that PBG could not produce witnesses during the week of November 27, 2006 because of scheduling difficulties. (See Exhibit B).

5. Denied. Contrary to plaintiff's assertions, PBG explained that due to scheduling difficulties because of the extremely short notice, PBG's inability to reach counsel for Local 830 to determine whether he was available to attend the depositions (as required for deponents who are union members) and because several of the requested deponents reside outside of Delaware, PBG simply could not produce witnesses for depositions beginning on November 27, 2006. Moreover, as PBG explained, it was utterly unreasonable for plaintiff's counsel to expect that eight witnesses and counsel for both defendants would be available without any prior notice within one week.

6. Admitted. However, plaintiff's counsel was aware that PBG's counsel was out of the office (and was in fact out of the region) from November 22, 2006 until November 28, 2006. (See Exhibit B).

7. Denied as stated. Plaintiff never asked where PBG's witnesses were located. In fact, prior to November 20, 2006, PBG was not aware that plaintiff intended to depose any witnesses. On November 22, 2006, after receiving plaintiff's deposition notices, PBG informed plaintiff that several of the requested deponents reside outside of Delaware.

8. Denied as stated. In his voicemail of November 22, 2006, plaintiff's counsel informed PBG that he intended to ask the Court to extend the discovery deadline for the purposes of scheduling depositions but that he did not intend to request that the deadline for

dispositive motions be extended. (See Exhibit C). In its November 28, 2006 letter, PBG responded that it would oppose any such request by plaintiff to extend the discovery deadline because the Court was clear at the scheduling conference that this case has a tight timeline, with dispositive motions due on December 15, 2006 and trial scheduled for April 2, 2007. (See Exhibit E). However, in an effort to reach a mutual resolution, PBG agreed to attempt to produce the requested deponents if plaintiff's counsel, in addition to requesting an extension on discovery, would request that the Court extend the deadline for dispositive motions. PBG did not ask plaintiff's counsel to request an extension of the trial deadline.

   9.   Admitted.

   10.  Denied as stated. Contrary to plaintiff's assertions, the production of PBG witnesses after the December 1 discovery deadline will most certainly affect the dispositive motion deadline. As PBG has explained to plaintiff's counsel, it is utterly unreasonable to expect PBG to prepare eight witnesses for depositions and to attend those depositions, while at the same time preparing and filing a dispositive motion by the December 15, 2006 deadline. Plaintiff's request is also impractical since it is unlikely that all, or any, of the deposition transcripts will be available to PBG when preparing its dispositive motion, should plaintiff be permitted an extension to take depositions without extending the dispositive motion deadline.

   11.  Denied. See Paragraphs 8 and 10.

   12.  Denied. PBG is not delaying the discovery proceedings. To the contrary, it is plaintiff's counsel's eleventh-hour deposition notices which attempt to delay this matter. As made clear in its November 22, 2006 and November 28, 2006 letters, PBG is fully aware of the tight timeline in this case and is opposed to extending the scheduled trial date, or any date set by

this Court in its August 21, 2006 scheduling conference, including the December 1, 2006 discovery deadline.

13. Denied.

14. Denied as stated. These depositions were noticed, <u>not scheduled</u>. See Paragraphs 5 and 7.

15. Denied. See Paragraph 8 and Exhibit E.

16. Admitted. However, PBG is not obligated to file a Rule 26(c) protective order because PBG's witnesses were not served with "proper notice" as required by Rule 37. Fed. R. Civ. Pro. 37. (See Deficiency Notice, attached as Exhibit G). Because the deposition notices are not valid, they are not binding.

17. Denied.

18. Admitted.

19. Denied.

20. Denied. Plaintiff is not entitled to any expenses or attorney's fees because it was plaintiff's counsel's unreasonable actions which necessitated plaintiff's motion. See Paragraphs 3, 5, 7, 8, 10, 12 and 14. Thus, any monetary award to plaintiff or her counsel would be unjust.

21. Admitted. (See Plaintiff's Interrogatories Addressed to Defendant, The Pepsi Bottling Group, Inc. (First Set) & Plaintiff's Request for Production of Documents Addressed to Defendant, The Pepsi Bottling Group, Inc. (Second Set), attached as Exhibit H).

22. Admitted. (See Defendant Bottling Group, LLC's Objections and Responses to Plaintiff's First Set of Interrogatories & Defendant Bottling Group, LLC's

Objections and Responses to Plaintiff's Second Request for Production of Documents, attached as Exhibit I).

    23.    Admitted.

    24.    Admitted.

    25.    Denied as stated. Pursuant to Local Rule 37.1, plaintiff should have set forth a verbatim recitation of each interrogatory, answer and objection which is the subject of her motion. Additionally, pursuant to Local Rule 5.4(c), plaintiff should have filed the interrogatories relevant to her motion with the court.

    26.    Denied as stated. PBG did not object to interrogatory 17 on the grounds that it is vague.

    27.    Denied as stated. In accordance with Rule 33(d), in response to many of plaintiff's interrogatories, PBG referred plaintiff to documents it produced in response to plaintiff's first request for production. (See Exhibit I). As discussed below, these documents were produced in a manner in which plaintiff could clearly determine the identity of the documents and their source.

    28.    Denied.

    29.    Admitted.

    30.    Denied. See Paragraph 27. In response to plaintiff's first set of document requests, PBG produced approximately 1,570 responsive documents. In accordance with Rule 33(d), PBG referred plaintiff to its previously produced documents in response to many of plaintiff's interrogatories. The answers to plaintiff's interrogatories could be easily ascertained upon an examination of the documents. For example, interrogatory 18 requested wage rates for all positions in the Transport Department for the years 2001 through 2005. This information is

clearly set forth in the collective bargaining agreements under the heading "Wage Schedule." PBG produced the collective bargaining agreement covering the period from January 1, 2004 through December 31, 2007 in response to plaintiff's first request for production. Plaintiff already has in her possession, and has previously produced to PBG, the collective bargaining agreement covering the period from January 1, 2000 through December 31, 2004. Similarly, interrogatory 19 requested the wage rates for all positions in the Warehouse Department for the years 2001 through 2005. Again, this information is clearly set forth in the relevant collective bargaining agreements. And again, PBG produced the collective bargaining agreement not already in plaintiff's possession.

Significantly, several of plaintiff's interrogatories requested information contained in documents that plaintiff previously produced to PBG. For example, interrogatories 10 and 11 requested information about plaintiff's wages, which is provided in PBG's position statement that plaintiff herself previously produced to PBG. In short, PBG's interrogatory responses are Rule 33(d) compliant, as the answers to plaintiff's interrogatories can be easily ascertained upon a simple examination of the documents.

31.   Denied as stated. PBG denies that plaintiff's interrogatories were "tailored to meet specific proofs" in plaintiff's case, as many of plaintiff's interrogatories were vague, harassing, unduly burdensome and did not seek information relevant to the subject matter of the litigation. Nonetheless, PBG responded to plaintiff's interrogatories by producing documents that answered plaintiff's questions. For example, plaintiff requested specific employment information on all females and African American females employed at Pepsi, including seniority. PBG produced a list of employees at the Wilmington facility from 2001 through 2004 which included each employee's race, gender and date of hire. Similarly, plaintiff

requested wage rates for key departments. As set forth in Paragraph 30, PBG produced the collective bargaining agreement which explicitly sets forth union wage rates.

32. Denied as stated. As set forth in Paragraph 31, PBG produced the collective bargaining agreement which explicitly sets forth the union wage rates, as well as an employee list which specifies each employee's date of hire. PBG did not, however, produce information about CDL training. Specifically, plaintiff requested that PBG identify all persons who applied for, trained for and obtained a CDL license while employed at the Pepsi plant. (See Exhibit H, Interrogatory 17). Simply put, PBG does not maintain records of CDL training. Moreover, as PBG objected in its response to plaintiff's interrogatories, plaintiff's request for information about CDL training is harassing, unduly burdensome and completely irrelevant to plaintiff's claims.

33. Denied. See Paragraph 32.

34. Denied. PBG's responses and objections to plaintiff's interrogatories and second request for production were both meritorious and timely. As previously explained to plaintiff's counsel, plaintiff served her first set of interrogatories and second request for production on PBG by first class mail on October 20, 2006. As such and pursuant to Federal Rules of Civil Procedure 33(b)(3), 34(b) and 6(e), PBG's responses were due on November 22, 2006. Accordingly, PBG's responses, which were mailed on November 22, 2006, were timely.

35. Denied. See Paragraph 30 and Exhibit I.

36. Denied. Plaintiff's interrogatories and document requests are overbroad, harassing, unduly burdensome and otherwise objectionable. See Paragraph 32. Nonetheless, PBG produced approximately 1,570 responsive documents which answered plaintiff's questions. See Paragraphs 30 and 32.

37. Denied as stated. See Paragraph 36 and Exhibit I. Moreover, as PBG stated in its November 28, 2006 letter, should plaintiff reasonably tailor her interrogatories and requests, PBG will re-evaluate its objections and responses. (See Exhibit E).

38. Admitted.

39. Denied.

40. Admitted.

41. Denied.

42. Denied. Plaintiff is not entitled to any expenses or fees because, as set forth above, PBG's objections to plaintiff's interrogatories were substantially justified.

43. Admitted.

44. Admitted.

45. Admitted.

46. Denied as stated. Pursuant to Local Rule 37.1, Plaintiff should have set forth a verbatim recitation of each request, response and objection which is the subject of her motion. Additionally, pursuant to Local Rule 5.4(c), plaintiff should have filed the requests relevant to her motion with the court. (See Plaintiff's Request for Production of Documents Addressed to Defendant, The Pepsi Bottling Group, Inc. (First Set), attached as Exhibit J).

47. Admitted.

48. Admitted.

49. Admitted that plaintiff alleges intentional race and gender discrimination, however, PBG denies the validity of plaintiff's claims.

50. Denied. Contrary to plaintiff's assertions, the standards of disparate treatment and disparate impact are not the same. The crux of a disparate treatment claim is intentional discrimination.

To establish a *prima facie* case of race discrimination based on disparate treatment, a plaintiff must show: (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action (i.e., denial of a promotion); and (4) circumstances surrounding the adverse action giving rise to an inference of discrimination. See Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997). "The most common way that a plaintiff can raise an inference of discrimination is by presenting evidence that she was treated differently from other similarly-situated employees." King v. School Dist. of Phila., No. 00-CV-2503, 2001 U.S. Dist. LEXIS 10710, at *12 (E.D. Pa. Jul. 26, 2001). Where a plaintiff cannot prove discriminatory motive, the plaintiff's claim fails. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (liability depends on whether membership in a protected class actually motivated employer's decision).

Conversely, under a disparate impact theory of liability "a facially neutral employment practice may be deemed violative of Title VII without evidence of the employer's subjective intent to discriminate that is required in a 'disparate treatment' case." Wards Cove Packing Co., Inc. v. Antonio, 490 U.S. 642, 645-46 (1989). Where a plaintiff can demonstrate that application of a facially neutral standard has resulted in a significantly discriminatory pattern, she may be able to state a claim for disparate impact discrimination. Lanning v. SEPTA, 181 F.3d 478, 485 (3d Cir. 1999). Clearly, disparate treatment and disparate impact claims are based on two completely different standards of proof.

Additionally, the statistical and compliance data requested by plaintiff is privileged and not relevant to plaintiff's disparate treatment claim. See Clarke v. Mellon Bank, 1993 WL 170950 at *12-13 (E.D.Pa. May 11, 1993); ("Generally, affirmative action plans are not discoverable in racial discrimination employment cases on the grounds that the plans are not relevant to the subject matter of the suit or constitute confidential, privileged information. This District has found that disclosure would discourage voluntary compliance and that the public policy against disclosure outweighed the plaintiff's need for these materials."); See also Brown v. McClean, 159 F.3d 898, 904 (4th Cir. 1998) (quoting Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 976 (9th Cir.1994) ("Other circuits have held-and common sense tells us-that the mere fact of an affirmative action plan's existence is not relevant to proving discrimination unless the employer acted pursuant to the plan").

51.  Denied. See Paragraph 50. Additionally, despite plaintiff's weak attempt to recast her case as a disparate impact case, plaintiff's claim is and has always been a disparate treatment claim based on alleged intentional discrimination. (See Complaint, attached as Exhibit K).

52.  Denied. Plaintiff seems to believe that the number of black female employees in the Wilmington facility is germane to her case and evidences discrimination. Plaintiff is incorrect. As set forth in Paragraph 50, the crux of a disparate treatment claim is intentional discrimination. To make out a claim, plaintiff must prove that she was treated less favorably than similarly situated employees outside of the protected class. King, No. 00-cv-2503, 2001 U.S. Dist. LEXUS 10710, at *12. The percentage of black women in the Wilmington facility is wholly irrelevant to her disparate treatment claim. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509 (3d Cir. 1992).

53. Denied as stated. See Paragraph 52.

54. Denied. See Paragraph 52.

55. Denied. See Paragraph 50.

56. Denied.

57. Denied. Plaintiff's requests for production are harassing, unduly burdensome, seek to impose obligations on PBG which are greater than those imposed by the Federal Rules of Civil Procedure and seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. (See Defendant Bottling Group, LLC's Objections and Responses to Plaintiff's First Request for Production of Documents Directed to Defendant, attached as Exhibit L). Moreover, the requested documents are protected from discovery by the self-critical analysis privilege.

The self-critical analysis privilege exempts from discovery subjective, evaluative materials prepared for mandatory government reports, or for a self-critical analysis undertaken by the party seeking protection. See In re McAllister Towing & Transp. Co., Civ. A. No. 02-858, 2004 U.S. Dist. LEXIS 9921, at *3 (E.D. Pa. May 7, 2004); Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 433 (E.D.Pa. 1978); See also Coates v. Johnson & Johnson, 756 F.2d 524, 552 (7th Cir. 1985) ("The policy behind a qualified privilege for self-critical affirmative action evaluations is to promote the overall goal of removing discriminatory practices from the workplace. Allowing self-critical evaluations to remain confidential is thought 'to assure fairness to persons who have been required by law to engage in self-evaluation . . . and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation,' thus encouraging conscious efforts to engage in fair employment practices") (internal citations omitted).

58. Admitted.

59. Admitted.

60. Denied.

61. Admitted.

62. Denied. See Paragraphs 50, 52 and 57.

63. Denied.

64. Denied.

65. Denied. As noted above, it is plaintiff's counsel's conduct which attempts to delay these proceedings. Moreover, as discussed in Paragraphs 3, 5 and 16, several of plaintiff's notices were untimely, and all were invalid and thus not binding.

66. Denied. See Paragraph 10.

67. Denied. See Paragraph 7. (See Exhibit B). On November 28, 2006 PBG informed plaintiff's counsel via telephone and mail that three of the noticed former Human Resources managers did not reside within Delaware.

68. Denied.

69. Admitted.

70. Admitted.

71. Denied.

WHEREFORE, PBG respectfully requests that this Honorable Court deny Plaintiff's Motion to Compel.

Date: December 8, 2006

_____
William M. Kelleher (I.D. No. 3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466

Attorneys for Defendant
Bottling Group, LLC

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999