# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLAYNA G. TILLMAN, | C.A. No.: 04-1314(SLR) |
| Plaintiff, | |
| v. | |
| THE PEPSI BOTTLING GROUP, INC., and TEAMSTERS LOCAL UNION 830, | |
| Defendants. | |

## PLAINTIFF'S INTERROGATORIES ADDRESSED TO DEFENDANT, THE PEPSI BOTTLING GROUP, INC. (FIRST SET)

TO:   THE PEPSI BOTTLING GROUP, INC.
c/o Lucretia Clemons, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51ST Floor
1735 Market Street
Philadelphia, PA 19103

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, you are hereby requested to serve answers, under oath, to the following interrogatories within thirty (30) days after service. These interrogatories are to be answered as of the day on which the interrogatories are served except as otherwise indicated, and shall be deemed continuing up to the date of trial. The answers and the interrogatories are deemed to be continuing and supplementary answers are to be supplied if additional or different information becomes known to defendant. Your answers to the interrogatories are to reflect the cumulative knowledge of the defendant, its agents, servants, officers and employees, and your attorney(s) or other representative(s) acting on your behalf

1

whether in preparation for litigation or otherwise. Subheadings, definitions and instructions are used throughout these interrogatories and are solely for the purpose of clarification and convenience and are not to be interpreted as limiting the obligation of the defendants to answer each of the interrogatories as required by the Federal Rules of Civil Procedure.

## A. DEFINITIONS AND INSTRUCTIONS

For purposes of clarity and convenience, the "Definitions and Instructions" as set forth in plaintiff's **request for production of documents addressed to defendant, The Pepsi Bottling Group, Inc. (first set)** are incorporated herein by reference and set forth below rather than repeated in each interrogatory. Therefore, the "Definitions and Instructions" are incorporated by reference in each interrogatory as if fully set forth at length thereat. Further, but without limitation to additional definitions and instructions, the following shall apply:

1. The term(s) **"Describe" [or state] in detail and with particularity"** or words of similar import means to state what is requested to be described including all facts and opinions (including each opinion or contention that relates to facts or the application of law to the facts) but not an application or statement of "pure law", known and held concerning what is requested to be described, including:

    a. the identity of each person you believe to have any knowledge of each fact and/or opinion relating to what is described,

    b. the identity of each document evidencing the answer given or in any way related to, reflecting, evidencing, or arising out of what is disclosed in your answer, and

    c. all relevant or material dates or item periods.

2. The term **"communicate" or "communication"** means every manner or means of

disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, electronic transmission, telefax transmission, personal delivery or otherwise.

3. The term "**adverse employment action**" as used in these interrogatories refers to any change in plaintiff's employment with Pepsi Bottling Group, Inc. that Tillman claims was derogatory *towards Tillman* because it was discriminatory in whole or in part (under an Federal or state law) and/or because it was not in accordance with the collective bargaining agreement, company protocol, condition, term, policy, provision, regulation, agreement or guideline as claimed by Tillman, whether or not fully described or referred to in plaintiff's complaint, whether disputed or defended by Pepsi.

4. Whenever in these interrogatories there is a request to identify a "**communication**", including without limitation a meeting, letter or telephone conversation electronic transmission or telefax transmission, state: (a) the date and place; (b) the identity of each person who was present at, participated in, sent or received such communication; (c) the type of communication (e.g., telegram, telephone conversation, etc.); (d) the identity of each document referring or relating to such communication.

5. As used herein, "**Pepsi**" shall mean and refer to the defendant in this action, The Pepsi Bottling Group, Inc.

6. The interrogatories concern only the workforce at "**the Pepsi plant**" where Tillman worked, located at 3501 Governor Printz Boulevard, Wilmington, Delaware, unless a particular interrogatory specifies otherwise.

7. The term "**relevant time period**", unless otherwise specified in a particular

3

interrogatory, shall mean that period between January, 2001 and December, 2004.

8. Whenever a date, amount or other computation or figure is requested, the exact date, amount or other computation or figure is to be given unless it is not known, and then, the approximate date, amount or other computation or figure should be given or the best estimate thereof; and the answer shall state that the date, amount or other computation or figure is an estimate or approximation.

9. **These interrogatories are continuing, and any information secured subsequent to the filing of your answers which would have been included in the answers had it been known or available, are to be supplied by supplemental answers.**

## INTERROGATORIES

1. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, to transfer or re-assign Tillman from the Merchandising Department to the Conventional Department in October, 2001. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

2. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, not to allow (or deny) Tillman

4

membership in Local 830, and to pay Tillman wages of $10.57 per hour instead of a prevailing Local 830 wage rate, during the period of approximately October 13, 2001 through May 28, 2002 as described in ¶¶15 through 18 of the complaint. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

3. Do you contend Tillman did *not* suffer an adverse employment action on the part of Pepsi, acting alone or with others, as the direct result of her transfer or re-assignment from the Merchandising Department to the Conventional Department under the circumstances described in ¶¶15 through 20 of the complaint, or that such employment in both departments did *not* violate the collective bargaining agreement or the protocol of Pepsi governing an employee's knowledge, skills and experience and seniority as it related to Tillman's employment at Pepsi? If answered in the affirmative, identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of your answer.

4. Identify (see definitions) all employees of Pepsi, for the relevant time period, who performed work at the Pepsi plant in both a non-union department <u>and</u> a union department during the same pay period. For each such employee identified, state: (a) the dates of employment in each department involved, the employee's classification, grade, seniority, time in grade, time in service, summary of background (employment and education) and training, and certifications; (b) whether such employee requested and/or was permitted membership into the Local 830 and if so, date, place and decision-makers involved in such membership; (c) whether provision in Article

VIII of the collective bargaining agreement entitled "Wages of Unclassified Employees; Transfers" was invoked by the employee or the Local 830, and if so, the reasons and outcome thereof; (c) all wage rates applicable to the employee to which the employee was entitled and whether the rates were paid, and if not, the reasons why not; and (d) the current status of each such employee at Pepsi, including department, rate of pay, title, position and job duties. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

5. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, to transfer or re-assign Tillman from the Conventional Department to the Merchandising Department in or about May, 2002. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

6. Do you contend Tillman did *not* suffer an adverse employment action on the part of Pepsi, acting alone or with others, as the direct result of her transfer or re-assignment from the Conventional Department to the Merchandising Department under the circumstances described in ¶¶36 through 38 of the complaint, or that such employment in both departments did *not* violate the collective bargaining agreement or the protocol of Pepsi governing an employee's

6

knowledge, skills and experience and seniority as it related to Tillman's employment at Pepsi? If answered in the affirmative, identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of your answer.

7. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision, including the specific reasons for the decision) to transfer or re-assign Tillman from Merchandising Department to the Warehouse Department in or about July, 2002. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

8. Identify (see definitions) all persons who were hired by Pepsi to work in a non-union position, who were transferred (re-assigned) to a union position during the periods: (a) January 2001 through July, 2002; and (b) August 2002 through December, 2004. For each such employee, state: (a) date and department of hire; (b) date(s) of transfer/re-assignment and departments involved; (c) supervisor and decision-maker on the transfer; (d) wage rates applicable and paid to the employee for each such position and department involved; (e) date of employee's entry into the union or if not entered, state with particularity the reasons why; (f) whether provision in Article VIII of the collective bargaining agreement entitled "Wages of Unclassified Employees; Transfers" was invoked by the employee or the Local 830, and if so, the reasons and outcome thereof; (g) seniority date, time in position, and current employment status with Pepsi. Identify (see definitions) all persons who have knowledge or information in support

of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

9. Do you contend Tillman did *not* suffer an adverse employment action on the part of Pepsi, acting alone or with others, when Tillman was not selected to work in the Warehouse Department despite requesting such assignment, and Pepsi newly hired three (3) outside male employees to work in the Warehouse Department ahead of plaintiff, under the circumstances described in ¶¶39 through 43 of the complaint, or that such denial of employment to Tillman and the new hires by Pepsi did *not* violate the collective bargaining agreement or the protocol of Pepsi governing an employee's knowledge, skills and experience and seniority as it related to Tillman's employment at Pepsi? If answered in the affirmative, identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of your answer.

10. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, to pay Tillman $12.68 per hour instead of the prevailing union rate of $15.75 to $16.63 per hour, as described in ¶44 of the complaint. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

11. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, to pay Tillman $15.75 per hour, as described in ¶54 of the complaint. Identify (see definitions) the decision maker involved, and all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

12. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, not to recall Tillman to work after the layoff in September, 2002, until October 21, 2002, as described in ¶¶55-57 of the complaint. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

13. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of Pepsi's decision (alone or with others), including the specific reasons for the decision, to pay Tillman for the four weeks she was laid off, as described in ¶58 of the complaint. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

14. Identify (see definitions) and state with particularity all positions (vacancies) at Pepsi covered under the collective bargaining agreement for which Tillman either bid or applied, where she was denied or passed over, during her entire employment tenure at Pepsi. For each such position, state: (a) date, time, place, manner of Tillman's application/bid, to whom made and whether Tillman was considered; (b) identity of each decision-maker involved in not awarding the position to Tillman; (c) the reason(s) why Tillman was not awarded the position; (d) the identity of the person(s) awarded the position in place of Tillman; (e) the rate of pay to the employee at the outset of his/her filling the position; and (f) the most recent rate of pay the employee earned prior to his/her filling the position. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

15. Identify (see definitions) all African American females employed at the Pepsi plant during the relevant time period, and for each employee, state: (a) hire date; (b) position hired into; (c) all departments and positions worked; (d) supervisor(s) for each position in each department; (e) date of entry into the Local 830 (if at all); (f) termination date from Pepsi (if any); and most recent placement on any seniority list. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

16. Identify (see definitions) all females employed at the Pepsi plant during the relevant time period, and for each employee, state: (a) hire date; (b) position hired into; (c) all

departments and positions worked; (d) supervisor(s) for each position in each department; (e) date of entry into the Local 830 (if at all); (f) termination date from Pepsi (if any); and most recent placement on any seniority list. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

17. Identify (see definitions) all persons who applied for, trained for and obtained a CDL license (see Article XXIX of the collective bargaining agreement) while employed at the Pepsi plant, during the relevant time period. For each employee identified, state: (a) hire date; (b) date of CDL application; (c) date of training; (d) date CDL license was awarded; (e) date employee began utilizing the CDL license at Pepsi; (f) department where employed for each of the dates in subparts (a) through (e) above; (g) rate of pay in position immediately before CDL license was awarded; (h) next rate of pay (increase) after license was awarded; (i) current rate of pay, current position and department at Pepsi. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

18. Identify (see definitions) and state with particularity the wage rates (including overtime, weekend, holiday rates) for all positions in the Transport Department at the Pepsi plant, for each year effective 2001, 2002, 2003, 2004 and 2005. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

11

19. Identify (see definitions) and state with particularity the wage rates (including overtime, weekend, holiday rates) for all positions in the Warehouse Department at the Pepsi plant, for each year effective 2001, 2002, 2003, 2004 and 2005. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

20. Identify (see definitions) all persons who requested, applied for, or bid for a position or vacancy in the Transport Department at the Pepsi plant during the relevant time period. For each employee identified, state: (a) dates of bid, application or request, and position and seniority on date of such bid/application; (b) manner of bid/application or request; (c) position bid or applied for; (d) date employee was awarded the position and whether position required a CDL license; (e) date, time, place and manner of any testing for the position; (f) date, time and place of any trial periods involved in the position; (g) job duties in position; (h) department and rate of pay in position immediately before Transport position was awarded; (i) next rate of pay (increase) after position was awarded; (k) current rate of pay, current department and position at Pepsi. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

21. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of defendant, Pepsi's Thirteenth Affirmative Defense. Identify (see definitions) all persons who have knowledge or information

in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

22. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of defendant, Pepsi's Fourteenth Affirmative Defense. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

23. Identify and state with particularity all facts and information (including specific provisions in the collective bargaining agreement) in support of defendant, Pepsi's Fifteeenth Affirmative Defense. Identify (see definitions) all persons who have knowledge or information in support of your answer, and identify (see definitions) all documents that you consulted, reviewed or relied upon in support of your answer.

24. Identify each fact witness who intends to testify at trial and, with respect to each such witness, state the subject matter and scope (as if an offer of proof had been demanded) of the proposed testimony.

J. Stephen Woodside
Attorney for Plaintiff,
Marlayna G. Tillman

OF COUNSEL:

J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19605
(610) 278-2442

DATED: October 20, 2006

## CERTIFICATION OF SERVICE

The undersigned hereby certifies he served a true and correct copy plaintiff's interrogatories (first set) addressed to defendant, The Pepsi Bottling Group, Inc. upon the following, by First Class United States Mail, postage prepaid, on the date set forth below:

>Lucretia Clemons, Esquire
>BALLARD SPAHR ANDREWS & INGERSOLL, LLP
>51ST Floor
>1735 Market Street
>Philadelphia, PA 19103
>(Attorney for The Pepsi Bottling Group, Inc.)

>Marc L. Gelman, Esquire
>JENNINGS SIGMUND, P.C.
>510 Walnut Street, 16th Floor
>Philadelphia, PA 19106
>(Attorney for Local 830)

_____
J. Stephen Woodside

DATED: October 20, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLAYNA G. TILLMAN, | C.A. No.: 04-1314(SLR) |
| Plaintiff, | |
| v. | |
| THE PEPSI BOTTLING GROUP, INC., and TEAMSTERS LOCAL UNION 830, | |
| Defendants. | |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANT, THE PEPSI BOTTLING GROUP, INC. (SECOND SET)

Plaintiff, Marlayna G. Tillman, through *pro hac vice* counsel, J. Stephen Woodside, Esquire and the law firm of J. Stephen Woodside, P.C., pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that The Pepsi Bottling Group, Inc. ("Pepsi Bottling" or "The Company") produce and permit said counsel to inspect and copy any and all of the following: designated documents or things which are in the possession, custody or control of the party (i.e., to whom this request is direct, their agents, representatives and/or attorneys) within thirty (30) days of the date of service hereof, at counsel's address at One Montgomery Plaza, 425 Swede Street, Suite 605, Norristown, Pennsylvania 19401, or to forward the requested material or legible true and correct copies thereof, to counsel at that time. You are further requested to service a written response to this request as required under Rule 34 of the Federal Rules of Civil Procedure.

1

A.  **DEFINITIONS AND INSTRUCTIONS**

For purposes of clarity and convenience, the "Definitions and Instructions" as set forth in plaintiff's **request for production of documents addressed to defendant, The Pepsi Bottling Group, Inc. (first set)** are incorporated herein by reference and set forth below rather than repeated in each interrogatory. Therefore, the "Definitions and Instructions" are incorporated by reference in each interrogatory as if fully set forth at length thereat.

### DOCUMENT REQUESTS

1. Produce all documents you have identified in your answers to plaintiff's interrogatories addressed to defendant, Pepsi (first set).

2. Produce all documents you have been requested to produce as part of your answers to plaintiff's interrogatories addressed to defendant, Pepsi (first set).

3. Produce any and all documents that refer to, relate to, concern or discuss, for each employee identified, the information provided in your answers to subparts (a) through (d), inclusive, of interrogatory no. 4.

4. Produce any and all documents that refer to, relate to, concern or discuss, for each employee identified, the information provided in your answers to subparts (a) through (g), inclusive, of interrogatory no. 8.

5. Produce any and all documents that refer to, relate to, concern or discuss the information pertaining to Marlayna Tillman provided in your answers to subparts (a) through (f), inclusive, of interrogatory no. 14.

6. Produce any and all documents that refer to, relate to, concern or discuss, for each

2

employee identified, the information provided in your answers to subparts (a) through (f), inclusive, of interrogatory no. 15.

7. Produce any and all documents that refer to, relate to, concern or discuss, for each employee identified, the information provided in your answers to subparts (a) through (f), inclusive, of interrogatory no. 16.

8. Produce any and all documents that refer to, relate to, concern or discuss, for each person identified, the information provided in your answers to subparts (a) through (i), inclusive, of interrogatory no. 17.

9. Produce any and all documents that refer to, relate to, concern or discuss the information provided in your answers to interrogatory no. 18.

10. Produce any and all documents that refer to, relate to, concern or discuss the information provided in your answers to interrogatory no. 19.

11. Produce any and all documents that refer to, relate to, concern or discuss, for each person identified, the information provided in your answers to subparts (a) through (k), inclusive, of interrogatory no. 20.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　J. Stephen Woodside
　　　　　　　　　　　　　　　　　　Attorney *pro hac vice* for Plaintiff,
　　　　　　　　　　　　　　　　　　Marlayna G. Tillman

OF COUNSEL:

J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza, Suite 605
425 Swede Street
Norristown, PA 19401

DATED: October 20, 2006

3

## CERTIFICATION OF SERVICE

The undersigned hereby certifies he served a true and correct copy plaintiff's request for production of documents (second set) addressed to defendant, The Pepsi Bottling Group, Inc. upon the following, by First Class United States Mail, postage prepaid, on the date set forth below:

>Lucretia Clemons, Esquire
>BALLARD SPAHR ANDREWS & INGERSOLL, LLP
>51ST Floor
>1735 Market Street
>Philadelphia, PA 19103
>(Attorney for The Pepsi Bottling Group, Inc.)

>Marc L. Gelman, Esquire
>JENNINGS SIGMUND, P.C.
>510 Walnut Street
>Philadelphia, PA 19106
>(Attorney for Local 830)

*J. Stephen Woodside*

DATED: October 20, 2006