# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARLAYNA G. TILLMAN, | : | C.A. No.: 04-1314(SLR) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE PEPSI BOTTLING GROUP, INC., | : | |
| and TEAMSTERS LOCAL UNION | : | |
| 830, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANT, THE PEPSI BOTTLING GROUP, INC. (FIRST SET)

Plaintiff, Marlayna G. Tillman, through *pro hac vice* counsel, J. Stephen Woodside, Esquire

and the law firm of J. Stephen Woodside, P.C., pursuant to Rule 34 of the Federal Rules of Civil

Procedure, hereby requests that The Pepsi Bottling Group, Inc. ("Pepsi Bottling" or "The

Company") produce and permit said counsel to inspect and copy any and all of the following:

designated documents or things which are in the possession, custody or control of the party (i.e.,

to whom this request is direct, their agents, representatives and/or attorneys) within thirty (30)

days of the date of service hereof, at counsel's address at One Montgomery Plaza, 425 Swede

Street, Suite 605, Norristown, Pennsylvania 19401, or to forward the requested material or

legible true and correct copies thereof, to counsel at that time. You are further requested to

service a written response to this request as required under Rule 34 of the Federal Rules of Civil

Procedure.

1

## A. DEFINITIONS AND INSTRUCTIONS

1. "Document" or "documents" shall mean any written, recorded, filmed, or graphic matter, whether produced, reproduced or on paper, cards, tapes, films, discs, electronic facsimile, computer storage devices or any other media, including but not limited to workings and printed matter of every kind and description, correspondence, memoranda, notes, electronic mail/communications, minutes, records, photographs, telegrams, telefaxes, diaries, daily logs, telephone message slips, telephone bills, bookkeeping entries, financial statements, reports, studies, charts, graphs, statements, notebooks, applications, agreements, receipts, books, pamphlets, periodicals, appointment calendars, computer data bases, electronic records, program and non program computer files whether "on-line" or in storage (and all tapes, discs, recordings of any kind booth for storage and retrieval), computer printouts, contract bills, invoices, purchase orders, notes and records of any oral communications, investigation reports, appraisals, notes of investigation and appraisals, bills of sale, letters of credit, title documents, the original of documents and all copies which are different in any way from the original, whether by interlineation, receipt-stamp notation, indication of copies sent or received, or otherwise, and any drafts, which are in your possession, custody or control of you, your predecessors or any other entities or persons acting for or on your behalf.

2. "Identify" or "identity" with respect to a **computer file** means to provide such information in scope and content that will enable the user to uniquely identify each computer file, as follows:

The name of the file, date, time and place of file creation, bytes in the file, contents of the file and reason created, the environment in which the file can be used and/or run

2

(as applicable), a statement of all equipment necessary to use the file, and the identity of accessory computer files (if any) that are required in order to use the identified file. If more than one version of the a file is identified, identify all such versions; if a file is compressed or consists of more than one file, state the method of compression and identify the program and/or files used to compress the file. If any file is encrypted, identify the method of encryption and all programs used to encrypt and un-encrypt the file, and identify and describe any password(s) and accessory information needed to un-encrypt the file. If the file is a program file, identify (by name, version) the program in the file, the purpose and author of the program, the language of the program and for each such language (if more than one) the manufacturer of the program and version thereof. If the file is a non-program file, identify every program, program file or file used to develop, read, write, modify and store information in the file, identify all programs or files and file was designated to be used with, and describe any record format, record layout, storage or format information necessary or required to be used with the file. Identify all computer equipment where each such file identified is located.

  3. With respect to a document, the term **"identify"** means to give the date, title, author and addressee. **"Identify"** with respect to a document further means:

    (a) to describe the document sufficiently well to enable the interrogator to know what the document is and to retrieve it from a file or wherever it may be located;

    (b) to describe it in a manner suitable for use as a description in a subpoena;

    (c) to give the name, address, position or title of the person(s) who has custody of the document and/or copies thereof.

3

(d)   the name, address, employer and job title of the author or each signatory.

4. **"Identify"** when used in reference to an individual means:

    (e)   to state his/her full name;

    (f)   present residence address or last known residence and telephone number;

    (g)   present or last known business address and telephone number;

    (h)   present employer or last known employer and telephone number;

    (i)   whether ever employed by any party to this action, and if so, the dates he/she was employed by such party, the name of such party, and the last position held as an employee/agent of such party.

5. The term **"relevant time period"** shall mean the period February 1, 2001 through through December 31, 2004.

6. The term **""Collective Bargaining Agreement"** shall mean the Collective Bargaining Agreement between The Pepsi Bottling Group and the Teamsters Local 830, effective January 1, 2000 to December 31, 2004.

7. The term **"The Company"** shall mean the Wilmington, Delaware facility of The Pepsi Bottling Group, Inc., a Delaware corporation and its affiliates and/or divisions.

8. The term **"Union Department"** shall mean and refer to all job departments (as defined) set forth in Article XV (and any appendices) and covered under the Collective Bargaining Agreement, including Manufacturing, Sales, Transport and Service, and shall include any and all divisions of work within a particular "union job department", by designation and/or assignment.

9. The term **"Non-Union Department"** shall mean and refer to all departments (as

4

defined) *other than those* set forth in Article XV (and any appendices) to the Collective

Bargaining Agreement, *not covered by* the Collective Bargaining Agreement, including the

Merchandising Department, and shall include any and all divisions of work within a particular

"non-union job department", by designation and/or assignment.

10. The term **"you"** or **"your"** in this request for production means The Company, as
defined herein.

11. The term **"representative"** shall mean and include any and all managers, officers,

directors, agents, servants, employees, partners, attorneys (unless a privilege applies), experts and

consultants of any defendant.

12. The term **"person"** means and includes every natural person, corporation, entity,

partnership, association, joint venture, co-venturer, municipal corporation, and any division,

subdivision, governmental body or agency of a municipal corporation, and any other entities.

13. The terms **"and"** as well as **"or"** shall be construed disjunctively or conjunctively as

necessary to bring within the scope of these interrogatories any information which might

otherwise be construed to be outside of its scope.

14. If you withhold under a claim of privilege any document or thing, you shall furnish a

list identifying each document or thing for which privilege is claimed, together with the

following information:

(a) the identity(ies) of the sender, recipient and any other persons to whom such
documents or a copy thereof was furnished or who participated in such communication;

(b) the subject matter of the document or communications;

(c) present custodian of the document;

(d) basis on which privilege is claimed and,

(e) the specific document request to which such information responds.

15. For any document no longer in existence or which cannot be located, identify the document, state how and when it passed out of existence or can no longer be located and the reasons therefor, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or any fact concerning its nonexistence or loss.

16. A full and complete response to each request for production is required under Rule 34 of the Federal Rules of Civil Procedure. No response is to be left blank. If the response to a request or subparagraph of a request is "none" or "unknown", such statement must be written in the answer. If a response is omitted because of the claim of privilege, the basis of privilege is to be stated.

## DOCUMENT REQUESTS

### Documents concerning Job Department make-up, affirmative action and compliance

1. Produce any and all "Seniority Lists" and/or similar lists for the Union Department and all documents comprising such lists, that refer to, relate to, concern or discuss Marlayna Tillman's employment at the Company, by name, job classification (job title, grade level, etc.), seniority (by job department and union seniority), time in service, qualifications, rate of pay, and other relevant data including gender and minority status, for the relevant time period.

2. Produce any and all "Seniority Lists" and/or similar lists for the Non-Union Department and all documents comprising such lists, that refer to, relate to, concern or discuss Marlayna Tillman's employment at the Company, by name, job classification (job title, grade

6

level, etc.), seniority (by job department and union seniority), time in service, qualifications, rate of pay, and other relevant data including gender and minority status, for the relevant time period.

3. Produce all organizational and/or salutation charts for each job department in the Union Department showing identity of each employee, and for each employee in each job classification: gender, age, position, location, grade/rank of employment, hire date(s), promotion date(s), identity of supervisor(s), rates of pay, minority status and any other information as presented, for the relevant time period.

4. Produce all organizational and/or salutation charts for each job department in the Non-Union Department showing identity of each employee, and for each employee in each job classification: gender, age, position, location, grade/rank of employment, hire date(s), promotion date(s), identity of supervisor(s), rates of pay, minority status and any other information as presented, for the relevant time period.

5. Produce any and all documents labeled, stored, categorized and/or declared by The Company to be "records concerning impact" under 29 CFR §1607.4A or B, either by race, ethnic group or national origin, that refer to, relate to, concern or discuss the Union Department, covering the relevant time period.

6. Produce any and all documents labeled, stored, categorized and/or declared by The Company to be "records concerning impact" under 29 CFR §1607.4A or B, either by race, ethnic group or national origin, that refer to, relate to, concern or discuss the Non-Union Department, covering the relevant time period.

7. Produce any and all documents that refer to, relate to, concern or discuss any selection procedure(s) designed, maintained or implemented within or concerning the Union Department,

7

during the relevant time period, to promote, transfer, re-assign or demote within The Company on the basis of merit, employees within a particular race, ethnic group or national origin, whether part of any affirmative action program or otherwise.

8. Produce any and all documents that refer to, relate to, concern or discuss any selection procedure(s) designed, maintained or implemented within or concerning the Non-Union Department, during the relevant time period, to promote, transfer, re-assign or demote within The Company on the basis of merit, employees within a particular race, ethnic group or national origin, whether part of any affirmative action program or otherwise.

9. Produce any and all documents and all records of The Company that would identify, refer to, relate to, concern or discuss the impact (and content of such impact) that various tests and all selection procedures had upon employment opportunities/decisions including promotion, transfer, re-assignment or demotion of employees by race, ethnic group or national origin, under 29 CFR §1607.4A and B or other law or regulation, for the Union Department during the relevant time period.

10. Produce any and all documents and all records of The Company that would identify, refer to, relate to, concern or discuss the impact (and content of such impact) that various tests and all selection procedures had upon employment opportunities/decisions including promotion, transfer, re-assignment or demotion of employees by race, ethnic group or national origin, under 29 CFR §1607.4A and B or other law or regulation, for the Non-Union Department during the relevant time period.

11. Produce any and all reports, studies or other documents of The Company that refer to, relate to, concern or discuss whether the total selection process for promotion, transfer, re-

8

assignment or demotion within the Union Department, under 29 CFR §1607.4A and B or other law or regulation, during the relevant time period, ever had an adverse impact on employment by race, ethnic group or national origin, and, if so, produce all documents including reports or studies etc. discussing whether the individual components of the selection process were evaluated for such adverse impact and the content of such impact.

12. Produce any and all reports, studies or other documents of The Company that refer to, relate to, concern or discuss whether the total selection process for promotion, transfer, re-assignment or demotion within the Non-Union Department, under 29 CFR §1607.4A and B or other law or regulation, during the relevant time period, ever had an adverse impact on employment by race, ethnic group or national origin, and, if so, produce all documents including reports or studies etc. discussing whether the individual components of the selection process were evaluated for such adverse impact and the content of such impact.

13. Produce any and all reports, studies or other documents of The Company discussing all enforcement action by the EEOC or other Federal or State administrative agency against The Company with respect to the individual components of any selection process for promotion, transfer, re-assignment or demotion within a particular race, ethnic group or by national origin within the Union Department, during the relevant time period, under 29 CFR 1607.4A and B or any other law or regulation.

14. Produce any and all reports, studies or other documents of The Company discussing all enforcement action by the EEOC or other Federal or State administrative agency against The Company with respect to the individual components of any selection process for promotion, transfer, re-assignment or demotion within a particular race, ethnic group or by national origin

9

within the Non-Union Department, during the relevant time period, under 29 CFR 1607.4A and B or any other law or regulation.

15. Produce any and all reports, studies, or other data of The Company required or determined by The Company to be maintained under applicable guidelines and regulations (including but not limited to 29 CFR §1607.15) to determine adverse impact under the "four-fifths rule" under 29 CFR §1607.4D and any selection process for promotion, transfer, re-assignment or demotion of employees within a particular race, ethnic group or by national origin, for the Union Department, during relevant time period.

16. Produce any and all reports, studies, or other data of The Company required or determined by The Company to be maintained under applicable guidelines and regulations (including but not limited to 29 CFR §1607.15) to determine adverse impact under the "four-fifths rule" under 29 CFR §1607.4D and any selection process for promotion, transfer, re-assignment or demotion of employees within a particular race, ethnic group or by national origin, for the Non-Union Department, during relevant time period.

17. Produce any and all documents that identify, disclose or discuss all affirmative action programs, policies and/or procedures drafted, adopted or implemented by The Company that address, impact or discuss promotions, transfers, re-assignments or demotions by race, ethnic group or national origin within the Union Department, during the relevant period.

18. Produce any and all documents that identify, disclose or discuss all affirmative action programs, policies and/or procedures drafted, adopted or implemented by The Company that address, impact or discuss promotions, transfers, re-assignments or demotions by race, ethnic group or national origin within the Non-Union Department, during the relevant period.

19. Produce all documents that refer to, relate to, concern or could be construed as "validity studies" for purposes of satisfying the EEO guidelines of The Company and/or the EEO guidelines as established under 29 CFR §1601.1 et seq., as referenced or used in accordance with 29 CFR §1607.5, within the Union Department, during the relevant time period.

20. Produce all documents that refer to, relate to, concern or could be construed as "validity studies" for purposes of satisfying the EEO guidelines of The Company and/or the EEO guidelines as established under 29 CFR §1601.1 et seq., as referenced or used in accordance with 29 CFR §1607.5, within the Non-Union Department, during the relevant time period.

21. Produce any and all documents that refer to, relate to, concern or discuss The Company's selection policies and/or procedures utilized or followed by management or supervisory personnel to determine selection and distribution of overtime work and/or weekend work within the Union Department, and/or each job department therein, during the relevant time period.

22. Produce any and all documents that refer to, relate to, concern or discuss The Company's selection policies and/or procedures utilized or followed by management or supervisory personnel to determine selection and distribution of overtime work and/or weekend work within the Non-Union Department, and/or each job department therein, during the relevant time period.

23. Produce any and all documents that refer to, relate to, concern or discuss The Company's policies and/or procedures utilized or followed by management or supervisory personnel to determine when The Company will pay an employee for overtime work and/or weekend work within the Union Department and the Non-Union Department, and/or each job

11

department therein, during the relevant time period.

24. Produce any and all documents that refer to, relate to, concern or discuss The Company's selection policies and/or procedures for promotion, transfer, re-assignment or demotion, within the Union Department, during the relevant time period.

25. Produce any and all documents that refer to, relate to, concern or discuss The Company's selection policies and/or procedures for promotion, transfer, re-assignment or demotion, within the Non-Union Department, during the relevant time period.

26. Produce any and all documents determined or construed by The Company to constitute "impact or validity evidence" as that term is defined in 29 CFR §1607.15, that refer to, relate to, concern or discuss the Union Department, during the relevant time period.

27. Produce any and all documents determined or construed by The Company to constitute "impact or validity evidence" as that term is defined in 29 CFR §1607.15, that refer to, relate to, concern or discuss the Non-Union Department, during the relevant time period.

28. Produce any and all documents that refer to, relate to, concern or discuss the race, ethnic group or national origin makeup of the Union Department, during the relevant time period.

29. Produce any and all documents that refer to, relate to, concern or discuss the race, ethnic group or national origin makeup of the Non-Union Department, during the relevant time period.

30. Produce any and all documents, including (but not limited to) Organizational Charts and/or Salutation Charts of The Company, that refer to, relate to, concern or discuss promotion, transfer, re-assignment or demotion by race, ethnic group and national origin within the Union Department, during the relevant time period.

12

31. Produce any and all documents, including (but not limited to) Organizational Charts and/or Salutation Charts of The Company, that refer to, relate to, concern or discuss promotion, transfer, re-assignment or demotion by race, ethnic group and national origin within the Union Department, during the relevant time period.

### Tillman's employment with Pepsi Bottling

32. Produce the entire personnel folder/file, and all documents contained therein, for Marlayna G. Tillman, for her entire employment tenure at The Company.

33. Produce all employment reviews, ratings, performance ratings, evaluations and/or critiques that refer to, relate to, concern or discuss Marlayna Tillman's employment with The Company.

34. Produce all documents labeled or determined to be "Employee Profile" reports and all documents that refer to, relate to, concern or discuss the Employee Profile content for Marlayna Tillman during her employment at The Company.

35. Produce all documents labeled or determined to be "Disciplinary Action Reports" and all documents that refer to, relate to, concern or discuss the content of such reports for Marlayna Tillman during her employment at The Company.

36. Produce all documents labeled or determined to be "Payroll Registers" and all documents that refer to, relate to, concern or discuss the content of such reports/registers for Marlayna Tillman during her employment at The Company.

37. Produce all documents labeled or determined to be "Earnings Statements" or "Payroll Reports" and all documents that refer to, relate to, concern or discuss the content of such statements/reports for Marlayna Tillman during her employment at The Company.

38. Produce all documents labeled or determined to be "Employee Absence Occurrence Reports" and all documents that refer to, relate to, concern or discuss the content of such reports for Marlayna Tillman during her employment at The Company.

39. Produce all documents labeled or determined to be "Productivity Reports" and all documents that refer to, relate to, concern or discuss the content of such reports for Marlayna Tillman during her employment at The Company.

40. Produce any and all documents that refer to, relate to, concern or discuss Marlayna Tillman's requests, application(s) for or attempts at promotion, transfer or re-assignment at The Company within or outside any job department in the Union Department, during the relevant time period.

41. Produce any and all documents that refer to, relate to, concern or discuss Marlayna Tillman's requests, application(s) for or attempts at promotion, transfer or re-assignment at The Company within or outside any job department in the Non-Union Department, during the relevant time period.

42. Produce any and all documents, including policies, procedures, protocols and rules of The Company that refer to, relate to, concern or discuss the allegations in ¶¶15-18 and 23-27 of the complaint, that plaintiff was not made a member of the Local 830 and was not afforded Local 830 wages, overtime or time-and-a-half pay, double pay in her position in the Conventional Department.

43. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss the allegations in ¶¶19-20 of the complaint that The Company did not assist or address plaintiff's complaints concerning Local

14

830 membership and wage rates and conditions of pay.

44. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss the allegations in ¶36 of the complaint concerning Tillman's transfer back to the Merchandising Department of The Company in May, 2002.

45. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss any and all of the allegations in ¶¶40-43 of the complaint concerning the hiring and staffing of: (a) Chris Eastlack, (b) Leroy Lewis and (c) Santos Robles.

46. Produce any and all documents that refer to, relate to, concern or discuss any and all of the allegations in ¶44 of the complaint.

47. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss any and all of the allegations in ¶¶55 - 58 of the complaint concerning Tillman's layoff, recall and grievance.

48. Produce any and all documents that refer to, relate to, concern or discuss all job openings in the Transport Department to which plaintiff applied, including postings and announcements, and Tillman's application.

49. For each person who was selected for and filled any position in the Transport Department to which plaintiff had applied, produce all documents that identify each person(s) who interviewed for the position, the supervisor recommending the applicant (if any), the criteria for selection and qualifications (including date of CDL license) and, for each selectee, all data appearing on all seniority lists existing at the time of the selection and rate of pay offered.

15

50. Produce separately from Tillman's employment file, any and all adverse or derogatory employment or performance reviews concerning her work performance, conduct or leave record throughout her employment tenure at The Company.

51. Produce any and all documents that refer to, relate to, concern or discuss any action, decision, investigation, review or conclusion by The Company's EEO office or Office of Ethics (or similar department) in connection with any issue, complaint, grievance, charge, act of discrimination or any other act, of or relating to any aspect of Tillman's employment at The Company, whether or not specifically described in the complaint.

52. Produce any and all documents that refer to, relate to, concern or discuss any action, decision, investigation, review or conclusion by The Company's Human Resource Department in connection with any issue, complaint, grievance, charge, act of discrimination or any other act, of or relating to any aspect of Tillman's employment at The Company, whether or not specifically described in the complaint.

53. Produce any and all documents that refer to, relate to, concern or discuss any action, decision, investigation, review or conclusion by The Company as regards whether The Company did or did not violate any term or provision of the Collective Bargaining Agreement in connection with Tillman's employment.

54. Produce all documents that identify all employees of The Company who entered into membership in Local 830 during the relevant time period.

55. Produce all documents that identify all employees of The Company who did *not* enter into membership in Local 830 during the relevant time period.

56. Produce any and all documents, including policies, procedures, protocols and rules of

16

The Company, that refer to, relate to, concern or discuss the criteria for determining when a particular employee would be enrolled and/or made a member of the Local 830 during the relevant time period.

57. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss the criteria for determining when a particular employee who was enrolled and/or made a member of the Local 830, would receive a wage in accordance with Local 830 rates and conditions of pay.

58. Produce any and all documents, including policies, procedures, protocols and rules of The Company, that refer to, relate to, concern or discuss (1) the criteria by which any employee would be selected for training for a CDL license; (2) the procedure by which any employee so selected, would be trained and receive a CDL license.

59. Produce all documents of Human Resources (not produced under any above request) that refer to, relate to, concern or discuss any of the information, content or documents requested to be produced in this document request.

60. Produce any and all documents that The Company produced or submitted to the Delaware Department of Labor or the Equal Employment Opportunity Commission in connection with the action filed by Tillman against Local 830 under no. 17CA300373 on or about April 22, 2003, including all transmittal correspondence, investigations, and conclusions and any and all documents related thereto.

61. Produce any and all documents that The Company produced or submitted to the Delaware Department of Labor or the Equal Employment Opportunity Commission in connection with the action filed by Tillman against The Company under no. 17CA200627 on or

17

about August 28, 2002 , including all transmittal correspondence, investigations, and conclusions and any and all documents related thereto.

**Pre-trial and trial requests**

62. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Eighth Affirmative Defense.

63. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Tenth Affirmative Defense.

64. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Thirteenth Affirmative Defense.

65. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Fourteenth Affirmative Defense.

66. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Fifteenth Affirmative Defense.

67. Produce any and all documents that refer to, relate to, concern or discuss any allegation in your Eighteenth Affirmative Defense.

68. Produce any and all documents that refer to, relate to, concern or discuss any allegation in Count I of your counterclaim.

69. Produce any and all documents that refer to, relate to, concern or discuss any allegation in Count II of your counterclaim.

70. Produce any and all documents that comprise and/or identify any computer file (see definitions) that have been identified and/or produced under any request above (unless the specific computer file has already been produced under a specific request).

71. Produce any and all statements and communications from all witnesses including any statements from the parties therein or its/their respective agents, officers, servants and/or employees (not attorneys) that refer to, relate to, concern or discuss any aspect of any allegation in the complaint, or the answer to the complaint.

72. Produce any and all documents that identify the names and addresses and telephone numbers of all individuals contacted as potential or actual witnesses at trial.

73. Produce the entire reports of all experts who have been consulted and/or will testify at trial, and all documents, correspondence, notes and drafts of reports in whatever form, relied upon and/or prepared by same.

74. Produce the curriculum vitae and qualifications of any and all experts who will testify at trial.

75. Produce all documents that you intend to rely on, mark and/or introduce into evidence at trial or at any deposition.

76. Produce any and all photographs, charts, drawings, diagrams, models, videotapes, recordings, sound devices, graphs, animations, displays, and related documents that refer to any claim or defense raised by any party in this action.

77. Produce any and all documents (see definitions) that may be defined, labeled or categorized as demonstrative evidence, that defendant intends to use or rely upon at trial or any deposition.

J. Stephen Woodside
Attorney *pro hac vice* for Plaintiff,
Marlayna G. Tillman

19

OF COUNSEL:

J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza, Suite 605
425 Swede Street
Norristown, PA 19401

DATED: August 24, 2006

## CERTIFICATION OF SERVICE

The undersigned hereby certifies he served a true and correct copy plaintiff's request for

production of documents (first set) addressed to defendant, Pepsi Bottling Group, Inc. upon the

following, by First Class United States Mail, postage prepaid, on the date set forth below:

> Lucretia Clemons, Esquire
> BALLARD SPAHR ANDREWS & INGERSOLL, LLP
> 51ST Floor
> 1735 Market Street
> Philadelphia, PA 19103
> (Attorney for The Pepsi Bottling Group, Inc.)

> Marc L. Gelman, Esquire
> JENNINGS SIGMUND, P.C.
> 510 Walnut Street
> Philadelphia, PA 19106
> (Attorney for Local 830)

J. Stephen Woodside

DATED:   August 24, 2006