IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN,                    :        C.A. No.: 04-1314(SLR)

    Plaintiff,                          :
                              :
           v.                           :

THE PEPSI BOTTLING GROUP, INC.,          :
and TEAMSTERS LOCAL UNION                :
830,                                     :
                              :
    Defendants.                          :
                              :

**BRIEF AND AFFIDAVIT OF PLAINTIFF,
MARLAYNA G. TILLMAN UNDER RULE 56(f), IN RESPONSE
TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Barbara H. Stratton, Esq.
KNEPPER & STRATTON
1228 North King Street
Wilmington, DE 19801
(302) 658-1717
Delaware Bar ID#2785
bhs@knepperstratton.net
Attorney for Plaintiff

Pro Hac Vice Counsel:

J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated: January 16, 2007

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS .............................................. 1

II.  SUMMARY OF THE ARGUMENT ........................................................ 2

III. COUNTER-STATEMENT OF FACTS ..................................................... 3

   A.  Factual background of Tillman's claims without references to the record ............... 3

   B.  Summary of Tillman's claims without reference to the record ................................. 7

      1.  Tillman's claim for a wage differential for Conventional department work ....... 7

      2.  Tillman's claim for unpaid wages for overtime/weekend work in Conventional.. 8

      3.  Tillman's wage claim under Pepsi's "8 and out" policy ...................................... 8

      4.  Pepsi's refusal to award Tillman the Transport-Jockey/Replenishment position.. 9

      5.  Pepsi's refusal to award Tillman the Route Loader position ................................. 10

      6.  Pepsi's refusal to award Tillman the 2nd Shift Loader/Bulk Jockey position ..... 10

      7.  Pepsi's refusal to award Tillman the Transport Driver position .......................... 11

      8.  Pepsi's award of the Transport Driver position to Tillman in September, 2004... 11

IV.  ARGUMENT ....................................................................................... 12

   A. Status of factual discovery failures of Pepsi ............................................................ 12

   B.  Summary judgment must be denied as to both defendants in light of
      Pepsi's discovery failures ....................................................................................... 14

      1.  Standard under Rule 56(f) ................................................................................. 14

      2.  Summary judgment on Tillman's Equal Pay Act and FLSA claims is
         decidedly premature ....................................................................................... 15

      3.  Summary judgment on Tillman's Title VII claims is decidedly premature .......... 17

      4.  Summary judgment on Pepsi's retaliation claims is premature ............................ 19

5. Local 830's motion for summary judgment must be denied ................................. 19

V.  CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

Babrocky v. Jewel Food Co., 773 F.2d 857 (7th Cir.1985) ................................................. 19

Bradley v. United States, 299 F.3d 197 (3d Cir.2002) ...................................................14, 17, 19

Contractors Ass'n of E. Pennsylvania, Inc v. City of Philadelphia, 945 F.2d 1260
    (3d Cir.1991) ............................................................................................................ 14

 Dickerson v. U.S. Steel Corp., 472 F.Supp. 1304 (E.D.Pa.1978) ....................................... 20

Koplove v. Ford Motor Co., 795 F.2d 15 (3d Cir.1986) ..................................................... 15

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972) ................................................. 17

Metallgesellschaft AG v. Foster Wheeler Energy Corp., 143 F.R.D. 553
    (D.Del.1992) ............................................................................................................. 15

Miller v. Daimler-Chrysler Corp., 219 F.R.D. 331 (D.Del.2003) ........................................ 14

## FEDERAL STATUTES AND RULES

42 U.S.C. §2000e-(5)(f)(1) ................................................................................... 1

42 U.S.C. §1981 .................................................................................................. 1

42 U.S.C. §704(a) ............................................................................................... 1

29 U.S.C. §201-219 ............................................................................................ 1

29 U.SC. §206(d)(1) ........................................................................................... 1

F.R.Civ.P. 33(d) .................................................................................................. 13

F.R.Civ.P. 37 ................................................................................................ 2, 12, 19

F.R.Civ.P. 56(f) ........................................................................................ 2, 3, 12, 14, 17

I.  NATURE AND STAGE OF PROCEEDINGS

Plaintiff, Marlayna G. Tillman ("Tillman") is an adult African-American female formerly employed both in the non-union and union departments of The Pepsi Bottling Group, Inc. ("Pepsi").

Plaintiff filed her complaint against defendants, Pepsi and Teamsters Local Union 830 ("Local 830") on September 29, 2004, alleging that Pepsi and Local 830 discriminated against plaintiff in her employment with Pepsi and violated federal and state wage laws. Specifically, plaintiff asserts claims for race and gender discrimination, retaliation and failure to promote arising under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-(5)(f)(1)); Title I of the Civil Rights Act of 1991 (42 U.S.C. §1981, 42 U.S.C. §704(a)), and claims under the Fair Labor Standards Act (29 U.S.C. §201-219) and the Equal Pay Act, 29 USC. §206(d)(1).

On August 30, 2005, on Pepsi's motion to partially dismiss the complaint, this court entered an order dismissing plaintiff's sexual harassment claim, the claim under the Delaware Wage Payment and Collection Act, and the claim for breach of covenant of good faith and fair dealing.   Under the same order, the court denied Local 830's motion for a more definite statement of claims.

Pepsi filed its answer and counterclaim to the complaint on October 14, 2005.  Local 830 filed its answer on October 19, 2005.  Plaintiff initiated significant discovery of Pepsi and Local 830 which Pepsi could have fully completed within the scheduling order, including noticing of eight deponent witnesses of Pepsi, one set of interrogatories and three sets of requests for production directed to Pepsi, and one set of document requests directed to Local 830.  On November 30, 2006 (prior to the close of factual discovery), plaintiff filed her motion under Rule

1

37, to compel factual discovery of Pepsi including the production of the noticed deponents, and to extend the deadline for fact-based discovery as to all defendants due to Pepsi's discovery failures. (Document no. 87). Pepsi responded to the motion timely (document no. 89), and the motion is pending before this court for the requested relief. Plaintiff was deposed on two days, December 13, 2005 and October 11, 2006. Factual discovery closed on December 1, 2006, under the court's August 21, 2006 scheduling order.

On December 15, 2006, defendants, Pepsi and Local 830 moved for summary judgment on all claims under Rule 56. Plaintiff files this brief and affidavit of Tillman pursuant to Rule 56(f) in response to the motions.

II. SUMMARY OF THE ARGUMENT

1. Summary judgment is decidedly premature on Tillman's claims under Rule 56(f).

2. Due to the willful and repeated discovery failures of Pepsi, pending before this court on a Rule 37 motion, Tillman is precluded from developing a full, complete factual record and affidavits, essential to justify her opposition to the motions under Rule 56.

3. As argued *infra*, the discovery failures have precluded Tillman from developing her case-in-chief on all claims, rebutting defendants' claimed articulated reasons for its employment actions, and proving pretext.

4. Because Tillman's claims against Local 830 are so clearly derivative and outcome determinative of her claims against Pepsi, Tillman cannot proceed under Rule 56 in opposition to Local 830's motion as well.

5. Tillman squarely meets the standards under Rule 56(f) and controlling case law in this jurisdiction for denial of the motions, at this stage of the proceedings. Tillman's affidavit is

2

attached to the end of this brief, in support of her position under Rule 56(f).

III. COUNTER-STATEMENT OF FACTS

    A. Counter-statement of facts without references to the record

    Because Tillman's response to defendants' motions is filed under Rule 56(f), Tillman, for purposes of this response, is necessarily relieved from references to any record or appendix. For sake of clarity, and in support of Tillman's legal arguments made in response to the motions, Tillman submits a counter-statement of facts.

    Pepsi hired Marlayna Tillman on May 8, 2001, as a merchandiser working in the Merchandising/Marketing department. This was a non-union, entry level position for Tillman, paying an hourly rate of $10.58 per hour. At the outset of her employment, Tillman was ambitious to promote within the union ranks of Pepsi which she viewed as a quality place to work with ample advancement opportunities. Her goal was to advance to the position of union transport driver.

    After five months in Merchandising with no pay increase, Tillman was assigned by her immediate supervisor to work in the Conventional department, while at the same time maintaining her work duties in the Merchandising Department on the weekends. The Conventional department was comprised of union work and was a union position. The wages, hours and conditions of the work were controlled by the collective bargaining agreement between Teamsters Local 830 and Pepsi. Under the agreement, Pepsi had thirty days after the transfer to incorporate her into the union or return her to her original position in the company. Both Pepsi and Local 830 failed and refused to follow this procedure. Tillman complained to Human Resources, to no avail. Pepsi also took away Tillman's mileage stipend of $200 per week and

3

told Tillman to use her personal vehicle on weekends when she performed merchandising work, reducing her salary by $200 per week.

Tillman worked both positions for eight months, starting October 13, 2001 and ending on or about May 28, 2002. Although Tillman was performing union work during this period, Pepsi held Tillman to her then non-union hourly rate of $10.58, which increased (by PBG records) only to $10.87 in February, 2002. All other male employees in Conventional were earning union scale rates of $16.63 per hour and higher. During this period, Tillman worked an estimated 15 to 20 hours of overtime and weekend work per week without any overtime at union rates. Tillman was also to be paid a pre-determined 40 hour/week minimum, but for numerous weeks was not paid the full forty hours. Tillman was also the only employee in any union department performing union work who was not paid union scale wages[1].

Tillman demanded back pay and admittance into the Local 830 during this period, which was repeatedly denied by Pepsi. Instead, Pepsi responded by transferring Tillman, on May 28, 2006, back to Merchandising at the same rate of pay ($10.87/hour). During this transfer, Pepsi hired three new male employees (Messrs. Eastlack, Lewis and Robles) with no experience who had never worked for Pepsi. The male employees were installed in union positions before Tillman's transfer to Warehouse department was finalized, and were able to surpass plaintiff in seniority, particularly for "bumping rights" and ability to bid for positions and transfers, and

---

[1]The employee rosters of Pepsi for 2001 through 2004 reveal Tillman was the *only woman* working in any of the enumerated union-classified positions during her entire tenure, except for a woman named Alice Fleming who worked briefly in the Warehouse department from 06/07/01 through 01/31/02. Overall, Pepsi employed a *mere 7% women* in the total workforce of the Wilmington plant. The non-union labor component (administrative, management and merchandising) is a small percentage of that workforce.

4

promotions. Tillman' complained to Human Resources and Local 830 that hiring policies were violated, and obtained no relief.

Tillman's work in the Warehouse department began on or about July 21, 2002. Tillman right away was the subject of repeated sexual innuendo and harassment from male co-workers, because she was the only female in the entire union labor force working in the Wilmington plant. Tillman complained of the conduct to Human Resources and Pepsi management, but obtained no relief and no action was taken. By August, 2002, Tillman's work became micro-managed, and supervisors scrutinized her more than her male co-workers by singling her out for verbal discipline and threat of written reprimands. Tillman on August 28, 2002 filed her first charge of discrimination with the Delaware Department of Labor ("DOL") and EEOC, alleging race and sex discrimination. Shortly thereafter, Tillman received a pay increase in her hourly rate (by PBG records), to $16.05 per hour.

Tillman was laid off by Pepsi on September 18, 2002 along with other members (all male) of her department. All Tillman's co-workers were recalled to work two days later, but Tillman was not recalled until October 19, 2002. Immediately upon her return, Tillman's supervisors started a disciplinary file on her. Every minor infraction was recorded, including "infractions" involving conduct no other employee was disciplined for, and Tillman was often written up without her knowledge. Prior to this, Tillman had never been issued a written reprimand.

In April, 2003, while in the Warehouse department, Tillman heard a male supervisor, Joe Rizzo make racial and derogatory comments about African-Americans, Hispanics and women. Tillman complained to Human Resources, and was assured an investigation would ensue. No

5

action was taken against this supervisor. Tillman was then transferred to Production, where
Rizzo was a supervisor, and Tillman found herself reporting to Rizzo. Tillman requested a
transfer on three occasions, and even requested a transfer to Pepsi's West Chester, Pennsylvania
plant. All were denied. Tillman filed her second charge with DOL against Pepsi on April 23,
2003, alleging gender and race discrimination, and retaliation, against Local 830.

On November 3, 2003, Tillman injured her leg while climbing out of a truck and was
placed on short term disability (STD). Tillman did not receive her disability check for ten weeks
because PBG did not process the claim. Tillman eventually received a lump sum, and with it
disproportionate tax treatment, and returned to work on April 19, 2004 where she was assigned
to the can-filler room, again reporting to Joe Rizzo. Tillman requested accommodation because
she could not stand for prolonged periods of time, or to "bump" another employee, which were
denied. Tillman was told her only option was to file for STD again. Tillman was not paid for
this second STD period. Tillman did not file STD because at the time she felt her injury did not
warrant a disability.

The DOL investigated and found cause on both Tillman's charges and EEOC issued two
right to sue letters to Tillman on July 1, 2004. Tillman took three weeks vacation from August 8,
2004 to August 30, 2004. Upon returning to work, Tillman was called into HR to discuss her
complaints. On August 12, 2004, Tillman participated in a NAACP press conference about her
conditions of employment at Pepsi. Shortly thereafter, Pepsi informed Tillman she had been
awarded a driver position in the Transport department, a position she had bid on at least three
times since 2002. Tillman was given a truck barely road-worthy to test in, and on one occasion
wrote Tillman up for an incident in the Allentown, Pennsylvania warehouse that did not occur,

6

which Tillman could never verify. Early on in the Transport department, Tillman was warned to "watch her back" because the company wants "to get rid of [her]". PBG determined Tillman to be a voluntary quit from her work, on December 31, 2004 (although Tillman never resigned), when Tillman was out of work on medical leave, as per PBG policy.

B. Summary of Tillman's claims without reference to the record

1. Tillman's claim for a wage differential for Conventional department (union) work

Tillman's work in the Conventional department of PBG began October 13, 2001. Under the collective bargaining agreement, under Pepsi policy, Tillman should have been paid a union rate of $15.75 per hour for the period 11/13/01 through 7/21/02, when Tillman was assigned (by HR) to the Warehouse department (a union position).[2] The difference is $5.17 per hour to 02/09/02, and $5.28 per hour to 07/20/02. During this period, Tillman worked a reported 2412.5 regular hours, 185.5 overtime hours (time and a half), 56 holiday hours and 120 vacation/personal/sick hours (all regular time). Tillman's wage claim, under this component, exceeds $15,000 (not accounting for the minimal difference in the shift differential wage earned). All of Tillman's time should have been reported and paid as Conventional department time, and the reported overtime hours thus far are credited to her work in Merchandising. Pepsi has produced no records showing Tillman's time in each department and has refused discovery on why Tillman was precluded membership in Local 830 after performing Conventional department

---

[2]Tillman was "re-assigned" to Merchandising on May 28, 2002, however, because Tillman should have been a Local 830 member at the time, Tillman would not have suffered a reduction in her hourly wage by the transfer (Bargaining Agreement. Art. VIII) and in any event, this transfer to Merchandising should have only lasted one month under the bargaining agreement. To Tillman's knowledge, Pepsi never transferred a union employee to work a non-union position during her tenure.

7

work in excess of 30 days, or why Local 830 permitted Tillman to cross over into union-classified work as a non-member. Had she been assigned no Merchandising work, she would have earned all of her reported hours at prevailing union rates in the Conventional department.

    2. <u>Tillman's claim for unpaid wages for overtime and weekend work in Conventional</u>

    Tillman was a non-exempt hourly employee working in both the Conventional and Merchandising departments from October 13, 2001 to May 28, 2002. During this period Tillman worked significantly more overtime and weekend time in Conventional - that should have been paid at union rates - than Tillman was actually paid.[3] Tillman worked approximately 20 hours a week overtime (some of it at double time weekend rates) during this period. This period is comprised of 31.5 weeks, and an overtime claim of 551.25 hours. By PBG records, PBG reported and paid Tillman 185.5 hours of overtime for this period. The net hours of 365.75, at $24.22 (the union rate at time and a half to Tillman for this period), yields an estimated unpaid overtime claim in excess of $8,000.

    3. <u>Tillman's wage claim under Pepsi's "8 and out" policy</u>

    During Tillman's employment tenure in the union (08/21/02 forward, under the 30 day-wait period under the bargaining agreement), Pepsi had an "8 and out" policy, supported by the collective bargaining agreement, whereby all route and bulk employees were to be paid for a full 8 hour shift, even if the worker completed his workload and punched out before the end of

---

    [3]Tillman, like all Pepsi employees, was on the "honor system" for turning in her overtime for weekend work and by PBG records did not punch a time clock for weekend work. To date, Pepsi produced no records establishing what Tillman submitted for weekend time. For reasons that can only be tested in depositions, Pepsi's detailed earnings statements for Tillman end 06/21/03; the "punch detail reports" end 10/26/02, and documents entitled "Time Detail" are only for the period 10/28/02 through 10/28/03.

the shift and there was no further work for that employee. Pepsi repeatedly did not extend the

policy to Tillman. Tillman's payroll records of PBG report Tillman under the "8 and out" policy

is owed 63.25 hours at regular time, at prevailing union rate to Tillman for the period, through

the end of April, 2003, when the problem appears to have been straightened out after Tillman

complained.

     4. <u>Pepsi's refusal to award Tillman the Transport-Jockey/Replenishment position</u>

     Pepsi posted on April 7, 2003 the Transport department position of third shift

Jockey/Loader position. Tillman applied timely, and with training from fleet (like the other

applicants), would present as qualified. Tillman believes the position was awarded to Gary

DiProsperos (warehouse worker).[4] Tillman learned from DiProsperos that he did not accept the

position and he withdrew his bid. Tom Riley, Tillman's supervisor told her the choice was

between her and Andy Purdy (machine operator, lesser qualifications). Riley abruptly refused to

consider Tillman for the position, claiming he had no obligation to train her although numerous

other men in the past received training in fleet for the position and Purdy would have to have

been trained as well. The jockey position paid a base union Transport department rate of $16.75

hour. Tillman earned in warehouse a prevailing rate of $16.15 per hour. The difference ($.60

per hour) would have been earned by Tillman over the period of April 14, 2003 to December 31,

2004, comprised of regular time, overtime (at time and a half rate) and weekend time (at double

time rates). From what Tillman knows, Tillman's then-supervisor, Tom Riley forced

DiProsperos to accept the position, telling other co-workers "he did not want Tillman" in the

---

    [4]Employment related information was requested on DiProsperos in plaintiff's request for production addressed to Pepsi (third set). Pepsi objected and refused production.

Warehouse or Transport departments at Pepsi. On this employment position, Pepsi has refused

discovery and otherwise articulated virtually no undisputed facts to support its motion for

summary judgment.

### 5. Pepsi's refusal to award Tillman the Route Loader position

On May 1, 2003, Pepsi opened bidding for a Route Loader position. This was a union

position in the Transport department. Tillman was qualified, and timely applied. The position

was awarded to Messrs. Eastlack and Lewis, both whom were hired from outside Pepsi a half a

year after Tillman should have been made a member of Local 830 due to her work in

Conventional.[5] Had Pepsi not intentionally acted to prevent Tillman's union membership,

Tillman's claim is she would have been awarded the position based on seniority and

qualifications, measured against all candidates. On this employment position, Pepsi has refused

discovery and otherwise articulated virtually no undisputed facts to support its motion for

summary judgment.

### 6. Pepsi's refusal to award Tillman the 2nd Shift Loader/Bulk Jockey position

On September 3, 2003, Pepsi opened bidding for a 2nd shift loader/bulk jockey position.

This was a union position in the Transport department. Tillman was qualified and timely

applied. The position was awarded to Dwight Cephas, an African-American male hired by Pepsi

after Tillman was hired, into a union Warehouse position.[6] Had Tillman been assigned to the

Conventional department and made a member of Local 830 in October, 2001 when she began

---

[5]Employment related information was requested on Eastlack in plaintiff's request for production addressed to Pepsi (third set). Pepsi objected and refused production.

[6]Employment related information was requested on Cephas in plaintiff's request for production addressed to Pepsi (third set). Pepsi objected and refused production.

10

doing union work, her seniority would have been roughly equal to Cephas. Tillman was equally or better qualified than all candidates. From what Tillman knows, Pepsi could have awarded the position to Tillman notwithstanding her seniority. On this employment position, Pepsi has refused discovery and otherwise articulated virtually no undisputed facts to support its motion for summary judgment.

      7.  Pepsi's refusal to award Tillman the Transport Driver position

      On May 18, 2004 Pepsi opened bidding for two (2) transport driver positions. This was a union position in the Transport department. Tillman was qualified and timely applied. Tillman believes the positions were awarded to Joseph Rullo and Jeffrey Coale, Sr., both senior to Tillman. However, Pepsi brought Rullo over from Pepsi's West Chester, Pennsylvania plant under unknown circumstances. Tillman was the only other candidate. Since 2003, Tillman made several requests that HR arrange for her transfer to a union position in the West Chester plant, in order to advance her career and enter Transport, which were consistently refused by Human Resources. Damages are in accordance with the figures presented under the 2nd shift loader/bulk jockey position above. On this employment position, Pepsi has refused discovery and otherwise articulated virtually no undisputed facts to support its motion for summary judgment.

      8.  Pepsi's award of the Transport Driver position to Tillman in September, 2004

      On September 9, 2004, Pepsi opened bidding for a transport driver position. This was the same union position in the Transport department Tillman bid in May, 2004, and required a Commercial Driver's License (CDL). Tillman was qualified and timely applied, and was awarded the position. Pepsi's policy thus far adduced is that non-union members cannot bid or

11

train for a CDL driver's position. Once in the union, training and bidding for CDL driver's positions is available. Not only was Tillman held out of the union until July, 2002 which permanently affected her seniority for promotion and advancement, but she was repeatedly denied any access or assistance in training by the union or Pepsi until late October, 2003, after she filed her first EEOC charge. Tillman watched as other men (e.g., Bell, Casey and Rogers) all received training to become qualified CDL drivers, and the same training was not made available to her. Tillman, by Pepsi's policy, could have bid on any union position, including Transport department position, as early as October, 2001, when she began her work in Conventional. To date, Pepsi has not produced the discovery Tillman demanded on the union positions that were open and available to bid in the Transport department.

Tillman's affidavit under Rule 56(f) in support of this response, is attached to end of this brief.

## IV.  ARGUMENT

### A.  Status of factual discovery failures of Pepsi

Pending before this court is plaintiff's Rule 37 motion filed November 30, 2006, compelling factual discovery of Pepsi and to extend the deadline for fact-based discovery due to Pepsi's willful discovery failures. (Document no. 87). Specifically, the motion seeks an order compelling the production of eight fact witnesses of Pepsi, answers to interrogatories (first set), production of documents responsive to plaintiff's request for production (second set), and production of documents in response to plaintiff's request for production (first set, nos. 5 through 20) all addressed to Pepsi, within specified time periods, and such additional depositions as plaintiff had determined to notice within a date certain that has now passed.

The noticed deponents were: Pepsi's Regional Human Resource (HR) manager (Scott Steiger), Pepsi's HR manager in the Wilmington plant (Sara Swarz); Swarz's supervisory HR manager in Wilmington (Tracy Drzewieki); Tillman's manager in the Conventional department (Jim Kelleher); Tillman's manager in the Transport department (Glenn Matthews) who reported to Tom Riley (Riley is deceased), a senior transport driver (Mike Johnson, African-American), a warehouse department worker (Peyton Spencer) and senior dock/warehouse worker (James Felicetti) who both had knowledge of supervisors' intentions towards Tillman. Pepsi failed to produce a single witness for a deposition.

As regards plaintiff's interrogatories (first set), except for oblique references to Rule 33(d) under circumstances where the rule could not be invoked, Pepsi refused to provide any answers to interrogatories tailored to meet specific proofs in Tillman's case-in-chief, to prove pretext, and to reach the essence of Tillman's claims. The interrogatories sought the policy governing the interplay between non-union and union positions; an explanation of the repeated adverse employment actions suffered by Tillman; the personnel who received the union positions Tillman was denied and the reasons why; the identity, wage rates and selection criteria of all non-union employees who were transferred to union-classified departments; the specific employment information on all females and African American females employed at Pepsi including seniority, wage rates for key departments during specified time periods; all applicants who applied for, trained for or obtained a CDL license and related employment information for each person, and Transport department applicants and hires.

The interrogatories also sought specific information about Pepsi's training and policy applicable to employees seeking to obtain a CDL license and a CDL-licensed position; and pay

13

and seniority information for all persons filling the positions during specified time period, all relevant to Tillman's claim she could not advance or promote her career at Pepsi.

Finally, Pepsi produced no information or documents responsive to plaintiff's third request for production of documents. This request sought (for specified departments and for time periods contemporaneous with Tillman's employment) specific wage and hour documents, timecards and punch details reports, and disciplinary action and absence occurrence reports, all within Pepsi's control for each enumerated employee. The production would enable plaintiff to prove disparate treatment of Tillman by Pepsi, by comparing wages, time card punches, absenteeism and discipline reports in comparison to all other male employees (there were no females) similarly situated as Tillman, which in turn would tend to prove Pepsi's gender based and/or race discrimination against Tillman. Pepsi's objections and response was served December 4, 2006. Plaintiff has not yet moved to compel this discovery.

> B. Summary judgment must be denied as to both defendants in light of
> Pepsi's discovery failures

> 1. Standard under Rule 56(f)

Rule 56(f) of the Federal Rules of Civil Procedure requires a party seeking further discovery in response to a summary judgment motion to submit an affidavit stating "with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained." Miller v. Daimler-Chrysler Corp., 219 F.R.D. 331 (D.Del.2003), citing Bradley v. United States, 299 F.3d 197, 206-07 (3d Cir.2002). The decision whether a Rule 56(f) motion should be granted is within the discretion of the district court. Contractors Ass'n of E. Pennsylvania, Inc v. City of Philadelphia, 945 F.2d 1260,

1267 (3d Cir.1991), citing <u>Koplove v. Ford Motor Co.</u>, 795 F.2d 15, 18 (3d Cir.1986). As a

general rule, summary judgment cannot be entered unless the nonmoving party has been given

the opportunity to pursue discovery in connection with the issues addressed by the summary

judgment motion. <u>Metallgesellschaft AG v. Foster Wheeler Energy Corp. et al.</u>, 143 F.R.D. 553,

559 (D.Del.1992).

> 2. Summary judgment on Tillman's Equal Pay Act and FLSA claims is
> <u>decidedly premature</u>

Pepsi attacks Tillman's Equal Pay Act (EPA) and FLSA claims on summary judgment,

claiming Tillman cannot prove a prima facie case because Tillman cannot demonstrate the work

performed "as a Merchandiser in the Conventional department is equal to the work as a Relief

Driver", and Tillman did not have a CDL-A license while she was a Merchandiser. Pepsi argues

even if the two positions are deemed equal under the EPA, Tillman cannot dispute the

differences in pay are explained by the terms of the collective bargaining agreement between

Pepsi and Local 830. As a alternative argument, "any suggestion that male employees were paid

at a higher rate because of their gender is eviscerated by the fact that other male Merchandisers

were paid at the same [rate] as plaintiff".

As a subpart to this argument, Pepsi claims Tillman cannot make out a Title VII claim of

unlawful discrimination since it is not an unlawful employment practice to apply different

standards of compensation if based on factors unrelated to sex and, again, on Pepsi's thin record,

Tillman's wage-related Title VII claims should likewise be dismissed. (Pepsi's brief, section

5.D).

Tillman's assignment into the Conventional department, to perform Conventional

15

department work while Tillman continued to perform weekend Merchandising work, invokes the express terms and application of the collective bargaining agreement, particularly the provisions requiring union membership for any employee performing union-classified work in excess of 30 days. Also at issue are provisions requiring that any employee transferred between departments receive the wage in the department transferred into, and any such transfer in excess of 30 days (if not renewed for an additional 30 days period) be permanently filled or abolished. Pepsi's argument further casts into question the use and application of both Pepsi's and Local 830's policies and procedures concerning Local 830 membership and the interplay between union and non-union positions. The essence of the claims is why Tillman - the only female performing union-classified work during her entire tenure with Pepsi (with one nominal exception), and the only employee at Pepsi to work union and non-union positions at the same time - was not made a member of the union.

The motion also attaches factual issues concerning Pepsi's training and policies applicable to employees seeking to obtain a CDL license and a CDL-licensed position, and pay and seniority information for all persons filling CDL positions during specified time periods, all which bear significantly on Tillman's claim she could not advance or promote at Pepsi.[7]

Information addressing these central issues was sought in discovery and was the intended subject matter of oral discovery of Pepsi's deponent witnesses. Facts and information developed

---

[7]Thus far, Tillman has learned Pepsi has no "formal" CDL-license training, but an employee must be in the union to get driver training at Pepsi. If the employee is not in the union, the driver-training language in the bargaining agreement does not apply. A non-union employee can get a CDL-licensed position only if he has a CDL license. Only union employees can bid on CDL-licensed positions. If a union employee successfully bids and has no CDL license, the employee has 30 days to secure the CDL license or loses the bid.

from Pepsi's discovery is expected to bear on all of Tillman's claims against Local 830. Tillman

faces challenges by Pepsi not only on the elements of her prima facie case, but on her rebuttal of

Pepsi's claims of non-discriminatory reasons for its employment decisions, and evidence of

pretext on claims of both defendants. Under the standard set forth in Bradley v. United States,

supra, 299 F.3d 197, Tillman has met the showing required under Rule 56(f) to defeat summary

judgment.

Whatever legal argument Pepsi makes regarding the FLSA claims, adjudication should be

reserved until such time as the entire record has been developed in discovery, and Tillman's

response and record to the motion is filed.

Accordingly, under Rule 56(f) both defendants' motions for summary judgment must be

denied.

3. Summary judgment on Tillman's Title VII claims is decidedly premature

At this stage of the litigation, because discovery of Pepsi has been so invidiously denied,

Tillman's Title VII claims cannot be tested on summary judgment under any standard of proof

(direct or circumstantial) under the burden shifting analysis of McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802 (1972).

Pepsi putatively attacks Tillman's claims on several grounds: (1) Tillman cannot establish

a prima facie case for failure to promote to the enumerated positions  because she was not

qualified, and/or did not apply; and denial of promotion or advancement did not arise under

circumstances giving rise to an inference of discrimination; (2) Pepsi has articulated – on a scant,

conclusory record – non-discriminatory reasons for its actions towards Tillman, (3) Tillman

cannot demonstrate Pepsi's articulated reasons were a pretext for discrimination; and (4) all

17

disparate treatment claims fail as a matter of law, because Tillman did not suffer an adverse

employment action. As regards this last area, Pepsi points to Tillman's allegations of work

environment and Pepsi's conduct towards particular aspects of her employment to attack her

prima facie case, rather than viewing this as evidence tending to prove (or disprove)

discrimination (Deft's brief, E.5).

Pepsi's motion, thin as it is, is bottomed upon the following points: (1) Tillman was

denied the promotions at issue because she did not possess a CDL-A license and/or "failed to

meet objective job qualifications" (without specifying what they were), and she did not apply for

the positions and/or had low seniority; (2) Tillman did not suffer an adverse employment action

"as a significant change in employment status such as "failing to promote" (baldly stating such

decision at Pepsi is made by *a supervisor with authority to act*, whose decision is *documented in*

*official company records* and may be subject to review by higher-level supervisors); and (3)

whatever adverse employment actions Tillman claims Pepsi caused (reprimand, layoff, failure to

promote, unequal pay), Tillman was not affected in her salary, seniority, schedule or other

working conditions, and no inference of discrimination arises from the actions of Pepsi.

Tillman's opposition to summary judgment on the Title VII claims attaches the same

factual issues as her opposition to summary judgment on her wage-related claims: qualifications

and policies for a CDL license and CDL-licensed positions; numerous provisions of the

collective bargaining agreements for the relevant time period bearing on the question of why

Pepsi (or Local 830) did allow her entry into Local 830; decisions by HR managers about

Tillman's employment; qualifications for the numerous positions Tillman applied for during her

tenure and to whom awarded; her layoff and return to work, bumping rights, seniority rights; and

18

denial of membership in Local 830 despite repeated demands and grievances made and filed with Local 830; and why reprimands and discipline of male co-workers was non-existent or unequal to that of Tillman.

From the unanswered discovery and depositions of Pepsi witnesses, all before the court under Tillman's pending Rule 37 motion, Tillman can expect to obtain information each of these factual issues sufficient to preclude the entry of summary judgment in favor of either defendant, meeting the standard articulated under Bradley v. United States, supra, 299 F.3d 197.

    4. Summary judgment on Pepsi's retaliation claims is premature

Pepsi challenges Tillman's claims for retaliation on the basis that Tillman cannot establish the elements of a *prima facie* case, because she did not suffer an adverse employment action, and she cannot establish a causal connection required for this type of claim. Relying on the same arguments under the same record as in the prior claims, Pepsi putatively claims it has set forth articulated non-discriminatory reasons for its actions towards Tillman, which Tillman cannot rebut as pretext.

For all the reasons set forth by Tillman in opposition to summary judgment (sections IV.B.2 and 3 above), summary judgment on Tillman's claim of retaliation must be denied.

    5. Local 830's motion for summary judgment must be denied

Local 830's motion for summary judgment is premised on the argument that Tillman cannot make out a *prima facie* case of race or sex discrimination, in that she has no evidence of discriminatory animus or that Local 830 violated its duty of fair representation, and the retaliation claim lacks causation or evidence of an "adverse" action. Local 830 cites the standard set forth under Babrocky v. Jewel Food Co., 773 F.2d 857 (7th Cir.1985), and that plaintiff must

make out a showing that Local 830 "[b]asically" acquiesced", citing <u>Dickerson v. U.S. Steel</u>

<u>Corp.</u>, 472 F.Supp. 1304 (E.D.Pa.1978).  Local 830's argument for summary judgment on

Tillman's wage claims is derivative of the legal arguments and record in opposition to the sex

and gender claims.

All of Local 830's argument and record on its motion is subsumed wholly by the legal

arguments and record, and the significant discovery failures of Pepsi, as articulated in the prior

sections of this brief in opposition to Pepsi's motion.  A determination of summary judgment on

the essential legal points raised by Local 830 in its motion, would be derivative of the outcome of

Pepsi's motion.  Accordingly, at this stage of the proceedings, Local 830's motion for summary

judgment must be denied.

## V.  <u>CONCLUSION</u>

For all the foregoing reasons, defendants' motions for summary judgment on all claims

must be denied.

Respectfully submitted:

KNEPPER & STRATTON

<u>/s/ Barbara H. Stratton</u>
Barbara H. Stratton, Esq.
1228 North King Street
Wilmington, DE 19801
(302) 658-1717
Delaware Bar ID#2785
bhs@knepperstratton.net
Attorney for Plaintiff

20

Pro Hac Vice Counsel:

J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated: January 16, 2007

## CERTIFICATION OF SERVICE

I, Barbara H. Stratton, hereby certify that on January 16, 2007, J. Stephen Woodside

caused a true and correct copy of plaintiff's brief and affidavit under Rule 56(f) in response to

defendants' motions for summary judgment to be served upon the following, by telefax (or

email) and first class United States Mail, postage prepaid:

Lucretia Clemons, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51ST Floor
1735 Market Street
Philadelphia, PA 19103
(Attorney for The Pepsi Bottling Group, Inc.)

Marc L. Gelman, Esquire
JENNINGS SIGMUND, P.C.
510 Walnut Street
Philadelphia, PA 19106
(Attorney for Local 830)

KNEPPER & STRATTON

/s/ Barbara H. Stratton
Barbara H. Stratton, Esq.
1228 North King Street
Wilmington, DE 19801
(302) 658-1717
Delaware Bar ID#2785
bhs@knepperstratton.net
Attorney for Plaintiff

Pro Hac Vice Counsel:

J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated:  January 16, 2007

22

## CERTIFICATION OF SERVICE

I, Barbara H. Stratton, hereby certify that on January 16, 2007, J. Stephen Woodside caused a true and correct copy of plaintiff's brief and affidavit under Rule 56(f) in response to defendants' motions for summary judgment to be served upon the following, by telefax (or email) and first class United States Mail, postage prepaid:

> Lucretia Clemons, Esquire
> BALLARD SPAHR ANDREWS & INGERSOLL, LLP
> 51ST Floor
> 1735 Market Street
> Philadelphia, PA 19103
> (Attorney for The Pepsi Bottling Group, Inc.)

> Marc L. Gelman, Esquire
> JENNINGS SIGMUND, P.C.
> 510 Walnut Street
> Philadelphia, PA 19106
> (Attorney for Local 830)

> KNEPPER & STRATTON

> /s/ Barbara H. Stratton
> Barbara H. Stratton, Esq.
> 1228 North King Street
> Wilmington, DE 19801
> (302) 658-1717
> Delaware Bar ID#2785
> bhs@knepperstratton.net
> Attorney for Plaintiff

Pro Hac Vice Counsel:
J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442
Dated:  January 16, 2007

STATE of            :

                        SS.

COUNTY of         :

### AFFIDAVIT OF MARLAYNA G. TILLMAN

Marlayna G. Tillman, of full age, duly sworn according to law, says: the facts and

information set forth in my response under Rule 56(f) to defendants' motions for summary

judgment are true and correct to the best of my knowledge, information and belief.

_____

Marlayna G. Tillman

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 13 DAY OF
JAN _____, 2007

_____

NOTARY PUBLIC

CHRISTOPHE F. STEELE
NOTARY PUBLIC, State of New York
No. 01ST6011756
Qualified in Kings County
Commission Expires 08/17/20__ 10