## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN,  :
                    Plaintiff  :
                                :     C.A. NO. 04-1314 - SLR
v.  :
                                :
THE PEPSI BOTTLING GROUP, INC., and  :
TEAMSTERS LOCAL UNION 830  :
                    Defendants  :

**BRIEF IN SUPPORT OF DEFENDANT, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL UNION NO. 830'S MOTION FOR SUMMARY JUDGMENT**

Clifford B. Hearn, Jr., Esquire
**CLIFFORD B. HEARN, JR., P.A.**
Odessa Professional Park, Suite 240
P.O. Box 521
Odessa, DE 19730-0521
(302) 378-4827

Marc L. Gelman, Esquire
**JENNING SIGMOND, P.C.**
510 Walnut St., 16th Fl.
Phila., PA 19106
(215) 351-0623

Date: March 22, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.      NATURE AND STAGE OF PROCEEDING ..................................................................1

II.     SUMMARY OF ARGUMENT ......................................................................................2

III.    STATEMENT OF FACTS .............................................................................................3

        A.    The Parties ........................................................................................................3

        B.    Tillman's Employment with Pepsi.....................................................................3

        C.    Tillman and Local 830 .....................................................................................5

IV.     ARGUMENT ................................................................................................................12

        A.    Summary Judgment is Appropriate Where Plaintiff Fails to Raise a
              Genuine Issue as to any Material Fact and Defendant is Entitled to
              Judgment as a Matter of Law.............................................................................12

        B.    Plaintiff Has Failed to Meet Her Burden of Demonstrating that Local 830
              Has Discriminated Against Her Because of her Race ..........................................13

              1.    Plaintiff Fails to Establish a Prima Facie Case of Discrimination
                    Under Title VII .......................................................................................13

                    a.    No Evidence of Discriminatory Animus......................................14

                    b.    Local 830 Has Not Violated its Duty of Fair Representation........17

              2.    Plaintiff Fails to Establish a Prima Facie Case of Discrimination Under
                    Section 1981.........................................................................................20

        C.    Plaintiff Has Failed to Meet Her Burden of Demonstrating that Local 830
              Has Discriminated Against Her Because of Her Gender.......................................21

        D.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title
              VII Against Local 830 ......................................................................................24

        E.    Plaintiff Has Failed to Establish That Local 830 Engaged in Any Conduct
              Which Affected Her Promotions .......................................................................25

F.    Plaintiff Has Failed to Establish That Local 830 Has Violated the FLSA or the Equal Pay Act..................................................................................26

V.    CONCLUSION..........................................................................................27

# TABLE OF AUTHORITIES

## CASES

*ACCU Personnel, Inc. v. Accu Staff, Inc.*, 846 F. Supp. 1191 (D.Del. 1994).................................12

*Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857 (7th Cir. 1985) 13, 17, 21

*Baker v. McDonald's Corp.*, 686 F. Supp. 1474 (S.D. Fla. 1987), *aff'd* 865 F.2d 1272
(11th Cir. 1988), *cert. denied* 493 U.S. 812 (1989) .................................................20

*Bugg v. International Union of Allied Industrial Workers of America, Local 507*, 674
F.2d 595 (7th Cir. 1981), *cert. denied* 459 U.S. 805 (1982)....................................13

*Celotex Corp. v. Carrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)......................................12

*Childers v. Joseph*, 842 F.2d 869 (3d Cir. 1988).........................................................12

*Clark v. Neal*, 890 F. Supp. 345 (D.Del. 1995) ......................................................12, 13

*Denicola v. G.C. Murphy Co.*, F.2d 889 (3d Cir.1977) ...............................................27

*Dickerson v. U.S. Steel Corp.*, 472 F. Supp. 1304 (E.D. Pa. 1978)...............................14

*Ettering v. Johnson*, 556 F.2d 692 (3d Cir. 1977) .....................................................12

*Finch v. Hercules, Inc.*, 865 F. Supp. 1104 (D.Del. 1994) .........................................14

*General Building Contractors Association v. Pennsylvania*, 458 U.S. 375 (1982).....................20

*Green v. U.S. Steel Corp.*, 481 F. Supp. 295 (E.D. Pa. 1979) ...................................14, 17

*Johnson v. United Steelworkers*, 843 F. Supp. 944 (M.D. Pa. 1994), *aff'd* 37 F.3d 1487
(3d Cir. 1994), *quoting Findley v. Jones Motor Freight*, 639 F.2d 953, 960 n .....................18

*Lyon v. Temple University System of Higher Education*, 507 F. Supp. 471 (E.D.Pa.1981)..........27

*Matsushita Electric Industry Co. Ltd. et al. v. Zenith Radio Co., et al.*, 474 U.S. 574, 106
S. Ct. 1348 (1986).........................................................................................13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973) .....................14

*Medlin v. Boeing Vertol Co.*, 620 F.2d 957 (3d Cir. 1980) ...........................................18

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985) ...........................................................27

*Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085 (2d Cir. 1993)..............................20

*New Castle County v. Halliburton NUS Corp.*, 903 F. Supp. 771 (D.Del. 1995) ..........................12

*Painter v. Mazda Motor Corp.*, 143 L.R.R.M. 2568 (6th Cir. 1993) ..............................................18

*Riley v. Letter Carriers*, 668 F.2d 224 (3d Cir. 1981) ....................................................................18

*Ringer v. Fallis*, 848 F. Supp. 519 (D.De. 1994), *aff'd* 77 F.3d 463 (3d Cir. 1994).....................13

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997).......................................................24

*Saini v. Bloomsburg University Faculty Association*, 826 F. Supp. 882 (M.D. Pa. 1993)......14, 20

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089
    (1981)...........................................................................................................................................14

*Tolliver v. Johnson*, 889 F. Supp. 157 (D.Del. 1995) .....................................................................12

*Vaca v. Sipes*, 386 U.S. 171, 87 S. Ct. 903 (1967) ........................................................................18

*Yerdon v. Teamsters Local 1149*, 886 F. Supp. 227 (N.D.N.Y. 1995) ..........................................13

## STATUTES

42 U.S.C. §1981............................................................................................................................20

42 U.S.C. §2000(e)-(5) ...................................................................................................................1

29 U.S.C. §203(d) ........................................................................................................................26

Act, 29 U.S.C. § 159(a)................................................................................................................17

Equal Pay Act, 29 U.S.C. §206(d) ..............................................................................................26

Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§207 ...............................................................26

Fed. R. Civ. P. 56 ...........................................................................................................................1

Fed.R.Civ.P. 56 (c) ......................................................................................................................12

Title VII, 42 U.S.C. §2000(e)-2(a) ..............................................................................................13

iv

## I.    NATURE AND STAGE OF PROCEEDING

Defendant, International Brotherhood of Teamsters Local Union No, 830 ("Local 830" or "Union"), files the within Brief in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and the Local Rules of Civil Procedure for the United States District Court for the District of Delaware.    For the reasons set forth in the accompanying Motion and more fully herein, Moving Defendant respectfully requests this Honorable Court to grant said Motion.

Plaintiff Marlayna Tillman ("Tillman" or "Plaintiff") filed a Complaint in this matter on or about September 29, 2004, alleging that Moving Defendant, her union, and Pepsi Bottling Group, Inc. ("Pepsi"), Plaintiff's employer during the relevant period herein, had violated a variety of her employment related rights.

Specifically, Plaintiff alleges numerous violations of federal law based upon racial and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. §2000(e)-(5)(f)(1) and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981, 42 U.S.C. §704(a), in addition to alleged violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* and state law claims under the Delaware Wage Payment and Collection Act, 19 Del. C. §1113(a).

On or about November 19, 2004, Defendant Pepsi filed a Motion to Partially Dismiss the Complaint.    By Memorandum Opinion and Order dated August 30, 2005, this Court granted the Motion in part, and denied in part.    This resulted in the dismissal of Plaintiff's claims relating to sexual harassment (Count III), the Delaware Wage Payment and Collection Act (Count VII) and breach of covenant of good faith and fair dealing (Count IX).

Pepsi filed its Answer and Counterclaim to Plaintiff's Complaint on October 14, 2005. Local 830 filed its Answer on October 19, 2005.    Discovery was undertaken by the parties

thereafter. Tillman was the only individual deposed. Her two day deposition took place on December 13, 2005 and October 11, 2006. The discovery deadline for the matter passed on December 1, 2006. Pending before this Court is the Motion of Local 830 for summary judgment filed concurrently herewith.

For the reasons set forth in its Motion for Summary Judgment and Statement of Uncontested Facts, and for the reasons set forth more fully herein, Local 830 respectfully requests this Honorable Court to grant summary judgment in its favor and to enter Judgment against Plaintiff Marlayna Tillman.

## II.    SUMMARY OF ARGUMENT

1.    Local 830 should be granted summary judgment on Plaintiff's Title VII and Section 1981 race discrimination claims because she has not established any facts which support her claims of discrimination against Local 830.

2.    Local 830 should be granted summary judgment on Plaintiff's Title VII gender discrimination claim because she has not established any facts which support her claims of discrimination against Local 830.

3.    Local 830 should be granted summary judgment on Plaintiff's Title VII retaliation claim because she has not established any facts which support her claims of retaliation against Local 830.

4.    Local 830 should be granted summary judgment regarding Plaintiff's claims regarding failure to promote because she is not employed by Local 830, nor does Local 830 have any role or function with respect to the employment decisions of Pepsi, including promotion of its employees.

2

5.    Local 830 should be granted summary judgment on Plaintiff's FLSA and Equal pay Act claims, as it is exempt from the FLSA and the Equal Pay Act because it serves exclusively as a labor organization, not Plaintiff's employer.

## III.    STATEMENT OF FACTS

### A.    The Parties

Local 830 is a labor organization as defined by Section 2(5) of the Labor-Management Relations Act, 29 U.S.C. §152(5).  Local 830 represents all driver-salesmen regular routes, full-service and extra driver salesmen, food service third party delivery drivers, bulk delivery drivers, transport drivers, production employees, fork-lift operators/warehousemen and vending mechanics employed by Pepsi at its Wilmington, Delaware and West Chester, Pennsylvania facilities. *(A84-85)*.  This relationship has been embodied in a series of collective bargaining agreements, the most recent of which runs from January 1, 2004 to December 31, 2007 *(Id.)*.  At all times material to this matter, the parties were governed by a collective bargaining agreement with a term of January 1, 2000 to December 31, 2004 ("CBA") *(A31-A68)*.

For all times relevant to this action, Plaintiff Tillman was employed by Pepsi.  At no point in time has Local 830 ever employed Tillman in any capacity. *(A84-85)*.

### B.    Plaintiff's Employment With Pepsi

Tillman was first hired as a merchandiser in Pepsi's merchandiser/marketing department on or about May 8, 2001. (Complaint, ¶11).  The merchandiser position is a non-bargaining unit position.  No merchandisers are covered by the CBA, nor do they perform work covered by the CBA *(A58)*.  Tillman, therefore, was not a union member while working as a merchandiser, a fact she does not dispute. *(A15-A16)*.

3

As Tillman described them during her deposition, her duties as a merchandiser included visiting customer locations to ensure that Pepsi product was on the shelves and to make certain that they maintain sufficient quantities of product in their back-stock *(A4)*. Merchandisers are also responsible for utilizing point of purchase in each account, communicating sales results and building customer relationships at the store level *(See A69)*.

Some time during October, 2001, Tillman was approached by her merchandising supervisor, Bruce Wray ("Wray"), who asked her to begin performing work in the "conventional" (sales) department. Wray informed her that conventional was "getting hammered" and that she would be "helping out over there." *(A16)*.

At no time did Wray advise Tillman that she would no longer be working as a merchandiser. *(Id.)* Instead, Tillman claims to have continued working her normal duties as a merchandiser, while working at the same time in the conventional department. This conventional work was "in addition to" Tillman's work as a merchandiser. *(A17)*. Whenever she performed work in the conventional department, she worked under supervisor Craig Nelson. Tillman continued to perform work functions in both the merchandising and conventional departments from October 2001 through May 2002. *(A6, A17)*.

During this time period, while she was working in the conventional department, Tillman claims to have done "deliveries" on almost half of the days she reported to work *(A6)*. She explained this function as riding in a Pepsi vehicle with a member of the conventional department. There, she would remove the product from the vehicle and stock the customer's coolers, vending machines or appropriate storage area. *(A5)*. Tillman also performed cooler resets. *(A7)*.

4

In general, Tillman claims to have been performing the duties of a relief driver, or what is commonly referred to as an "extra man." *(Id.).* She did not apply for or bid for this role, but claims to simply have been "put in that position." *(Id.).* According to the job summary for this position, the extra-man" acts as a "fill-in driver" covering for the absence of a regularly scheduled driver. *(A70).* Notably, possession of a Class A CDL (Commercial Drivers License) is an absolute requirement for the position. *(Id)*. There is no dispute that Tillman did not possess a CDL at this time. *(A9, A13).*

In May, 2002, Tillman was advised by Pepsi management that she was to resume her merchandiser duties exclusively. From that point forward, she performed no functions in the conventional department. *(A17)* Tillman remained a merchandiser until July, 2002, when she was transferred to the Company's warehouse *(A15).* The warehouse position was a contractually identified bargaining unit position and, as such, she was entitled to Union membership after completing a thirty day probationary period. *(A58).* Tillman became a member of Local 830 on or about July 22, 2002. (Complaint, ¶44).

Tillman obtained a CDL in September 2002. Within weeks of obtaining the license, she successfully bid for a transport driver position and was immediately transferred from the warehouse. *(A10, A71).* Like her position in the warehouse, this was a bargaining unit position. *(A58)* She stayed in this position through the remainder of her employment with Pepsi.

### C.    Tillman and Local 830

As noted, Tillman fist became a Local 830 member on or about July 22, 2002, after she was transferred to the warehouse. (Complaint, ¶44). There is absolutely no evidence of bad faith

or any ill will between Tillman and Local 830.  Thus, Tillman, while a member of Local 830, never ran for or held union office. *(A84-A85)*.

As will be discussed *infra*, one of Tillman's primary contentions in this lawsuit as it pertains to Local 830 is based upon her mistaken belief that she was placed in a "union-eligible position" in the conventional department.  (Complaint, ¶15).  She contends, therefore, that she was performing bargaining unit work and should have been receiving union pay-rates and all other benefits of union membership from November 2001 forward. *(Id.* at ¶17).

Throughout her deposition, Tillman reasserted her contention that because she was performing work in the conventional department, she should have received union membership as of November 2001.[1]  (See A7, A8, A17).

However, given the opportunity to provide specific factual support for this claim, Tillman was unable to identify with particularity what union position she held or why she believed the work she performed to be bargaining unit work  Further, she was unable to note a source for her belief other than her purported "knowledge":

> A:    What was at issue was the fact that I was in the conventional department, which was a union position, performing union-based duties.
>
> Q:    Tell me what your basis is for believing that every position in the conventional department is unionized.
>
> A:    That's my knowledge, that's the knowledge I have.
>
> Q:    Have you ever seen a document that says that every employee of the conventional department is a member of the union?
>
> A:    No. My recollection is that the positions described, um, within the job description were positions that I performed and those were union positions, union duties.

---

[1]    Thirty days after she began working in the conventional department.

*(A9)*

During the time Tillman was employed by Pepsi, the following Local 830 representatives serviced the facility in one capacity or another:[2] Daniel Grace, Secretary-Treasurer, Doug McLaughlin, Business Agent, John D'Elia, Business Agent, Scott Michel, Business Agent, Merrill Matthews, shop steward, Gary DiProsperos, shop steward and Jeff Stanley, shop steward. *(A14-A15).*

Sometime between October 2001 and May 2002, Tillman claims to have verbally notified Matthews and DiProsperos that while she was working in merchandising she was performing what she believed to be bargaining unit work in the conventional department. *(A18).* Neither Matthews nor DiProsperos advised Grace or any Local 830 Business Agent of Tillman's concerns. *(A84-A85).* Tillman did not personally raise the issue with Grace or any Business Agent.[3] She did, however, voice her concerns to her supervisor, Craig Nelson. *(A18).* At no time did Nelson discuss the issue with any Union representative. *(A84-A85).*

The CBA between the parties contains a dispute resolution procedure with respect to violations of the agreement itself. Article XXI contains a structured grievance and arbitration procedure. *(A51).* This procedure cannot be utilized by non-bargaining unit members. Tillman concedes that employees in this status cannot file grievances and that no exception has ever been made by Local 830 with regard to this basic principle. *(A18, A28).*

Notwithstanding her concerns, at no point prior to July 2002 did Tillman assume a bargaining unit position or perform bargaining unit work. *(A84-A85).* Among other things, a CDL was required for the performance of such work and Tillman did not posses one at the time. *(A9, A13).* Further, she was never placed on the sales seniority list, the only manner in which she

---

[2]    This includes the time prior to Tillman's membership and thereafter.

7

could achieve this position. *(A84-A85)*.   Moreover, she never assumed a position covered in Appendix A of the CBA, and is therefore not covered under the agreement.[4]

Nevertheless, assuming *arguendo* that Tillman was performing work that was covered by the contract and a grievance was filed by the Union, her status would remain unaffected.  If such a grievance were filed by the Union, wherein it were alleged that non-bargaining unit members were doing bargaining unit work, the only remedy permissible under the CBA would relate to the members who were deprived the work. *(Id.)*.  The non-bargaining unit members would be forced to cease performing that work.  To the extent there were any damages, the bargaining unit members who were deprived of that work would be made whole.  Thus, even if a successful grievance were filed, Tillman would not have achieved what she claims she was deprived -- entry into the bargaining unit *(Id.)*.[5]

As noted, once entering the warehouse department in July, 2002, Tillman became a member of Local 830.  From this point forward, Tillman regularly exercised her right contained in the CBA to file grievances for perceived contractual violations.  Each grievance filed by or on behalf of Tillman is addressed below:

a.)    Grievance No. 489. Date: October 17, 2002 *(A72)*

The grievance protested Tillman being sent home after being scheduled to work on a particular day.  A grievance hearing was held with Pepsi's Human Resources Director and the

---

[3]    Until *after* she joined the Union. *(A17-A18, A19)*.
[4]    Article II of the CBA states: "This agreement shall not be construed to extend to nor affect in any way executive or supervisory help or any other classification of employee not expressly covered in Schedule A. *(A34)*.
[5]    Tillman concedes that no bargaining unit member has ever been awarded "retro-seniority." (A25, *A84-A85)*.

Plant Manager. Tillman was represented by Business Agent McLaughlin. The matter was settled by mutual consent. *(A22).*[6]

    b.)    Grievance No. 662. Date: November 20, 2002 *(A73)*.

The grievance alleged harassment by Tillman's supervisors. Accordingly, a grievance hearing was held with Pepsi management representatives. Tillman was represented at the hearing by Grace, McLaughlin and steward Matthews. The matter was discussed, and consequently, an "open door policy" was established. *(A23-A24). (See A83)*.

    c.)    Grievance No. 663. Date: November 20, 2002 *(A74)*

Tillman was laid-off outside of the order of her seniority, and filed this grievance. As a result of a grievance hearing during which Tillman was represented by a Business Agent, it was agreed that she will be made whole, including pay and benefits, for the four weeks and two days she was out of work. *(A24). (See A83)*

    d.)    Grievance No. 665. Date: November 20, 2002 *(A75)*

This was the first in a series of grievances filed by Tillman concerning her belief that she was entitled to retroactive bargaining unit seniority as well as back-pay for the work she performed in the conventional department between October 2001 and May 2002. *(A24)*. At the conclusion of a grievance hearing held between two Business Agents Local 830 and Pepsi personnel, the grievance was withdrawn as it was addressed by a concurrent grievance *(See A77, A78, A79)*.

    e.)    Grievance dated November 21, 2002 (no number assigned)*(A76)*

---

[6]    Tillman signed a "Grievance Release" dated January 21, 2003, acknowledging this settlement. This document encompasses grievance numbers 665, 489, 662 and 663)*(A83)*

Tillman filed a grievance alleging harassment following a confrontation she had with her direct supervisor. She was represented at her grievance hearing by a Business Agent. The matter was settled by agreement. *(A24)*.

 f.) Grievance Nos. 698/696/845. Date: February 15, 2006 *(A77, A78, A79)*

The grievances addressed Tillman's ongoing request for back-seniority concerning the work performed in the conventional department in 2001 and 2002. The issue was considered at a grievance meeting held on March 24, 2003 and attended by a Pepsi Human Resources representative and two Business Agents. Tillman failed to appear. It was determined at the hearing that there was no contract violation. *(A77)*.

On May 21, 2003, McLaughlin issued a letter to Tillman with respect to her desire to proceed to arbitration on the issue.[7] *(A80)* In the letter, McLaughlin advises Tillman that after an investigation into the grievance and consultation with counsel, a determination was made that the grievance was without merit and would not proceed to arbitration. McLaughlin further advised Tillman of her right to appeal the decision to the Local Executive Board. Tillman chose not to appeal this determination *(A84-A85)*.

 g.) Grievance No. 2809, Date: June 2, 2004 *(A81)*

In her final grievance, Tillman objected to the fact that she was deprived her asserted right to "bump" members with lower seniority. The issue was unresolved following the grievance meeting, during which Tillman was represented by a Business Agent.

On November 30, 2004, Business agent John D'Elia issued a letter to Tillman with similar content to the letter issued in grievance number 696. Tillman was advised that the

---

[7] The letter incorrectly identifies the grievance as #969, rather than #696. There is no dispute that this was done in error and that the letter addresses grievance #696. *(A25)*.

grievance lacked merit and would not proceed to arbitration. She was again made aware of her appeal rights. *(A82)*. No appeal was pursued. *(A84-A85)*.[8]

With respect to the grievance procedure generally, Tillman admits that her knowledge is quite limited.[9] She does, however, agree that the entirety of the Union's obligations to its members concerning the processing and filing of grievances is contained in the CBA. There is no other document which covers the subject. *(A22)*.

Regarding the specific grievances that were filed by Tillman or on her behalf, a number of facts were established during her deposition: All of Tillman's grievances were presented to a member of Pepsi management *(A26)*; no timeliness objections were raised by Pepsi for any grievance *(Id.)*; and, Tillman can present absolutely no evidence that grievances filed for male bargaining unit members were not handled in an identical fashion *(A26-A27)*.

In this regard, Plaintiff has produced absolutely no evidence to dispute the fact that her grievances were handled in the exact same manner as every other bargaining unit member. The representation provided, the length of time they took to complete, the settlements entered, even the declinations regarding arbitration were considered, investigated, processed and effectuated with the very same level of representation as that afforded to every single bargaining unit member. *(A84-85)*.

---

[8]     The above constitute all of Tillman's written grievances. *(A26)*.
[9]     Q:     What is your knowledge of the grievance procedure?

IV.    **ARGUMENT**

A.    **Summary Judgment is Appropriate Where Plaintiff Fails to Raise a Genuine Issue as to any Material Fact and Defendant is Entitled to Judgment as a Matter of Law**

Summary judgment is appropriate where there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *Clark v. Neal*, 890 F.Supp. 345, 348-349 (D.Del. 1995). The Court does not resolve questions of disputed fact, but simply decides whether a genuine issue of fact must be resolved at trial. *Ettering v. Johnson*, 556 F.2d 692 (3d Cir. 1977).

Summary judgment will be granted "after adequate time for discovery and upon motion against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Further, the Court shall grant summary judgment where pleadings, depositions, answers to interrogatories and admissions on file show there is no material issue of fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 322-328; *New Castle County v. Halliburton NUS Corp.*, 903 F.Supp. 771 (D.Del. 1995), *aff'd in part* 111 F.3d 1116 (3d Cir. 1995). When a defendant moves for summary judgment, it does not have an obligation to produce evidence negating the non-movant's case, but must demonstrate that there is a lack of evidence to support the non-movant's claim. *Tolliver v. Johnson*, 889 F.Supp. 157 (D.Del. 1995).

Once the moving party meets its initial burden of identifying evidence demonstrating the absence of a genuine issue of material fact, the opposing party is then required to produce

---

A:    I don't think I've ever read anything specifically on that, so I don't really have an answer for that.

12

contrary evidence to support a favorable verdict. The non-moving party may not rest on mere denials of facts, but must identify specific evidence of records to support its position and upon which a verdict in its favor may rest. *Childers v. Joseph*, 842 F.2d 869 (3d Cir. 1988); *Clark, supra; see also ACCU Personnel, Inc. v. Accu Staff, Inc.*, 846 F.Supp. 1191 (D.Del. 1994). The non-moving party:

> must do more than simply show that there is a metaphysical doubt as to the material facts. In the language of the Rule the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'

*Matsushita Electric Industry Co. Ltd. et al. v. Zenith Radio Co., et al.*, 474 U.S. 574, 106 S.Ct. 1348 (1986)(emphasis added); *Clark, supra at 349; see also Ringer v. Fallis*, 848 F.Supp. 519 (D.De. 1994), *aff'd* 77 F.3d 463 (3d Cir. 1994).

**B.     Plaintiff Has Failed to Meet Her Burden of Demonstrating that Local 830 Has Discriminated Against Her Because of her Race**

*1.     Plaintiff fails to establish a __prima facie__ case of discrimination under Title VII*

In Count I of her Complaint, Plaintiff has alleged "racial discrimination" by Local 830 in violation of Title VII, 42 U.S.C. §2000(e)-2(a) and 3(a).[10] As Local 830 is clearly not Plaintiff's employer in this matter, she is required to allege that she was discriminated against by Defendant in his capacity as a union member, and not as an employee. *See Yerdon v. Teamsters Local 1149*, 886 F.Supp. 227, 231 (N.D.N.Y. 1995).

In cases such as this, a plaintiff alleging a union's violation of Title VII must show that 1) the employer breached the collective bargaining agreement with respect to him; 2) the union

---

*(A21)*

[10]     In all counts of Plaintiff's Complaint, the conduct is attributed to "Defendants", without any clarification as to whether the allegations are made against Pepsi, Local 830, or both parties. Although many of the counts are

13

violated its duty of fair representation by permitting the breach to go unrepaired; and 3) there is some indication that the union's actions were motivated by discriminatory animus. *Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 868 (7th Cir. 1985); *Bugg v. Int'l Union of Allied Industrial Workers of America, Local 507*, 674 F.2d 595, 598 n.5 (7th Cir. 1981), *cert. denied* 459 U.S. 805 (1982).  Basically, Plaintiff must show that Local 830 "acquiesced." *Dickerson v. U.S. Steel Corp.*, 472 F.Supp. 1304 (E.D. Pa. 1978).

If the plaintiff makes such a showing, the burden shifts to the union to articulate legitimate, nondiscriminatory reasons for its conduct.  If the union does so, the burden then returns to the plaintiff to show that the union's stated reasons were pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981); *Finch v. Hercules, Inc.*, 865 F.Supp. 1104 (D.Del. 1994).  Summary judgment is proper if the plaintiff fails in showing either a *prima facie* case or pretext.  *See Saini v. Bloomsburg University Faculty Association*, 826 F.Supp. 882 (M.D. Pa. 1993).

Here, Plaintiff has completely failed to state any facts which would enable her to meet her requisite burdens.  For a claim to survive summary judgment, Plaintiff must point to *facts* which support an inference that Local 830 violated Title VII.  *See Green v. U.S. Steel Corp.*, 481 F.Supp. 295, 314 (E.D. Pa. 1979)(mere filing of complaint and proffer of suggested reading of document not enough).

    a.    <u>No evidence of discriminatory animus</u>

Plaintiff's claims of racial discrimination are not based upon specific acts or omissions on the part of Local 830.  Rather, she simply sets forth a series of conclusions and assumptions

---

inappropriately brought against a non-employer party, in an exercise of caution, Local 830 will address each

regarding the Union's conduct to which she attributes racial motivation. Said conduct involves the Union's actions concerning the grievances noted above. The Plaintiff has not, however, established *any* facts which would demonstrate that race played a factor in any of Local 830's decisions regarding her representation.

Tillman's own words make this abundantly clear:

> Q:    What allegations or what conduct are you alleging that the union took that was discriminatory against you based upon your race?
>
> A:    And again –
>
> Q:    Go ahead.
>
> A:    Again, I would just answer that the male members of the union had their grievances heard in a timely fashion.
>
> Q:    Actually, this question concerns your race, not your sex. I'm not sure that that's – is that still your response?
>
> A:    No. If you're talking with regard to my race?
>
> Q:    Yes.
>
> A:    I don't have any evidence off the top of my head.
>
> Q:    There's no evidence. What are you even talking about, what is it, why did you sue my client saying that he discriminated against you based upon your race? What are you talking about? What did they do?
>
> A:    Because it stands to reason that if I'm the only black female at my job, classification, that if I'm receiving treatment that's different from the rest of the members, that's a logical conclusion to draw.
>
> Q    And what is this different treatment?
>
> A:    Well, I just explained.

---

remaining count in turn.

Q:     Is it –

A:     Timely fashion.

Q:     Is it the grievances being heard, resolved in a timely fashion?

A:     Yes.

Q:     Is that the conduct you are talking about by filing this lawsuit?

A:     No.  Again, it gets back to the admission into membership of the union back in October of '01.  I felt I was eligible to be a union member and I was not allowed to become a member until July – August, I should say, 2002, even though I was performing union duties and collective bargaining of bargaining unit work.
(A27)

As Plaintiff notes in the testimony above, one of her primary contentions in support of her Title VII claim is that Local 830 discriminated against her regarding her desire to gain membership in the Union in 2001.  Once she actually did obtain a bargaining unit position and had standing to file a grievance, she filed three grievances on the issue. *(A77, A78, A79)*.  The Union declined to proceed to arbitration, and issued a letter informing Plaintiff of this decision. *(A80)*. Despite Plaintiff's apparent dissatisfaction with the Union's position, she is unable to form any connection between its handling of the grievance and her race:

Q:     Dealing with race, do you have any evidence to indicate that the decision which is documented in this May 21, 2003 letter, that the decision by the union not to take your case to arbitration was based upon your race, do you have any evidence?

A.     No.  If you are talking about any physical evidence, no.

Q:     Physical evidence, evidence comes in many forms.  It can be physical, such as the document I am holding in my hand, something like that.   But it doesn't have to be.   It can be statements, observations, things of that nature.

16

Is there any evidence whatsoever that this decision was made based upon race.

A:    No.
*(A24)*

Plaintiff has established no evidence that she was treated any differently than any other bargaining unit member, regardless of race. To the extent Plaintiff wishes to raise an argument with respect to a pattern of racial discrimination regarding entry into the Union,[11] by Plaintiff's own count, 23 of the 56 Local 830 members at Pepsi's Wilmington facility are African American. *(A21)*. Such an argument would be meritless.

In the absence of direct evidence, Plaintiff has intended to infer racial motivation on the part of Local 830. Inferences and conclusions do not rise to the level of material fact. For a claim to survive summary judgment, such inferences must b supported by facts. *Green, supra.*

b.    Local 830 has not violated its duty of fair representation

Not only has Plaintiff utterly failed to establish that Local 830's actions were motivated by any discriminatory animus, she has also failed to establish either of the first two prongs of the *Babrocky* test. The standards established by these prongs are interrelated.

First, the Plaintiff must establish a violation of the collective bargaining agreement by Pepsi which was not adequately addressed by the Union.

The second prong of the *Babrocky* test is whether the union has violated its duty of fair representation to the complaining employee by allowing an alleged breach of a collective bargaining agreement to go unrepaired. Notably, a union is not required to attack every alleged breach; rather, the question is whether, in allowing a breach to go unaddressed, the union violated the duty of fair representation. Essentially, even if *all* of Plaintiff's alleged facts are

---

[11]    Although Plaintiff has waived the issue having failed to raise it at this juncture.

17

true, the only way she can prevail against Local 830 is by proving that its duty of fair representation towards her was not met.

This duty arises from the union's role as the exclusive collective bargaining representative of the employees under Section 9(a) of the Labor Management relations Act, 29 U.S.C. § 159(a). From that status, the Supreme Court has established that a union has a duty of fair representation to its members. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903 (1967). The standard by which a union's conduct is judged is whether its actions are "**arbitrary, discriminatory, or in bad faith.**" *Id.; see also Riley v. Letter Carriers,* 668 F.2d 224, 228 (3d Cir. 1981)(Emphasis supplied.) The conduct of a union in handling grievances is not deemed arbitrary or perfunctory when it is merely inept or negligent. *Johnson v. United Steelworkers,* 843 F.Supp. 944, 945 (M.D. Pa. 1994), *aff'd* 37 F.3d 1487 (3d Cir. 1994), *quoting Findley v. Jones Motor Freight,* 639 F.2d 953, 960 n. 2 (3d Cir. 1981). This standard has been summarized as follows:

> [A] union breaches its duty of fair representation only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational or arbitrary. *Merely characterizing a union's actions in conclusory terms is insufficient to withstand summary judgment. Rather, to meet the burden of proof as to the union's breach of its duty of fair representation, a plaintiff must establish by substantial evidence that the union acted arbitrarily, discriminatorily, or with bad faith.*

*Id., quoting Painter v. Mazda Motor Corp.,* 143 LRRM 2568 (6th Cir. 1993)(emphasis added).

Finally, a plaintiff must show that the union acted "with a bad faith motive." *Medlin v. Boeing Vertol Co.* 620 F.2d 957, 961 (3d Cir. 1980).

18

Here, there is no evidence—or even an allegation—that Local 830 breached its duty of fair representation. Indeed, such a claim would run contrary to the well-founded evidence of record.

It must first be established that no legal duty, contractual or otherwise, existed between Local 830 and the Plaintiff prior to her admission into the Union following her transfer to the warehouse. Prior to that point, she was one of hundreds of employees with an employment relationship with Pepsi, but lacking any connection to Local 830. Unless or until an employee works in a union classified position, Local 830 has no obligation to act on their behalf. Indeed, it is powerless to do so even if it so desired. *(A84-85)*. Plaintiff can cite no authority holding otherwise.

Plaintiff testified that sometime between October 2001 and May 2002, she notified shop stewards of her belief that she was performing bargaining unit work. *(A18)*. However, as noted, the Union was under no duty to take any action whatsoever on behalf of Plaintiff.

To the extent any legal obligation did exist, it was owed to the bargaining unit members already working in the warehouse. If a grievance were filed by the Union, wherein it were alleged that non-bargaining unit members were performing bargaining unit work, the only remedy permissible under the CBA would relate to the members who were deprived that work. *(A84-85)*. The non-bargaining unit members would be forced to cease performing that work. If there were any damages, the bargaining unit members who were deprived of that work would be made whole. Such a grievance would have no affect whatsoever on Tillman's bargaining unit status. Even after she became a member, no remedy was available. No member has ever been granted "retro-seniority." *(A25, A84-85)*

19

Once she did attain membership, Plaintiff filed grievances on seven different issues over the course of two years.[12]  The record shows that she was provided exemplary representation with respect to the processing of those grievances: a) Each grievance was processed in a timely manner and presented to the Employer; b) A grievance meeting was held on each grievance, during which Pepsi management personnel were present.; c) Plaintiff was represented by at least one Union representative at every grievance meeting, the least senior being a full-time Business Agent; d) Each grievance was resolved through either voluntary settlement (including the participation and consent of Plaintiff)*(See A83)*, the Plaintiff receiving payment in full in accordance with the remedy requested *(A74)*, or, the Union's denial to proceed to arbitration.

Concerning the grievances Local 830 declined to process to arbitration, in each instance the merits of the grievance were the sole factor considered. *(A84-A85)*.  Upon determining that the grievances lacked merit, Local 830 advised Tillman by letter. *(A80, A82)*.  Although the letters advised Tillman that she could appeal the decisions not to process the grievances to arbitration to the full Executive Board, she never did so. *(A84-A85)*.

Clearly, the Union has not violated its duty of fair representation toward the Plaintiff.

In light of the overwhelming evidence above, Plaintiff simply cannot establish a *prima facie* case against PSCOA for racial discrimination under Title VII.  Accordingly, summary judgment is proper here. *Saini, supra.*

### 2.      *Plaintiff fails to establish a __prima facie__ case of discrimination under Section 1981*

Count II of Plaintiff's Complaint alleges racial discrimination under 42 U.S.C. §1981.  To establish a claim under §1981, Plaintiff must allege facts in support of the following elements: 1) Plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of

---

[12]      Some issues involved multiple grievances.      20

race by Defendants; and 3) the discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085 (2d Cir. 1993). *See also Baker v. McDonald's Corp.*, 686 F.Supp. 1474, 1481 (S.D. Fla. 1987), *aff'd* 865 F.2d 1272 (11th Cir. 1988), *cert. denied* 493 U.S. 812 (1989). In particular, racial *animus* is a necessary element of any §1981 claim. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982).

For the reasons set forth in the preceding section, it is clear that Plaintiff has introduced absolutely *no* facts which would establish that *any* of Local 830's acts were undertaken on the basis of her race. Accordingly, Plaintiff's Section 1981 claim against Local 830 must be dismissed.

### C.    Plaintiff Has Failed to Meet Her Burden of Demonstrating that Local 830 Has Discriminated Against Her Because of Her Gender

Through Count III of her Complaint, Plaintiff sets forth allegations of gender discrimination.[13] Despite having the opportunity to do so, Plaintiff has failed to establish any material facts in support of this allegation.

In brining this additional claim of violation of Title VII, Plaintiff is held to the same standards established by *Babrocky* as noted above. Thus, a plaintiff alleging a union's violation of Title VII must show that 1) the employer breached the collective bargaining agreement with respect to him; 2) the union violated its duty of fair representation by permitting the breach to go unrepaired; and 3) there is some indication that the union's actions were motivated by discriminatory animus.

---

[13]     The sexual harassment claims contained in this count were dismissed by Order of August 30, 2005.

Once more, Plaintiff has failed to establish any facts which would enable her to meet her requisite burdens. As was the case with her claims of racial discrimination, Plaintiff's claims of gender discrimination are entrenched in conclusions and inferences. Her theories are once again based upon the Union's handling of her grievances.

> Q:     My question is what conduct supports, what alleged conduct supports your allegations that there was discrimination based upon your sex?
>
> *     *     *
>
> A:     I guess what supports it is the fact that to my knowledge no other male union member was subject to the type of treatment that I was with regard to having grievances heard, resolved, especially in the sense of being handled in a timely fashion.
>
> Some of these issues came up in '02, but yet we didn't sit down and have a meeting until '03, which is the date that was on the release.
>
> It was my understanding that grievances should be heard within, at least from the shop steward, within two weeks of filing. That never seemed to be the case in my situation. It could drag on for months and some issues weren't heard at all, and I don't know of any other member of the union that was treated that way. (A25-A26).
>
> *     *     *
>
> Q:     Could you tell me how, in your opinion, the union discriminated against you on the basis of your sex as a female?
>
> A:     I guess the easy answer to that is the fact that male union members were not treated the same way as I was, meaning if they filed a complaint or a grievance, their grievance got heard in a timely fashion. If I filed a grievance, it may or may not have been heard.
>
> Q:     What do you mean by "heard"?
>
> A:     Meaning having like a union meeting, a grievance hearing or meeting. (A20)

22

Plaintiff's claims of gender discrimination are therefore based upon two theories. The first is that the Union failed to process some of her grievances to a grievance meeting, and those that were heard were done so in an untimely manner. Further, Plaintiff claims that male members were not subjected to the same treatment. These theories are easily refuted by Plaintiff's own words.

First, Plaintiff has acknowledged that all of her grievances were processed and grievance meetings were held. *(A26)* Further, she agreed that no timeliness objections were raised on any grievance. *(Id.)* Additionally, and with direct bearing upon her claim of disparate treatment, Tillman can present no evidence that grievances filed on behalf of male members were not handled in an identical fashion:

> Q:    Identify by name all male grievants who had their grievances handled in a different manner?
>
> A:    Can you define "different"?
>
> Q:    Well, you allege that yours were handled in a discriminatory manner because you were female.
>
>    So don't let me put words in your mouth, but that means that men had their grievances handled differently than yours.
>
>    Is that what you mean by – is that how it relates to discriminatory?
>
> A:    I think what I said was to my knowledge that the other union members' grievances weren't handled in the way mine were.
>
> Q:    How so? How were they handled?
>
> A:    I guess in a timely fashion. Meaning they didn't have to wait months for a resolution, whatever that resolution was.
>
> Q:    And tell me, identify specifically what grievants you're referring to, what grievants or grievant.

A:      That's impossible for me to show what grievant.

Q:      You're making a claim that theirs were handled differently, that some grievance out there was handled differently than yours.  I want to know what grievant or grievants, rather?

A:      I don't have that information.

Q:      Do you know?  Do you have that information somewhere else?

A:      I don't know.  It's possible we're able to find that out, though.

**Q:      So as of this point in time you have no evidence with respect to how grievances were handled concerning male members?**

**A:      No.**
*(A26-A27)*

It is apparent by even a cursory review of the record that Plaintiff cannot support a her claims of gender discrimination against Local 830.


**D.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under Title VII Against Local 830**

Plaintiff has not established any evidence that would support her claims of retaliation as contained in Count IV of her Complaint.  To establish a claim of retaliation against a union under Title VII, Plaintiff must establish that 1) he was engaged in activity protected by Title VII; 2) the union took an adverse action against him; and 3) there was a causal connection between his participation in the protected activity and the adverse action.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997).

24

Paragraph 88 of Plaintiff's complaint contains six allegations that are the basis of her retaliation claim.[14] By even the broadest standards concerning the duties and responsibilities of a collective bargaining representative, only one of the six claims is even remotely within the Union's purview. It states: "f) Refused to provide Plaintiff with Union representation in support of her numerous complaints filed with management, HR, and the Union."

This contention is in direct contradiction to the facts of record. As has been oft-repeated, Plaintiff was provided with at least one representative at each of her grievance meetings. Accordingly, Plaintiff has established no fact which would constitute an "adverse action." Further, even assuming that any such action were established, there is absolutely no evidence that a causal connection existed between such action and any protected activity.[15]

Accordingly, any retaliation claim Plaintiff may raise must be dismissed.

**E.    Plaintiff Has Failed To Establish That Local 830 Engaged in Any Conduct Which Affected her Promotions**

It is unclear from the broad allegations contained in Count V of Plaintiff's Complaint whether her claim of "Failure to Promote" against "Defendants" is intended to encompass Local 830.

---

[14]     a) Forced Plaintiff to be subjected to a hostile work environment;
     b) Denied Plaintiff equal pay, benefits and promotional opportunities;
     c) Subjected Plaintiff to different performance and attendance standards;
     d) Refused to enforce any disciplinary actions against Mr. Howard Loss despite Plaintiff's complaints;
     e) Laid Plaintiff off on or about September 18, 2002 after she filed her first Charge of Discrimination with the Delaware Department of Labor for a period of four (4) weeks, making Plaintiff the only person in her entire department/division to be laid off; and
     f) Refused to provide Plaintiff with Union representation in support of her numerous complaints filed with management, HR, and the Union. (Complaint, ¶88).
[15]     Plaintiff does allege in her complaint that on April 22, 2003 she filed a charge of discrimination with the Delaware department of Labor against the Union on the basis of race and sex and also alleging retaliation. (Complaint, ¶64). Nevertheless, Plaintiff makes no factual representation in the record that she was retaliated against by the Union as a result of this filing. Further, she alleged retaliation *in* the filing, and consequently, any retaliation allegedly pre-dated the charge.

25

If so, this claim cannot stand.  No officer or Local 830 representative  has any say in the employment decisions of Pepsi Cola, except, of course, those decisions that may be reached as the result of a grievance settlement. (*A84-A85*).  It has no input regarding promotions, hires, or any other personnel determinations. (*Id.*)  Plaintiff did not, can not, produce any evidence to the contrary.

In fact, Plaintiff has acknowledged that the Union is powerless when it comes to Pepsi's hiring practices:

> Q:      …Do you suggest that the union plays any role in the hiring of Pepsi employees, of PBG employees?
>
> A:      No.
> Q:      So with respect to the conduct in Paragraph 42, do you allege that the union had anything to do with --
>
> A:      Their hiring?
>
> Q:      Yes.
>
> A:      No.

*(A19)*

Thus, any claims involving the hire of Chris Eastlack, Leroy Lewis and Robles, as well as any allegations of failure to promote should be dismissed as to Local 830.

**F.      Plaintiff Has Failed To Establish That Local 830 Has Violated the FLSA or the Equal Pay Act**

Count VI of Plaintiff's Complaint alleges that "Defendants" have violated the Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§207 and 215(a)(2).  Plaintiff makes a similar allegation concerning the Equal Pay Act, 29 U.S.C. §206(d) in Count VIII of the Complaint.  To the extent Plaintiff even intends to bring these counts against Local 830, they must be dismissed.

Plaintiff has failed to state a claim under the aforementioned Act because, by definition, labor organizations such as Local 830 are not employers unless the labor organization itself is acting as the employer. Section 203(d) defines "employer" as follows:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, **but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.** 29 U.S.C. §203(d).

"An employee may bring an action for back pay under the Equal Pay Act only against his or her employer." *Denicola v. G.C. Murphy Co.*, F.2d 889, 893 (3d Cir.1977). See also, *Lyon v. Temple Univ. System of Higher Educ.*, 507 F.Supp. 471 (E.D.Pa.1981)(although unions are not entirely immune from the mandates of the Fair Labor Standards Act, "the Act is also clear that the aggrieved employees have a cause of action against their employer only").

Here, there is no dispute that at all relevant times, Pepsi was Tillman's employer and that Tillman and Local 830 were never engaged in an employment relationship. Consequently, Plaintiff has failed to state a claim under the FLSA or the Equal Pay Act and summary judgment must be granted as to counts VI and VIII of the Complaint.

## V.    CONCLUSION

In the instant matter, Plaintiff has asserted a myriad of bald, broadly-drafted allegations against Local 830. Although given the opportunity to do so during the course of discovery, Plaintiff has presented nothing more than mere assertions, wholly unsupported by evidence, in support of her claims against the Union.

As one Circuit has remarked, a party cannot make a "secret of his evidence until the trial"; to allow plaintiffs to do so would allow a party to defeat any motions for summary

judgment "by offering purely conclusory allegations of discrimination, absent any concrete particulars, [and] would necessitate a trial in all [discrimination] cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Accordingly, for all of the reasons set forth in the Motion for Summary Judgment of Defendant Teamsters Local Union No. 830, and for the reasons set forth more fully herein, Local 830 respectfully requests this Honorable Court to grant their Motion and to enter judgment in their favor and against Plaintiff, Marlayna Tillman.

Respectfully submitted,

_____/s/ Clifford B. Hearn, Jr._____
Clifford B. Hearn, Jr., Esquire
**CLIFFORD B. HEARN, JR., P.A.**
Odessa Professional Park, Suite 240
P.O. Box 521
Odessa, DE 19730-0521
(302) 378-4827

_____/s/ Marc L. Gelman_____
Marc L. Gelman, Esquire
**Jennings Sigmond**
510 Walnut St., 16th Fl.
Phila., PA 19106
(215) 351-0623

Date: March 22, 2007

28