## ARTICLE VII
## LUNCH RELIEF PERIODS

All employees covered by this Agreement shall be entitled to an unpaid lunch period of one-half (1/2) hour during each regular working day.  Manufacturing employees shall receive one (1) break period for each four (4) hours of work in a given shift.

### Budding Eights

All employees covered by this Agreement may be entitled to an unpaid lunch period of one-half (1/2) hour during each regular working day.  Operations employees may receive one (1) fifteen (15) minute break period for each four (4) hours of work in a given shift.

All Operations employees on an eight (8) hour schedule may receive two (2) twenty minute breaks with no lunch period.  Twenty-four (24) hour notice will be given prior to a change from or to a third shift operation.  Relief periods will not be started earlier than two (2) hours after the start of a shift.  If mutually agreed upon by the Company and the majority of employees, a team within a department can work a combination of two (2) twenty (20) minute breaks or one (1) forty (40) minute break.

### Overtime

2 Hour Shifts:  The employee will receive an additional ten (10) minute break period.

4 Hour Shifts:  The employee will receive an additional twenty (20) minute break period.

## ARTICLE VIII
## WAGES/NET REVENUE SALES COMPENSATION

The wage rates of all employees covered by this Agreement shall be set forth in Appendix A - Wage Schedule.  The compensation for Customer Representatives shall be in accordance with the provisions the Single Net Revenue Sales Compensation Plan.  Effective on or after April 16, 2000, the Company will transition to the Single Net Revenue Compensation Plan.

### Wages of Unclassified Employees; Transfers:

The Employer reserves the right temporarily to transfer employees from one department to another.  The Contract wage scale of the department to which the temporary transfer is made, shall apply to the employee so transferred, provided, however, that in case of such temporary transfer, a man's wage shall not be reduced below that which he/she has ordinarily been receiving, and he/she shall receive the higher rate for the full day regardless of the number of hours worked in the higher-rated job classification.  A temporary transfer of more than one (1) month may be renewed for an equal and additional period of time, after which time the vacancy filled by such temporary transfer must be filled in accordance with normal procedure or abolished.

Margolis Edelstein
Tillman, Mar
0(

A40

## NET REVENUE SALES COMPENSATION

The Single Net Revenue Compensation Plan shall be governed by the following provisions.

*Section 1. Net Revenue Measure.*  The compensation plan shall pay commissions to the Customer Representative that shall be a percent of the net revenue sales dollars generated from the accounts on the Customer Representative's route.

The net revenue to be utilized for purposes of the compensation plan shall be calculated from the net price on invoice for products times the number of units sold. This would apply to all case and package sizes, fountain tanks, BIB, $CO_2$, cups, lids, straws and/or any other similar item sold by the Customer Representative on his/her route. Any items which are not <u>sold</u> by the CR will not be compensated under this plan. Examples of such items not covered are deposits on cases, shells or pallets and taxes.

*Section 2. Definition of a Route.*  A route shall be defined as a roster of accounts which may change from time-to-time in accordance with the provisions of this Agreement.

*Section 3. Definition of the Compensation Plan Year.*  For purposes of this Article, all references to a year or an annual basis shall be deemed to be a year beginning with Week 1 of Period 1 and ending with the last week of Period 13.

*Section 4. Pay Rates.*  The following schedule of rates shall be in effect for the full term of this Agreement:

❑  **Conventional Customer Representative**

❑  **Single Commission:**     5.51% of net revenue sales

*Section 5. Route Cuts.*
The Company reserves the right to unilaterally cut any account from any route and reassign it to any other route or delivery system covered by this Agreement. The Company may also add any account to any route. In the event that a CR's route is cut more than 10% in revenue (based on prior year's revenue) he shall be eligible for the following route cut protection:

> The average weekly earnings from base pay and/or commission for the thirteen (13) weeks following the route cut shall be no less than the average weekly earnings from base pay and/or commission for the thirteen (13) weeks immediately preceding the route cut. Any payments due the CR's shall be made at the end of the thirteen (13) week protection period.

No route cut protection payment shall be made to any employee as a result of route changes from a total facility reroute / rebid, nor upon the request of the CR to have an account removed from his route, nor if the Company has been instructed by a customer to not have the CR or service its account.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0071

A41

In the event that one or more routes are realigned such that an account is added to a route simultaneously with an account being deleted from that route, the route cut shall be based on the *net effect* of such addition and deletion.

Nothing in this section shall be construed as a limitation on the Company's ability to determine the size and/or frequency of route cuts.

Within the Sales Departments, the Company will limit the number of total facility re-routes to three (3) times during the term of the agreement (three (3) for the Bulk Sales Department and three (3) for the Conventional Sales Department.

**Section 6. *Ongoing Route Bidding.*** During the course of a year, the following information shall be provided on the bid sheet for a route which has come open and is eligible for bid:

- ❑ The roster of accounts for that route (with prior year volume and net revenue for each account);
- ❑ The total net revenue that has been generated from that roster of accounts year-to-date;
- ❑ The total number of cases and gallons sold in that roster of accounts in the prior year.
- ❑ The total number of cases and gallons sold in that roster of accounts year-to-date.

The minimum revenue to be posted on any route will be $650,000 in revenue, including the projected revenue from anticipated new store openings on that route.

**Section 7. *Establishing a New Permanent Route.*** In the event that a new and distinct route is created during the course of a year, that route shall be posted for bid and the following information shall be provided on the bid sheet:

- ❑ The roster of accounts for that route (with year-to-date and prior year volume and net revenue for each account);
- ❑ The total net revenue generated from that roster of accounts year-to-date and in the prior year and the current year; and
- ❑ The total number of cases or gallons sold in that roster of accounts year-to-date and in the prior year.

**Section 8. *Establishing a Single-day Route (Customer Representatives Only).*** In the event that a number of accounts from different routes required single-day service, the Company shall have the right (but shall not be obligated) to aggregate those accounts onto a single route(s) or routes(s) for the purpose of accommodating the Single Day service need. The route(s) shall be posted for bid and the Customer Representative(s) who secures the bid shall be paid the Single Net Revenue Commission rate for the total net revenue dollars for those accounts for that day. However, no commission shall be paid to the Customer Representative who regularly services that account.

A CR shall always have first preference for servicing his own accounts on each such days.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0072

A42

A CR who is required to work a sixth day in the workweek shall receive $80 plus the appropriate net revenue percentages for sales on that day. For the seventh day in the work week, the CR who is required to work, shall receive $106 plus the appropriate net revenue percentage.

***Section 9. Relief Customer Representatives.*** When a Utility Driver runs a route for a day, he shall be paid the higher of the Single Commission rate times the total net revenue dollars generated from the accounts on that route that day or eight (8) times the extra man hourly rate per day, whichever is greater. When a Utility Driver runs a route for a week, he shall be paid the higher of the Single Commission rate times the total net revenue dollars generated from the accounts on that route that week or forty (40) times the Utility Driver hourly rate.

However, no commission shall be paid to the Customer Representative who regularly runs that route.

***Section 10. Shortages.*** When a Customer Representative is short at the end of a day, he shall be charged at the wholesale price for those cases that he is short.

***Section 11. Product Returns.*** If a Customer Representative is required to bring back products that are out-of-date, damaged, etc., he shall not be charged for that product if reasons for the product return were not the fault of the Customer Representative. Customer Representatives shall not receive any commission on product that is provided in exchange for out-of-date, damaged, etc. product.

***Section 12. Bulk Assist.*** When the Company provides additional deliveries to a CR's account (i.e., Bulk Assist) the CR shall receive commission on the net revenue generated by such delivery'. The Company reserves the right to establish procedures for the use of bulk assist.

***Section 13. Other Provisions***

In the event that a CR is required to deliver free goods not associated with the sale of any other product he shall be compensated as if the goods were sold at the average net price for such product.

❑    The "time and one half" rate for CR's shall be $80 and the "double time" rate shall be $106 plus any commissions earned. CR's shall be compensated at the "double time" rate plus holiday pay for working on a holiday.

❑    In the event that an account is removed from a CR's route that CR and their Manager will meet to discuss the disadvantage and /or benefits of that accounts removal.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0073

A43

## ARTICLE IX
## FLEXIBLE BENEFITS PLAN

Effective on or after January 1, 1996 all employees will be enrolled in the Pepsi-Cola Flexible Benefit Plan. During the life of this Agreement the Company reserves the right to modify the plan design, level of benefits, employer and/or employee contributions.

"Effective with the implementation of Flex Benefits the age at which an Employee can retire with an undiscounted retirement will be reduced from age 65 to 62 and the discount factor for retiring prior to age 62 will be changed from 3% to 4%.

The Company will guarantee that it will, each year, devote at least 90% of the total year 2000 Flexible Benefits per employee cost to providing Health and Welfare benefits to employees. In the event that the actual cost is below the 90% level, the Company will pay the difference in a lump sum to each member of the bargaining unit. This guarantee shall no longer apply in the event of the enactment of any State or Federal legislation dealing with health care reform.

## ARTICLE X
## MANAGEMENT'S RIGHTS

❑ The Employer has the sole and exclusive right to manage the affairs of the business, to determine the products, methods and schedules of production, the type of manufacturing equipment, the locations of production and to direct the working forces of the Employer. Such functions shall include (but are not limited to) the exclusive right to maintain discipline of employees, including the right to make reasonable rules and regulations, to promote, demote or transfer employees for proper cause, to determine the amount of work needed, and to layoff because of lack of work.

❑ Promotion shall be made from within, provided the employees available have the qualifications and ability to perform the work. In cases of promotions, seniority shall be considered provided the employee has the prerequisite skills and abilities required. The Employer shall be the sole judge of an employee's qualifications and ability.

## ARTICLE XI
## DISCHARGES

❑ Employer may discharge employees for any reasonable cause. If an employee who has completed his/her probationary period is discharged or permanently laid off, due to economic considerations of the Employer, such as reduction-in-force or abandonment of route, Employer shall give such employee at least one (1) week's notice of its intention to dismiss him or permanently lay him off, or one (1) week's compensation in lieu thereof. In the event an employee desires to leave his/her employment for any reason whatsoever, such employee shall give the Employer at least one (1) week's notice of his/her intention to do so.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0

A44

❑   Any employee who has been discharged by the Employer shall be entitled to a hearing provided that he/she requests the same within forty-eight (48) hours after discharge. At such hearing which shall be held at the Employer's place of business within forty-eight (48) hours after requested, the employee shall have the privilege of being represented by the Business Agent or other duly authorized representative of the Union. If the parties cannot agree upon final disposition of the matter, it may be submitted to arbitration by the Union as provided by Article XIX.

❑   Employees are required to make all stops assigned and pick up all empties as necessary. Failure to do so may subject employee to discipline, up to and including discharge.

❑   Employer must make the decision whether a route shall go our or not in the case of bad weather. Under no circumstances shall it be left to the discretion of the employees to determine whether work should be performed or not, especially as far as bad weather days are concerned.

❑   Any employee who receives disciplinary time off shall receive such time off within one (1) week after the notice of such suspension is given to such employee, except in the case of the suspension of two (2) or more employees in the same department, in which event the disciplinary suspension may be staggered.

❑   In imposing discipline on a current charge, the Employer will not take into account any prior infraction which occurred more than twelve (12) months previously unless mutually agreed to by the parties.

❑   In the event a Driver shall suffer revocation of his/her driver's license due to his/her negligence, his/her job and seniority shall be protected for one (1) year. A second revocation of his/her license within a five (5) year period will result in his/her termination. The employee must notify the Employer of an active revocation of license on the next scheduled workday after the revocation.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0^~~

A45

## ARTICLE XII
### INJURIES AND ILLNESS

☐ When an employee is absent because of illness or injury for a consecutive period of fifty-two (52) weeks or more or the length of his active seniority, whichever is less, he/she shall not be entitled to retain his/her position with the Employer, and at the expiration of such period, the Employer may dismiss such employee, but if the employee returns to work prior to the expiration of such period, and is physically able to carry on his/her duties, he/she shall return to his/her employment at the same rate of pay.  Where the injury is incurred by the employee in the line of duty, he/she shall be returned to his/her former position whenever he/she is physically able to carry on his/her duties, but in the case of any Driver who is also a Salesman, as distinguished from a Driver who delivers predetermined orders, whose former route is being operated satisfactorily by another employee at the time such Driver is prepared to return to work, the Employer may assign such returning Driver to a new route, provided that he/she does not return to work within twenty-six (26) weeks from the date of the commencement of his/her absence.

☐ The Employer may voluntarily provide compensation to the employee during any such period of absence, but shall not be required to do so.

☐ If an extra man is assigned a route in the middle of a work week due to the protracted illness or injury of another employee, the route in question will re-bid in the extra man pool on the following Monday.

## ARTICLE XIII
### POLYGRAPH TEST

Employer will not require an employee to take a polygraph or lie detector test; however, nothing herein shall prevent an employee from voluntarily taking such a test.

## ARTICLE XIV
### UNIFORMS AND EQUIPMENT

Where Employer requires any employee in a department to wear a uniform, all employees in that department, except probationary employees, shall be supplied with uniforms. For the purpose of this Article, there shall be two (2) departments:  (1) Inside Plant employees and (2) Drivers and other outside employees.  The Employer shall have the option to determine whether such uniforms shall be purchased outright or rented.  The Employer shall purchase or pay the rental charge.  The Employer shall post a notice to all employees two (2) times per year (Spring and Fall) informing employees where and when they may obtain replacement uniforms.   The Employer shall have the right to discipline any employee for not being presentable and to discharge such employee for repeated violations.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0C

A46

The Employer shall supply wagons, trucks, or other necessary equipment (Service employees will be required to own and maintain the basic tools necessary for the job). Except in the case of his/her own negligence, an employee shall not be responsible for damage to equipment in his/her charge and control, but shall be obliged to furnish witnesses or evidence to fix other responsibility.

## ARTICLE XV
## LAYOFF

For the purposes of this agreement, departments will be defined as follows:

**Manufacturing**
- ❑ Warehouse
- ❑ Manufacturing Employees

**Sales**
- ❑ Conventional
- ❑ Combo
- ❑ On-Premise
- ❑ Bulk
- ❑ Extra Men

**Transport**

**Service (MEM)**
- ❑ Master Mechanic
- ❑ Mechanic

Any layoff or reduction-in-force will be accomplished by department by Company-wide seniority. In the event of a layoff or reduction in force the least senior person, with the least amount of accumulated department seniority in the affected department will be laid off. In the event of a layoff of any permanent employee, the employee will be given notice of one (1) week in advance of the layoff. Any employee who is laid off may, within forty-eight (48) hours of such lay-off, bump a junior person in another department provided that the employee possesses the necessary skills and ability. In the event such employee is determined by the Employer not to possess the necessary skill/ability to perform the job, the Company will provide affected employee and his/her Union Representative with an explanation as to why the employee was determined to be unqualified.

All active Fountain and Full Service Drivers hired prior to January 1, 1991 will not be laid off as a direct result of the combination of Retail and On-Premise routes.

## ARTICLE XVI
## RECALL

☐    When the Employer's workforce is permanently increased after a layoff, employees on layoff are to return to work according to seniority. Employees will retain recall rights for one (1) year from the date of layoff. In the event of a recall, the laid off employee shall be given notice of the recall by certified letter sent to the address last given to the Employer by the employee. Within ten (10) working days of the mailing of such letter, as indicated on the certified mail receipt, the employee must notify the Employer of his intent to return to work. In the event the employee fails to provide such notice, he shall lose all seniority rights under this Agreement and shall be considered as a voluntary quit.

☐    Selection of vacation by the employee is to be made in the proper order of seniority in the department where he/she is presently employed.

☐    Upon request, the Steward will be given an up-to-date seniority list, but not more often than once every three (3) months.

☐    Extra Drivers who are assigned to routes during a layoff in the extra man pool shall be entitled to return to the extra man pool when junior extra drivers are recalled.

☐    For the purpose of this Article, the departments are Sales, Manufacturing, Service (MEM) and Transport.

## ARTICLE XVII
## JOB VACANCIES

All job vacancies or new jobs created by the Employer in the bargaining unit will be posted for a period of five (5) work days in the department and throughout areas where employees work. In filling such vacancies, or new jobs, the Employer shall consider the senior interested employee who possesses the necessary skill and ability as determined solely by the Employer.

☐    **Posting**

Open or new jobs will be posted for five (5) working days in the entire bargaining unit prior to being filled from the outside. The posting will set forth the requirements of the job and the qualifications needed. Temporary or seasonal jobs will not be posted for bidding.

☐    **Bidding**

Employees wishing to be considered for a job opening must file a written bid form with the employee's immediate supervisor during the five (5) day posting period. Employees on vacation who feel qualified for possible job openings must inform their union steward and supervisor prior to going on vacation if they are to be considered for a bid.

❑    **Filling Jobs**

Preference in bidding will be given to employees in the Department in which the opening occurs. The job will be awarded based on the employee having pre-requisite qualifications within the Department with further consideration of the employee's seniority. For employees possessing equal skills and ability, the most senior employee shall be awarded the bid. If no employee within the Department qualifies, candidates from other departments who are qualified will be awarded the job based on Company seniority. In the Sales Department only Extra Driver Salesmen will be eligible to select temporary vacancies. A temporary vacancy is defined as any approved absence where a regular full-time employee still retains a right to that bid. All Extra Driver Salesmen will select temporary vacancies by seniority on a weekly basis every Monday except, however, when an Extra Driver Salesmen selects a temporary vacancy he shall remain in that position until the regular full time employee returns or the temporary vacancy is declared permanent and posted for permanent bid.

❑    **Testing**

The Company reserves the right to utilize testing and other evaluative measures to determine the relative skills and abilities of employees (i.e. – Service Department, etc.). The testing will be performed in a uniform fashion and the employee's results reviewed with the employee, but in an effort to preserve its confidentiality, no copies will be issued.

❑    **Trial Periods**

During a trial period, the successful bidder in a classification may be reasonably disqualified from that job if he fails to perform it in a satisfactory manner. If an employee is disqualified, he will return to his previous job/shift. The trial period for an employee new to a classification will be a period up to four (4) weeks on the job in which to demonstrate his/her ability to permanently hold the position.

❑    **Re-Bidding**

A successful bidder who qualifies for an open position may not bid for any other position for one hundred and eighty (180) calendar days after he is placed in the job for which he bid. If a successful bidder is disqualified from a position after being awarded a bid, he may not bid for any position within the same job classification for one hundred and eighty (180) calendar days after he was placed in the job for which he bid. This person could, however, bid into any other job classification.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0070

A49

The Company reserves the right to allow an employee to bid for a position requiring a CDL license when he does not possess a CDL license at the time of the bid. In such a case, if that employee is subsequently disqualified from the job because he fails to obtain his CDL, the Company will only award a bid to that person for CDL required positions after he receives his CDL license. Once the employee obtains his CDL, he may rebid for any CDL required position (other than the specific job for which he was disqualified) within the 180 days outlined above. Commissioned Drivers may have only two (2) successful bids in one (1) year, and may bid for those two opportunities without being restricted to the above 180 day time period outlined above.

## ARTICLE XVIII
## DISCRIMINATION AND UNION ACTIVITY

The parties hereto agree not to use any subterfuge, coercion, or intimidation, directly or indirectly, to evade or frustrate compliance with the spirit and terms of this Agreement. No employee shall engage in any Union activities on the Employer's premises or during working hours.

Employer and Union agree that the provisions of this Agreement shall apply to all employees covered by the Agreement without regard to race, creed, color, religion, national origin, sex, age, handicap or veteran status.

## ARTICLE XIX
## CHECK-OFF OF UNION DUES

On each weekly payday, Employer shall deduct Union dues, assessments, contributions to the Credit Union and special funds in an amount specified by the employee, in writing, and subscription costs to "DRIVE", on the first payday following the thirtieth (30th) day of employment for new employees, initiation fees, from the wages of all members of the Union who voluntarily sign authorizations for such actions which shall be irrevocable for the term of this Agreement or for one (1) year, whichever is less, and which shall be automatically renewable for a like period, and which shall be delivered by Union to Employer, and Employer shall promptly remit the sum of such deductions to the Secretary-Treasurer, or other duly authorized representative of the Union.

The Company agrees to make one voluntary check-off available for employee's to select optional long term disability insurance coverage and / or to participate in the UNION severance program.

The Union agrees to indemnify and hold harmless the Company for any and all actions it takes in complying with this Article.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
(

A50

## ARTICLE XX
## SEVERANCE

Beginning January 1, 2001, EMPLOYER, on behalf of each regular full-time employee who has completed his/her probationary period, shall make contributions of one dollar ($1.00) per week for each week worked or for which pay is received pursuant to this Agreement in the UNION'S Severance Fund. Beginning January 1, 2002, the contribution will become two dollars ($2.00) per week. Beginning January 1, 2003, the contribution will become three dollars ($3.00) per week. The benefits available to such employees thereunder will be such as are established from time to time by the Trustees of the Severance Fund. Such contributions shall be the limit of the EMPLOYER'S obligation to its employees with respect to severance benefits.

EMPLOYER shall be obligated to continue contributions for the benefits defined in this Article until the first (1st) day of the month following the sixth (6th) month of continued absence from work due to illness or injury

## ARTICLE XXI
## GRIEVANCE -- ARBITRATION

☐       In the event of a grievance or dispute arising under the terms of this Agreement, the employee shall take the matter up with his/her Supervisor, at which time a Shop Steward may be present, and every reasonable effort shall be made to reach a satisfactory solution. If no solution is reached, a formal grievance will be made with the Shop Steward and employee and another attempt will be made to resolve the issue with the supervisor. If, at that time, no satisfactory solution can be reached, the Business Agent or other duly authorized representative of the Union shall be notified by the employee within two (2) days of the event in issue, and the Business Agent or the duly authorized representative of the Union shall take the matter up with the Employer within five (5) days after the occurrence of the event in issue. If the Business Agent of the Union and the Employer cannot reach a satisfactory agreement, the matter shall be submitted to a disinterested arbitrator. The arbitrator shall be selected in accordance with the then prevailing Labor Arbitration Rules of the American Arbitration Association.

☐       The decision of the arbitrator shall be final and binding. No arbitrator shall have the power to add to or subtract from the terms of this Agreement. The parties agree to expedite such arbitration.

☐       The fee of the impartial arbitrator and the other costs of arbitration shall be borne equally by the Union and the Employer.

☐       It is expressly understood and agreed that any request for arbitration of a discharge of an employee must be made in writing by an Official of the Union to the Employer within fifteen (15) days from the date a written notice of the discharge is conveyed by the Employer to an Official of the Union, other than a Shop Steward, or it shall not be subject to arbitration.

In the case of any arbitration of a discharge, the arbitrator may sustain the discharge, or may order the reinstatement of the employee with or without back pay.

### ARTICLE XXII
### STRIKES AND LOCKOUTS

Under no circumstances shall any strike, stoppage of work, walkout, picketing, boycott, refusal to work or perform any part of duty, or other interference with, or interruption of, the normal conduct of Employer's business be ordered, sanctioned, permitted or enforced by the Union, nor shall any lockout be ordered, sanctioned, permitted or enforced by the Employer, its officials or agents.

### ARTICLE XXIII
### PICKET LINES

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, in the event an employee refuses to cross a lawful picket line at an establishment other than an Employer's establishment providing the picket line has been approved by Teamsters Joint Council 53.

### ARTICLE XXIV
### FUNERAL LEAVE

☐    In the case of a death in the immediate family (namely; the death of a parent, grandparent, spouse's grandparent, stepchildren, spouse, child, brother or sister, father-in-law or mother-in-law) of a regular full-time employee requiring the employee's absence from his/her regularly scheduled assignments, the employee shall be granted a leave of absence up to three (3) working days.  The three (3) working days shall be the two (2) working days immediately following death and the day of the funeral.  Under no circumstances shall the application of this clause result in an increase in the employee's basic weekly wages.

### ARTICLE XXV
### JURY DUTY

In the event an employee is called for jury duty and cannot get excused, he/she will receive his/her regular earnings less any and all amounts received for such service for regular scheduled workdays absent on such service for a maximum of ten (10) workdays.  Regular earnings are used herein for each day shall be a day's pay as provided for holidays in Article V.

The Company will provide the Union with a side letter that states that the Company will meet with the Union to discuss extending jury duty pay for Employees required to perform jury duty that last longer than ten (10) days.

### ARTICLE XXVI
### MILITARY LEAVE

Employees entering the military service shall be granted all rights and privileges required under the Law.

Margolis Edelstein
Tillman, Mar'
0(

## ARTICLE XXVII
## STEWARDS

The Employer recognizes the right of the Union to designate one (1) Shop Steward and one (1) alternate from each department as described in Article XV. The Employer further recognizes that there will be one (1) Shop Steward assigned for each manufacturing shift.

The authority of Shop Stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

- ❑ The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement.

- ❑ The collection of dues when authorized by appropriate Local Union action.

- ❑ The transmission of such messages and information which shall originate with, and are authorized by, the Local Union or its officers, provided such messages and information:

  a. have been reduced to writing, or

  b. if not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Shop Stewards and alternates have no authority to take strike action, or any other action interrupting Employer's business.

The Employer recognizes these limitations upon the authority of Shop Stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the Shop Steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

The Employer agrees a Shop Steward, who is qualified to perform the work, is to have superseniority for layoff and rehiring. The Union shall be privileged to appoint alternate Shop Stewards to act in the absence of a Shop Steward, but such alternate Shop Steward shall not have superseniority.

Provided there is no abuse of this privilege, the Employer will keep a Shop Steward on the clock while he/she is processing a grievance during his/her normal shift hours. A Steward will not remain on the clock while processing grievances after the end of his/her normal shift.

## ARTICLE XXVIII
## LEAVE OF ABSENCE

The Employer agrees to grant the necessary and reasonable time off, without pay, to one (1) employee serving on the Union Executive Board designated by the Union to attend a labor convention, provided and upon the following conditions:

- ❑ At least ten (10) days' written notice therefore is given by the Union to the Employer setting forth the name of the employee, the nature and place of the convention and the respective dates under which such time off shall commence and end.

- ❑ The duration of such time off shall not exceed one (1) workweek and shall occur only once in any calendar year.

- ❑ The leave does not provide any operational hindrance.

Employees requesting a Leave under the Family Leave Act will have the option to exhaust all eligible paid time off before starting a 12 week leave without pay as provided for under the act.

## ARTICLE XXIX
## TRAINING PROCEDURE

When the Employer determines a need for developing a pool of additional qualified employees in a job classification, an appropriate number of training bids will be posted. The training opportunities will be awarded to the most senior qualifiable employee(s) within the Department. Those individuals awarded the training bid will be given basic training as a group and then provided with on-the-job training as soon as possible based on seniority. Those who successfully complete the training program will become Qualified Trainees in the job classification. When a job opening occurs in that job classification, those who are Qualified Trainees in that classification will fill the opening based on their seniority.

The Company will set in place a procedure by which any employee who wishes will be afforded the opportunity to train and receive a CDL license. This procedure will be in place no later than September 1, 1995, and the Union agrees to cooperate with the Company to accomplish this within contractual limits. The Company will provide a vehicle for training and an Instructor. The employee will not be paid for the time spent training or the cost of the CDL license.

Margolis Edelstein
Tillman, M

A54

## ARTICLE XXX
## DRUG/ALCOHOL POLICY

The manufacture, use, sale, purchase, transfer or possession of any alcoholic beverage or illegal drugs during working hours, including breaks or lunch time whether on or away from Company property, at any time during the course of a working day is cause for disciplinary action up to and including discharge.

Any employee who is convicted of the manufacture or sale of a controlled substance while off duty, may be subject to disciplinary action up to and including discharge.

An employee must report his conviction for a drug violation occurring in the workplace to the Company within five (5) days of their conviction and the failure to do so may result in disciplinary action up to and including discharge.

Reporting for work while under the influence of alcohol, illegal drugs, or excessive amounts of prescribed drugs which impair performance subjects an employee to immediate discharge.

Employer may require that an employee be tested for the presence of drugs or alcohol only under the following circumstances: (1)  When the Employer reasonably suspects that the employee is impaired or under the influence of alcohol or drugs.  Provided that prior to an employee being required to submit to testing, the Employer will, if feasible under the circumstances, afford a Steward the opportunity to observe the employee. (2)  When the employee is participating in a treatment program of which regular testing is a part.

In the case of Drivers, testing will be required in accordance with any Department of Transportation legislation or other legislative requirement.

An employee is obligated to cooperate in any such medical examination or test including the execution of any forms required by any medical facility or laboratory which is involved, and the execution of an appropriate consent form and authorization of the examination and test results to be released to the Employer. If the employee fails in any way to fulfill such obligation or otherwise to cooperate in any medical examination or test hereunder, he/she shall be subject to immediate discharge for such failure. Any Driver found to have an alcohol concentration of 0.02 or greater but less than 0.04 shall not perform, nor be permitted to perform, any safety-sensitive functions for at least 24 hours, including driving a commercial motor vehicle.  Any Driver found to have an alcohol concentration of 0.02 or greater but less than 0.04 will be subject to regular drug and/or alcohol testing for a period of twelve (12) months, similar to those employees participating in a drug and/or alcohol treatment program.

The Employer may conduct unannounced searches for illegal drugs or alcohol on Employer's property.  Such searches are to be confined to Company property, but under no circumstances may the search include the employee's body or uniform being worn or the employee's personal motor vehicle.

Margolis Edelstein
Tillman, I

A55

As a condition of employment, all applicants must undergo a blood or urine test for controlled substances. No applicant who tests positive and who has no alternate acceptable medical explanation will be hired.

Any employee tested hereunder shall be given the opportunity to have the blood or urine sample tested simultaneously by an independent certified laboratory. If the test by the independent laboratory is positive, the cost for it will be paid by the employee. If the result is negative, the cost will be paid by the Employer.

This Policy will be strictly enforced. If any employee is having an alcohol or drug-related problem and desires professional help, please contact your supervisor, the Pepsi-Cola Employee Relations Office, or Teamsters Local 830 – we will do all we can to help you.

Any employee testing positive as a result of a government regulation or legislation shall be given the opportunity to submit to a certified rehabilitation program in lieu of discipline, unless it is determined that such employee performed work while under the influence of drugs or alcohol. This, however, shall only apply to the first failure of a test.

## ARTICLE XXXI
## SEASONAL EMPLOYEES

Provided there are no employees laid off in a department, the Employer may hire seasonal employees in that department during the period of April 1, through September 10. Seasonal employees shall not receive benefits nor shall they accrue seniority, however they must become members of the bargaining unit. Pay for seasonal employees shall be 70% of the rate, (or base pay and commission) for the classification in which they work. This article shall not preclude the company from using casual employees to perform work that has not been exclusively performed by members of the bargaining unit or to cover manpower shortages (e.g. Any Injury, Government Mandated Absences, Approved absence for family emergency, etc.) It is not the intent of the Company to eliminate or restrict available overtime therefore the Company will attempt to exhaust all other reasonable means of covering these manpower shortages with bargaining unit employees before resorting to outside sources. The Company also agrees to limit the total number of casual employees used outside of the seasonal periods to no more than 5% of the total workforce.

## ARTICLE XXXII
## MERCHANDISING

It is understood and agreed that in all accounts a Route Salesman shall devote his working time to selling, advertising and merchandising the products of the Company and shall give regular and constant service as designated by the Company, to all customers on his route. Route Salesmen shall actively prospect for and solicit new customers and all Company policies regarding sales transactions and records will be strictly adhered to.

Margolis Edelstein
Tillman, M

A56

## ARTICLE XXXIII
## RESETS

Route Salesmen will be responsible for performing, resets, however, they will not be solely responsible for major resets (defined as, Full Cold Vault, Full Aisle, Full Store or Large Cooler Placement).

## ARTICLE XXXIV
## TERMINATION

The terms and conditions of this Agreement shall, except as herein otherwise expressly provided, become effective the first (1st) day of January, 2000 and shall continue in full force and effect up to and including the thirty-first (31st) day of December, 2004 and thereafter from year to year unless and until either party shall give to the other notice by registered mail at least two (2) months prior to the expiration date in 2004 or to the expiration date in any year thereafter, of an intention to terminate, cancel or modify the Agreement.

**IN WITNESS WHEREOF,** this Agreement has been executed by the parties hereto, this 1st day of January, 2000.

**FOR THE COMPANY:**

THE PEPSI BOTTLING GROUP

**FOR THE UNION:**

TEAMSTERS LOCAL 830

BY: _Michael Gilligan_

Michael Gilligan
Vice President, Human Resources

BY: _Daniel H. Grace_

Daniel H. Grace
Secretary-Treasurer

## APPENDIX A
## WAGE SCHEDULE

The hourly rate for Bulk Drivers who were employed in the Sales Department on January 1, 1995 shall follow Bulk Schedule (A).  The hourly rate for Bulk Drivers who are new to the Sales Department after January 1, 1995 shall follow Bulk Schedule (B).

| WAGES | Effective 1/1/00 | Effective 1/1/01 | Effective 1/1/02 | Effective 1/1/03 |
|---|---|---|---|---|
| **Combo Routing** Pre/Post Mix | $ 0.15 | | | |
| Cups | $ 1.15 | | | |
| CO2 (Roundtrip) | $ .65 | | | |
| Full Service | $ 0.46 | | | |
| **On-Premise** | $ 15.78 | $16.23 | $16.63 | $17.03 |
| Bulk Schedule A | $ 20.40 | $20.85 | $21.25 | $21.65 |
| Bulk Schedule B | $ 16.50 | $16.95 | $17.35 | $17.75 |
| Extra Men | $ 15.78 | $16.23 | $16.63 | $17.03 |
| **HOURLY:** Manufacturing | $ 14.90 | $15.35 | $15.75 | $16.15 |
| **Distribution** Transport | $ 15.50 | $15.95 | $16.35 | $16.75 |
| Satellite Warehouse | $ 14.90 | $15.35 | $15.75 | $16.15 |
| **Service** Mechanic A | $ 17.25 | $ 17.70 | $ 18.10 | $ 18.50 |
| Mechanic B | $ 16.25 | $ 16.70 | $ 17.10 | $ 17.50 |
| Mechanic C | $ 15.50 | $ 15.95 | $ 16.35 | $ 16.75 |
| Flex Week Premium | $ .30 | $ .30 | $ .30 | $ .30 |

Margolis Edelstein
Tillman, Marlayna v. Pepsi

A58

Effective upon ratification of this Agreement dated January 1, 2000 through December 31, 2004, the following one time lump sum ratification bonuses shall be made:

| | |
|---|---|
| Conventional CRs: | One thousand dollars ($1,000) |
| Extra Men: | Five hundred dollars ($500) |
| All other hourly employees: | One hundred dollars ($100) |

For employees who were Conventional CRs prior to the Full Facility re-route in February 2000, and after the re-route they became Extra Men, the following would apply to their one time lump sum ratification bonus:

❑    If the Extra Man spends more than 50% of year 2000 (after moving into the Extra Man classification) in a commissioned job classification, the Company will pro-rate their lump sum ratification bonus based on the percent of time spent in a commissioned job classification in 2000.

The night shift premium is thirty-five cents ($.35). Night shift premium will be paid to all hourly paid employees whose work shift starts anytime between 12:00 p.m. (noon) and 4:00 a.m..

❑    On-Call Vending Mechanics will be compensated at twenty dollars ($20.00) per day. In the event an On-Call Vending Mechanic is called into service, he shall be guaranteed a minimum of two (2) hours of pay.

**Section 2. Step Rates:**    All newly-hired employees shall be paid according to the following Step Rate schedule:

| **Period of Employment** | **Rate of Pay** |
|---|---|
| 0 – 12 Months | 80% of Applicable Rate |
| 13 – 24 Months | 90% of Applicable Rate |
| 25 Months & Thereafter | 100% of Applicable Rate |

The Company reserves the right to waive Step Rates at any time. Step Rates shall not apply to commissioned Retail CRs.

**Section 3. Short Term Disability**: The maximum payment for any employee out of Short Term Disability will be $350 per week.

Margolis Edelstein
Tillman, M

## APPENDIX B
## MEMORANDUM OF AGREEMENT
## REGARDING TOOL ALLOWANCE

Effective with the week of March 18, 1991, the undersigned agree all employees within the Service Department will be issued all tools required to complete their regular and necessary work assignments. It is understood this tool purchase is on a one-time basis only. Should an issued tool become lost, stolen or rendered unusable during the performance of their regular work assignments, it will be replaced by the Company.

The below all inclusive listing of tools will form the basis for the extent and type of tools purchased.

### TOOLS FOR SERVICE MECHANICS

- ❑ Set of open or closed wrenches 3/8" to 7/8"
- ❑ Set of nut drivers ¼", 5/16", 11/32", 3/8", 7/16", ½"
- ❑ Oetiker crimpers
- ❑ Pair of pinch-offs vise-grip
- ❑ (2) Screw drivers – slotted and Phillip's
- ❑ 10" adjustable wrench
- ❑ Vise-grip locking wrench
- ❑ Crescent multi-pliers
- ❑ Alligator pliers  (about the same tool)
- ❑ Hose
- ❑ Needle-nose pliers
- ❑ Slip joint plier
- ❑ ¼" and 3/8" combination drive socket set
- ❑ Diagonal cutter or dikes
- ❑ Utility Knife
- ❑ Hammer
- ❑ Hex Key Set
- ❑ Torpedo Level
- ❑ File Flat
- ❑ Tool Box or Utility Pouch
- ❑ Flashlight
- ❑ Thermometer
- ❑ Wire Brush

### $100.00 Approximate Cost Per Employee

Margolis Edelstein
Tillman, M:

A60

## APPENDIX C
## WEST CHESTER, PA / WILMINGTON, DE
## PEPSI-COLA HOURLY PENSION PLAN
## EFFECTIVE JANUARY 1, 1995

**Effective Date**            January 1, 1995

**Eligibility**              All regular, full-time employees covered by this Labor Agreement.

**Participation**            Eligible employees become a participant on the date they:

    ❑    Are Age 21 or older and

    ❑    Have completed twelve (12) months of employment in which you are credited with 1,000 or more hours of employment. This twelve (12) month eligibility period will be measured from date of hire, or any subsequent January 1.

**Normal Retirement**        Age 65

**Early Retirement**         Age 55 and 10 years vesting service; 4% reduction factor per year prior to age 62.

**Disability Retirement**    10 years vesting service/6 month commencement from date of disability approved for social security disability award payable at age 65 (accrued benefit as of date of disability).

**Deferred Vested**          100% vested in pension plan, but have not met age and service requirements for early retirement. Benefit payable at age 65, or a reduced amount beginning on the first day of any month after you attain age 55. Reduction is the actuarial equivalent of the benefit payable at age 65, not the early retirement reduction factor.

**Qualified Pre-Retirement Survivor Annuity**

Automatic (no charge) – Actives (Vested)
Elected (reduction charge) – Deferred Vested

**Vested Service**           Years of service used to determine eligibility for benefits. Vesting date is date of hire.

**Vesting Schedule**         100% vested after 5 years

Margolis Edelstein
Tillman

A61

**Credited Service**              Years of service used to determine the amount of benefits
                                  at retirement or other termination of employment.

**Benefit Formula**               Dollar Multiplier x Years of Credited Service = Monthly
                                  Benefit; reduced by the Early Retirement Discount Factor
                                  (if any).

**Dollar Multiplier:**            Effective January 1, 2000:    $42.00

- 32 -

Margolis Edelstein
Tillman, Mark
005

A62

## APPENDIX D
## INTENT OF CLASSIFICATION COMBINATION

### Manufacturing Classification

| | | | |
|---|---|---|---|
| 1. | **Can Team:** | Filler (High Cone, Tray, 24-Pack), Depal, Forklift, | Extra Person |
| 2. | **2-Liter Team:** | Filler, Labeler, Shell Thrower, Palletizer, Forklift, | Extra Person |
| 3. | **Syrup Team:** | Pre/Post Mix | |

☐ The intent of this proposal is twofold. First, we would like each employee to become familiar with all jobs within his/her Team. Second, the existing employees will not be disqualified or otherwise disciplined for failure to reach acceptable performance levels in all functions within a Team, provided there is a good faith effort.

☐ Each Team will be composed of two (2) regular shifts and one (1) additional shift during peak periods.

☐ No premium jobs.

☐ Each employee bids the Team and the shift they desire.

☐ The Company will decide with the Team which job each member of that Team will be performing. It behooves the Team to place individuals in jobs they feel most comfortable in and show the greatest aptitude.

☐ Each Team Member will be placed in his or her job according to seniority and classifications.

☐ The extra person on each Team will be used to rotate employees through the different jobs on his/her Team in order for those employees to receive the necessary training.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
00

A63

## LETTER OF UNDERSTANDING #1

## SENIORITY FOR SELECTING VACATIONS

The Company will honor the one time recommendation by the Union on how employees will pick their vacation (either by Department Seniority or by Company Seniority)

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0

## LETTER OF UNDERSTANDING #2

## SELECTING VACATIONS

Vacation schedule will be posted by the end of November.  Each employee, in order of seniority (department or Company to be determined by letter of understanding) will have three (3) days to select all of his/her vacation.  If this employee does not select vacation weeks within this three day period they will go to the bottom of the list, and the next senior employee will select their vacation weeks.  Once an employee has selected his/her weeks, (which should be completed by the end of December of the previous year) no other employee can displace that selection.  Employees will be required to use their vacation as selected.  Employees will only be allowed to turn down their vacation on case by case situation as mutually agreed upon by Management and the employee.  If an employee's vacation week is switched, their old vacation week will be posted for bid.  Employees trading vacation weeks will be disciplined.

Margolis Edelstein
Tillman, Ma
0

A65

## LETTER OF UNDERSTANDING #3

## CR INVOLVEMENT IN PRICING, FEEDBACK ON NET REVENUE

It is the intent of Wilmington/West Chester management to include a representative selection of conventional commissioned Customer Representatives in the preliminary process of developing pricing in each Trimester of the year. This could include the following: requests for information on competitive pricing, feedback on various levels of pricing under consideration and feedback and ideas on various promotional programs.

In addition, as part of these Trimester pricing discussions, we'll also ask for CR input on the status of the Net Revenue Compensation system.

- 36 -

Margolis Edelstein
Tillman, Marl
00

A66

## LETTER OF UNDERSTANDING #4

## HANDLING OF PAYROLL MISTAKES

In the event there is a mistake of greater than $100.00 in an employee's regular weekly paycheck, the company will make every reasonable effort to correct that mistake and mail the correct compensation amount to the employee within 48 hours of being notified of such mistake, unless the company becomes aware of the mistake on a Friday after 10:00 a.m.. In the event the company is notified on a Friday after 10:00 a.m., the company will make every reasonable effort to have the corrected compensation amount  mailed to the employee for delivery on Tuesday of the next workweek .

Any employee whose paycheck is incorrect should notify their immediate supervisor as soon as possible in order to correct the mistake.  If the immediate supervisor is unavailable the employee should notify the local Human Resource Manager to correct the mistake.

Margolis Edelstein
Tillman, Mark
00!

A67

## LETTER OF UNDERSTANDING #5

At the request of the union, the parties agree to schedule a meeting with two members of Local 830 to discus issues pertaining to Flexible Benefits. This meeting will be conducted prior to a final decision on the subsequent year's benefits design. The Company will respond to reasonable requests for information on the benefits plan and will provide the employee representatives the opportunity to provide input and to identify their concerns and needs.

Margolis Edelstein
Tillman, Ma------- -- Danci

A68

| Internal Posting | External Posting |
|---|---|
| Date of Opening:___1/2/02_____ | For information on completing an |
| Date of Posting: 1/8/02_____ | Application contact: |
| End Posting:___1/18/02_____ | PBG's Job Line  302/761-8683 _ |
| Hiring Manager:__TBA_____ | |
| Job Opening #:MD120-120401_____ | |
| Hourly Rate: $10.88  (weekend work required) | |

## MERCHANDISER – Wilmington, DE

JOB SUMMARY:

To provide customer support by maintaining shelf space, displays, etc. according to     Pepsi standards

PRIMARY JOB ACCOUNTABILITIES:

- Merchandise store shelving, coolers and displays with Pepsi products in accounts assigned by supervisor
- Utilize point of purchase in each account
- Keep back room stock in neat and orderly condition
- Communicate sales results to store and Pepsi management
- Build customer relationships at store level

JOB ELIGIBILITY CRITERIA:

- Previous grocery retail merchandising experience preferred
- Must be 18 years of age
- **Must have car or personal transportation to access multi-store locations within assigned shift**
- Proof of insurance
- **Valid Driver's License**
- No more than 1 moving violation i.e. reckless driving, speeding in excess of  15 miles above the posted speed limit within the past year
- **No serious motor vehicle violations such as DWI, DUI in the past year**
- No more than 2 moving violations or serious motor vehicle violations within the past 3 years
- Must be able to perform physical lifting of 40-50 lbs. or greater on a repetitive daily basis, reaching above shoulders and bending frequently, kneeling/squatting often

A69

 THE PEPSI BOTTLING GROUP

## Open Job Notice

| Internal Posting | External Posting |
|---|---|
| Date of Opening: | For information on our Open House please |
| Date of Internal Posting: | Call our job line at 302.761.8683. |
| End Posting | **No faxes please** |
| Hiring Manager: | Applications will be completed at the Open |
| Job Opening #: | House. |
| Hourly Rate: | **PBG is an equal opportunity employer.** |

## RELIEF DRIVER – SALES

### JOB SUMMARY:

Act as a fill-in driver covering for the absence of a regularly scheduled driver by: selling, merchandising and servicing customers on an assigned route.  Also fulfill miscellaneous duties assigned by manager.

### PRIMARY JOB ACCOUNTABILITIES:

- Sell and execute all promotions
- Service all scheduled customers by end of shift
- Merchandise all accounts to local standards
- Fill coolers, racks, displays and vendors as necessary
- Keep accurate route book on assigned accounts
- Maintain clean and well organized truck
- Settles up using correct procedures according to policy
- Deliver bulk loads when necessary

### JOB ELIGIBILITY CRITERIA:

- Must be at least 21 years of age
- Valid CDL "Class A"  License
- Valid Driver's License
- No serious motor vehicle violations such as DWI, DUI in the past year
- No more than 1 other motor vehicle violation (e.g., reckless driving, failure to stop at a stop sign) within the past year
- Must pass road test per DOT guidelines
- Able to perform: physical lifting (frequently 40-50 lbs.), push/pull often up to 100 lbs., reaching above shoulder frequently, bending frequently, kneel/squat often

C:\Documents and Settings\clemons\Local Settings\Temporary Internet Files\OLK2A\Relief Driver Sales.doc
March 10, 1999

| Internal Posting | External Posting |
|---|---|
| Date of Opening:____ASAP_____ | Please give all bids to Sara Altman at the |
| Date of Posting:    9/9/04 | Wilmington facility |
| End Posting:_____5/15/04_____ | |
| Hiring Manager:    Tom Riley | |
| Job Opening #: | |
| Hourly Rate:___Per union contract_____ | PBG is an equal opportunity employer. |

## TRANSPORT DRIVER

### JOB SUMMARY:

Deliver product in a tractor/trailer combination from manufacturing plant to other plant and satellite warehouse. Drivers average 400-450 miles per day with no layovers.

### PRIMARY JOB ACCOUNTABILITIES:

- Daily trip logs must be accurately recorded
- Fueling and oil checks must be performed daily
- Pre/Post trip inspections as required by DOT regulations
- Deliver loads in a safe and timely manner
- Maintain cleanliness of vehicle
- Operate vehicle safely obeying all traffic regulations

### JOB ELIGIBILITY CRITERIA:

- Must be at least 21 years of age
- Valid Class "A" CDL Driver's License
- Minimum 2 years tractor/trailer combination experience preferred
- No more than 1 moving violation i.e. reckless driving, speeding in excess of 15 miles above the posted speed limit within the past year
- No serious motor vehicle violations such as DWI, DUI, in the past year
- No more than 2 moving violations or serious motor vehicle violations within the past 3 years
- Must pass road test per DOT guidelines
- Able to perform physical lifting (40-50 lbs. or greater on an occasional basis)
- Must pass road test per DOT guidelines



**TEAMSTERS LOCAL UNION NO. 830**          N⁰   0489
12298 TOWNSEND ROAD   PHILADELPHIA, PA 19154
(215) 671-9850
(800) 321-9850

**EXHIBIT**
TILLMAN 24
01/26/05

## GRIEVANCE REPORT

Filed By: _MERRILL MATTHEWS_ Company: _Pepsi (with)_ Dept.: _WAREHOUSE_
Shop Steward: _MERRILL MATTHEWS_   Date Filed: _OCT. 17, 02_
Nature of Grievance: _Improper notification of job report._

_MARLAYNA TILLMAN_

Remedy Requested: Including, but not limited to: _8 hrs. for the day - Job report - plus_
_back pay & benefits_

Signature of Grievant: _Marl M_____

## EMPLOYER REPORT

Date:_____   Supervisor Name:_____
Remarks:_____
_____
_____
Signature of Supervisor:_____

## SHOP STEWARD REPORT

Date Grievance Filed with Company:_____ with Supervisor:_____
Disposition
☐ Remedy Granted          ☐ Resolved          ☐ No Merit
☐ Denied                  ☐ Withdrawn         ☐ Referred to Union
                                                 Date:
Remarks:_____
_____
_____

Signature of Shop Steward:_____

## BUSINESS AGENT REPORT

Company Representative handling grievance: _Tracy D / Phil W_____

Disposition:
☐ Remedy granted          ☐ Grievance withdrawn     ☒ Grievance denied
☒ Grievance Resolved      ☐ No merit

Remarks:_____

Final Disposition: _Resolved as the same remedy as grievance #663_
_Pay out is outlined in #663_

Business Agent Signature: _Jay M_____

NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY – SITUATED
BARGAINING UNIT MEMBERS

( WHITE COPY: COMPANY     YELLOW COPY: MEMBER     PINK COPY: STEWARD     GOLD COPY: UNION )

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0031

A72



**TEAMSTERS LOCAL UNION NO. 830**
12298 TOWNSEND ROAD   PHILADELPHIA, PA 19154
(215) 671-9850
(300) 321-9850

N⁰   0662

EXHIBIT
TILLMAN 25
10/11/06 B

### GRIEVANCE REPORT

Filed By: _Melvina Tillman_ Company: _Pepsi Cola_ Dept.: _Production_

Shop Steward: _Gary Diasperas_                Date Filed: _11-20-02_

Nature of Grievance: _Harrasment by Tom Lily and Glenn mathews_

Remedy Requested: Including, but not limited to: _Stop Harrasment imediatly_

Signature of Grievant: _Melvina Tom Marlayna Tillman_

### EMPLOYER REPORT

Date: _12/13_   Supervisor Name: _____

Remarks: _____

Signature of Supervisor: _____

### SHOP STEWARD REPORT

Date Grievance Filed with Company:_____ with Supervisor:_____

Disposition
- ☐ Remedy Granted
- ☐ Denied
- ☐ Resolved
- ☐ Withdrawn
- ☐ No Merit
- ☐ Referred to Union
  - Date:

Remarks:_____

Signature of Shop Steward:_____

### BUSINESS AGENT REPORT

Company Representative handling grievance: _Tracy D. Phil Weber_

Disposition:
- ☐ Remedy granted
- ☑ Grievance Resolved
- ☐ Grievance withdrawn
- ☐ No merit
- ☐ Grievance denied

Remarks: _Because no disp action taken the issues were tate tabled and discussed_

Final Disposition: _Open door policy was established_

Business Agent Signature: _____

NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY – SITUATED BARGAINING UNIT MEMBERS

( WHITE COPY: COMPANY   YELLOW COPY: MEMBER   PINK COPY: STEWARD   GOLD COPY: UNION )

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0033

A73



# TEAMSTERS LOCAL UNION NO. 830
## 12298 TOWNSEND ROAD   PHILADELPHIA, PA 19154
### (215) 671-9850
### (800) 321-9850

N° 0663

**GRIEVANCE REPORT**

Doug McLaughlin IBO

Filed By: _Marlayna Tillman_ Company: _Pepsi-Cola_ Dept.: _Production_

Shop Steward: _Gary Digiosseppe_   Date Filed: _11-21-02_

Nature of Grievance: _Laid off out of Seniority_

Remedy Requested: Including, but not limited to: _layoff and recall by Seniority_
_Full back pay and benefits_

Signature of Grievant: _Doug IBO Marlayna Tillman_

**EMPLOYER REPORT**

Date:_____   Supervisor Name:_____

Remarks:_____

_____

Signature of Supervisor:_____

**SHOP STEWARD REPORT**

Date Grievance Filed with Company:_____   with Supervisor:_____

Disposition

☐ Remedy Granted          ☐ Resolved          ☐ No Merit
☐ Denied                  ☐ Withdrawn         ☐ Referred to Union
                                                     Date:

Remarks:_____

_____

Signature of Shop Steward:_____

**BUSINESS AGENT REPORT**

Company Representative handling grievance: _Tracy D   Phil Weber_

Disposition:

☐ Remedy granted          ☐ Grievance withdrawn     ☐ Grievance denied
☒ Grievance Resolved      ☐ No merit

Remarks:_____

Final Disposition: _Will be made whole and paid  4 weeks_
_Plus 2 days pay_

Business Agent Signature: _Doug M_

NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY – SITUATED
BARGAINING UNIT MEMBERS

( WHITE COPY: COMPANY    YELLOW COPY: MEMBER    PINK COPY: STEWARD    GOLD COPY: UNION )

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0029



A74

**TEAMSTERS LOCAL UNION NO. 830**
12298 TOWNSEND ROAD  PHILADELPHIA, PA 19154
(215) 671-9850
(800) 321-9850

№ 9665

EXHIBIT

**GRIEVANCE REPORT**

Pouc May 11 – IBO
Filed By: _Marbyna Tillow_ Company: _Pepsi-Cola_ Dept.: _Production_
Shop Steward: _Carl Di prospero_ Date Filed: _11-20-02_
Nature of Grievance: _Doing Bacgevay unit work and did not_
_receive the rate. (inbalc) d_

Remedy Requested: Including, but not limited to: _Back pay and the difference in rates_

Signature of Grievant: _by IBO Marbyna Tillow._

**EMPLOYER REPORT**

Date:_____ Supervisor Name:_____
Remarks:_____

Signature of Supervisor:_____

**SHOP STEWARD REPORT**

Date Grievance Filed with Company:_____ with Supervisor:_____
Disposition
☐ Remedy Granted        ☐ Resolved            ☐ No Merit
☐ Denied                ☐ Withdrawn          ☐ Referred to Union
                                                     Date:

Remarks:_____

Signature of Shop Steward:_____

**BUSINESS AGENT REPORT**

Company Representative handling grievance: _TRACEY_

Disposition:
☐ Remedy granted        ☒ Grievance withdrawn    ☐ Grievance denied
☐ Grievance Resolved    ☐ No merit

Remarks:_____

Final Disposition: _MS. TILLMAN  WITHDRAWS  ABOVE  GRIEVANCE_

Business Agent Signature:_____

NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY SITUATED BARGAINING UNIT MEMBERS

( WHITE COPY: COMPANY    YELLOW COPY: MEMBER    PINK COPY: STEWARD    GOLD COPY: UNION )

Margolis Edelstein
Tillman, Martayna v. Pepsi
0032

A75



# TEAMSTERS LOCAL UNION NO. 830

②

12298 Townsend Road • Philadelphia, Pa. 19154
(215) 671-9850
(800) 321-9850

## GRIEVANCE REPORT

Filed By: _MARLAYNA TILLMAN_    Company _PBG (Wilm. DE)_    Dept. _Warehouse/Production_

Shop Steward _M. MATTHEWS, G. DiPROSPEROUS_    Date Filed _11/21/02_

Nature of Grievance: _On 11/21/02 upon reporting to work for my scheduled shift, I was verbally Assaulted by PHIL WEBER (plant mgr.) for answering a call on my cell phone as I walked to my work station. The body language and tone Mr. Weber used was uncalled for, excessive and menacing to say the least, and was designed to incite me to react physically._

Remedy Requested _ORAL AND WRITTEN APOLOGY FROM PHIL WEBER, ~~MONETARY~~ COMPENSATION FOR MENTAL ANGUISH AND DURESS, AND AN IMMEDIATE TRANSFER OUT OF WAREHOUSE TO ANOTHER DEPT. WITHIN PEPSI —_

Signature of Grievant _Marlayna Tillman_

## SHOP STEWARD REPORT

Date Grievance Filed with Company _____    with Supervisor _____

Disposition
☐ Remedy Granted    ☐ Resolved    ☐ No Merit
☐ Denied    ☐ Withdrawn    ☐ Referred to Union
                                        Date:

Remarks: _____

_____

_____

Signature of Shop Steward _____

EXHIBIT

## BUSINESS AGENT REPORT

Company Representative handling grievance _Tracy / Phil Weber_

Disposition:
☐ Remedy granted    ☐ Grievance withdrawn    ☐ Grievance denied
☒ Grievance resolved    ☐ No merit

Remarks: _____

_____

Final Disposition: _Remedy resolved in grievance #662_

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0030

Business Agent Signature _Doug M.G.C._

Steward - Gold Copy

A76



# TEAMSTERS LOCAL UNION NO. 830
### 12298 TOWNSEND ROAD   PHILADELPHIA, PA 19154
### (215) 671-9850
### (800) 321-9850

N⁰  0845



## GRIEVANCE REPORT

Filed By: M. ~~Monroe~~ *Tillman*          Company: Pepsi / Wilm DE   Dept.: Warehouse
Shop Steward: m. Matthews                    Date Filed:   4-14-03
Nature of Grievance: ✱ 2nd Request / No Response to Grievance #0696
                     Filed on 2/15/03 —

Remedy Requested: Including, but not limited to: Arbitration Hearing Requested —

Signature of Grievant: _Malayna Tillman_

## EMPLOYER REPORT

Date:_____  Supervisor Name:_____
Remarks:_____
_____

Signature of Supervisor:_____

## SHOP STEWARD REPORT

Date Grievance Filed with Company: 4-25   with Supervisor: Sara Swartz _Sara Swartz_

Disposition
☐ Remedy Granted        ☐ Resolved          ☐ No Merit
☐ Denied                ☐ Withdrawn         ☒ Referred to Union
                                            Date:

Remarks:_____
_____

Signature of Shop Steward: _____

## BUSINESS AGENT REPORT

Company Representative handling grievance: Tracey

Disposition:
☐ Remedy granted        ☐ Grievance withdrawn   ☐ Grievance denied
☐ Grievance Resolved    ☐ No merit

Remarks: Did not show for last grievance hearing held
         on  3-24-03

Final Disposition: No contract violation

Business Agent Signature: _David M._

*NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY-SITUATED*
*BARGAINING UNIT MEMBERS*

( WHITE COPY: COMPANY    YELLOW COPY: MEMBER    PINK COPY: STEWARD    GOLD COPY: UNION )



**TEAMSTERS LOCAL UNION NO. 830**
12298 TOWNSEND ROAD  PHILADELPHIA, PA 19154
(215) 671-9850
(800) 321-9850

Nº 0698

### GRIEVANCE REPORT

Filed By: _M. Tillman_     Company: _Pepsi-Walm._ Dept.: _Bulk/Warehouse –_
Shop Steward: _Gary Diprospros_          Date Filed: _2-15-2003_
Nature of Grievance: _* see attached statement/enclosure *_
_____
_____
_____

Remedy Requested: Including, but not limited to: _"Retro"- Seniority From Correct Date of Eligibility:_
_(11-13-01) - barring that remedy, grievant requests arbitration._

Signature of Grievant: _Marlayna Tillman_ 2/15/03

### EMPLOYER REPORT

Date:_____  Supervisor Name:_____
Remarks:_____
_____

Signature of Supervisor:_____

_Turned into
Gary D.
on 2-20-03
and hand-delivered
to Sara Swartz
on 2-24-03_

### SHOP STEWARD REPORT

Date Grievance Filed with Company:_____  with Supervisor:_____
Disposition
❑  Remedy Granted          ❑  Resolved             ❑  No Merit
❑  Denied                  ❑  Withdrawn            ❑  Referred to Union
                                                      Date:

Remarks:_____
_____

Signature of Shop Steward:_____

### BUSINESS AGENT REPORT

Company Representative handling grievance:_____

Disposition:
❑  Remedy granted          ❑  Grievance withdrawn      ❑  Grievance denied
❑  Grievance Resolved      ❑  No merit

Remarks:_____
_____

Final Disposition:_____
_____

Business Agent Signature: _____

*NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY – SITUATED
BARGAINING UNIT MEMBERS*

( WHITE COPY: COMPANY     YELLOW COPY: MEMBER     PINK COPY: STEWARD     GOLD COPY: UNION )

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0028

2/15/03

## Grievance #0696

Based on the tenure (5/8/01 to present) with the Pepsi Bottling Group, Wilmington, DE (*hereafter referred to as "the company"*), and tenure worked for the company (10/13/01 through 5/28/02) in various positions defined as "bargaining unit work" as outlined in the Collective Bargaining Agreement between the Pepsi Bottling Group, Wilmington, DE, and the Teamsters Local Union No. 830, the grievant, Marlayna Tillman requests the immediate correction of her union eligibility date from 10-29-02 to the proper eligibility date of 11/13/01, as well as all "retro" seniority, privileges, pay and benefits that would have been accrued by grievant had she been awarded correct eligibility in the first instance.

Grievant is filing her claim based on published information in the current collective bargaining agreement between the company and Teamsters Local Union 830, and is relying on its content, specifically, <u>page 10 article VIII</u>, which states in part, "… the contract wage to which the temporary transfer is made, *shall apply to the employee so transferred*… and he/she *shall receive the higher rate* for the full day regardless of the number of hours worked in the higher-rated job classification". The language also goes on to state, "… a temporary transfer of more than one month may be renewed for an equal and additional period of time, after which time the vacancy filled by such temporary transfer *must be filled* in accordance with normal procedure *or abolished*." <u>Page 4, Article III</u>, with regard to hiring new employees, clearly mandates in part, "…union agrees to *admit to membership* all present employees of employer…" and goes on to decree, "… new employees *shall become members of the union after thirty (30) calendar days of employment* or the effective date of this agreement, whichever is later. If employment is continued after such thirty day period, *union agrees to accept such employees as members*."

Grievant asserts that because she was required by the company to perform bargaining unit work commencing on 10/13/01 and ending on 5/28/02 (approximately 7 ½ months), and position **was not abolished** as mandated in the time frame required by the Collective Bargaining Agreement, she earned union eligibility on or about 11/13/01 and is therefore entitled to all union-related benefits (including seniority) from 11/13/01 until present.

<u>Article XVIII</u> of the Collective Bargaining Agreement is also clear and convincing where it states, in part, "… the parties hereto agree not to… evade or frustrate compliance with the spirit and terms of this agreement…" and "… employer and union agree that the provisions of this agreement shall apply to all employees covered by the agreement *without regard* to race, creed, color, religion, national origin, sex, age, handicap or veteran status."

Therefore, in accordance with the terms outlined in the Collective Bargaining Agreement, grievant asks for immediate relief in the form of specific performance as well as affirmative relief going forward.

*Marlayna Tillman*

Marlayna Tillman, grievant

EXHIBIT
Tillman 30
10/11/06

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0658

A79



# TEAMSTERS
## LOCAL UNION NO. 830

BREWERY • SOFT DRINK • BEER DISTRIBUTORS • LAUNDRY
COMMISSIONED DRIVERS • OPTICAL AND DENTAL
MISCELLANEOUS WORKERS • WAREHOUSEMEN AND HELPERS

AFFILIATED WITH
INTERNATIONAL BROTHERHOOD OF TEAMSTERS

12298 TOWNSEND ROAD • PHILADELPHIA, PENNSYLVANIA 19154
215-671-9850 • FAX: 215-676-1324

DANIEL H. GRACE
*Secretary-Treasurer*

May 21, 2003

JOSEPH BROCK, JR.
*President*

Ms. Marlayna Tillman
P.O. BOX 688
Claymont, DE 19703

### RE: GRIEVANCE #0969 - SENIORITY

Dear Ms. Tillman

The grievance you filed in the above captioned matter has been fully processed in accordance with the collective bargaining agreement with your employer. The factual circumstances surrounding your grievance were investigated and their application to the applicable contractual terms was considered.

After consulting with our attorneys, this Local Union has concluded that your grievance lacks sufficient merit to justify submitting it to arbitration.

Our attorneys have indicated that they do not feel we can prevail before an arbitrator, and we see no reason to disagree with that assessment. Accordingly, this letter will serve as official notification that your grievance will not be processed any further.

In the event that you feel this decision is improper or unjustified, you may appeal it to the Local Executive Board in accordance with Article XX of the bylaws and Article XIX of the International Constitution.

Fraternally yours,

Doug McLaughlin
Vice President

**Via Certified** #7002-2410-0006-1264-8762
**And Regular Mail**

EXHIBIT

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0661

A80



## TEAMSTERS LOCAL UNION NO. 830
12298 TOWNSEND ROAD   PHILADELPHIA, PA 19154
(215) 671-9850
(800) 321-9850

N⁰  2809

### GRIEVANCE REPORT

Filed By: _M. Tillman_          Company: _PEPSI - WILM_    Dept.: _WAREHOUSE/PRODUCTION_
Shop Steward: _E. Turner_                    Date Filed: _6/2/04 (WED.)_
Nature of Grievance: _On repeated and numerous occasions, I have been forced to work in positions (specifically - can line filler operator), without the privilege of "bumping" a lower - seniority ranked employee. The reason given was because all lower ranking union members under myself were not properly trained in the operation of production equipment._
Remedy Requested: Including, but not limited to: _Qualify All Similarly Situated Union Members In The Operation Of All Manufacturing Machinery (specifically, can & bottle line filler) —_
*( Immediately, If Not Sooner! )

Signature of Grievant: _Marlayne Tillman_  6/2/04

* Also want to be paid full wage for all Days Of Lost Work Due to being Forced out on STD by Pepsi — MT

### EMPLOYER REPORT

Date:_____  Supervisor Name:_____
Remarks:_____
_____
_____

Signature of Supervisor:_____

### SHOP STEWARD REPORT

Date Grievance Filed with Company:_____  with Supervisor:_____
Disposition
☐ Remedy Granted          ☐ Resolved          ☐ No Merit
☐ Denied                  ☐ Withdrawn         ☐ Referred to Union
                                                Date:
Remarks:_____
_____

Signature of Shop Steward:_____

### BUSINESS AGENT REPORT

Company Representative handling grievance:_____ _Tracy_ _____

Disposition:
☐ Remedy granted          ☐ Grievance withdrawn     ☐ Grievance denied
☐ Grievance Resolved      ☐ No merit

Remarks:_____
_____

Final Disposition: _Union will Move to Next Step. (Prep Session)_
_2ⁿᵈ Hearing on 10/7/04_

Business Agent Signature:_____

NOTE: THIS GRIEVANCE RELATES TO THE INDIVIDUAL IDENTIFIED ABOVE AND ALL SIMILARLY SITUATED BARGAINING UNIT MEMBERS

( WHITE COPY: COMPANY    YELLOW COPY: MEMBER    PINK COPY: STEWARD    GOLD COPY: UNION )



# TEAMSTERS
## LOCAL UNION NO. 830

BREWERY • SOFT DRINK • BEER DISTRIBUTION • LAUNDRY
COMMISSIONED DRIVERS • OPTICAL AND DENTAL
MISCELLANEOUS WORKERS • WAREHOUSEMEN AND HELPERS

AFFILIATED WITH
INTERNATIONAL BROTHERHOOD OF TEAMSTERS

12298 TOWNSEND ROAD • PHILADELPHIA, PENNSYLVANIA 19154
215-671-9850 • FAX: 215-676-1324

DANIEL H. GRACE
*Secretary-Treasurer*



JOSEPH BROCK, JR.
*President*

November 30, 2004

Ms. Marlayna Tillman
P.O. Box 688
Claymont, DE  19703

**RE:  Grievance #2809**

Dear Ms. Tillman:

The grievance you filed in the above captioned matter has been fully processed in accordance with the terms of the collective bargaining agreement with your employer. The factual circumstances surrounding your grievance were investigated and their application to the applicable contractual terms was considered.

After consulting with our attorneys, this local has concluded that your grievance lacks sufficient merit to justify submitting it to arbitration.

Our attorneys have indicated that they do not feel we can prevail before an arbitrator and we see no reason to disagree with that assessment. Accordingly, this letter will serve as official notification that your grievance will not be processed any further.

In the event that you feel this decision is improper or unjustified, you may appeal it to the Local Executive Board in accordance with Article XX of the Bylaws and Article XIX of the International Constitution.

Sincerely yours,

John D'Elia
Business Representative

JD:sd

 **Via Certified #7003-1680-0005-5155-0767
and Regular Mail**



002

A82

## GRIEVANCE RELEASE

I _Marilyna Tilman_ that before signing the Grievance Settlement

Agreement dated _____.

I have had an adequate opportunity to review with the person

of my choosing, and further agree that I fully understand the

terms and conditions of the Grievance Settlement Agreement.

I further acknowledge that I have not be coerced into signing

the agreement and I have signed it knowingly and voluntarily.


I further acknowledge that Teamsters Local 830 representatives

have explained and detailed my rights and options and I fully

understand those rights and options.


I further acknowledge that Teamsters Local 830 has fully and

fairly represented me in all matters pertaining to and relating

to this grievance and my employment with _P. B. G_.

• grievance #'s 665, 489, 662, 662-2, 663.

_Marilyna Tillman (all rights reserved)_

_Douglas M_____

Witness

Date: _1/21/03_

EXHIBIT

A83

COUNTY OF PHILADELPHIA          :
                                             : SS

COMMONWEALTH OF PENNSYLVANIA   :

## AFFIDAVIT OF DANIEL GRACE

I, DANIEL H. GRACE, being first duly sworn upon my oath, state as follows:

1.    I am currently Secretary-Treasurer of International Brotherhood of Teamsters Local Union 830, and have held that position since 2001. Prior to holding this position, I served as president of Local 830 since May 1, 1999. Prior to becoming President, I was a Business Agent with Local 830, and was employed in that capacity since 1995. As a Business Agent, President and Secretary-Treasurer of Local 830, my responsibilities included the enforcement of collective bargaining agreements and the processing of grievances at the Pepsi Cola Bottling Company facility in Wilmington, Delaware.

2.    Local 830 has represented all driver-salesmen regular routes, full-service and extra driver salesmen, food service third party delivery drivers, bulk delivery drivers, transport drivers, production employees, fork-lift operators/warehousemen and vending mechanics employed by Pepsi at its Wilmington, Delaware and West Chester, Pennsylvania facilities. Local 830 is the certified collective bargaining representative of these employees, pursuant to a Certification of Representative issued on February 11, 1991 by the National Labor Relations Board. This relationship has been embodied in a series of collective bargaining agreements, the most recent of which runs from January 1, 2004 to December 31, 2007.

3.    I am not employed in any capacity by Pepsi Cola. Neither I nor any other officer in the Union has any say in the employment decisions of Pepsi Cola, except, of course, those decisions that may be reached as the result of a grievance settlement.

4.    In determining the manner in which we process a grievance, the race or gender of the grievant never plays any role whatsoever in the decision to process, including the decision to arbitrate. Rather, the decisions are always predicated exclusively upon the merits of a grievance.

5.    I am familiar with former Pepsi employee Marlayna Tillman. At no point in time has Local 830 employed Tillman in any capacity. While formerly a Local 830 member, Tillman never ran for or held an office.

6.    Non-bargaining unit members cannot file grievances, nor can grievances be filed on their behalf.

A84

7.    Only Pepsi employees employed in the specific classifications contained in Appendix A of the parties' collective bargaining agreement are eligible for membership in the Union.  And, unless they are members working in such a classification, the Union is powerless to act on their behalf with regard to any employment related issue.

8.    Until the point in time when Ms. Tillman was transferred into the warehouse in July, 2002, she was not eligible to join the Union.

9.    At no point in time did Ms. Tillman or any other individual notify myself or any other Local 830 business representative of her belief that she was performing bargaining unit work in the conventional department.  After the issue was brought to the Union's attention well after the fact, it was determined that she was not performing such work.  The function she claimed to have been performing, that of an "extra man," required a CDL.  Ms. Tillman did not possess a CDL at the time.

10.    Even if it was determined that she were performing bargaining unit work, a grievance would not have been filed on her behalf.  Grievances cannot be brought on behalf of non-members.  If any grievance were filed, it would relate to the members who were deprived of that work.  To the extent there were any damages, the bargaining unit members who were deprived that work would be made whole.  There is no mechanism contained in the collective bargaining agreement which, if utilized, would have resulted in Ms. Tillman's entry into the Union.

11.    No member has ever been granted "retro-seniority".

12.    Marlayna Tillman has filed many grievances during her employment with Pepsi.  In each and every instance, Local 830 conducted a thorough investigation into the grievance to determine whether there was any merit.  No decisions concerning Ms. Tillman's grievances have been based on her race or gender.

13.    All of the grievances filed by Ms. Tillman were handled in an identical fashion to those grievances filed by other members, regardless of their gender or race.  The amount of time it took to process Ms. Tillman's grievances is consistent with the processing of all grievances filed in this facility.

14.    When a determination was made not to take grievance numbers 696 and 2809 to arbitration, Ms. Tillman was advised of each of the prior determinations by mail.  In the general case of decisions not to process the grievance further, the grievant is advised that he has the option of appealing the decision to the Local 830 Executive Board, in accordance with the local union's by-laws.  At not time did Tillman ever attempt to appeal any of these determinations.

I have read this statement consisting of three (3) pages, including this page. I fully understand its contents and I certify that it is true and correct to the best of my knowledge and belief.

DANIEL H. GRACE

Date: 12/14/06