IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN, :
:
    Plaintiff, :    C.A. Number: 04-1314
:
v. :
:
THE PEPSI BOTTLING GROUP, INC., :
and TEAMSTERS LOCAL UNION 830 :
:
    Defendants. :

---

**MEMORANDUM OF LAW AND OF DEFENDANT
BOTTLING GROUP, LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND SANCTIONS**

---

                                         William M. Kelleher (#3961)
                                         Ballard Spahr Andrews & Ingersoll, LLP
                                         919 Market Street, 12th Floor
                                         Wilmington, DE 19801
                                         (302) 252-4460

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

DMEAST #9743048 v2

# TABLE OF CONTENTS

|      |                                                                                                                                   | Page |
|------|-----------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | NATURE AND STAGE OF PROCEEDINGS                                                                                                   | 1    |
| II.  | SUMMARY OF ARGUMENT                                                                                                               | 2    |
| III. | STATEMENT OF UNDISPUTED MATERIAL FACTS                                                                                            | 3    |
|      | A. General Background of Bottling Group, LLC.                                                                                     | 3    |
|      | B. Plaintiff's Employment History.                                                                                                | 4    |
|      | C. Plaintiff Goes Out on Medical Leave and Accepts Employment With Another Company.                                               | 4    |
|      | D. Plaintiff Goes Out on Leave Again and Accepts Employment With Another Company.                                                 | 6    |
|      | E. Plaintiff Accepts Employment with Yet Another Company While On Leave, and PBG Terminates Her Employment.                       | 7    |
|      | F. Plaintiff's Claims Against PBG.                                                                                                | 8    |
| IV.  | ARGUMENT                                                                                                                          | 9    |
|      | A. Summary Judgment Standard.                                                                                                     | 9    |
|      | B. PBG Is Entitled to Summary Judgment on its Counterclaim For Fraud Against Plaintiff.                                           | 10   |
|      | C. PBG Is Entitled to Summary Judgment and Restitution As A Result of Plaintiff's Unjust Enrichment.                              | 14   |
|      | D. The Court Should Sanction Plaintiff For Her Bad Faith Conduct.                                                                 | 15   |
| V.   | CONCLUSION                                                                                                                        | 17   |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 9

*Chambers v. Nasco*, 501 U.S. 32 (1991) ........................................................................ 15

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245 (1st Cir. 1996) ......................................................................................................... 9

*Lawrence v. National Westminster Bank*, 98 F.3d 61 (3d Cir. 1996) ............................... 9

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............. 10

*Sarko v. Penn-Del Directory Co.*, 968 F. Supp. 1026 (E.D. Pa. 1997), aff'd, 189 F.3d 464 (3d Cir. 1999) ........................................................................................ 9

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998) ............................ 9

*Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994) ................................................................................................................. 9

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ........................................................ 9

## STATE CASES

*Amstel Associate, LLC v. Brinsfield-Cavall Associate*, 2002 Del. Ch. LEXIS 54 (Jan. 15, 2004) ............................................................................................................. 15

*H-M Wexford LLC v. Encorp. Inc.*, 832 A.2d 129 (Del. Ch. 2003) ................................ 10

*In re Healthsouth Corp. Shareholders Litigation*, 845 A.2d 1096 (Del Ch. 2003) ......... 14

*Schock v. Nash*, 732 A.2d 217 (Del. 1999) .................................................................... 14

*Stephenson v. Capano Development, Inc.*, 462 A.2d 1069 (Del Super. Ct. 1983) ......... 10

## FEDERAL RULES

Fed. R. Civ. P. 56(c) ......................................................................................................... 9

I.  **NATURE AND STAGE OF PROCEEDINGS**

This is an employment case in which Plaintiff, a former employee of Bottling Group, LLC ("PBG"), filed a Complaint against PBG and Teamsters Local Union 830 ("the Union") on September 29, 2004. On October 14, 2005, PBG answered Plaintiff's Complaint and asserted counterclaims for fraud and unjust enrichment against Plaintiff stemming from her unlawful receipt of worker's compensation benefits.

On December 13, 2005, PBG and the Union commenced Plaintiff's deposition. Plaintiff's deposition was completed on October 11, 2006. At her deposition, Plaintiff was asked about the settlement of her worker's compensation claim and her employment with another company, while she was on leave from PBG for her total disability, during the same time period. Plaintiff maintained that, although she received compensation from PBG in 2004, she had no knowledge that her worker's compensation claim had been settled, as her attorney neither showed her the settlement agreement nor explained to her its terms.

On the basis of Plaintiff's representations, PBG issued and served a subpoena on Plaintiff's former worker's compensation counsel, Beverly Bove, Esquire, directing her to produce any executed settlement agreements evidencing the settlement of Plaintiff's worker's compensation claim, any notes regarding conversations about the settlement and any letters sent to Plaintiff regarding, enclosing or communicating the terms of the settlement agreement. On November 14, 2006, Plaintiff filed a motion to quash the subpoena. On November 17, 2006, PBG filed a motion in opposition. Thereafter, on January 24, 2007 the Court denied Plaintiff's motion to quash and ordered that the subpoena be enforced limited to directing counsel to produce: (a) any executed settlement agreements evidencing the settlement of Plaintiff's worker's compensation claims; and (b) any letters sent to Plaintiff regarding, enclosing or communicating the terms of the settlement agreement and/or settlement agreements.

Factual discovery was set to close on December 1, 2006 pursuant to the Court's August 21, 2006 scheduling order. On November 30, 2006 Plaintiff filed a motion to compel and requested an extension of discovery. On December 15, 2006, PBG moved for summary judgment on all of Plaintiff's claims. On January 16, 2007, Plaintiff filed a response to PBG's motion pursuant to Rule 56(f). Thereafter, on January 24, 2007, the Court issued an Order extending discovery until February 28, 2007 for the limited purpose of permitting Plaintiff to depose five PBG witnesses. The Court further denied the pending motions for summary judgment and ordered that dispositive motions be filed on or before March 28, 2007.

PBG now moves for summary judgment on its counterclaims for fraud and unjust enrichment against Plaintiff and for sanctions against Plaintiff for bad faith.

## II.    SUMMARY OF ARGUMENT

Plaintiff knowingly made false representations to induce PBG to settle her worker's compensation claim in exchange for monetary compensation. Indeed, the undisputed record evidence demonstrates that Plaintiff perpetrated a fraud against PBG and was unjustly enriched when she applied for and accepted employment with another company during the time she asserted to PBG that she was totally disabled and unable to work. On two subsequent occasions, while Plaintiff was still employed by PBG and on leave under the pretense that she was medically unable to work, Plaintiff applied for and accepted employment with two additional companies, where she performed duties equivalent to her duties at PBG.

In an effort to conceal her deceit, Plaintiff has maintained that she had no knowledge that her worker's compensation claim had been settled, as her attorney never relayed this information to her. However, documents obtained from Plaintiff's former worker's compensation counsel, which Plaintiff attempted to preclude PBG from obtaining, tell a much different story. These documents reveal that, contrary to Plaintiff's assertions, she was well

aware of the terms of her worker's compensation settlement with PBG when the settlement was executed. These terms included a clear statement that Plaintiff was receiving monetary compensation for her total disability.

As a result of Plaintiff's false representations, on which PBG justifiably relied, PBG suffered damages and Plaintiff was unjustly enriched. Plaintiff's retention of this monetary compensation from PBG for a claim of total disability during a period in which she worked for another company, violates the fundamental principles of justice or equity and good conscience. Moreover, Plaintiff's flagrant denial of, and attempts to conceal, her deceit forced PBG to unnecessarily expend resources in order to uncover the truth and to expose Plaintiff's fraud.

For these reasons, and those detailed herein, summary judgment should be entered in favor of PBG on its counterclaims for fraud and unjust enrichment. Additionally, sanctions should be imposed against Plaintiff for her bad faith conduct in asserting a defense to PBG's claims which she knew to be false.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

### A.    General Background of Bottling Group, LLC.

1.    Bottling Group, LLC, d/b/a/ The Pepsi Bottling Group ("PBG"), is the world's largest manufacturer, seller and distributor of Pepsi-Cola beverages. See Pepsi Bottling Group Overview, *available at* http://www.pbg.com/about/about_overview.html. PBG maintains facilities throughout the United States and abroad. Id.

---

[1]    For purposes of this motion, PBG has, as it must, resolved all disputed facts in favor of Plaintiff. It, however, reserves its right to dispute certain facts set forth herein.

### B.     Plaintiff's Employment History.

2.      On or about May 8, 2001, PBG hired Plaintiff Marlayna Tillman ("Plaintiff") as a Merchandiser in its Wilmington, Delaware facility. (Ex. 2, Compl. ¶ 11; Ex. 3, Pl. Dep. at 107-08). As a Merchandiser, Plaintiff was responsible for maintaining shelf space, displays and coolers with Pepsi-Cola products at retail establishments according to PBG's standards. (Ex.4, Merchandiser Job Posting; Ex. 3, Pl. Dep. at 109).

3.      In or around June 2002, Plaintiff applied for and accepted a position as a Warehouse Person. (Ex. 8, Altman Verification ¶ 11). Plaintiff was transferred to the warehouse on or about July 29, 2002. (Id.)

### C.     Plaintiff Goes Out on Medical Leave and Accepts Employment With Another Company.

4.      On or about November 6, 2003, Plaintiff injured herself at work. (Ex. 3, Pl. Dep. at 44, 88-89). As a result of this injury, Plaintiff was out of work from November 6. 2003 until April 19, 2004. (Id. at 89).

5.      Plaintiff filed a worker's compensation claim related to her injury. (Id.). PBG settled Plaintiff's claim on or about June 14, 2004. (Ex. 16, Letter to Grandell enclosing Settlement Agreement). Plaintiff received monetary compensation in the amount of $8724.58 (including attorneys fees) from PBG. (Ex. 17, Settlement Agreement and related documents). The settlement agreement and check stated clearly that the settlement payment was based on a representation that Plaintiff was totally disabled and unable to work from November 6, 2003 to April 18, 2004. (Id.).

6. In March 2004, while on a medical leave of absence from PBG, Plaintiff applied for and accepted employment with RJM Vending. (Ex. 18, RJM Vending Employment Application, W-4 Form and Pay Stub). Plaintiff was hired into the position of vending machine technician. (Ex. 3, Pl. Dep. at 41). Her responsibilities included driving a company vehicle and restocking vending machines. (Id. at 42). The position was not a light duty position. (Id. at 46). Plaintiff resigned after working only one week. (Id. at 42). Plaintiff did not advise PBG that she was working for RJM while still employed by PBG. (Ex. 8, Altman Verification ¶ 14).

7. At her deposition, Plaintiff was asked about the settlement of her worker's compensation claim and her work at RJM during the same time period. Plaintiff maintained that, although she received compensation from PBG in 2004, she had no knowledge that her worker's compensation claim had been settled, as her attorney neither showed her the settlement agreement nor explained to her its terms. (Ex. 3, Pl. Dep. at 89-98). In addition, Plaintiff asserted that she never received the settlement check made out to her from Sedgwick Claims Management Services, Inc., PBG's worker's compensation insurance carrier, nor did she recall ever giving her attorney permission to sign the check on her behalf. (Id.)

8. On the basis of Plaintiff's representations at her deposition, PBG sent a subpoena to Beverly Bove, Esquire, Plaintiff's former worker's compensation counsel, directing that she produce any executed settlement agreements evidencing the settlement of Plaintiff's worker's compensation claim, any notes regarding conversations about the settlement and any letters sent to Plaintiff regarding, enclosing or communicating the terms of the settlement agreement and/or settlement agreements. (Ex. 31, Subpoena to Beverly Bove).

9. Plaintiff's counsel filed a motion to quash the subpoena. PBG filed a motion in opposition. Thereafter, on January 24, 2007, the Court denied Plaintiff's motion to quash and ordered that the subpoena be enforced limited to directing counsel to produce: (a) any executed settlement agreements evidencing the settlement of Plaintiff's worker's compensation claims; and (b) any letters sent to Plaintiff regarding, enclosing or communicating the terms of the settlement agreement and/or settlement agreements.

10. On February 1, 2007, in accordance with the Court's Order, Beverly Bove sent PBG's counsel the contents of her file. (Ex. 32, Documents received from Beverly Bove).[2] Among these documents was an Agreement to Compensate, a State of Delaware Office of Workers' Compensation Receipt for Compensation Paid and a Distribution of Proceeds, in which Plaintiff authorized Ms. Bove to endorse all settlement drafts. (Id.). All three documents were signed by Plaintiff. (Id.). Both the Agreement to Compensate and the Receipt for Compensation Paid contained notations that Plaintiff disputed the amount of compensation she was to receive in her settlement with PBG. (Id.).

**D. Plaintiff Goes Out on Leave Again and Accepts Employment With Another Company.**

11. On or about June 1, 2004, Plaintiff allegedly reaggravated her injury and again went out on leave. (Ex. 3, Pl. Dep. at 49; Ex. 19, Workers' Comp. Notes). Plaintiff applied for but was denied worker's compensation related to the reaggravation. (Ex. 19,

---

[2] In her cover letter enclosing Plaintiff's worker's compensation file, Ms. Bove explained that on December 1, 2004, another attorney, Jessica Welch, Esquire, took over Plaintiff's representation. (Ex. 32, Documents received from Beverly Bove). Thereafter, a copy of Ms. Bove's entire file was sent to Ms. Welch and Plaintiff. (Id.). Plaintiff never disclosed to PBG her representation by Ms. Welch, nor has she turned over in discovery her copy of Ms. Bove's file. PBG has sent to Ms. Welch two letters requesting that she turn over any documents in her possession responsive to the Court's January 24, 2007 Order.

Workers' Comp. Notes).

**12.**     Six days after leaving PBG because of this alleged reaggravation, Plaintiff began working for Cott Beverage Company as a Switcher. (Ex. 3, Pl. Dep. at 46; Ex. 20, Cott Beverage Payroll Change Notice). This position was equivalent to the position that Plaintiff held at PBG. (Ex. 3, Pl. Dep. at 47). Notably, Plaintiff applied for the position on May 1, 2004 and stated that she was available to begin work on May 20, 2004 – before she allegedly reaggravated her prior injury. (Id. at 49-52, 54-55; Ex. 21, Cott Beverage Employment Application).

**13.**     Cott Beverage terminated Plaintiff's employment on June 10, 2004 because of absenteeism. (Ex. 3, Pl. Dep. at 48; Ex. 22, Cott Beverage Payroll Change Notice). Plaintiff did not advise PBG that she was working for Cott Beverage while still employed by PBG. (Ex. 8, Altman Verification ¶ 16).

### E. Plaintiff Accepts Employment with Yet Another Company While On Leave, and PBG Terminates Her Employment.

**14.**     On or about November 22, 2004, Plaintiff faxed PBG a doctor's note from her primary care physician stating that she was unable to work due to stress.[3] (Ex. 23, Doctor's Note; Ex. 3, Pl. Dep. at 61). Plaintiff requested and PBG granted Plaintiff a leave of absence based on that representation.

**15.**     In or about November 2004, Plaintiff moved to Brooklyn, New York.

---

[3]   Dr. Andrew Nash was Plaintiff's primary care physician and not a psychiatrist. (Ex. 3, Pl.'s Answers to Def.'s First Set of Interrogatories ¶ 8). Several months earlier, Plaintiff sought treatment from Dr. O'Beidy, a psychiatrist who diagnosed her with "malingering." (Ex. 25, O'Beidy Notes dated 7/7/04). The DSM-IV describes the essential feature of malingering as ". . . the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives. . ."

(Ex. 3, Pl. Dep. at 69). On or about November 29, 2004, Plaintiff applied for employment with J.B. Hunt. (Ex. 26, J.B. Hunt Employment Application). She began working for the company as a driver in New Brunswick, New Jersey shortly thereafter. (Ex. 3, Pl. Dep. at 58). Her duties at J.B. Hunt were equivalent to the duties she performed at PBG as a Transport Driver. (Id. at 60).

16. In December of 2004, PBG discovered that Plaintiff was working for J.B. Hunt during her medical leave of absence from PBG. (Ex. 27, Letter from Swartz to Tillman dated January 5, 2005). Thereafter, on or about January 3, 2005, Plaintiff acknowledged that she had been actively employed by, and receiving wages from, J.B. Hunt during her absence from PBG. (Id.). As a result, on January 5, 2005, PBG terminated Plaintiff's employment effective December 2, 2004, the day after her dual employment was first discovered. (Id.; Ex. 28, Employee Profile).

### F. Plaintiff's Claims Against PBG.

17. Plaintiff seeks compensatory and punitive damages against PBG for alleged discrimination, retaliation and violations of the Fair Labor Standards Act. (Ex. 2, Compl.).

18. Plaintiff has refused to produce, or permit PBG to request, her tax returns for tax year 2005. (Ex. 3, Pl. Dep. at 295-96).

19. At her deposition in December 2005, when asked whether she had her tax returns for the last few years in her possession, Plaintiff stated that she did not and that she would need to get copies. (Ex. 3, Pl. Dep. at 28).

**20.** At her deposition in October 2006, having not produced any tax returns, Plaintiff finally agreed to sign a release for PBG to obtain her returns for tax years 2001 through 2004. (Ex. 3. Pl. Dep. at 295).

**21.** On February 27, 2007, PBG received a letter from the IRS in response to its request for Plaintiff's tax returns, stating that the IRS found no records of any tax returns filed by Plaintiff for tax years 2001 through 2004. (Ex. 33, IRS Records).

## IV.  ARGUMENT

### A.  Summary Judgment Standard.

Summary judgment must be granted when the pleadings, affidavits and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Lawrence v. National Westminster Bank, 98 F.3d 61, 65 (3d Cir. 1996). The non-moving party must point to specific evidence of record that demonstrates a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Although the Court must resolve all doubts and consider the evidence in the light most favorable to the opposing party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), the non-movant cannot escape summary judgment by introducing "a mere scintilla of evidence" in her favor, Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), aff'd, 189 F.3d 464 (3d Cir. 1999), or by relying on "conclusory allegations, improbable inferences, and unsupported speculation[.]" J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); accord Solt v. Alpo Petfoods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994). "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor. Schoonejongen v. Curtiss-Wright

Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

### B. PBG Is Entitled to Summary Judgment on its Counterclaim For Fraud Against Plaintiff.

The Court should grant summary judgment in PBG's favor on its counterclaim for fraud against Plaintiff. To establish a claim for common law fraud, a plaintiff must demonstrate: (1) the existence of a false representation, usually one of fact, made by the defendant; (2) the defendant had knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth; (3) the defendant had the intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or did not act in justifiable reliance on the representation; and (5) the plaintiff suffered damages as a result of such reliance. H-M Wexford LLC v. Encorp. Inc., 832 A.2d 129, 144 (Del. Ch. 2003) (citing Stephenson v. Capano Dev., Inc., 462 A.2d. 1069, 1074 (Del Super. Ct. 1983)). PBG can establish all of these requisite elements.

#### 1. Plaintiff Falsely Represented That She Was Totally Disabled.

On November 6, 2003, Plaintiff injured herself at work and was out of work at PBG until April 19, 2004. (Ex. 3, Pl. Dep. at 44, 88-89). As a result of her injury, Plaintiff filed a worker's compensation claim, which PBG settled on June 14, 2004. (Id.; Ex. 16, Letter to Grandell enclosing Settlement Agreement). The settlement agreement stated clearly that the settlement payment was based on a representation that Plaintiff was totally disabled and unable to work from November 6, 2003 to April 18, 2004. (Ex. 17, Settlement Agreement and related documents).

However, during this period when Plaintiff was asserting that she had a "total disability" which precluded her from working, Plaintiff applied for and accepted employment

with RJM Vending ("RJM") as a vending machine technician. (Ex. 18, RJM Vending Employment Application, W-4 Form and Pay Stub; Ex. 3, Pl. Dep. at 41-42). Notably, Plaintiff's position at RJM was not a light duty position. (Ex. 3, Pl. Dep. at 46). To the contrary, Plaintiff's job duties at RJM included driving a company vehicle and restocking vending machines. (Ex. 3, Pl. Dep. at 42). (Id.). Plaintiff did not advise PBG that she was working for RJM while still employed by PBG. (Ex. 8, Altman Verification ¶ 14). Thus, Plaintiff falsely represented to PBG that between November 6, 2003 and April 18, 2004, she was totally disabled and unable to work.

Significantly, this was not the last time that Plaintiff falsely represented to PBG the nature of her injuries and her ability to work. Indeed, on two more occasions, while Plaintiff was still employed by PBG and while on leave from PBG under the pretense that she was medically unable to work, Plaintiff again applied for and accepted employment with other companies. Specifically, in June 2004, only six days after leaving PBG because of an alleged reaggravation of her prior injury, Plaintiff, unbeknownst to PBG, began working for Cott Beverage in a position equivalent to the one she held at PBG. (Ex. 3, Pl. Dep. at 47; Ex. 8, Altman Verification ¶ 16). Notwithstanding the fact that she was working for Cott Beverage during this leave, Plaintiff attempted to obtain worker's compensation benefits from PBG related to this alleged reaggravation. (Ex. 19, Workers' Comp. Notes). Plaintiff's claim was denied. (Id.).

Additionally, in November 2004, after notifying PBG that she was unable to work due to stress, and after PBG granted her a leave of absence based on that representation, Plaintiff once again applied for and accepted employment with yet another company, performing job

duties equivalent to those she performed at PBG. (Ex. 26, J.B. Hunt Employment Application; Ex. 3, Pl. Dep. at 60).

### 2. Plaintiff Knew That Her Representation That She Was Totally Disabled Was False.

As set forth in the Facts section above, PBG settled Plaintiff worker's compensation claim in June 2004, approximately three months after Plaintiff worked for RJM while she was still employed by PBG. Given the timing, there can be no question that at the time of Plaintiff's worker's compensation settlement, Plaintiff knew that she was not totally disabled during the entire period of November 6, 2003 through April 18, 2004, as the settlement required.

In an effort to defend against PBG's fraud claim Plaintiff has contended that she was not aware that her receipt of worker's compensation benefits was based on an assertion that she was totally disabled from November 6, 2003 through April 18, 2004. Incredibly, at her deposition Plaintiff maintained that, although she received compensation from PBG in 2004, she had no knowledge that her worker's compensation claim had been settled, as her attorney neither showed her the settlement agreement nor explained to her its terms. (Ex. 3, Pl. Dep. at 89-98). Specifically, Plaintiff testified as follows:

> Q: My question is did her attorney relay the information contained in this document [the settlement agreement and related documents] to her and she's saying no.
>
> A: My answer is no.
>
> ************************************************
>
> Q: And what I'm asking you is, did they [Plaintiff's attorneys] consult you before they agreed to settle your claim?
>
> A: In what capacity? I know that --
>
> Q: About the terms of the settlement.
>
> A: No.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> Q: What was your understanding of why you were receiving disability money?
>
> A: Again, that's the part that's unclear to me. I don't know why I received the money. My attorney did not make that clear to me, did not specify to me what that money was for.

(Ex.___, Pl. Dep. 95-98). In addition, Plaintiff asserted that she never received the settlement check made out to her from Sedgwick Claims Management Services, Inc., PBG's worker's compensation insurance carrier, nor did she recall ever giving her attorney permission to sign the check on her behalf. (Ex. 3, Pl. Dep. 89-98).

However, records obtained from Plaintiff's worker's compensation counsel, which Plaintiff attempted to preclude PBG from obtaining, tell a much different story. These records reveal that Plaintiff not only signed the settlement agreement, which clearly states that her settlement with PBG is for a claim of total disability from the period of November 6, 2003 to April 18, 2004, but Plaintiff also disputed the very terms of the settlement agreement of which she now contends she was unaware. (Ex. 32, Documents received from Beverly Bove). Specifically, Plaintiff disputed the credit deducted from the settlement amount for the short term disability she received. (Id.). Plaintiff's dispute as to the settlement amount directly contradicts her deposition testimony that her attorney never consulted her about the terms of the settlement agreement.

Thus, there is absolutely no question that at the time that PBG settled Plaintiff's worker's compensation claim, in June 2004, Plaintiff knew that she was not totally disabled for the entire period of November 6, 2003 through April 18, 2004, and thus she knew that she was falsely representing this fact to PBG.

### 3. Plaintiff Intended To Induce PBG To Compensate Her and PBG Justifiable Relied on Plaintiff's False Representations to its Detriment.

Plaintiff falsely represented that she was totally disabled in order to induce PBG to provide her with monetary compensation as part of her worker's compensation settlement. In reliance on Plaintiff's representations, PBG settled Plaintiff's claim and provided her with monetary compensation for a five-month period of "total disability". (Ex. 17, Settlement Agreement and related documents). As a result of Plaintiff's representations, PBG suffered damages in defending against and ultimately settling a fraudulent claim. (Id.). Moreover, PBG has continued to incur damages as a result of Plaintiff's brazen attempt to conceal her fraudulent conduct.

Accordingly, for the reasons set forth above, PBG is entitled to summary judgment on its counterclaim for fraud against Plaintiff.

### C. PBG Is Entitled to Summary Judgment and Restitution As A Result of Plaintiff's Unjust Enrichment.

Plaintiff was unjustly enriched as a result of her fraud on PBG. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." In re Healthsouth Corp. Shareholders Litig., 845 A.2d 1096 (Del Ch. 2003) (citing Schock v. Nash, 732 A.2d 217, 232-33 (Del. 1999)). To obtain restitution a plaintiff must demonstrate that: (1) the defendant was unjustly enriched; (2) the defendant secured a benefit; and (3) it would be unconscionable to allow defendant to retain the benefit. Id. "Restitution serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep . . . even though the plaintiff may have suffered no demonstrable losses." Id.

Here, Plaintiff was unjustly enriched by acquiring monetary compensation from PBG as a result of her fraudulent representations. Plaintiff's retention of this monetary compensation from PBG, for her claim of total disability, despite the fact that she applied for and obtained employment with another company during the period in which she claimed to be totally disabled, violates the "fundamental principles of justice or equity and good conscience." Id.

Further, Plaintiff secured a benefit of $8724.58 (including attorneys fees) for her claim of total disability. (Ex. 17, Settlement Agreement and related documents). Thus, allowing Plaintiff to retain this benefit would be unconscionable. See e.g., Amstel Assoc., LLC v. Brinsfield-Cavall Assoc., 2002 Del. Ch. LEXIS 54 at * 30-31(Jan. 15, 2004) (awarding restitution where defendant was unjustly enriched at plaintiff's expense).

Accordingly, PBG is entitled to summary judgment and restitution for Plaintiff's unjust enrichment.

### D.   The Court Should Sanction Plaintiff For Her Bad Faith Conduct.

In addition to granting PBG's motion for summary judgment, the Court should impose sanctions on Plaintiff for her bad faith conduct during this litigation. It is well settled that federal courts have the inherent power to impose sanctions "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. " Chambers v. Nasco, 501 U.S. 32, 43 (1991). The Supreme Court has made clear that this inherent power is not circumscribed by the existence of a procedural rule that may punish the same conduct. Id. at 49-50.

Plaintiff has engaged in bad faith conduct by asserting a defense to PBG's claims for fraud and unjust enrichment that she knew to be untrue. Specifically, Plaintiff contended that she was not aware that her receipt of worker's compensation benefits was based on an assertion that she was totally disabled from November 6, 2003 and April 18, 2004. (Ex. 3, Pl. Dep. at 89-98). However, the documents obtained from Plaintiff's worker's compensation counsel, which

Plaintiff vigorously attempted to preclude PBG from obtaining, completely refute this contention.[4] Significantly, these documents reveal that Plaintiff was well aware of the terms of the settlement agreement. (Ex. 32, Documents received from Beverly Bove). Thus, there is no question that Plaintiff knowingly made false representations to PBG in order to induce PBG to provide her with monetary compensation. And Plaintiff further knowingly attempted to conceal her deceit in order to defend against PBG's claims. Such conduct is utterly unacceptable and should not go unpunished.[5]

Plaintiff's bad faith conduct in defending against PBG's claims has prolonged this litigation and has further injured PBG by forcing it to unnecessarily expend time and resources in order to uncover and expose Plaintiff's deceit. Accordingly, Plaintiff should be precluded from defending against PBG's claims for fraud and unjust enrichment, and PBG should be awarded attorneys fees.

---

[4] Further, despite Plaintiff's claim at her deposition that she had never even seen the settlement agreement, Beverly Bove, her former worker's compensation counsel, provided Plaintiff with a copy of her file at the close of her representation. (Ex. 32, Documents received from Beverly Bove). This file contained an executed copy of the Agreement to Compensate signed by Plaintiff. (Id.).

[5] Plaintiff's dishonesty transcends the instant dispute. For example, Plaintiff has maintained since December 2005, that she would provide PBG with copies of her tax returns. (Ex. 3, Pl. Dep. at 28). However, as PBG recently discovered, Plaintiff has not filed tax returns for tax years 2001 through 2004. (Ex. 33, IRS Records).

## V.   CONCLUSION

For all of the foregoing reasons, summary judgment should be entered in favor of PBG and against Plaintiff on PBG's counterclaims for fraud and unjust enrichment. Further, sanctions should be imposed against Plaintiff for her bad faith conduct.

Respectfully submitted,

Dated:  March 28, 2007

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE  19801
(302) 252-4460

Attorneys for Defendant
Bottling Group, LLC

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500