## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARLAYNA G. TILLMAN, | : | |
| | : | |
| Plaintiff, | : | C.A. Number:  04-1314 |
| | : | |
| v. | : | |
| | : | |
| THE PEPSI BOTTLING GROUP, INC., | : | |
| and TEAMSTERS LOCAL UNION 830 | : | |
| | : | |
| Defendants. | : | |

---

### MEMORANDUM OF LAW AND APPENDIX OF
### DEFENDANT BOTTLING GROUP, LLC
### IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

---

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4460

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

DMEAST #9683908 v3

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF PROCEEDINGS ................................................... 1

III.   SUMMARY OF ARGUMENT ............................................................................ 2

IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS ............................... 3

       A.    General Background of Bottling Group, LLC. ...................................... 3

       B.    Plaintiff's Employment History. ........................................................... 4

       C.    Plaintiff Becomes a Member of the Union. ........................................... 7

       D.    Plaintiff Accepts Employment With Other Companies. ......................... 8

       E.    Plaintiff Accepts Employment with Another Company and PBG
             Terminates Her Employment. ................................................................ 9

       F.    Allegations of Unfair Pay. ................................................................... 10

       G.    Allegations of Failure to Promote. ...................................................... 11

       H.    Allegations of Disparate Treatment. .................................................... 12

       I.    Allegations of Retaliation. .................................................................. 12

V.     ARGUMENT ..................................................................................................... 13

       A.    Summary Judgment Standard. ............................................................. 13

       B.    Plaintiff's FLSA Claims Fail As A Matter of Law. ............................. 14

       C.    Plaintiff Cannot Demonstrate That She Received Unequal Pay Under The
             Equal Pay Act. ..................................................................................... 16

       D.    Plaintiff Cannot Demonstrate That She Was Paid Less Than Her Male Co-
             workers in Violation of Title VII. ........................................................ 20

       E.    Plaintiff Cannot Establish That She Was Subjected to Discrimination
             Based on Her Race or Sex. ................................................................... 21

       F.    Plaintiff Cannot Prove A Claim for Retaliation. ................................. 36

VI.    CONCLUSION .................................................................................................. 40

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adkins v. Shoe Show of Rocky Mount, Inc.*, No. 03-406, 2005 WL. 662664 (D.
  Del. March 16, 2005)...................................................................................................35

*Allen v. Best Foods Baking Co.*, 2003 WL. 22858351 (E.D. Pa., Oct 22, 2003) ..............24

*Anderson v. Mcintosh Inn*, 295 F. Supp. 2d 412 (D. Del. 2003) .......................................22

*Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3d Cir. 1977)..................................16

*Bailey v. Principi*, No. 02-942, 2003 U.S. Dist. LEXIS 15538 (E.D. Pa. Aug. 25,
  2003) ...........................................................................................................................29

*Bania v. Ford Motor Co.*, No. 91-2012, 1992 U.S. App. LEXIS 22054 (6th Cir.
  Sept. 2, 1992) ..............................................................................................................15

*Bates v. Tandy Corp.*, No. 03-5519, 2005 WL. 1798825 (E.D. Pa. Aug. 1, 2005) ...........26

*Blackburn v. United Parcel Service*, 179 F.3d 81 (3d Cir. 1999)......................................31

*Brian v. The Greif Co.*, No. 88-5752, 1990 U.S. Dist. LEXIS 16878 (E.D. Pa.
  Dec. 11, 1990)..............................................................................................................17

*Burlington Industrial, Inc. v. Ellerth*, 524 U.S. 742 (1998)................................................33

*Campbell v. Pennsylvania College of Optometry*, Civ. A. No. 95-0073, 1995 U.S.
  Dist. LEXIS 11708 (E.D. Pa. Aug. 15, 1995).........................................................25, 30

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................13

*Collins v. Board of Trustees of the University of Alabama*, No. 05-16268, 2006
  U.S. App. LEXIS 29989 (11th Cir. Dec. 6, 2006).........................................................25

*Crawley v. Runyon*, Civ. Action No. 96-6862, 1998 WL. 355529 (E.D. Pa. 1999)..........34

*Decesare v. National Railroad Passenger Corp.*, Civ. Action No. 98-3851, 1999
  WL. 330258 (E.D. Pa. 1999) .......................................................................................34

*Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148 (2003).........................................................21

*Devore v. City of Phila.*, No. 04-3030, 2005 U.S. Dist. LEXIS 19582 (E.D. Pa. Sept. 7, 2005) ............................................................................................................29

*Eaddy v. PA Department of Public Welfare Berks Count Assistance Office*, No. 04-5909, 2006 U.S. Dist. LEXIS 11674 (E.D. Pa. March 20, 2006)...........................32

*Firestone v. S. Cal, Gas Co.*, 219 F.3d 1063 (9th Cir. 2000) ...........................................15

*Flores v. The Home Depot*, No. 01-6908, 2003 U.S. Dist. LEXIS 5510 (E.D. Pa. 2003) ....................................................................................................................24

*Fritchett v. Stroehmann Bakeries, Inc.*, No. 95-284, 1995 U.S. Dist. LEXIS 13862, (E.D. Pa. September 20, 1995) ........................................................................31

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ...........................................................30, 31

*Gemmell v. Meese*, 655 F. Supp. 577 (E.D. Pa. 1986).......................................................38

*Gomez v. Pellicone*, 986 F. Supp. 220 (S.D.N.Y. 1997) ...................................................24

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) ...........................................................22

*Henderson v. Charities Valley School*, 136 Fed. Appx. 456, 460 (3d Cir. 2005) .............17

*Hodgson v. Golden Isles Convalescent Homes*, 468 F.2d 1256 (5th Cir. 1972) ..............17

*Igwe v. E.I. DuPont De Nemours and Co., Inc.*, No. 03-839, 2005 WL. 196577 (D. Del. Jan. 26, 2005)..............................................................................................22

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245 (1st Cir. 1996)................................................................................................13

*Jackson v. Dana Corp.*, No. 98-5431, 1999 U.S. Dist. LEXIS 17380 (E.D. Pa. Nov. 9, 1999) ...........................................................................................................32

*Jones v. Sch. District of Philadelphia*, 198 F.3d 403 (3d Cir.1999)..................................24

*Jones v. United States Postal Service*, No. 02-1449, 2004 WL. 1739714 (D. Del July 21, 2004) .....................................................................................................35

*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir. 1997)...................................31

*Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996)......................................................38

*Kenney v. Footlocker Worldwide*, 55 Fed. Appx. 35, 37 (3d Cir. 2002)...........................38

*Koschoff v. Henderson*, Civ. A. No. 98-2736, 1999 WL. 907546 (E.D. Pa. 1999)...........34

*Kovoor v. Sch. District of Philadelphia*, 211 F. Supp. 2d 614 (E.D. Pa. 2002) ................23

*Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919 (7th Cir. 2000).......................................19

*Lawrence v. National Westminster Bank*, 98 F.3d 61 (3d Cir. 1996)..................................13

*Lewis v. University of Pittsburgh*, 725 F.2d 910 (3d Cir. 1984).........................................21

*Lissak v. U.S.*, 49 Fed. Cl. 281 (Fed. Cl. 2001) .................................................................19

*Love v. Pullman*, 404 U.S. 522 (1972)...............................................................................23

*Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001).......................................15

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) ................................................21

*Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995) .........................................................36

*Molthan v. Temple University*, 442 F. Supp. 448 (E.D. Pa. 1977), aff'd, 778 F.2d
    955 (3d Cir. 1985).........................................................................................................20

*Ostapowicz v. Johnson*, 541 F.2d 394 (3d Cir. 1976), cert. denied, 429 U.S. 1041
    (1977)..............................................................................................................................23

*Pinckney v. County of Northampton*, 512 F. Supp. 989 (E.D. Pa. 1981)...........................29

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir. 1991) ...............................................38

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)..............................34, 37, 38

*Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir.1997) ......................................23

*Ryan v. General Machine Products*, 277 F. Supp. 2d 585 (E.D. Pa. 2003) ......................23

*Sarko v. Penn-Del Directory Co.*, 968 F. Supp. 1026 (E.D. Pa. 1997), aff'd, 189
    F.3d 464 (3d Cir. 1999) .................................................................................................13

*Sarullo v. United State Postal Service*, 352 F.3d 789 (3d Cir. 2003) ................................38

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998)..............................14

*Secretary of Labor v. Washington Hospitality*, 475 F. Supp. 1242 (W.D. Pa. 1979) .................................................................................................................16

*Shanley v. Salesianum School*, No. 91-482, 1993 U.S. Dist. LEXIS 20944 (D. Del. April 27, 1993) ........................................................................................17, 31

*Shesko v. City of Coatesville*, 292 F. Supp. 719 (E.D. Pa. 2003) ......................................24

*Simpson v. Kay Jewelers*, 142 F.3d 639 (3d Cir. 1998)...............................................30, 32

*Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994)...........................................................................................................13

*Sonja J. Bray v. L.D. Caulk Dentsply International*, No. 98-441, 2000 WL. 1800527 (D. Del. July 21, 2000) ...............................................................................22

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997) ...................................17

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ...........................................22, 30

*Stewart v. INS*, 762 F.2d 193 (2d Cir. 1985) ....................................................................23

*Stewart v. Rutgers, The State University*, 120 F.3d 426 (3d Cir. 1997) ............................32

*Sylvester v. Unisys Corp.*, No. 97-7488, 1999 U.S. Dist. LEXIS 3607 (E.D. Pa. Mar. 25, 1999..........................................................................................................31

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) .....................21

*Turner v. PNC Bank*, No. 99-504, 2003 WL. 225080392 (D. Del. November 3, 2003) .....................................................................................................................22

*Underwood v. Sears, Roebuck & Co.*, 343 F. Supp. 2d 259 (D. Del. 2004).....................17

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ........................................................13

*Vadino v. A. Valley Engineers*, 903 F.2d 253 (3d. Cir. 1990) ....................................14, 15

*Visnikar v. Department of Environmental Protection*, No. 02-963, 2004 U.S. Dist. LEXIS 3645 (W.D. Pa. Jan. 27, 2004) .......................................................................19

*Weston v. Department of Corrections*, 251 F.3d 420 (3d Cir. 2001)...............33, 34, 36, 37

*Williams v. Rohm and Haas Co.*, 99-C 2003 U.S. Dist. LEXIS 26559 (E.D. Pa. May 2, 2003), aff'd 90 Fed. Appx. 627 (2004).....................................................25, 26

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir.), cert. denied, 522 U.S. 914
(1997) .............................................................................................................................36

*Young v. Pennsauken Township Sch. Dist.*, 47 Fed. Appx. 160, 161 .................................24

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1981 ...........................................................................................................3, 21

42 U.S.C. § 2000e-2(h) ......................................................................................................20

42 U.S.C.A. § 2000e-5 .......................................................................................................23

29 C.F.R. §§ 1620.15-17 ....................................................................................................17

29 C.F.R. § 1620.27 ...........................................................................................................20

29 U.S.C. § 206(d)(1) .........................................................................................................16

29 U.S.C. § 207 ..................................................................................................................14

29 U.S.C.A. § 207(a)(1) ......................................................................................................14

29 U.S.C. §§ 201-219 .........................................................................................................14

Fed. R. Civ. P. 56(c) ..........................................................................................................13

## I.    INTRODUCTION

Summary judgment should be entered in favor of defendant Bottling Group, LLC ("PBG") and against Plaintiff on her claims of discrimination, retaliation and violations of the Fair Labor Standards Act because there is no evidence that the PBG discriminated against Plaintiff in the terms and conditions of her employment, retaliated against plaintiff or failed to pay her appropriately. By stark contrast, the record evidence clearly demonstrates that Plaintiff was treated fairly and equitably at all times. As thoroughly discussed below, Plaintiff's claims are entirely based on speculation and conjecture. As such, her claims are ripe for summary judgment.

## II.    NATURE AND STAGE OF PROCEEDINGS

This is an employment case. Plaintiff, a former employee of PBG filed her Complaint against PBG and Teamsters Local Union 830 ("the Union") on September 29, 2004. Plaintiff's Complaint contains allegations of race discrimination, gender discrimination, sexual harassment, retaliation, failure to promote and breach of the covenant of good faith and fair dealing. Plaintiff's Complaint also asserts claims pursuant to the Fair Labor Standards Act ("FLSA") and the Delaware Wage Payment and Collection Act.

On November 19, 2004, PBG filed a motion to partially dismiss Plaintiff's Complaint which the Court granted in part on August 30, 2005. Specifically, the Court dismissed Plaintiff's claims for sexual harassment and breach of the covenant of good faith and fair dealing, as well as those brought pursuant to the Delaware Wage Payment and Collection Act. On November 23, 2004, the Union filed a motion for a more definite statement which was denied on August 30, 2005. On October 14, 2005, PBG answered Plaintiff's Complaint and asserted counterclaims for fraud and unjust enrichment against Plaintiff stemming from her

unlawful receipt of worker's compensation benefits. On October 19, 2005, the Union answered Plaintiff's Complaint.

On December 13, 2005, PBG and the Union commenced Plaintiff's deposition. PBG was unable to conclude the deposition because Plaintiff failed to provide documents responsive to written discovery previously propounded by PBG. The following day, Plaintiff's counsel moved to withdraw from the case. On January 5, 2006, the Court granted the motion. Seven months later, on or about July 19, 2006, Plaintiff's current counsel was admitted *pro hac vice*.

Factual discovery closed on December 1, 2006 pursuant to the Court's August 21, 2006 scheduling order. On November 30, 2006, Plaintiff filed a motion to compel and requested an extension of discovery. On December 15, 2006 PBG moved for summary judgment on all of Plaintiff's claims. On January 16, 2007, Plaintiff filed a response to PBG's motion pursuant to Rule 56(f). Thereafter, on January 24, 2007, the Court issued an Order extending discovery until February 28, 2007 for the limited purpose of permitting Plaintiff to depose five PBG witnesses. The Court further denied the pending motions for summary judgment and ordered that dispositive motions be filed on or before March 28, 2007.

PBG now moves for summary judgment because, even accepting Plaintiff's version of the facts, Plaintiff cannot establish that PBG violated the FLSA, discriminated against her on the basis of her sex or race, or retaliated against her.

## III.    SUMMARY OF ARGUMENT

Plaintiff alleges that PBG subjected her to discrimination, based on race and sex, and retaliation, and failed to compensate her in accordance with federal law. Yet, Plaintiff has no evidence to support her claims. Plaintiff cannot establish the requisite elements to succeed on

her claims under the FLSA, Title VII, the Equal Pay Act or 42 U.S.C. 1981 ("Section 1981").

As detailed below:

- Plaintiff's claims under the FLSA fail as a matter of law because Plaintiff admits that she was paid overtime of one and one-half times her regular rate for all hours worked in excess of 40 hours per work week.

- Plaintiff cannot establish a claim under the Equal Pay Act because Plaintiff cannot prove that she was paid less than her similarly situated male co-workers, and the evidence makes clear that any differences in pay rates were based on factors wholly unrelated to Plaintiff's sex.

- Plaintiff's claims for failure to promote pursuant to Title VII fail because Plaintiff failed to meet objective job qualifications, failed to apply for the positions in question and/or had low seniority.

- Plaintiff's claims of disparate treatment under Title VII fail because Plaintiff was not subjected to an adverse employment action, the alleged actions did not occur under circumstances giving rise to an inference of discrimination and Plaintiff cannot establish pretext.

- Plaintiff cannot establish that she was subjected to unlawful retaliation pursuant to Title VII because she did not suffer any adverse employment action and has not established that the alleged retaliators knew of her Charge of Discrimination or acted with retaliatory motive.

For these reasons, summary judgment should be entered in favor of PBG on all of

Plaintiff's claims.

## IV.     <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>[1]

### A.     **General Background of Bottling Group, LLC.**

1.     Bottling Group, LLC, d/b/a/ The Pepsi Bottling Group ("PBG"), is the

world's largest manufacturer, seller and distributor of Pepsi-Cola beverages. See Pepsi Bottling

Group Overview, *available at* http://www.pbg.com/about/about_overview.html. PBG maintains

facilities throughout the United States and abroad. <u>Id.</u>

---

[1]     For purposes of this motion, PBG has, as it must, resolved all disputed facts in favor of Plaintiff. It, however, reserves its right to dispute certain facts set forth herein.

2.      PBG's commitment to fair employment practices is set forth in its Equal

Employment Opportunity policy. (Ex. 1, PBG EEO Statement). The policy provides that PBG

is "dedicated to the policy of equality of employment opportunity for all of its employees and

applicants for employment without regard to their race, color, religion, gender, age, disability,

national origin, sexual orientation or any other category protected by law. This policy applies to

all Company activities including, but not limited to, retirement, hiring, firing, compensation,

assignment, training, benefits and promotion." (Id.). The policy also provides that: "[a]ny

employee who believes that conduct that violates this policy is occurring or has occurred,

whether or not it is directed toward the employee, must, without fear of retaliation, report the

relevant facts immediately" to the Human Resources Manager or Director. (Id.).

**B.      Plaintiff's Employment History.**

3.      On or about May 8, 2001, PBG hired Plaintiff Marlayna Tillman

("Plaintiff") as a Merchandiser in its Wilmington, Delaware facility. (Ex. 2, Compl. ¶ 11; Ex. 3,

Pl. Dep. at 107-08). As a Merchandiser, Plaintiff was responsible for maintaining shelf space,

displays and coolers with Pepsi-Cola products at retail establishments according to PBG's

standards. (Ex. 4, Merchandiser Job Posting; Ex. 3, Pl. Dep. at 109).

4.      The Merchandiser position is a non-union position and is not covered by

the collective bargaining agreements between PBG and the Union. (Ex. 3, Pl. Dep. at 411; Ex.

30, Altman Dep. at 94; Ex. 5, CBA covering 2000-2004 [hereinafter CBA 1]; Ex. 6, CBA

covering 2004-2007 [hereinafter CBA 2]). Merchandisers generally work in bulk, a sub-

department of the Sales department, which primarily services large retail establishments like

grocery stores.[2]  (Ex. 3, Pl. Dep. at 114, 222-23).  Plaintiff's rate of pay was the same as other male and non-Black Merchandisers. (Ex. 7, Merchandiser Pay Rates).

      5.     In or around November 2001, Plaintiff was temporarily assigned to perform merchandising duties, in a non-union capacity, in the conventional sub-department of the Sales department for two or three days during the work week to assist with the Space Race campaign.[3]  (Ex. 3, Pl. Dep. at 118; Ex. 30, Altman Dep. at 98-99).  The conventional sub-department primarily services convenience stores and small retail establishments.  (Ex. 3, Pl. Dep. at 113; Ex. 30, Altman Dep. at 136-37).  On the weekends, Plaintiff continued to perform merchandising duties in the bulk sub-department of the Sales department.  (Ex. 3, Pl. Dep. at 201).

      6.     It was not uncommon at the Wilmington facility for non-union employees to temporarily assist the conventional sub-department.  (Ex. 30, Altman Dep. at 129).  Indeed, several male employees including Matt Fields, Craig Nelson, Mark Maragus and Dave Zimbala, like Plaintiff, temporarily worked in the conventional sub-department.  (Ex. 30, Altman Dep. at 129-30, 148).  Matt Fields, Mark Maragus and Dave Zimbala were non-union merchandisers and were paid the merchandiser rate.  (Ex. 30, Altman Dep. at 145, 148-49).

      7.     The Relief Driver position is covered by the collective bargaining agreement and Relief Drivers are paid in accordance with the agreement. [4]  (Ex. 5, CBA 1 at 28).

---

[2]      The Sales department is divided into several sub-departments.  (Ex. 30, Altman Dep. at 136).

[3]      The "Space Race" campaign was an incentive program offered by PBG to its convenience store customers.  (Ex. 8, Altman Verification ¶ 5).  Under the program, PBG provided incentives to customers in exchange for enhanced product placement within their stores.  (Id.).  As part of the program, PBG agreed to reset (clean and reorganize) and merchandise the coolers in the customer's stores which displayed Pepsi-Cola.  (Id.).

[4]      The Relief Driver position is commonly called other names including extra man.  (Ex. 8, Altman Verification ¶ 6).

Relief Drivers provide coverage for employees who are unavailable to work. (Ex. 9, Relief Driver – Sales Job Posting). Thus, a Relief Driver's job duties vary. (Id.). For example, Relief Drivers cover for delivery drivers and are required to single-handedly sell and deliver product to stores and other retail establishments. (Ex. 8, Altman Verification ¶ 6). Additionally, Relief Drivers sell product to customers, collect sales revenues, and detail these transactions in their route books. (Ex. 9, Relief Driver – Sales Job Posting). During Plaintiff's time in the conventional sub-department of the Sales department, Plaintiff did not perform any of these functions. (Ex. 3, Pl. Dep. at 241; Ex. 30, Altman Dep. at 211).

8.    Like other driver positions at PBG, a CDL-A license is a requirement of the Relief Driver position. (Ex. 9, Relief Driver – Sales Job Posting). Among others, PBG denied Andy Purdy (Caucasian male) a Transport Driver position because he did not have a CDL-A license. (Ex. 10, Purdy's Transport Driver Bid Sheet dated Sept. 9, 2004).

9.    While performing merchandising duties in the conventional sub-department of the Sales department, Plaintiff expressed an interest in learning to drive a tractor trailer truck and obtaining a Class A Commercial Drivers License ("CDL-A license"). (Ex. 3, Pl. Dep. at 239-40; Ex. 8, Altman Verification ¶ 7). Because Plaintiff only had a CDL-A permit, she did not, and could not, drive a tractor trailer truck without supervision. (Ex. 3, Pl. Dep. at 241). PBG, however, permitted Plaintiff to train for the CDL-A license by driving with licensed employees in the conventional side of the Sales department. (Id. at 245). Plaintiff took and failed the written test for a CDL-A in or about May 2002.[5] (Id. at 243; Ex. 8, Altman Verification ¶ 8).

---

[5]    Over the next few years, PBG offered Plaintiff additional opportunities to train for her CDL. (Ex. 8, Altman Verification ¶ 9). Specifically, PBG offered Plaintiff the use of a PBG truck to train during her non-working hours. (Id.). Plaintiff was also required to drive trucks in PBG's yard in
(continued...)

10.    In or around May 2002, Plaintiff stopped performing functions in the conventional side of the Sales department. (Ex. 3, Pl. Dep. at 410-11).

### C.    Plaintiff Becomes a Member of the Union.

11.    In or around June 2002, Plaintiff applied for and accepted a position as a Warehouse Person. (Ex. 8, Altman Verification ¶ 11). Plaintiff was transferred to the warehouse on or about July 29, 2002. (Id.). Between Memorial Day and Labor Day, the demand for PBG's products increases dramatically. (Id.). As a result, Plaintiff's transfer was delayed slightly based on business needs. (Id.). She was not the only employee so affected. (Id.). Like Plaintiff, John Osciak (Caucasian male), was awarded a job bid on May 27, 2002 but was not moved into his new position until August 6, 2002. (Id.).

12.    Pursuant to the collective bargaining agreement between the Union and PBG, Plaintiff became a dues paying member of the Union once she transferred to the position of Warehouse Person. (Ex. 3, Pl. Dep. at 180, 411). Also pursuant to the contract, Plaintiff's rate of pay at the time of transfer was $12.68 or 80% of the contract rate of $15.75. (Id. at 179, 184-85). Two other employees who transferred to the warehouse at approximately the same time, Stan Coleman (Black male) and Bill Becker (Caucasian male) were paid at the same rate. (Ex. 8, Altman Verification ¶ 12). Nevertheless, based on Plaintiff's request, and because Plaintiff, Mr.

---

(...continued)

the course of performing her duties. (Id.). Additionally, PBG researched local truck driving schools for Plaintiff and agreed to permit her to take a leave of absence to attend one of the schools. (Id.). Plaintiff declined this offer. (Id.).

In or around September 2004, Plaintiff obtained a CDL-A license. (Ex. 3, Pl. Dep. at 247). Shortly thereafter, Plaintiff bid for and was awarded a driving position at PBG. (Id. at 248). On September 19, 2004, Plaintiff transferred to the position of Transport Driver. (Ex. 8, Altman Verification ¶ 10).

Coleman and Mr. Becker were all internal transfers, Phil Weber, plant manager at the time, agreed to retroactively pay all three employees the full union rate as of the date of transfer. (Id.).

13.    On or about September 22, 2002, PBG temporarily laid off nineteen manufacturing and warehouse employees, including Plaintiff. (Ex. 12, Memo Re: Lay-Offs). Pursuant to the collective bargaining agreement, the employees were laid off by seniority. (Ex. 5, CBA 1 at 17). Plaintiff was recalled to work on October 20, 2002. (Ex. 13, Personnel Action Request). Plaintiff received unemployment benefits for the time that she was not working. (Ex. 3, Pl. Dep. at 67). Plaintiff filed a grievance with the Union relating to her recall. (Id. at 255). The grievance was heard on November 20, 2002 and resolved. (Ex. 14, Grievance Report; Ex. 15, Grievance Release). Plaintiff was paid in full for the time she was laid-off. (Ex. 3, Pl. Dep. at 67, 255).

## D.    Plaintiff Accepts Employment With Other Companies.

14.    On or about November 6, 2003, Plaintiff injured herself at work. (Ex. 3, Pl. Dep. at 44, 88-89). As a result of this injury, Plaintiff was out of work from November 6, 2003 until April 19, 2004. (Id. at 89). Plaintiff filed a worker's compensation claim related to her injury. (Id.). PBG settled Plaintiff's claim on or about June 14, 2004. (Ex. 16, Letter to Grandell enclosing Settlement Agreement). The settlement agreement and check stated clearly that the settlement payment was based on a representation that Plaintiff was totally disabled and unable to work from November 6, 2003 to April 18, 2004. (Ex. 17, Settlement Agreement and related documents).

15.    In March 2004, while on a medical leave of absence from PBG , Plaintiff applied for and accepted employment with RJM Vending. (Ex. 18, RJM Vending Employment Application, W-4 Form and Pay Stub). Plaintiff was hired into the position of vending machine technician. (Ex. 3, Pl. Dep. at 41). Her responsibilities included driving a company vehicle and

restocking vending machines. (Id. at 42). The position was not a light duty position. (Id. at 46).

Plaintiff resigned after working only one week. (Id. at 42). Plaintiff did not advise PBG that she

was working for RJM while still employed by PBG. (Ex. 8, Altman Verification ¶ 14).

      16.     On or about June 1, 2004, Plaintiff allegedly reaggravated her injury and

again went out on leave. (Ex. 3, Pl. Dep. at 49; Ex. 19, Workers' Comp. Notes). Plaintiff

applied for and was denied worker's compensation related to the reaggravation. (Ex. 19,

Workers' Comp. Notes).

      17.     Six days after leaving PBG because of this alleged reaggravation, Plaintiff

began working for Cott Beverage Company as a Switcher. (Ex. 3, Pl. Dep. at 46; Ex. 20, Cott

Beverage Payroll Change Notice). This position was equivalent to the position that Plaintiff held

at PBG. (Ex. 3, Pl. Dep. at 47). Notably, Plaintiff applied for the position on May 1, 2004 and

stated that she was available to begin work on May 20, 2004 – before she allegedly reaggravated

her prior injury. (Id. at 49-52, 54-55; Ex. 21, Cott Beverage Employment Application).

      18.     Cott Beverage terminated Plaintiff's employment on June 10, 2004

because of absenteeism. (Ex. 3, Pl. Dep. at 48; Ex. 22, Cott Beverage Payroll Change Notice).

Plaintiff did not advise PBG that she was working for Cott Beverage while still employed by

PBG. (Ex. 8, Altman Verification ¶ 16).

**E.**     **Plaintiff Accepts Employment with Another Company and PBG Terminates
Her Employment.**

      19.     On or about November 22, 2004, Plaintiff faxed PBG a doctor's note from

her primary care physician stating that she was unable to work due to stress.[6] (Ex. 23, Doctor's

---

[6]    Dr. Andrew Nash was Plaintiff's primary care physician and not a psychiatrist. (Ex. 24, Pl.'s
Answers to Def.'s First Set of Interrogatories ¶ 8). Several months earlier, Plaintiff sought
treatment from Dr. O'Beidy, a psychiatrist who diagnosed her with "malingering." (Ex. 25,
O'Beidy Notes dated 7/7/04). The DSM-IV describes the essential feature of malingering as ". . .
(continued...)

Note; Ex. 3, Pl. Dep. at 61). Plaintiff requested and PBG granted Plaintiff a leave of absence based on that representation.

20.     In or about November 2004, Plaintiff moved to Brooklyn, New York. (Ex. 3, Pl. Dep. at 69). On or about November 29, 2004, Plaintiff applied for employment with J.B. Hunt. (Ex. 26, J.B. Hunt Employment Application). She began working for the company as a driver in New Brunswick, New Jersey shortly thereafter. (Ex. 3, Pl. Dep. at 58). Her duties at J.B. Hunt were equivalent to the duties she performed at PBG as a Transport Driver. (Id. at 60).

21.     In December of 2004, PBG discovered that Plaintiff was working for J.B. Hunt during her medical leave of absence from PBG. (Ex. 27, Letter from Swartz to Tillman dated January 5, 2005). Thereafter, on or about January 3, 2005, Plaintiff acknowledged that she had been actively employed by, and receiving wages from, J.B. Hunt during her absence from PBG. (Id.). As a result, on January 5, 2005, PBG terminated Plaintiff's employment effective December 2, 2004, the day after her dual employment was first discovered. (Id.; Ex. 28, Employee Profile).

F.     **Allegations of Unfair Pay.**

22.     In her deposition, when asked the basis of her allegations that she was improperly paid by PBG, Plaintiff stated the following:

a.     Plaintiff alleged that she was improperly paid overtime between November 2001 and May 2002 while she was performing merchandising duties in the conventional sub-department of the Sales department. (Ex. 3, Pl. Dep. at 226). Plaintiff did not dispute that she was paid one and one-half times her hourly rate for all hours worked in excess of

---

(...continued)
        the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives. . ."

the forty hour work week. (Id.). Instead, she alleged that the overtime should have been paid at the hourly rate of the Relief Driver position under the collective bargaining agreement. (Id.)

        b.     Plaintiff also contested the rate at which she was paid when she initially transferred to the warehouse in July 2002. (Id. at 179). Specifically, Plaintiff contended that she was paid less than her male co-workers. (Id. at 177-80).

### G.    Allegations of Failure to Promote.

        23.     Plaintiff alleged in her Charge of Discrimination that she was discriminatorily denied twenty "promotional opportunities." (Ex. 11, Charge of Discrimination). When asked at her deposition about the allegation, Plaintiff alleged that she applied for and was denied the following positions:

        a.     All driver positions in 2001, 2002, 2003 and 2004. Plaintiff could not recall who was awarded the positions for which she allegedly applied. (Ex. 3, Pl. Dep. at 136-40).

        b.     A full service vending (driving) position in 2002. Plaintiff admitted that the position was awarded to an employee with more seniority than she. (Id. at 140, 142).

        c.     A jockey position in 2002. (Id. at 140-41). Plaintiff admitted that the position was awarded to an employee with more seniority than she. (Id.; Ex. 29, Seniority List).

        d.     Two loader positions in 2003. Plaintiff admitted that the positions were awarded to employees with more seniority than she. (Ex. 3, Pl. Dep. at 141-42).[7]

---

[7]     Plaintiff's claims for failure to promote related to the loader and jockey positions were not encompassed in her Charge of Discrimination. (See Ex. 11, Charge of Discrimination).

**H.    Allegations of Disparate Treatment.**

24.    Plaintiff alleges that she was subjected to disparate treatment based on her sex and race. When asked at her deposition about the allegation, Plaintiff alleged that she was verbally reprimanded by Thomas Riley and Glenn Mathews for: "walking the dog"[8]; not being a team player; and leaving work without checking with her supervisor. (Id. at 152-154; Ex. 11, Charge of Discrimination). Plaintiff admitted that none of these alleged actions affected her salary, seniority, schedule or other working conditions. (Ex. 3, Pl. Dep. at 155-162). Caucasian and/or male employees have been counseled for the same infractions. (Id. at 158; Ex. 8, Altman Verification ¶ 20).

25.    Additionally, Plaintiff alleged that she was denied a transfer to another PBG location despite the fact that Plaintiff admitted that she never applied for an internal transfer. (Ex. 3, Pl. Dep. at 154, 162-66).

**I.    Allegations of Retaliation.**

26.    Plaintiff alleges that she was subjected to unlawful retaliation because she filed a Charge of Discrimination. At her deposition, Plaintiff asserted that she was subjected to the following retaliatory actions:

a.    She was verbally reprimanded for using her cellular telephone during working hours by Mr. Weber.[9] (Id. at 256-57).

b.    She received written discipline for violations of PBG's attendance policies. (Id. at 255-56).

---

[8]    "Walking the Dog" is the unsafe act of walking in front of motorized equipment (typically a forklift), which violates PBG's safety rules. (Ex. 8, Altman Verification ¶ 19).

[9]    Mr. Weber was the manager of the Wilmington plant. (Ex. 8, Altman Verification ¶ 12).

c.    She was laid-off in September 2002.  (Id. at 254-55, 436).

d.    She was denied the "promotional opportunities" noted above.  (Id.

at 172).

27.    Plaintiff admitted that she never disclosed to Mr. Riley or Mr. Mathews

that she had filed a Charge of Discrimination. [10]  (Id. at 252-53).

## V.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment must be granted when the pleadings, affidavits and discovery

materials produce no "genuine issue as to any material fact" and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Lawrence v. National Westminster

Bank, 98 F.3d 61, 65 (3d Cir. 1996).  The non-moving party must point to specific evidence of

record that demonstrates a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986).  Although the Court must resolve all doubts and consider the evidence in the light most

favorable to the opposing party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), the

non-movant cannot escape summary judgment by introducing "a mere scintilla of evidence" in

her favor, Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation

omitted), aff'd, 189 F.3d 464 (3d Cir. 1999), or by relying on "conclusory allegations,

improbable inferences, and unsupported speculation[.]" J. Geils Band Employee Benefit Plan v.

Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); accord Solt v. Alpo Petfoods,

Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994).  "[W]hen the record,

taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the

---

[10]    Mr. Riley and Mr. Matthews supervised Plaintiff while she worked in the warehouse.  (Ex. 3, Pl. Dep. at 126, 128).

moving party is entitled to summary judgment in its favor. Schoonejongen v. Curtiss-Wright

Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986)).

### B.    Plaintiff's FLSA Claims Fail As A Matter of Law.

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, requires

employers to pay overtime compensation for hours worked in excess of a 40-hour workweek. 29

U.S.C. § 207. Section 7(a)(1) provides, in full, that:

> Except as otherwise provided in this section, no employer shall
> employ any of his employees who in any workweek is engaged in
> commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the
> production of goods for commerce, for a workweek longer than
> forty hours unless such employee receives compensation for his
> employment in excess of the hours above specified at a rate no less
> than one and one-half times the regular rate at which he is
> employed.

29 U.S.C.A. § 207(a)(1).

Plaintiff admits that PBG paid her one and one-half times her normal hourly rate

for all hours worked in excess of the forty hour work week. (Ex. 3, Pl. Dep. at 226). She

contends, however, that her "regular rate" should have been the hourly rate of a Relief Driver

under the collective bargaining agreement, and not the lower rate which she was actually paid.

(Id.). In short, Plaintiff argues that the payment of her overtime wages on the basis of one and

one-half times her actual wages violated the FLSA.

Plaintiff's claims under the FLSA fail because they are not cognizable. In Vadino

v. A. Valley Engineers, 903 F.2d 253 (3d. Cir. 1990), a case involving analogous facts, the Third

Circuit rejected a similar claim. The plaintiff, a refrigeration and air conditioning mechanic,

sued his former employer alleging that throughout his employment he was underpaid overtime in

violation of the FLSA. While the plaintiff conceded that he was paid one and one-half times his

normal hourly rate for all hours worked in excess of the forty hour work week, he contended that his regular rate was the hourly rate he would have been entitled to as a journeyman under the collective bargaining agreement in effect, and not the lower rate which he was actually paid. Id. at 264. Significantly, the Third Circuit rejected this claim and affirmed summary judgment in favor of the defendant. The court held that the FLSA's enforcement provision is limited to employee suits seeking enforcement of their rights under the statute. Id. at 265. Conversely, the court concluded, the plaintiff's claim "which rest[ed] on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA." Id. at 266.

    Here, Plaintiff's claim for overtime is squarely based on the collective bargaining agreement between PBG and the Union.   Specifically, Plaintiff contends that PBG paid her overtime at the wrong rate. (Ex. 3, Pl. Dep. at 226). Because Plaintiff's claim for overtime rests on the underlying interpretation of the collective bargaining agreement, it is not cognizable under the FLSA. See Vadino, 903 F.2d at 266; see also Martin v. Lake County Sewer Co., 269 F.3d 673, 679 (6th Cir. 2001) (although plaintiff alleged violations of the FLSA, his claims relied on interpretation of terms of the underlying CBA and were thus governed by the LMRA's statute of limitations); Bania v. Ford Motor Co., No. 91-2012, 1992 U.S. App. LEXIS 22054, at *3-4 (6th Cir. Sept. 2, 1992); Firestone v. S. Cal. Gas Co., 219, F.3d 1063, 1067 (9th Cir. 2000) (plaintiff's state law overtime compensation claim was preempted by the LMRA, where resolution of the dispute required interpretation of the complex pay and overtime pay provisions in the collective bargaining agreement).

    The Court should, therefore, dismiss Plaintiff's claim for wages pursuant to the FLSA.

C.     **Plaintiff Cannot Demonstrate That She Received Unequal Pay Under The Equal Pay Act.**

Plaintiff's EPA claim is premised on the incorrect assertion that the work she performed as a Merchandiser during her temporary assignment in the conventional sub-department, is equal to the work of a Relief Driver, thus entitling her to the Relief Driver rate.

To establish a *prima facie* case of unequal pay, a plaintiff must demonstrate that she and a member of the opposite sex: (1) worked in the same establishment; (2) received unequal wages; (3) for work which was "equal" in terms of skill, effort, and responsibility; and (4) which was performed under similar working conditions, except where such payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor than sex. See 29 U.S.C. 206(d)(1). As set forth below, Plaintiff cannot establish these requisite elements.

1.     **Plaintiff Cannot Establish That She Received Unequal Wages for Work Which Was Equal in Terms of Skill, Effort, and Responsibility Under Similar Working Conditions.**

In Angelo v. Bacharach Instrument Co., the Third Circuit explained that "[t]he Equal Pay Act comprehends a threshold requirement, evident in the legislative history and confirmed in the case law, that the jobs to be equated be substantially the same. The requirement of equality of job content inheres in the statutory term, 'equal work.'" 555 F.2d 1164, 1174 (3d Cir. 1977). "The courts have given effect to these manifestations of congressional intent, and have indicated that the concept of equality under the Act embraces job content as well as skill, effort, responsibility, and working conditions." Id. at 1174-75. As the court in Secretary of Labor v. Washington Hospital recognized:

> The legislative history of the Equal Pay Act underscores the necessity of case-by-case analysis. By substituting the term "equal work" for "comparable work", which was originally suggested, Congress manifested its intent to narrow the applicability of the

Act. . . . It is not merely comparable skill and responsibility that Congress sought to address, but **substantial identity of job functions.**

475 F. Supp. 1242 (W.D. Pa. 1979) (quoting Hodgson v. Golden Isles Convalescent Homes, 468 F.2d 1256 (5th Cir. 1972) (emphasis added).[11]

In Underwood v. Sears, Roebuck and Co., this Court granted summary judgment to an employer on a plaintiff's EPA claim, because the plaintiff failed to satisfy her burden of demonstrating that her sales manager position had the same level of responsibility and was thus comparable to her male co-worker's operations position. 343 F. Supp. 2d 259, 270 (D. Del. 2004); see also Henderson v. Charities Valley School, 136 Fed. Appx. 456, 460 (3d Cir. 2005) (affirming district court's finding that wage disparities between female plaintiffs and male co-workers were attributed to "factors other than sex" such as a certification possessed by a male teacher); Shanley v. Salesianum School, No. 91-482, 1993 U.S. Dist. LEXIS 20944, at *30 (D. Del. April 27, 1993) (holding plaintiff failed to establish claim under the EPA because credible evidence suggested that all teachers were paid according to experience, academic degree and number of classes taught); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1364 (10th Cir. 1997) (affirming dismissal of plaintiff's EPA claim by the district court, agreeing that the tasks and functions performed by plaintiff were dissimilar in both the level of experience required and the level of complexity in performing the required functions than the higher paid male assistant managers); Brian v. The Greif Co., No. 88-5752, 1990 U.S. Dist. LEXIS 16878, at *68 (E.D. Pa. Dec. 11, 1990) (holding that "length of service, prior experience, background and job

---

[11]     The federal regulations provide that equal skill includes the consideration of factors such as experience, training, education, and ability; equal effort is concerned "with the measurement of the physical or mental exertion needed for the performance of a job;" and equal responsibility refers to "the degree of accountability required in the performance of the job." 29 C.F.R. §§ 1620.15-17.

performance of plaintiff, [and two male co-workers] support wage and salary grade differential and contradict any finding of an intention to discriminate against plaintiff based upon her gender").

Turning to the facts here, Plaintiff cannot demonstrate that the work she performed as a Merchandiser during her temporary assignment in the conventional sub-department is equal to the work of a Relief Driver. As detailed in the Facts section above, the differences between the Merchandiser and Relief Driver positions are stark. The primary function of a Relief Driver is to drive single-handedly, a tractor trailer to deliver soda. (Ex. 8, Altman Verification ¶ 6). This primary function requires a valid CDL-A license. (Ex. 9, Relief Driver - Sales Job Posting). It is undisputed that Plaintiff did not have a CDL-A license while she was a merchandiser. (Ex. 3, Pl. Dep. at 241). Further, a Relief Driver's secondary functions are to sell product to customers, collect revenue and detail these transactions in their route books. (Ex. 9, Relief Driver - Sales Job Posting). As Plaintiff admitted in her deposition, she never performed any of these functions. (Ex. 3, Pl. Dep. at 241). Simply put, the work Plaintiff performed as a Merchandiser is not equal to the work performed by Relief Drivers in terms of skill, effort or responsibility.[12]

### 2. Even Assuming, *Arguendo*, that the Merchandiser and Relief Driver Positions Were Equal, Any Pay Differences Between Plaintiff and Her Alleged Comparators Are Supported By Factors Other Than Sex.

Even if the Merchandiser position and Relief Driver position are deemed equal under the Equal Pay Act, which PBG maintains is not the case, Plaintiff still cannot dispute that

---

[12] Plaintiff also contends that she was paid less than male employees when she initially transferred to the warehouse. (Ex. 3, Pl. Dep. at 177-80). As noted in the Facts section, pursuant to the contract, Plaintiff, and two other male employees, were paid at the rate of $12.68 or 80% of the contract rate of $15.75. (Id. at 179, 184-85; Ex. 8, Altman Verification ¶ 12). Clearly, Plaintiff cannot establish that she was paid unequal wages under the EPA.

any differences in pay are supported by factors other than sex – namely the collective bargaining agreement between PBG and the Union.

The Court's decision in <u>Visnikar v. Dep't of Environmental Protection</u>, No. 02-963, 2004 U.S. Dist. LEXIS 3645, at * 50-51 (W.D. Pa. Jan. 27, 2004) recommending the grant of summary judgment to the defendant employer, is instructive on this point. In <u>Visnikar</u>, the plaintiff, an unlicensed geologist, alleged that her employer violated the Equal Pay Act when it reclassified several positions and promoted two licensed male geologists increasing their pay. The Court rejected the plaintiff's claim stating that because salaries were the result of a collective bargaining agreement, "disparity in wages between the Plaintiff and her co-workers can only be attributed to the collective bargaining process, which constitutes a 'factor other than sex.'" <u>Id.</u>; <u>See also</u> <u>Lang v. Kohl's Food Stores, Inc.</u>, 217 F.3d 919, 925 (7th Cir. 2000) (affirming district court's grant of summary judgment on plaintiff's EPA claims where "classifications and wages are the result of collective bargaining . . . labor agreements frequently apply to all of an employer's sites, and these agreements are 'factor[s] other then sex'"); <u>Lissak v. U.S.</u>, 49 Fed. Cl. 281, 286 (Fed. Cl. 2001) (granting summary judgment in favor of defendant on EPA claims, stating "defendant's system of differing pay and classification rules, which resulted from a series of collective bargaining agreements, is a bona-fide, gender-neutral, acceptable personnel policy that constitutes a factor other then sex under the Act[,]" and that "the pay disparity between the plaintiff's and their male co-workers resulted from a personnel policy in which gender played no part").

Here, the record evidence demonstrates that the Relief Driver position is covered by the collective bargaining agreement and paid at a rate in accordance with that agreement. (Ex. 5, CBA 1 at 28). To the contrary, the Merchandiser position is not covered by the collective

bargaining agreement. (Ex. 5, CBA 1). The difference in the pay rate between the two positions is explained by this fact.

Further, any suggestion that male employees were paid at a higher rate because of their gender is eviscerated by the fact that other male Merchandisers were paid at the same rate as Plaintiff. (Ex. 7, Merchandiser Pay Rates). Moreover, several male Merchandisers, like Plaintiff, were temporarily assigned to the conventional sub-department. (Ex. 30, Altman Dep. at 129-30, 148). Yet these male employees, like Plaintiff, were paid the non-union Merchandiser rate. (Ex. 30, Altman Dep. at 145, 148-49).

Thus, Plaintiff's claim that she was paid lower wages than her male co-workers in violation of the Equal Pay Act fails as a matter of law for these additional reason.

### D.    Plaintiff Cannot Demonstrate That She Was Paid Less Than Her Male Co-workers in Violation of Title VII.

Although her failure to state an Equal Pay Act claim does not automatically preclude Plaintiff from stating a claim under Title VII, see 29 C.F.R. § 1620.27, it is clear that any such claim here also fails. Notwithstanding its broad proscription against sex discrimination in the terms and conditions of employment, Title VII makes clear that it is not an unlawful employment practice to apply different standards of compensation if based on factors unrelated to sex. 42 U.S.C. § 2000e-2(h).

Plaintiff cannot establish that PBG violated Title VII because, as set forth at length above, the position to which she seeks to compare her position is not the same and any pay differences are authorized by the Equal Pay Act, *i.e.*, factors completely unrelated to plaintiff's sex. See Molthan v. Temple Univ., 442 F. Supp. 448 (E.D. Pa. 1977), aff'd, 778 F.2d 955 (3d Cir. 1985) ("Implicit in my decision to grant summary judgment is the conclusion that the differentiation of which [plaintiff] complains was "authorized" by, *i.e.*, did not run afoul of,

the Equal Pay Act. It follows that the complained-of differentiation cannot be an unlawful employment practice under Title VII, and that the defendants are entitled to summary judgment on [plaintiff's] Title VII claim with respect to any salary discrimination occurring on or after May 15, 1972.").

Thus, Plaintiff's pay discrimination claim likewise fails under Title VII.

### E.    Plaintiff Cannot Establish That She Was Subjected to Discrimination Based on Her Race or Sex.

Plaintiffs alleging disparate treatment employment discrimination under Title VII can prove their claims either through direct or circumstantial evidence. Desert Palace, Inc. v. Costa, 123 S.Ct. 2148, 2154 (2003). Here, Plaintiff can produce no direct evidence of sex or race discrimination. Thus, Plaintiff must prove her claim by circumstantial evidence, and the Court must evaluate her claim in accordance with the burden shifting analysis as set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972), and its progeny. Under that now familiar standard:

> First, the plaintiff has the burden of proving by the
> preponderance of the evidence a *prima facie* case of
> discrimination. Second, if the plaintiff succeeds in proving
> the *prima facie* case, the burden shifts to the defendant to
> articulate some legitimate, nondiscriminatory reason for the
> employee's rejection. Third, should the defendant carry
> this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the
> legitimate reasons offered by the defendant were not its
> true reasons, but were a pretext for discrimination.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981).[13]

---

[13]    Claims brought pursuant to 42 U.S.C. 1981 ("Section 1981") are analyzed under the same framework as Title VII claims. See Lewis v. University of Pittsburgh, 725 F.2d 910, 915, n.5 (3d Cir. 1984).

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993). Where, as here, a plaintiff cannot prove discriminatory motive, the plaintiff's claim must fail. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (liability depends on whether membership in a protected class actually motivated employer's decision). "Speculation alone cannot establish a *prima facie* case of discrimination." See Sonja J. Bray v. L.D. Caulk Dentsply Int'l, No. 98-441, 2000 WL 1800527 at * 5 (D. Del. July 21, 2000); see also Igwe v. E.I. DuPont De Nemours and Co., Inc., No. 03-839, 2005 WL 196577 at * 3-4 (D. Del. Jan. 26, 2005) (holding that plaintiff failed to make out a *prima facie* case of race or national origin discrimination where he failed to point to specific facts giving rise to an inference of discrimination.); Anderson v. Mcintosh Inn, 295 F.Supp.2d 412, 420 (D. Del. 2003) (holding that no inference of discrimination was created where plaintiff proffered no evidence to support his claims of sex, race and national origin discrimination); Turner v. PNC Bank, No. 99-504, 2003 WL 225080392 at *4 (D. Del. November 3, 2003) (granting summary judgment to defendant were record was devoid of concrete evidence to indicate that plaintiff's termination was motivated in any part by racial animus).

### 1. A Number Of Plaintiff's Claims for Failure to Promote Should Be Dismissed Because She Failed To Exhaust Her Administrative Remedies.

As noted above, Plaintiff now asserts claims for failure to promote related to loader and jockey positions which are not encompassed within her Charge of Discrimination. (Ex. 11, Charge of Discrimination). These claims fail because she did not exhaust her administrative remedies.

A plaintiff may bring an employment discrimination action only after filing a timely charge with the Equal Employment Opportunity Commission or comparable state agency.

42 U.S.C.A. § 2000e-5; See, e.g., Love v. Pullman, 404 U.S. 522, 523 (1972).  The purpose of

this requirement is to give the administrative agency the opportunity to investigate, mediate and

take remedial action with respect to a plaintiff's charge of discrimination.  See Ostapowicz v.

Johnson, 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977); see also Stewart

v. INS, 762 F.2d 193, 198 (2d Cir. 1985).  This purpose would be defeated if a plaintiff were

allowed to litigate a claim not previously submitted to and investigated by the appropriate

administrative agency.  See id.  Because the exhaustion of remedies is a precondition to suit, the

Court has no jurisdiction over claims that are not included in plaintiff's charge of discrimination.

See id.

　　　　Here, Plaintiff's Charge of Discrimination against PBG did not contain

allegations related to the loader or jockey positions.  (See Ex. 11, Charge of Discrimination).  To

the extent that Plaintiff now is attempting to assert such claims against PBG in this Court, those

claims fail because they were never submitted to or investigated by the EEOC or DDOL.  See

Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir.1997) (holding that district

court erred by treating failure to promote claims as a continuing violation, despite Plaintiff

having alleged ongoing disparate treatment and harassment, stating that failure to promote claims

comprised discrete instances of discrimination and "[we]re not susceptible to a continuing

violations analysis");  See also Ryan v. Gen. Mach. Prods., 277 F.Supp.2d 585, 592-93 (E.D. Pa.

2003) ("if [the plaintiff] had wanted to challenge these alleged discriminatory failures to

promote, she was required timely to file charges with the EEOC or the PHRC [h]er failure to do

so was fatal, and these stale claims cannot be resuscitated by the continuing violation theory");

Kovoor v. Sch. Dist. of Philadelphia, 211 F.Supp.2d 614, 622 (E.D. Pa. 2002) (holding, in case

where plaintiff was annually denied promotions over the course of several years, that the failure

to be considered for or receive a promotion was "a discrete claim" that triggered a duty to file a complaint under Title VII; therefore, "plaintiff [could not] rely on a series of failures to promote to extend the relevant statutory period, because each individual rejection was actionable under the civil rights laws"); Allen v. Best Foods Baking Co., 2003 WL 22858351, *4 (E.D. Pa., Oct 22, 2003) (noting same).

Simply put, each promotion denial triggered a duty to file a charge with the EEOC and Plaintiff simply failed to do so. Therefore, her claims should be dismissed.

### 2.    Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination for Failure to Promote.[14]

Even if the claims noted above are not time-barred, none of Plaintiff's claims are viable because she cannot establish a prima facie case of discrimination. To establish a *prima facie* case, the plaintiff must show: (1) that she belongs to a protected class; (2) that she sought and was qualified for the promotion; (3) that despite her qualifications she was rejected; and (4) that the failure to promote occurred under circumstances that give rise to an inference of unlawful discrimination. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir.1999); Young v. Pennsauken Township Sch. Dist., 47 Fed. Appx. 160, 161 (3d Cir. Sept 27, 2002); Shesko v. City of Coatesville, 292 F.Supp. 719, 724 (E.D. Pa. 2003). For the purposes of this motion only, PBG concedes that Plaintiff can establish the first prong of the *prima facie* case. Plaintiff contends that she was discriminatorily denied the following positions:

(1)    All driver positions in 2001, 2002, 2003 and 2004. (Ex. 3, Pl. Dep. at 136-40).

---

[14]    Because claims of failure to promote and transfer are subject to the same analysis by the Court, for the purposes of the memorandum, PBG will analyze Plaintiff's allegations of failure to transfer with her claims for failure to promote. See Flores v. The Home Depot, No. 01-6908, 2003 U.S. Dist. LEXIS 5510, at *19-22 (E.D. Pa. 2003); Gomez v. Pellicone, 986 F. Supp 220, 228 (S.D.N.Y. 1997).

(2)    A full service vending (driving) position in 2002. (Id. at 140).

(3)    A jockey position in 2002. (Id. at 140-41).

(4)    Two loader position in 2003. (Id. at 141-42).

As a matter of law, however, she cannot establish that she sought and was qualified for these positions, that despite her qualifications she was rejected and/or that the denial of her requests occurred under circumstances giving rise to an inference of discrimination.

### a.    Plaintiff Was Not Qualified For The Driver Positions For Which She Applied.

As detailed above, Plaintiff applied for a number of driver positions which required a valid CDL-A license before she obtained her CDL-A license.[15]  For this reason, Plaintiff was not qualified for the positions. See e.g., Collins v. Board of Trustees of the University of Alabama, No. 05-16268, 2006 U.S. App. LEXIS 29989, at *3 (11th Cir. Dec. 6, 2006) (plaintiff was not qualified for promotion where he did need possess the requisite Associate's degree); Williams v. Rohm and Haas Co., 99-CV-5203, 2003 U.S. Dist. LEXIS 26559, at * 36-37 (E.D. Pa. May 2, 2003), aff'd 90 Fed. Appx. 627 (2004) (plaintiff was not qualified for two promotions where he failed to meet experiential requirements for the positions); Campbell v. Pennsylvania College of Optometry, Civ. A. No. 95-0073, 1995 U.S. Dist. LEXIS 11708, at *18 (E.D. Pa. Aug. 15, 1995) (plaintiff was not qualified for transfer where minimum qualifications required four years experience in bookkeeping or accounting and plaintiff had no bookkeeping experience).

---

[15]    As noted above, Plaintiff did not obtain her CDL-A license until September 2004 and was awarded a driving position shortly thereafter. (Ex. 3, Pl. Dep. at 247; Ex. 8, Altman Verification ¶ 10). All of her applications for driving positions occurred before she obtained her CDL-A license.

Like Plaintiff, PBG denied Andy Purdy (Caucasian Male) a driver position because he did not have a CDL-A license. (Ex. 10, Purdy's Bid Sheet). Notably, once Plaintiff obtained her CDL-A license in September 2004, she obtained a driving position within a few weeks. (Ex. 8, Altman Verification ¶ 10). Because Plaintiff's lack of a CDL-A license rendered her unqualified for promotion to a driving position prior to September 2004, Plaintiff has failed to establish a *prima facie* case and her claim for failure to promote with respect to the driver positions fails.

### b.    Plaintiff Did Not Apply For A Number of Positions And Was, Therefore, Not Rejected For The Positions.

Plaintiff's attempt to rely on positions for which she did not apply to support her failure to promote claim is misguided. Plaintiff admitted in her deposition that she did not apply for a number of "promotional opportunities" on which she now bases her claims.[16] (Ex. 3, Pl. Dep. at 162-66). Given that it is undisputed that Plaintiff <u>did not apply</u> for any of these positions, she cannot rely on them to support her claim for denial of promotion. <u>Williams v. Rohm and Haas Co.</u>, 90 Fed. Appx. 627, at *5 (3d Cir. 2004) (affirming district court's holding that plaintiff's failure to apply for posted jobs was fatal to his *prima facie case*); <u>Bates v. Tandy Corp.</u>, No. 03-5519, 2005 WL 1798825 *16 (E.D. Pa. Aug. 1, 2005) (holding plaintiffs' failure to apply for training program precluded them from stating *prima facie* case for failure to promote).

In sum, because Plaintiff was not rejected for the positions for which she did not apply, her claim of failure to promote should be dismissed.

---

[16]    Specifically, Plaintiff contends that she was interested in transferring to another PBG plant but that she failed to apply for any positions. (Ex. 3, Pl. Dep. at 162-66).

  **c.**  **The Denial of Promotion Did Not Occur Under Circumstances Giving Rise to an Inference of Discrimination.**

    With regard to the remaining positions on which Plaintiff bases her claims for failure to promote, Plaintiff cannot establish that the denial of these promotions occurred under circumstances giving rise to an inference of discrimination. Specifically, Plaintiff cannot dispute that the driver, loader and jockey positions for which she allegedly applied were awarded to other employees who had more seniority than Plaintiff as dictated by the collective bargaining agreement. Plaintiff admitted as much at her deposition:

Q: Any other position other then the delivery driver that you applied for that you claim you were denied a promotional opportunity?

A: Full service vending driver.

    ************************

Q: Any other jobs you applied for that you claim you were denied promotional opportunity?

A: I applied for, I'm not sure of the title, the exact title, but I believe it was jockey.

    ************************

Q: Who was awarded the position?

A: Gary DiProsperos.

Q: Was he a member of the union?

A: I believe so, yes.

Q: Did he have more seniority than you?

A: I don't know the answer to that only because Gary was a transfer from a different Pepsi plant, so I don't know what his status was or how many years.

Q: Was he working at the plant when you began working in the warehouse?

A: I don't know if he came before or after me. I don't know.

Q:     Any other positions?

A:     I applied for loader.  I'm trying to think.  Loader, I think that was it.

       ************************

Q:     Who were awarded the positions?

A:     I think -- you know, I can't be sure, but I think it was Chris Eastlack and
       Leroy Lewis.

Q:     Did Mr. Eastlack and Mr. Lewis have more seniority than you did?

A:     Yes.

Q:     Who was awarded the full service vending position?  Did I ask you that?

A:     I think they brought somebody in from another plant.  I think they brought
       in Mike Shimmel from the West Chester location.  Actually I'm not a
       hundred percent sure.

       ************************

Q:     Do you know if he had more seniority than you did?

A:     I'm pretty sure he did.

(Ex. 3, Pl. Dep. at 140-42).

         In short, Plaintiff has offered nothing more than her own speculation to

demonstrate that she was denied a promotion based on race or sex:

       Q:     Starting with the delivery position, tell me what facts you have personal
              knowledge of that would lead you to believe you were denied that job
              based on your race or sex.

       A:     Basically just the fact that I was the only female in that department and
              that I applied and I had experience based on my work in the conventional
              department and based on the fact that it was always awarded to somebody
              else other than myself.

              ************************

       Q:     How about for the full service vending position, what facts are you aware
              of that support your contention that you did not receive that position based
              on your race or sex?

       A:     The same answer.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q:     The same question, jockey position.

A:     Pretty much the same answer.

Q:     The loader position?

A:     The same answer.

Q:     An [sic] transport driver position?

A:     Same answer.

(Ex. 3, Pl. Dep. at 145-46).

"The Third Circuit has held that mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base a denial of summary judgment." Devore v. City of Phila., No. 04-3030, 2005 U.S. Dist. LEXIS 19582, at \*11 (E.D. Pa. Sept. 7, 2005) (internal citations omitted). Indeed, "the plaintiff still must demonstrate the existence of sufficient facts to allow him [or her] to prove by a preponderance of the evidence that a *prima facie* case of discrimination exists that goes beyond the plaintiff's mere speculation." Bailey v. Principi, No. 02-942, 2003 U.S. Dist. LEXIS 15538, at \*18 (E.D. Pa. Aug. 25, 2003).

Because Plaintiff has not pointed to any evidence to establish an inference of discrimination, Plaintiff's claim for failure to promote fails as a matter of law.

### 3.     Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated A Non-Discriminatory Reason for Its Actions.

Plaintiff alleges that PBG denied her promotion because of her race. Plaintiff's allegations are unsubstantiated. As set forth above, Plaintiff's race played no role in PBG's decisions. Plaintiff was denied the promotions at issue because she did not possess a CDL-A license, did not apply for the positions and/or had low seniority. Plaintiff's failure to meet objective job qualifications (i.e. possession of a CDL-A license), failure to apply for positions

and low seniority are legitimate non-discriminatory reasons for PBG's decisions not to promote

her. See Pinckney v. County of Northampton, 512 F. Supp 989, (E.D. Pa. 1981) (employers'

conclusion that black employee was not as qualified as the other two candidates had a reasonable

basis in fact and comprised a legitimate non-discriminatory reason for the ultimate employment

decision); Campbell, No. 95-0073, 1995 U.S. Dist., LEXIS 11708, at *18-19 (hiring employee

with greater seniority pursuant to a contractual mandate was legitimate non-discriminatory

reason for failing to transfer plaintiff).

Because PBG has met its burden of production by articulating legitimate, non-

discriminatory reasons for its actions, Plaintiff must demonstrate that PBG's articulated reasons

are a pretext for discrimination.

### 4.    Plaintiff Cannot Demonstrate That Defendant's Articulated Reasons Were A Pretext For Discrimination.

Once the employer has articulated a non-discriminatory reason for discharging

plaintiff, the burden shifts back to plaintiff to show that the employer's articulated reasons were a

pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). To

survive summary judgment, a plaintiff must provide evidence "from which a factfinder could

either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

invidious discriminatory reason was more likely than not a motivating or determinative cause of

the employer's action." See Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998)

(quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

A plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered reason that a reasonable factfinder

could either disbelieve the reason or believe that unlawful discrimination was more likely than

not the reason for the employer's action. See Simpson, 142 F.3d at 644 (quoting Fuentes, 32

F.3d at 764-65). Typically, a plaintiff will attempt to show "inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Blackburn v. United Parcel Service, 179 F.3d 81, 93 (3d Cir. 1999) (affirming summary judgment because plaintiff did not prove "sufficient inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.").

Significantly, the Third Circuit has held that an employer's method of evaluating employees is "not for the court (or factfinder) to decide." Id. The court stated that it did not matter whether the employer made the "best, or even a sound, business decision" all that mattered was whether discrimination was the real reason for making the decision. Id. (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (citation omitted)). In other words, a plaintiff cannot avoid summary judgment merely by arguing that the employer's decision was wrong. See Fritchett v. Stroehmann Bakeries, Inc., No. 95-284, 1995 U.S. Dist. LEXIS 13862, at *15 (E.D. Pa. Sept. 20, 1995) (Padova, J.) ("To discredit the employer's proffered reason, plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") (citing Fuentes, 32 F.3d at 765)); Sylvester v. Unisys Corp., No. 97-7488, 1999 U.S. Dist. LEXIS 3607, at *50 (E.D. Pa. Mar. 25, 1999).

Plaintiff here cannot satisfy her burden because she has not produced a shred of evidence to support an inference that PBG's reasons for denying her promotions were a pretext for race or sex discrimination. Put another way, Plaintiff cannot demonstrate that PBG's articulated reasons for denying her promotions were false and not the actual reasons. See Shanley, No. 91-482, 1993 U.S. Dist. LEXIS 20944, at *26 (granting summary judgment to

defendants because plaintiff failed to establish that the defendants' legitimate, non-discriminatory justification for her discharge was "merely a pretext or unworthy of credence in that the preponderance of the credible evidence suggests that the Plaintiff's firing was not in any way or part the result of intentional discrimination"); Jackson v. Dana Corp., No. 98-5431, 1999 U.S. Dist. LEXIS 17380, at *22-23 (E.D. Pa. Nov. 9, 1999) (granting summary judgment to defendant where plaintiff "failed to present any evidence which either casts doubt on defendant's explanation for its actions, or even suggests, much less establishes, that age-related discrimination was the cause of defendant's employment actions); Simpson, 142 F.3d at 649.

Plaintiff's entire claim is based on nothing more than speculation. For these reasons and those set forth above, summary judgment should be entered in favor of PBG on Plaintiff's claim of failure to promote.

### 5. Plaintiff Claim of Disparate Treatment Discrimination Fails As a Matter of Law.

Plaintiff alleges that PBG subjected her to disparate treatment during her employment. This claim likewise fails as a matter of law.

#### a. Plaintiff Cannot Establish a *Prima Facie* Case of Disparate Treatment Discrimination.

To establish a *prima facie* case of discrimination, Plaintiff must show: (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action; and (4) circumstances surrounding the adverse action giving rise to an inference of discrimination. See Eaddy v. PA Dept. of Public Welfare Berks Count Assistance Office, No. 04-5909, 2006 U.S. Dist. LEXIS 11674, at *17 (E.D. Pa. March 20, 2006); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997). For purposes of this motion only, PBG concedes that Plaintiff can establish the first two prongs of the *prima facie* case. As a matter of law, however, she cannot establish the third and fourth prong -- that she suffered an adverse

employment action or that the alleged actions occurred under circumstances that give rise to an inference of discrimination.

### (i)    Plaintiff Did Not Suffer An Adverse Employment Action.

The Supreme Court has defined an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Weston v. Dept. of Corrections, 251 F.3d 420, 430-31 (3d Cir. 2001). An adverse employment action in most cases inflicts direct economic harm and requires an official act taken by a supervisor within the company who has the power to make economic decisions affecting employees under his or her control. Ellerth, 524 U.S. at 761-62. The supervisor's decision in most cases is documented in official company records and may be subject to review by higher-level supervisors. (Id.)

Plaintiff has not suffered an adverse employment action. Her claims of adverse employment actions amount to the following:

(1)    Plaintiff alleged that she was verbally reprimanded by Thomas Riley and Glenn Mathews for: "walking the dog" ; not being a team player; and leaving work without checking with her supervisor. (Ex. 3, Pl. Dep. at 152-54; Ex. 11, Charge of Discrimination).

(2)    Plaintiff alleged that she was denied a transfer to another PBG location despite the fact that Plaintiff admitted that she never applied for an internal transfer.[17] (Ex. 3, Pl. Dep. at 154, 162-66).

---

[17]    For the reasons set forth in IV.E.2.b, Plaintiff cannot establish that the alleged denial of a transfer for which Plaintiff did not apply was discriminatory.

Clearly, none of the above amount to an adverse employment action. As Plaintiff admitted at her depositions, none of these alleged "adverse actions" affected her salary, seniority, schedule or other working conditions. (Id. at 155-62). Courts in the Third Circuit have consistently held that the kind of conduct about which Plaintiff complains does not effectuate any real change in the employee's compensation, terms, conditions or privileges of employment and therefore does not rise to the level of an adverse employment action. See Weston v. Department of Corrections, 251 F.3d 420 (3d Cir. 2001) (written reprimands placed in personnel file were not an adverse employment actions because they did not affect compensation, terms, condition or privileges of employment); Koschoff v. Henderson, Civ. A. No. 98-2736, 1999 WL 907546, * 11 (E.D. Pa. 1999) (claims of disciplinary threats, taunts and other alleged harsh treatment do not amount to an adverse employment action); see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) (unsubstantiated oral reprimands and unnecessary derogatory comments were not adverse employment actions); Decesare v. National Railroad Passenger Corp., Civ. Action No. 98-3851, 1999 WL 330258, *4 (E.D. Pa. 1999) (assignment of more difficult work does not constitute tangible employment action because it "did not cause any direct economic harm"); Crawley v. Runyon, Civ. Action No. 96-6862, 1998 WL 355529, * 11 (E.D. Pa. 1999) (supervisor following employee into bathroom and asking him what he was doing, telling a co-worker not to have conversation with employee and threatening discipline did not rise to level of adverse employment action).

For these reasons, Plaintiff's claims of disparate treatment should be dismissed.

### (ii)    The Alleged Adverse Actions Did Not Occur Under Circumstances Giving Rise to an Inference of Discrimination.

Plaintiff cannot establish that the alleged adverse actions occurred under circumstances giving rise to an inference of discrimination. As noted above, Plaintiff claims that

she was held to a higher standard than her white male co-workers because she was allegedly

verbally reprimanded for: "walking the dog" ; not being a team player; and leaving work without

checking with her supervisor. (Ex. 3, Pl. Dep. at 152-54; Ex. 11, Charge of Discrimination).

Additionally, she alleges that she was denied a transfer to another PBG location. (Ex. 3, Pl. Dep.

at 154). Yet, Plaintiff has conceded that none of these alleged "adverse actions" affected her

salary, seniority, schedule or other working conditions. (Id. at 155-62). Moreover, Plaintiff has

conceded that she never applied for an internal transfer. (Id. at 162-66). Accordingly, the

alleged adverse actions did not occur under circumstance giving rise to an inference of

discrimination.

### b.    Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated Non-Discriminatory Reasons for Its Actions.

As set forth above, PBG had legitimate, non-discriminatory reasons for it actions

relating to Plaintiff. The burden thus shifts to Plaintiff to demonstrate that the proffered reasons

are in fact a pretext for discrimination.

### c.    Plaintiff Cannot Demonstrate That Defendant's Articulated Reasons Were A Pretext For Discrimination.

Plaintiff here cannot satisfy her burden because she has not produced a shred of

evidence to support an inference that the reasons for PBG's actions were a pretext for sex or race

discrimination. See Jones v. United States Postal Service, No. 02-1449, 2004 WL 1739714 at *

4 (D. Del  July 21, 2004) (granting summary judgment to defendant where plaintiff provided no

evidence that would allow a factfinder to reasonably disbelieve the defendant's articulated

reasons for plaintiff's discharge); Adkins v. Shoe Show of Rocky Mount, Inc., No. 03-406, 2005

WL 662664 at *5 (D. Del. March 16, 2005) (Farnan J.) (granting summary judgment against

plaintiff where she failed to produce sufficient evidence to refute her former employer's explanation for her termination).

Turning to the facts here, Plaintiff has pointed to absolutely no evidence that PBG discriminated against her on the basis of her sex or race. To the contrary, Plaintiff cannot dispute that Caucasian and/or male employees have been reprimanded for walking the dog, talking on their cell phone, leaving work early and poor attendance. (Ex. 8, Altman Verification ¶ 20). In sum, Plaintiff's claim fails because she has not proffered any evidence that PBG was motivated by discriminatory animus . See Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir. 1995).

For these reasons and those set forth above, summary judgment should be entered in favor of PBG on Plaintiff's claims of sex and race disparate treatment discrimination.

**F.      Plaintiff Cannot Prove A Claim for Retaliation.**

Plaintiff claims that PBG retaliated against her because she filed a complaint of discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission. This claim likewise fails as a matter of law.

**1.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation.**

To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected conduct; and (3) a causal connection between the employee's protected activity and the employer's adverse action. See Weston v. Commw. of Pa., 251 F.3d at 430 (3d Cir. 2001) (citations omitted).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a non-retaliatory reason for the adverse employment action. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir.), cert. denied, 522 U.S. 914 (1997). Id. If an employer satisfies its burden, the plaintiff must then show pretext. Id. Here, Plaintiff's claim of

retaliation cannot withstand summary judgment because she cannot even establish the elements of the *prima facie* case.

### a.    Plaintiff Did Not Suffer An Adverse Employment Action.

As the Third Circuit has explained; "minor and trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation . . . for otherwise every action that an 'irritable chip-on-the-shoulder' employee did not like would form the basis of a discrimination suit." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). Plaintiff contends that she was subject to the following retaliatory actions:

(1)    She was verbally reprimanded for using her cellular telephone during working hours by Mr. Weber. (Ex. 3, Pl. Dep. at 256-57).

(2)    She received written discipline for violations of PBG's attendance policies. (Id. at 255-56).

(3)    She was laid-off in September 2002 by Mr. Weber. (Id. at 254-55, 436).

(4)    She was denied the "promotional opportunities" noted above. (Id. at 172).

For the reasons outlined in Section IV.E.5.a.i., Plaintiff cannot establish that reprimands for talking on her cell phone and poor attendance are adverse employment actions. For the reasons outlined in Section, IV.E.1, Plaintiff's allegations with regard to promotional opportunities should be dismissed because Plaintiff did not exhaust her administrative remedies and/or did not apply for the promotions. Additionally, Plaintiff's layoff was not an adverse action because she suffered no loss of pay, seniority or other benefits. See Weston, 251 F.3d at 431.

### b. Plaintiff Cannot Establish A Causal Connection Between Her Alleged Protected Activity And Any Alleged Adverse Employment Action.

Plaintiff's claim of retaliation fails because she cannot establish a causal connection between her Charge of Discrimination and any alleged adverse employment action. Plaintiff has produced no evidence to support her claim that the alleged adverse employment actions were in retaliation for her Charge of Discrimination, other than the fact that they both occurred. This, of course, is not sufficient. In <u>Robinson v. City of Pittsburgh</u>, the Third Circuit held that the fact that an adverse employment action occurs after protected conduct is normally insufficient to establish causation. 120 F.3d, 1256, at 1302 (citing <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 501 (3d Cir. 1991)). <u>See also</u> <u>Kenney v. Footlocker Worldwide</u>, 55 Fed. Appx. 35, 37 (3d Cir. 2002) (citing <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996)).

Plaintiff has not produced any other evidence to demonstrate causation. To establish the requisite causal connection, a plaintiff must show that the person who took the adverse employment action knew of the protected activity and acted with a retaliatory motive. <u>See, e.g.</u>, <u>Gemmell v. Meese</u>, 655 F. Supp. 577, 582 (E.D. Pa. 1986). Here, Plaintiff cannot do so. First, Plaintiff has not even established that Phil Weber, Thomas Riley or Glenn Mathews, the alleged retaliators, even knew of her charge of discrimination. (Ex. 3, Pl. Dep. at 252-53). <u>See</u> <u>Sarullo v. United State Postal Service</u>, 352 F.3d 789, 800-01 (3d Cir. 2003) (affirming entry of summary judgment against plaintiff where he could not establish that the decisionmaker in his termination was aware of plaintiff's protected activity.) Further, even if Plaintiff could establish that Mr. Weber, Mr. Mathews and Mr. Riley knew that she filed a charge, Plaintiff has not produced any evidence that any of them acted with a retaliatory motive. For these reasons, Plaintiff's claim for retaliation should be dismissed.

**2.    Defendant Has Articulated A Non-Discriminatory Reason for the
Alleged Adverse Employment Actions and Plaintiff Has Not
Established That PBG's Explanation for Its Decision Is A Pretext for
Unlawful Retaliation.**

As set forth in Sections IV.E.3., and IV.E.5.b., above, PBG has articulated non-

discriminatory reasons for the alleged adverse employment actions, and Plaintiff cannot establish

that PBG's articulated reasons are pretextual.

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, summary judgment should be entered in favor of

PBG and against Plaintiff on all claims.

Respectfully submitted,

Dated:  March 28, 2007

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE  19801
(302) 252-4460

Attorneys for Defendant
Bottling Group, LLC

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500