## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MARLAYNA G. TILLMAN, | : | |
| | : | |
| Plaintiff, | : | C.A. Number: 04-1314 |
| | : | |
| v. | : | |
| | : | |
| THE PEPSI BOTTLING GROUP, INC., | : | |
| and TEAMSTERS LOCAL UNION 830 | : | |
| | : | |
| Defendants. | : | |

---

### APPENDIX OF DEFENDANT BOTTLING GROUP, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AND ITS MOTION FOR SUMMARY JUDGMENT AND SANCTIONS ON ITS COUNTERCLAIMS AGAINST PLAINTIFF

---

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4460

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

# INDEX

| TAB | DESCRIPTION |
|-----|-------------|
| 1 | Equal Employment Opportunity Policy |
| 2 | Complaint |
| 3 | Excerpts of Plaintiff's Deposition |
| 4 | Merchandiser Job Posting |
| 5 | Collective Bargaining Agreement covering 2000-2004 |
| 6 | Collective Bargaining Agreement covering 2004-2007 |
| 7 | Merchandiser Pay Rates |
| 8 | Verification of Sara (Swartz) Altman |
| 9 | Relief Driver - Sales Job Posting |
| 10 | Purdy's Transport Driver Bid Sheet |
| 11 | Charge of Discrimination |
| 12 | Memo Regarding Lay-Offs |
| 13 | Personnel Action Request |
| 14 | Grievance Report |
| 15 | Grievance Release |
| 16 | Letter to Grandell enclosing Settlement Agreement |
| 17 | Settlement Agreement and related documents |
| 18 | RJM Vending Employment Application, W-4 Form and Pay Stub |
| 19 | Workers' Compensation Notes |

| <u>TAB</u> | <u>DESCRIPTION</u> |
|------|-------------|
| 20 | Cott Beverage Payroll Change Notice |
| 21 | Cott Beverage Employment Application |
| 22 | Cott Beverage Payroll Change Notice |
| 23 | Doctor's Note |
| 24 | Plaintiff's Answers to Defendant's First Set of Interrogatories |
| 25 | O'Beidy Notes |
| 26 | J.B. Hunt Employment Application |
| 27 | Letter from Swartz to Tillman dated January 5, 2005 |
| 28 | Employee Profile |
| 29 | Seniority List |
| 30 | Excerpts of Altman Deposition |
| 31 | Subpoena to Beverly Bove |
| 32 | Documents received from Beverly Bove |
| 33 | IRS Records |

1



## THE PEPSI BOTTLING GROUP
## EQUAL EMPLOYMENT OPPORTUNITY POLICY

The Pepsi Bottling Group ("PBG") is dedicated to the policy of equality of employment opportunity for all of its employees and applicants for employment without regard to their race, color, religion, gender, age, disability, national origin, sexual orientation or any other category protected by law. This policy applies to all Company activities including, but not limited to, recruitment, hiring, firing, compensation, assignment, training, benefits and promotion. Violations of this policy constitute a serious offense and will be disciplined appropriately.

### *Harassment Also Prohibited*
This policy also prohibits harassment based on any of the above-listed characteristics. Impermissible harassment is defined as verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of any of the above-listed characteristics or otherwise creates a hostile environment that unfairly hinders or interferes with a person's performance. Prohibited harassing conduct includes, but is not limited to:

- epithets, slurs and negative stereotyping,
- threatening, intimidating and hostile acts, and
- written or graphic material, including e-mail and internet material, that denigrates or shows hostility or aversion toward an individual or group because of his or her membership in one of the above-referenced groups

This includes acts characterized as "jokes" or "pranks".

### *Reasonable Accommodation Requests*
It is PBG's policy to comply with the Americans With Disabilities Act as it pertains to all of its employment practices. Disabled employees who require a "reasonable" accommodation must contact their Human Resources Manager.

### *Reporting EEO Complaints*
Any employee who believes that conduct that violates this policy is occurring or has occurred, whether or not it is directed toward the employee, must, without fear of retaliation, report the relevant facts immediately. Generally, complaints should be reported to the employee's Human Resources Manager. If, for any reason, the employee is uncomfortable or unable to speak to the Human Resources Manager, he or she is encouraged to report the complaint to the Human Resources Director. All complaints will be investigated promptly and fully with the maximum possible confidentiality.

Any supervisor who receives such a complaint must report it to the appropriate Human Resources Manager.

### *Confidentiality*

PBG 00265

All parties to the complaint should treat the investigation with confidentiality and respect for reputations of all parties involved.

### Zero Tolerance for Retaliation

PBG also forbids retaliatory action to be taken against an individual who in good faith reports a perceived violation of this policy. Retaliation is also prohibited against individuals who are not themselves complainants, but who participate in an investigation. Individuals who feel that they are being or have been retaliated against must report such retaliation to the individuals named above.

### Consequences of Violating EEO Policy

Appropriate disciplinary action (up to and including termination of employment for the first offense) will be taken against any individual found to have violated any provision of this policy. Further, any Manager/Supervisor who receives a complaint of discrimination or harassment and fails to notify Human Resources will also be subject to disciplinary action.

See also Policy Prohibiting Sexual Harassment.

## ACKNOWLEDGMENT OF RECEIPT

I have received and read The Pepsi Bottling Group Equal Employment Opportunity Policy:

_____          _____
Employee Name Printed                        Social Security No.


_____          _____
Employee Signature                              Date

PBG 00266

2

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN,                )
                                    )
        Plaintiff,                  )      C.A. NO.    0 4 - 1 3 1 4
                                    )
        v.                          )      JURY TRIAL DEMANDED
                                    )
THE PEPSI BOTTLING GROUP, INC.,     )
and TEAMSTERS LOCAL UNION 830,      )
                                    )
        Defendants.                 )

## COMPLAINT

## INTRODUCTION

1.      This is a Complaint brought pursuant to Title VII of the Civil Rights Act

of 1964, as amended, codified as 42 U.S.C. § 2000(e)-(5)(f)(1), Title I of the Civil Rights

Act of 1991, 42 U.S.C. § 1981, 42 U.S.C. § 704(a), the Fair Labor Standards Act, 29

U.S.C. § 201 et seq. and the *Delaware Wage Payment and Collection Act*, 19 Del. C. §

1113(a).

## PARTIES

2.      Plaintiff, Marlayna G. Tillman (hereinafter referred to as "Plaintiff"), an

African-American female, is and was at all times relevant to this Complaint, a resident of

the State of Delaware, residing in Wilmington, Delaware and whose address is 7 Colony

Boulevard, Wilmington, Delaware 19802.  Plaintiff has filed this action against

Defendants for discriminatory actions on the basis of race, gender, sexual harassment and

retaliation, as well as for unpaid wages owed including, but not limited to, overtime

wages, and other damages and remedies.



EXHIBIT
Tillman 5
12/13/05 DAB
PB/BG 000-031-6589

3.    Defendant, the Pepsi Bottling Group, Inc. (hereinafter referred to as "Pepsi"), is and was at all times relevant to this Complaint, a Delaware corporation duly organized and existing under the laws of the state of Delaware, whose registered agent for the service of process is National Registered Agents, Inc., 9 East Loockerman Street, Suite 1B, Dover, Delaware 19901.

4.    Defendant, Teamsters Local Union 830 (hereinafter referred to as "the Union"), is a local union organization that represents the union employees of Pepsi, whose principal place of business is located at 12298 Townsend Road, Philadelphia, Pennsylvania 19154.

## JURISDICTION

5.    Jurisdiction is founded on the existence of a question arising under federal statutes. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)–(5)(f)(1), as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a), as well as 42 U.S.C. § 1981. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. § 2000(e), (f) and (g). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal and state law which prohibits discrimination against employees because of their race, gender and on the basis of retaliation.

6.    This Court also has federal question jurisdiction over this cause of action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

7.    Venue is proper in this Court pursuant to 29 U.S.C. § 1132 and/or § 1451, as well as 28 U.S.C. § 1391(b).

8.    At all relevant times herein, Pepsi's business activities were/are related and performed through unified operations or common control for a common business purpose and constituted/constitute an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

9.    At all relevant times herein, Pepsi employed and continues to employ persons in its place of business in furtherance of the activities of the above enterprise while engaged in commerce and, also at all relevant times herein, Pepsi engaged and continues to engage in commerce by selling and/or providing goods and/or services to its customers.

10.    At all relevant times herein, Pepsi's business and enterprise has/had an annual gross volume of sales made and/or business done in an amount of not less than Five Hundred Thousand Dollars ($500,000.00).

## FACTUAL BACKGROUND

11.    Plaintiff began her employment with Pepsi on or about May 8, 2001 as a merchandiser in the Merchandising/Marketing/Sales department, an entry-level position, at a rate of pay of $10.57 per hour.

12.    While Plaintiff was in this position, she was required to utilize her own vehicle for company travel, but was given a mileage stipend amounting to approximately $200.00 per pay period.

13.    In September of 2001, Plaintiff sustained an injury on the job when she was moving pallets and got a wood chip in her eye. Plaintiff was taken to the hospital for treatment and was told to stay out of sunlight for a few days. Plaintiff's supervisor, Mr. Bruce Wray, wanted her to return to work immediately. Plaintiff was out of work for two (2) days before returning to work. When Plaintiff returned to work, however, she was informed that she would not be paid for the two (2) days she was out. Plaintiff decided to go over her supervisor to the Human Resources department ("HR") to report that she was not being paid for two (2) days despite the fact that she was entitled to six (6) sick days.

14.    After approximately five (5) months on the job, Plaintiff was assigned to the Conventional department by supervisor Bruce Wray to provide much-needed assistance to the short-staffed department, while maintaining her responsibilities as a merchandiser in the Merchandising/Marketing/Sales department. Plaintiff believes her

assignment to this department was in retaliation for reporting her supervisor, Mr. Bruce Wray, to HR.

15.    Although Plaintiff was moved to the Conventional department, a union-eligible position, she was not paid union wages as was every other employee in the department; instead, Plaintiff remained at her initial hourly rate of pay of $10.57 per hour that she was paid for her merchandising position in the Merchandising/Marketing/Sales department.

16.    Plaintiff, an African-American female, and the only female in her entire division/department, was also the only employee performing union work but not receiving union wages, making only $10.57 per hour, while the other male employees in her department were earning union wages of approximately $16.63 per hour.

17.    In addition to not being paid union wages, Plaintiff received no union benefits or protection, was forced to simultaneously continue in her capacity as a merchandiser in addition to her responsibilities in the Conventional department, and was never made a member of the union despite her repeated requests for same.

18.    Due to the fact that Plaintiff was essentially holding down two (2) positions, she was frequently working seven (7) days per week, but was neither receiving overtime pay nor was she receiving the Union's requirement for time-and-a-half for working on Saturdays and double time for working on Sundays. Additionally, Plaintiff's

mileage stipend was taken away and she was told to use a company vehicle for travel, except on the weekends, thus reducing her income by approximately $200.00 per pay period.

19.    According to the Union's by-laws, once Plaintiff was transferred to the Conventional department, Defendants had thirty (30) days to either incorporate Plaintiff into the Union or return her to her original position in the company. This procedure was not followed by Defendants, thus violating Defendants' collective bargaining agreement. The Union did nothing to enforce this policy on behalf of Plaintiff. Further, Plaintiff went to Ms. Rhonda Curry, HR Manager and Sara Swartz from HR to ask for assistance in obtaining entry to the Union in or around November of 2001 to no avail.

20.    Plaintiff remained in both positions for approximately eight (8) months, for the period beginning October 13, 2001 and ending May 28, 2002, the entire time at her original salary of $10.57 per hour.

21.    Defendant, the Pepsi Bottling Group, Inc. is a Delaware corporation that, by and through its employees, including Plaintiff, manufactures, distributes and sells various soft drink, snacks, and food products and services to the public.

22.    Plaintiff has been employed by Pepsi within the past three (3) years.

23.    For the period beginning October 13, 2001 and ending May 28, 2002, Plaintiff was frequently working seven (7) days per week in positions in the Merchandising/Marketing/Sales department and the Conventional department, the latter being a union position, and was not paid overtime for any hours worked in excess of forty (40) hours per work week. She was also not paid the union-mandated wages of time-and-a-half for working on Saturdays and double-time for working on Sundays.

24.    The duties of Plaintiff did not meet the management exception to the non-exemption statutes, nor any other exception, to the relevant sections of the FLSA as defined under the statute and the applicable code of federal regulations.

25.    For the period beginning October 13, 2001 and ending May 28, 2002, Defendants failed to pay Plaintiff the compensation to which she was entitled under the FLSA; Plaintiff was supposed to be paid for a pre-determined forty (40) hour work week, and on many occasions was not even compensated for the full forty (40) hours, nor was she compensated for any time worked beyond forty (40) hours per work week over this same time period.

26.    On average, Plaintiff worked approximately fifteen (15) to twenty (20) overtime hours per week, if not more, in excess of forty (40) hours without any overtime compensation from Defendants whatsoever.

27.    Plaintiff worked in excess of forty (40) hours continually in various work weeks throughout the period from October 13, 2001 through May 28, 2002, without receiving the proper amount of overtime pay, and on occasion, did not receive the proper amount of regular pay when she was paid for less than the guaranteed forty (40) hours.

28.    Plaintiff was holding down two (2) positions during this time period; one (1) in the Merchandising/Marketing/Sales department and one (1) in the Conventional department. In these positions, Plaintiff had no power to hire or fire employees. Plaintiff was not permitted to make her own work hours or schedule. All of the aforementioned management responsibilities were dictated to Plaintiff by Defendants. Plaintiff never qualified for the management exception to the FLSA.

29.    During the aforementioned time period, Defendants knew that Plaintiff was working in excess of forty (40) hours per work week and that Plaintiff was not receiving the compensation to which she was entitled under the FLSA and Delaware law.

30.    Defendants knew at all times, and showed reckless disregard for the fact that their pay policies and/or practices violated the FLSA. Defendants' violations of the FLSA were committed willfully and recklessly.

31.    As a result of the foregoing, Defendants have willfully and continuously failed and refused to pay Plaintiff overtime for weeks in which she worked in excess of forty (40) hours, as well as time-and-a-half for Saturday hours worked and double-time

for Sunday hours worked per the terms of the collective bargaining agreement with the Union.

32.    The precise amount of compensation due to Plaintiff is unknown because the information required (i.e. time records, work schedules, etc.) are under the exclusive control of Defendants. Plaintiff, nonetheless, believes that the compensation owed to her is quite substantial.

33.    Plaintiff often worked on Saturdays and Sundays, but Defendants did not require employees to "punch in" or "punch out" on the weekends because no management personnel were on site and the employees did not have access to the building. Instead, Defendants relied on the "honor system" for weekend hours, despite the Union's policy that weekend hours were to be paid at higher rates, specifically time-and-a-half on Saturdays and double-time on Sundays.

34.    Plaintiff was also forced to use her own personal vehicle on the weekends that she worked during the aforementioned time period, but was not compensated for such usage. Plaintiff previously had been paid a mileage stipend of approximately .36¢ per mile, totaling approximately $200.00 per month, which was eliminated from her salary when she was moved into the Conventional department position on October 13, 2001. Therefore, Plaintiff is also entitled to reimbursement for mileage accrued for personal vehicle usage during the aforementioned time period. Plaintiff brought this information to the attention of Rhonda Curry in HR in or about November of 2001, again to no avail.

35.    Some time in April of 2002, Plaintiff requested to be transferred to a union position within the company to Ms. Sara Swartz in HR.

36.    On or about May 28, 2002, Plaintiff was returned to her original position in the Merchandising/Marketing/Sales department and after numerous complaints to Mr. Craig Nelson about the difference between her salary and the salaries of her male colleagues, received a token pay increase of approximately .29¢ per hour, bringing her salary up to $10.86 per hour.

37.    When Plaintiff requested back pay for the approximate eight (8) months she had been holding both positions, her request was denied by Ms. Tracy Dryzwiecki and the Union.

38.    Plaintiff remained in her merchandising position until July of 2002.

39.    On or about July 22, 2002, Plaintiff was granted a transfer to a union position in the Warehouse department by Ms. Sara Swartz per her requests for same.

40.    Prior to Plaintiff's transfer, however, Defendants hired three (3) additional employees in the same capacity in that department who, upon information and belief, had no prior experience and had never worked for Defendants.

41.    The hiring of these three (3) individuals, Mr. Chris Eastlack, Mr. Leroy Lewis, and Mr. Santos Robles, all males, who were given immediate membership to the Union and paid union wages, was in direct violation of company policy to hire from within. Further, these three (3) individuals were able to surpass Plaintiff in seniority despite her fourteen (14) months with the company because they were installed in union positions before Plaintiff's transfer was approved and finalized.

42.    Plaintiff immediately filed a complaint with Ms. Sara Swartz in HR and also filed a complaint with the Union regarding the hiring of the three (3) above-named individuals because their hiring was in direct violation of company policy to hire from within. Nothing was done in response to Plaintiff's complaints.

43.    Plaintiff was further concerned because the hiring of the three (3) above-named individuals had adversely affected her position, standing and seniority in the company. Hiring the three (3) above-named individuals prior to Plaintiff's transfer approval not only affected her seniority, but also affected her ability to bid for positions, promotions and transfers that she was interested in obtaining, her "bumping" rights, and her vacation scheduling, all of which are based on or determined by seniority.

44.    When Plaintiff was finally transferred to the Warehouse department on or about July 22, 2002, she was made a member of the Union, but she was only paid $12.68 per hour instead of the normal union rate that all of her male colleagues were paid, between $15.75 and $16.63 per hour.

45.    Once transferred to the Warehouse department in July of 2002, Plaintiff was subjected to repeated sexual harassment from her male co-workers who would constantly make comments about her breast size as well as other inappropriate comments.

46.    On one (1) occasion, a co-worker, Mr. Howard Laws, told Plaintiff that she needed "to get laid" and that "[he was] just the man to do it to [her]."

47.    On yet another occasion, Mr. Laws asked Plaintiff if he could borrow a pen. When she removed her pen from her shirt pocket, Loss said "you just want me to watch you touch your breasts" in front of a witness, Mr. John Osiak. When Plaintiff informed Mr. Laws that his comments were inappropriate and offensive, Laws replied, "If you think he'll testify against me, you'll have better luck with a box of Mike & Ike."

48.    Plaintiff filed a complaint against Laws with Tracy Dryzwiecki in HR, but once again, no action was taken.

49.    On another occasion, Plaintiff was asked to move a truck in the parking lot. When she got inside the truck, however, she found a pornographic magazine on the clipboard inside the truck. Plaintiff immediately reported this incident to the supervisor on duty, Mr. Tom Riley who told her he would keep the magazine and look into the situation, but Plaintiff refused to give it to him so she could turn it into HR and file yet another complaint to which no action was ever taken.

50.    During her time in the Warehouse department, Plaintiff had also been the subject of numerous rumors that were started by members of her department. Rumors that she was having sexual relations and/or dating various co-workers in her department, constantly being asked out on dates during work hours and being called a lesbian when she refused these advances have/had caused her to have numerous meetings with Tracy Dryzwiecki and Mr. Scott Steiger with management and HR to complain. However, Plaintiff's complaints have been consistently ignored and unanswered and no disciplinary actions have ever been taken.

51.    In or around August of 2002, Plaintiff's supervisors in the Warehouse department suddenly began to demonstrate retaliatory behavior towards her when they began to scrutinize Plaintiff more than any other employee in the department, single her out for verbal discipline and threaten to place written reprimands in her file. Plaintiff believes this retaliatory treatment was a direct result of her grievances and complaints that she filed with management, HR and the Union.

52.    On or about August 25, 2002, Plaintiff was reprimanded by Mr. Tom Riley for "walking the dog"; a practice in which a forklift operator, with his or her forklift in gear, moving, walks along on the side of it. Riley told Plaintiff that he would terminate her if she did it again, despite the fact that she learned this procedure from her co-workers in the department who did it routinely and were even doing so at the time of her reprimand. No other individual in the department was reprimanded for this activity.

53.    On or about August 28, 2002, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor alleging discrimination on the basis of her race and her gender.

54.    Shortly thereafter, Plaintiff received a salary increase to $15.75 per hour.

55.    Not long after her salary increase, however, Plaintiff was suddenly laid off from her job on or about September 18, 2002 with no forecast for recall.

56.    Plaintiff was not the only individual in her department to be laid off, but was the only individual who was not recalled to work two (2) days later, as were all the male co-workers who were also laid off at that time.

57.    On or about October 21, 2002, Plaintiff was recalled to work, approximately four (4) weeks after she was initially laid off.

58.    Upon her return to work on or about October 21, 2002, Plaintiff filed yet another grievance with the Union regarding her layoff. This time, the Union took action and demanded that the company pay Plaintiff for the four (4) weeks she was laid off, which was finally paid to Plaintiff in December of 2002.

59.    Immediately after her return to work, on or about October 21, 2002, Plaintiff's supervisors started creating a disciplinary file on Plaintiff. Plaintiff suddenly

found herself written up for even the most minor infraction, despite the fact that she had

never been issued a written reprimand before. Plaintiff was even written up for

occurrences without her knowledge and was even written up for being late by a minute or

two (2), despite the fact that there was typically an eight (8)-minute acceptable window

for tardiness before an employee would be written up for being late.

60.    In November of 2002, Plaintiff answered her personal cell phone while

walking through the plant when she was approached by the plant manager, Mr. Phil

Weber, who began to scream at her in front of everyone, pointing in her face telling her

she would be suspended. Plaintiff pointed out that numerous employees talk on their

personal cell phones during the day and that there was no formal written policy on cell

phone usage.

61.    Plaintiff once again filed, to no avail, additional grievances with the Union

for, *inter alia*, unequal enforcement of an unwritten policy, retaliation, disparate

treatment and lack of representation.

62.    As a direct and proximate result of Defendants' failure to follow their own

hiring and employment policies, Plaintiff was passed over for promotions and

advancement opportunities by people with less seniority and/or outside applicants,

resulting in her loss of approximately ten (10) positions that she had applied for, or

wanted to apply for, but was either denied or unable to due to seniority issues.

63.    In or about April of 2003, Plaintiff was in the breakroom with other co-workers when a Caucasian male supervisor, Mr. Joe Rizzo, began to make racial and derogatory comments about African-Americans, Hispanics and women in the presence of another supervisor. Plaintiff went to Tracy Dryzwiecki in HR to report Rizzo's inappropriate comments who assured Plaintiff that they would conduct an investigation. Plaintiff also went to the corporate HR department to complaint to Mr. Scott Stiger about the incident. To Plaintiff's knowledge, no disciplinary action was taken against Joe Rizzo. After Plaintiff's complaints, she began to notice an immediate change in Rizzo's attitude toward her. Despite Plaintiff's complaint, Rizzo was subsequently promoted and Plaintiff was transferred to the Production department, with Rizzo as her supervisor. Plaintiff realized that she was in a hostile work environment with a supervisor who was angry with her for reporting him, so she requested a transfer on three (3) different occasions, all of which were denied.

64.    On or about April 22, 2003, Plaintiff filed an additional Charge of Discrimination with the Delaware Department of Labor, this time against the Union, alleging discrimination on the basis of race and sex and also alleging retaliation.

65.    On or about November 6, 2003, Plaintiff injured her leg while climbing out of the cab of a truck. From November 6, 2003 through April 14, 2004, Plaintiff was out of work on short-term disability. Plaintiff was forced to wait approximately ten (10) weeks before receiving her first short-term disability check because HR allegedly forgot to file the paperwork. Also, because she was not paid weekly, Plaintiff received a lump-

sum check for the entire ten (10) week period and was taxed heavily on the full amount. Plaintiff believes her short-term disability payments were delayed in retaliation for filing her complaints against the company.

66.    Plaintiff was able to return to work on or about April 19, 2004 and was assigned to the can line filler room upon her return. This position required Plaintiff to stand for prolonged periods of time. As a result of standing all day, Plaintiff's leg began to swell up. Plaintiff went to her supervisor, Mr. Joe Rizzo, and asked for accommodations to be made since she had just returned to work from a leg injury and was not able to stand for long periods of time. Plaintiff requested to exercise her bumping rights to "bump" another employee for a sitting position. When Rizzo denied this request, Plaintiff asked if she could be given a chair so she could sit down which was also denied. Rizzo informed Plaintiff that her only option would be to go out on short-term disability again, which she was forced to do from June 1, 2004 through June 25, 2004. Plaintiff was also not paid for this time.

67.    The Delaware Department of Labor investigated Plaintiff's Charges of Discrimination and found in favor of Plaintiff, determining that violations of Title VII had occurred. A copy of the two (2) Delaware Department of Labor Notices of Reasonable Cause Finding both dated December 31, 2003, are attached hereto as Exhibits "A" and "B" respectively.

68.     Plaintiff was issued two (2) Right to Sue letters from the U.S. Equal Employment Opportunity Commission on July 1, 2004. A copy of these two (2) Right to Sue letters is attached hereto as Exhibit "C" and "D" respectively.

69.     Plaintiff decided to take her three (3) weeks of vacation time all at once, and did so from August 8, 2004 through August 30, 2004. Upon her return to work, Plaintiff was called in to HR to discuss her complaints about the sexual harassment she was being subjected to. Plaintiff was asked for her opinion on the situation and was asked to give the pornographic magazine to Ms. Tracy Dryzwiecki so they can continue with their investigation which she did.

70.     On or about August 12, 2004, the NAACP, brought in to investigate complaints by minority employees regarding disparate treatment and hiring practices, held a press conference in which Plaintiff participated. At the conclusion of this press conference Plaintiff was informed that she was going to be awarded a transfer to a position in the Transport department that she had been bidding on approximately three (3) or four (4) times over the last few years. Plaintiff was finally awarded this position on or about September 17, 2004.

71.     Since being transferred to her new position in the Transport department, Plaintiff was warned by a co-worker that she should "watch [her] back" because she was "being set up to have an accident" so the company will be able to "get rid of [her]."

## COUNT I
## RACIAL DISCRIMINATION

72.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 71 by reference as if specifically set forth herein.

73.     The practices of Defendants as complained of above had the effect of depriving Plaintiff of equal employment opportunities and otherwise affected her employment because of her race. The practices employed by Defendants were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

74.     The practices of Defendants as complained of above caused Plaintiff to experience conscious pain and suffering and other emotional harm.

75.     The practices of Defendants as described above are imputable to Defendants in violation of 42 U.S.C. § 2000(e)-2(a) and 3(a).

76.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer distress, humiliation, great expense, embarrassment and damages to her reputation.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1981

77.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 76 by reference as if specifically set forth herein.

78.    Defendants have intentionally discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981 by denying her equal terms and conditions of employment.

79.    As a direct and proximate result of said acts, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to her reputation.

## COUNT III
## GENDER DISCRIMINATION AND SEXUAL HARASSMENT

80.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 79 by reference as if specifically set forth herein.

81.    The practices of Defendants as complained of above had the effect of depriving Plaintiff of equal employment opportunities and otherwise adversely affected her employment because of her gender.  The practices employed by Defendants were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

82.    The practices of Defendants as complained of above caused Plaintiff to experience conscious pain and suffering and other emotional harm.

83.    The practices of Defendants as described above are imputable to Defendants in violation of 42 U.S.C. § 2000(e)-2(a) and 3(a).

84.    Defendants intentionally and maliciously discriminated against Plaintiff on the basis of her gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e)-2(a) when they:

(a)    Subjected Plaintiff to a hostile work environment based upon her gender wherein male supervisors and co-workers berated and degraded Plaintiff in public;

(b)    Treated Plaintiff differently from similarly-situated males by denying Plaintiff promotions and/or transfer requests despite her qualifications;

(c)    Treated Plaintiff differently from similarly-situated males by denying Plaintiff equal pay, benefits, seniority and promotional/transfer opportunities;

(d)    Treated Plaintiff differently from similarly-situated males by subjecting her to different performance and attendance standards;

(e)    Subjected Plaintiff to offensive and sexually-harassing remarks and a sexually-harassing environment; and

(f)    Refused to provide Plaintiff with Union representation in support of her numerous complaints filed with management, HR and the Union.

85. As a direct and proximate result of Defendants' unlawful gender discrimination, Plaintiff has suffered, and continues to suffer loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to her reputation.

## COUNT IV
## RETALIATION

86. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 85 by reference as if specifically set forth herein.

87. This cause of action arises under Title VII, 42 U.S.C. § 2000(e)-2(a).

88. Defendants intentionally and maliciously discriminated against Plaintiff in retaliation for her complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e)-2(a) when they:

(a) Forced Plaintiff to be subjected to a hostile work environment;

(b) Denied Plaintiff equal pay, benefits and promotional opportunities;

(c) Subjected Plaintiff to different performance and attendance standards;

(d) Refused to enforce any disciplinary actions against Mr. Howard Loss despite Plaintiff's complaints;

(e) Laid Plaintiff off on or about September 18, 2002 after she filed her first Charge of Discrimination with the Delaware Department of Labor for a period of

four (4) weeks, making Plaintiff the only person in her entire department/division to be laid off; and

        (f)    Refused to provide Plaintiff with Union representation in support of her numerous complaints filed with management, HR, and the Union.

        89.    Defendants acted with discriminatory motive and the reasons provided by Defendants for failing to provide Plaintiff equal treatment, promotional opportunities and adequate Union representation are pretextual.

        90.    The practices of Defendants as complained of above had the effect of depriving Plaintiff of equal employment opportunities or otherwise adversely affected her employment because of her assertion of her federally-protected rights by filing a Charge of Discrimination with the Delaware Department of Labor, as well as numerous complaints with management, HR and the Union. The practices were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

        91.    The practices of Defendants as complained of above, caused Plaintiff to experience conscious pain and suffering and other emotional harm.

        92.    As a direct and proximate result of said acts, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other

employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to her reputation.

## COUNT V
## DISCRIMINATION – FAILURE TO PROMOTE

93.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 92 by reference as if specifically set forth herein.

94.    Defendants denied Plaintiff numerous opportunities for career advancement despite her qualifications;

95.    Defendants denied Plaintiff career advancement opportunities by denying her requests for transfers to various other positions based on seniority when non-union, outside personnel were hired, in violation of company policy to hire from within, effectively reducing her seniority and decreasing and/or prohibiting her chances for advancement.

96.    As a direct and proximate result of Defendants' discriminatory practices, Plaintiff has lost considerable pay; past, present, future and prospective and has suffered, and continues to suffer, humiliation, mental anguish, great expense, and emotional pain.

97.    Defendants' discrimination against Plaintiff was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

## COUNT VI
## VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")

98.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 97 by reference as if specifically set forth herein.

99.    Defendants have at all times herein, continuously and willfully violated Sections 7 and 5(a)(2) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 215(a)(2) by misclassifying Plaintiff as an employee who was exempt from the overtime requirements of the FLSA and applicable regulations and in failing and refusing, and continuing to fail and refuse to pay time-and-a-half and/or double-time ("overtime") to Plaintiff who routinely worked in excess of forty (40) hours per work week.

100.    Plaintiff was also put into a union position but was not afforded equal union wages as her male co-workers, was not always paid for the guaranteed forty (40) hour work week, and was not paid time-and-a-half for working on Saturdays nor was she paid double-time for working on Sundays, all of which were provisions of the collective bargaining agreement between Defendants.

101.    The FLSA violations set forth in the preceding paragraphs have been, and continue to be, knowing and willful. Defendants have knowingly and intentionally continued their illegal policies and/or practices to date and are likely to continue such policies and/or practices hereafter unless enjoined through this action. Defendants are bound by both federal and state law to pay all non-exempt employees overtime for every work hour completed above and beyond a standard forty (40) hour work week.

## COUNT VII
## VIOLATION OF THE WAGE PAYMENT AND COLLECTION ACT

102.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 101 by reference as if specifically set forth herein.

103.    Defendants are "*employers*" within the meaning of 19 Del. C. § 1101(a)(3), and Plaintiff is an "*employee*" within the meaning of 19 Del. C. § 1101(a)(4).

104.    Defendants willfully determined not to pay Plaintiff's overtime as alleged above herein, in violation of 19 Del. C. § 1102(b)(1). Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime and wage differences pursuant to 19 Del. C. § 1103(b) as well as reimbursement for mileage from personal vehicle usage, attorneys' fees, costs of prosecution and costs of this action pursuant to 19 Del. C. § 1113(c).

105.    The practices of Defendants as described above caused Plaintiff to experience conscious pain and suffering and other emotional harm.

## COUNT VIII
## VIOLATION OF THE EQUAL PAY ACT

106.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 105 by reference as if specifically set forth herein.

107.    The practices of Defendants as complained of above are in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

## COUNT IX
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

108.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 107 by reference as if specifically set forth herein.

109.    Defendants breached the covenant of good faith and fair dealing to Plaintiff by discriminating against her based on race and gender, failing to provide equal pay and advancement opportunities, and forcing her to work in a hostile and sexually-harassing work environment based on retaliatory motives.

110.    The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

WHEREFORE, Plaintiff, Marlayna G. Tillman, respectfully requests that this Court enter a judgment in her favor and against Defendants the Pepsi Bottling Group, Inc. and Teamsters Local Union 830:

(a)    Declaring the conduct engaged in by the Defendants to be in violation of Plaintiff's rights;

(b)    Issuing a judgment in Plaintiff's favor ordering Defendants to provide appropriate back pay with pre-judgment interest, in amounts to be determined at

trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

(c)    Issuing a judgment in Plaintiff's favor ordering Defendants to provide compensation for non-pecuniary losses, including pain, suffering and humiliation, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

(d)    Issuing a judgment in Plaintiff's favor ordering Defendants to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(e)    Issuing a judgment in Plaintiff's favor ordering Defendants to pay punitive damages for their malicious and/or reckless conduct in amounts to be determined at trial;

(f)    Issuing a judgment in Plaintiff's favor ordering Defendants to pay costs of reasonable attorneys' fees and expenses; and

(g)    Granting such other and further relief as this Court deems just and proper.

Plaintiff further demands judgment in her favor and against Defendants for damages past and ongoing, unpaid overtime wages, salary differentials, interest, liquidated damages as provided by law, damages pursuant to the *Delaware Wage Payment and Collection Act*, expert witness fees and costs, and court costs. Furthermore, Plaintiff requests that Defendants be permanently enjoined from continuing the policies and/or practices identified herein, which have been, and continue to be, in direct violation

of the FLSA, the applicable regulations, and the *Delaware Wage Payment and Collection Act.*

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
Attorney for Plaintiff Marlayna G. Tillman

September 28, 2004



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS ·
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-B2D
FAX (302) 761-660

## NOTICE OF REASONABLE CAUSE FINDING

RE: Tillman v. Pepsi Bottling Group                    State Case No.: 0209613

On August 28, 2002, Ms. Marlayna Tillman filed a Charge of Discrimination against Pepsi Bottling Group. The Charge of Discrimination is hereby incorporated by reference.

Reasonable Cause Finding:
December 19, 2003, the Department of Labor concluded its investigation and now finds, based on the following facts, that there is reasonable cause to believe that a violation of the State Discrimination Act has occurred.

I.    Undisputed Facts:
      1.  Charging Party began her employment with Respondent on May 8, 2001 in the Marketing/Sales Department and then as of July 2002 became a permanent employee of the Warehousing Department where she currently is employed.

II.   Disputed Facts:
      1.  Charging Party states that she was discriminated against by Respondent because she was not afforded the same opportunities as her male counterparts in regards to promotions such as driver positions and she is subjected to disparate treatment from management in regards to the terms and conditions of her employment.
      2.  Respondent states that Ms. Tillman was treated the same as her male co-workers and afforded all the same opportunities for promotions and not treated disparately by her supervisors.

III.  Resolution of Material Facts in Dispute:
      1.  Charging Party was able to establish that she has been treated disparately compared to her male co-workers. This was demonstrated through the documentation provided by Respondent in regards to Charging Party's attendance records and the various documentation regarding the amount of time she was late, left work early and called off of work. The same attendance records for her co-workers do not reflect the same amount of scrutiny on a regular basis as Charging Party in regards to being less than 5 minutes late to work. Specifically, the punch detail reports reflect there are male employees who are routinely late for work but records disciplining these individuals in the form of written reprimands are not available.

EXHIBIT

A

2. A review of the punch detail reports along with the timecard records reveals that male employees more frequently are receiving the standard number of hours in a week and are also more frequently receiving overtime hours than Charging Party. This is demonstrative of the fact that the male employees average closer to a 40 hour work week compared to Charging Party who is averages closer to a 34 hour work week.

3. In addition, Respondent failed to submit payroll records from their payroll company which details the actual amount paid to employees and hours worked.

4. Charging Party provided documentation, which reflects a decreased amount of hourly wage than that of her male co-workers. Respondent provided payroll information which also reflects a higher hourly wage rate paid to the male co-workers during the time period reflected in the documentation provided by Charging Party.

5. Witnesses were contacted and asked about their schedules, the number of hours they are afforded each week, the disciplinary received or not received regarding their work schedules and the use of personal cell phones on the job. The results of these interviews clearly revealed that Charging Party's male counterparts are treated more favorably than Charging Party.

IV.    Resolution:

1. Charging Party met her burden of showing that she was discriminated against based on her gender.

The Charge of Discrimination, State Case No. 0207534 will be administratively processed and assigned to a conciliation officer in an effort to administratively resolve the complaint pursuant to 19 *Del. C.* Section 712(c).

_12/31/03_
DATE

_m Shelton_
INVESTIGATOR
LABOR LAW ENFORCEMENT OFFICER

_12/31/03_
DATE

_Julie Cutler_
JULIE CUTLER
LABOR LAW ENFORCEMENT SUPERVISOR



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

### NOTICE OF REASONABLE CAUSE FINDING

RE: Tillman v. Teamsters Local Union 830          State Case No.: 03041025

On April 22, 2003, Ms. Marlayna Tillman filed a Charge of Discrimination against Teamsters Local Union 830. The Charge of Discrimination is hereby incorporated by reference.

Reasonable Cause Finding:

On December 19, 2003, the Department of Labor concluded its investigation and now finds, based on the following facts, that there is reasonable cause to believe that a violation of the State Discrimination Act has occurred.

I.    Undisputed Facts:
    1. Charging Party was permanently moved to a union position within the warehouse on July 22, 2002.
    2. Charging Party was given a seniority date with the union of July 29, 2002.

II.   Disputed Facts:
    1. Charging Party states that she should have a seniority date of her first date of employment with Pepsi Bottling Group of May 8, 2001.
    2. Charging Party states that she has never received adequate representation from Respondent with her best interests considered.
    3. Charging Party states that she did not receive representation from Respondent in a timely manner on a number of grievances she has filed.
    4. Charging Party states that while the union bargaining agreement dictates one set of rules, common practice does not follow the actual wording of such bargaining agreement.
    5. Respondent denies it discriminated against Charging Party and claims it has represented Charging Party as it has represented all union members.

III.  Resolution of Material Facts in Dispute:
    1. Charging Party was able to establish that her grievances were not made with her best interests considered. Charging Party has provided evidence that most of the grievances were resolved without Charging Party being present and that the signature on the grievance report is not that of Charging Party.



EXHIBIT
B

2. Charging Party provided evidence that her grievances were not handled in a timely manner and that a large amount of time lapsed between Charging Party notifying her Union Representative of a grievance and the grievance actually being filed with the union. Respondent failed to provide any documentation to show that grievances filed by other union members are also handled in the same amount of time as those involving Charging Party.

3. Respondent failed to provide evidence or documentation to refute the allegation that common practice differs from the standards set within the bargaining agreement.

IV.   Resolution:

1. Charging Party met her burden of showing that she was discriminated against based on her race and sex. Charging Party has not met her burden of showing that Respondent retaliated her against after filing a charge of discrimination.

The Charge of Discrimination, State Case No. 03041025 will be administratively processed and assigned to a conciliation officer in an effort to administratively resolve the complaint pursuant to 19 *Del. C.* Section 712(c).

_12/31/03_
DATE

_____
INVESTIGATOR
LABOR LAW ENFORCEMENT OFFICER

_12/31/03_
DATE

_____
JULIE CUTLER
LABOR LAW ENFORCEMENT SUPERVISOR

EEOC Form 161-B (10/96)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:Ms. Marlayna Tillman
PO Box 688
Claymont, DE 19703

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
Philadelphia, PA 19106-2515

[    ]    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2003-00627 | Legal Unit | (215) 440-2828 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[    ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[    ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

*July 1, 2004*

*(Date Mailed)*

Enclosure(s)

cc:    Jeffrey K. Martin, Esq. for Charging Party

Ms. Tracy Drzewicki for Respondent

**EXHIBIT**

**C**

EEOC Form 161-B (10/96)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Ms. Marlayna Tillman<br>PO Box 688<br>Claymont, DE 19703 | From: Equal Employment Opportunity Commission<br>Philadelphia District Office<br>21 South Fifth Street<br>Philadelphia, PA 19106-2515 |
|---|---|

| [   ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR § 1601.7(a)) | |
|---|---|---|

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2003-00373 | Legal Unit | (215) 440-2828 |

*(See also the additional information attached to this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]   More than 180 days have passed since the filing of this charge.

[   ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[   ]   The EEOC is terminating its processing of this charge.

[   ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[   ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[   ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director                    July 1, 2004
                                                       *(Date Mailed)*

Enclosure(s)

cc:   Jeffrey K. Martin, Esq. for Charging Party

      Stephen J. Holroyd, Esq. for Respondent

**EXHIBIT**
**D**