IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN,        :    C.A. No.: 04-1314(SLR)

     Plaintiff,              :

           v.              :

THE PEPSI BOTTLING GROUP, INC.,  :
and TEAMSTERS LOCAL UNION
830,                         :

     Defendants.          :
                         :

**PLAINTIFF'S APPENDIX TO PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANTS, PEPSI BOTTLING
GROUP'S AND INTERNATIONAL BROTHERHOOD OF TEAMSTERS
<u>LOCAL UNION 830'S MOTIONS FOR SUMMARY JUDGMENT</u>**

Barbara H. Stratton, Esq.
KNEPPER & STRATTON
1228 North King Street
Wilmington, DE 19801
(302) 658-1717
Delaware Bar ID#2785
bhs@knepperstratton.net
Attorney for Plaintiff

Pro Hac Vice Counsel:

J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated: April 23, 2007

Pages B067-
B131 +
Cert. of Service

## ARTICLE XX
## SEVERANCE

Beginning January 1, 2001, EMPLOYER, on behalf of each regular full-time employee who has completed his/her probationary period, shall make contributions of one dollar ($1.00) per week for each week worked or for which pay is received pursuant to this Agreement in the UNION'S Severance Fund. Beginning January 1, 2002, the contribution will become two dollars ($2.00) per week. Beginning January 1, 2003, the contribution will become three dollars ($3.00) per week. The benefits available to such employees thereunder will be such as are established from time to time by the Trustees of the Severance Fund. Such contributions shall be the limit of the EMPLOYER'S obligation to its employees with respect to severance benefits.

EMPLOYER shall be obligated to continue contributions for the benefits defined in this Article until the first (1st) day of the month following the sixth (6th) month of continued absence from work due to illness or injury

## ARTICLE XXI
## GRIEVANCE – ARBITRATION

❑    In the event of a grievance or dispute arising under the terms of this Agreement, the employee shall take the matter up with his/her Supervisor, at which time a Shop Steward may be present, and every reasonable effort shall be made to reach a satisfactory solution. If no solution is reached, a formal grievance will be made with the Shop Steward and employee and another attempt will be made to resolve the issue with the supervisor. If, at that time, no satisfactory solution can be reached, the Business Agent or other duly authorized representative of the Union shall be notified by the employee within two (2) days of the event in issue, and the Business Agent or the duly authorized representative of the Union shall take the matter up with the Employer within five (5) days after the occurrence of the event in issue. If the Business Agent of the Union and the Employer cannot reach a satisfactory agreement, the matter shall be submitted to a disinterested arbitrator. The arbitrator shall be selected in accordance with the then prevailing Labor Arbitration Rules of the American Arbitration Association.

❑    The decision of the arbitrator shall be final and binding. No arbitrator shall have the power to add to or subtract from the terms of this Agreement. The parties agree to expedite such arbitration.

❑    The fee of the impartial arbitrator and the other costs of arbitration shall be borne equally by the Union and the Employer.

❑    It is expressly understood and agreed that any request for arbitration of a discharge of an employee must be made in writing by an Official of the Union to the Employer within fifteen (15) days from the date a written notice of the discharge is conveyed by the Employer to an Official of the Union, other than a Shop Steward, or it shall not be subject to arbitration.

In the case of any arbitration of a discharge, the arbitrator may sustain the discharge, or may order the reinstatement of the employee with or without back pay.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0081

B 067

## ARTICLE XXII
## STRIKES AND LOCKOUTS

Under no circumstances shall any strike, stoppage of work, walkout, picketing, boycott, refusal to work or perform any part of duty, or other interference with, or interruption of, the normal conduct of Employer's business be ordered, sanctioned, permitted or enforced by the Union, nor shall any lockout be ordered, sanctioned, permitted or enforced by the Employer, its officials or agents.

## ARTICLE XXIII
## PICKET LINES

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, in the event an employee refuses to cross a lawful picket line at an establishment other than an Employer's establishment providing the picket line has been approved by Teamsters Joint Council 53.

## ARTICLE XXIV
## FUNERAL LEAVE

☐    In the case of a death in the immediate family (namely; the death of a parent, grandparent, spouse's grandparent, stepchildren, spouse, child, brother or sister, father-in-law or mother-in-law) of a regular full-time employee requiring the employee's absence from his/her regularly scheduled assignments, the employee shall be granted a leave of absence up to three (3) working days. The three (3) working days shall be the two (2) working days immediately following death and the day of the funeral. Under no circumstances shall the application of this clause result in an increase in the employee's basic weekly wages.

## ARTICLE XXV
## JURY DUTY

In the event an employee is called for jury duty and cannot get excused, he/she will receive his/her regular earnings less any and all amounts received for such service for regular scheduled workdays absent on such service for a maximum of ten (10) workdays. Regular earnings are used herein for each day shall be a day's pay as provided for holidays in Article V.

The Company will provide the Union with a side letter that states that the Company will meet with the Union to discuss extending jury duty pay for Employees required to perform jury duty that last longer than ten (10) days.

## ARTICLE XXVI
## MILITARY LEAVE

Employees entering the military service shall be granted all rights and privileges required under the Law.

Margolis Edelstein
Tillman, Mariayna v. Pepsi
0082

B 068

## ARTICLE XXVII
## STEWARDS

The Employer recognizes the right of the Union to designate one (1) Shop Steward and one (1) alternate from each department as described in Article XV. The Employer further recognizes that there will be one (1) Shop Steward assigned for each manufacturing shift.

The authority of Shop Stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

☐ The Investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement.

☐ The collection of dues when authorized by appropriate Local Union action.

☐ The transmission of such messages and information which shall originate with, and are authorized by, the Local Union or its officers, provided such messages and information:

   a. have been reduced to writing, or

   b. if not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Shop Stewards and alternates have no authority to take strike action, or any other action interrupting Employer's business.

The Employer recognizes these limitations upon the authority of Shop Stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the Shop Steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

The Employer agrees a Shop Steward, who is qualified to perform the work, is to have superseniority for layoff and rehiring. The Union shall be privileged to appoint alternate Shop Stewards to act in the absence of a Shop Steward, but such alternate Shop Steward shall not have superseniority.

Provided there is no abuse of this privilege, the Employer will keep a Shop Steward on the clock while he/she is processing a grievance during his/her normal shift hours. A Steward will not remain on the clock while processing grievances after the end of his/her normal shift.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0083

B 069

## ARTICLE XXVIII
## LEAVE OF ABSENCE

The Employer agrees to grant the necessary and reasonable time off, without pay, to one (1) employee serving on the Union Executive Board designated by the Union to attend a labor convention, provided and upon the following conditions:

☐　　At least ten (10) days' written notice therefore is given by the Union to the Employer setting forth the name of the employee, the nature and place of the convention and the respective dates under which such time off shall commence and end.

☐　　The duration of such time off shall not exceed one (1) workweek and shall occur only once in any calendar year.

☐　　The leave does not provide any operational hindrance.

Employees requesting a Leave under the Family Leave Act will have the option to exhaust all eligible paid time off before starting a 12 week leave without pay as provided for under the act.

## ARTICLE XXIX
## TRAINING PROCEDURE

When the Employer determines a need for developing a pool of additional qualified employees in a job classification, an appropriate number of training bids will be posted. The training opportunities will be awarded to the most senior qualifiable employee(s) within the Department. Those individuals awarded the training bid will be given basic training as a group and then provided with on-the-job training as soon as possible based on seniority. Those who successfully complete the training program will become Qualified Trainees in the job classification. When a job opening occurs in that job classification, those who are Qualified Trainees in that classification will fill the opening based on their seniority.

The Company will set in place a procedure by which any employee who wishes will be afforded the opportunity to train and receive a CDL license. This procedure will be in place no later than September 1, 1995, and the Union agrees to cooperate with the Company to accomplish this within contractual limits. The Company will provide a vehicle for training and an Instructor. The employee will not be paid for the time spent training or the cost of the CDL license.

Margolis Edelstein
Tillman, Marignya v. Pepsi
0084

- 24 -

B 070

## ARTICLE XXX
## DRUG/ALCOHOL POLICY

The manufacture, use, sale, purchase, transfer or possession of any alcoholic beverage or illegal drugs during working hours, including breaks or lunch time whether on or away from Company property, at any time during the course of a working day is cause for disciplinary action up to and including discharge.

Any employee who is convicted of the manufacture or sale of a controlled substance while off duty, may be subject to disciplinary action up to and including discharge.

An employee must report his conviction for a drug violation occurring in the workplace to the Company within five (5) days of their conviction and the failure to do so may result in disciplinary action up to and including discharge.

Reporting for work while under the influence of alcohol, illegal drugs, or excessive amounts of prescribed drugs which impair performance subjects an employee to immediate discharge.

Employer may require that an employee be tested for the presence of drugs or alcohol only under the following circumstances: (1) When the Employer reasonably suspects that the employee is impaired or under the influence of alcohol or drugs. Provided that prior to an employee being required to submit to testing, the Employer will, if feasible under the circumstances, afford a Steward the opportunity to observe the employee. (2) When the employee is participating in a treatment program of which regular testing is a part.

In the case of Drivers, testing will be required in accordance with any Department of Transportation legislation or other legislative requirement.

An employee is obligated to cooperate in any such medical examination or test including the execution of any forms required by any medical facility or laboratory which is involved, and the execution of an appropriate consent form and authorization of the examination and test results to be released to the Employer. If the employee fails in any way to fulfill such obligation or otherwise to cooperate in any medical examination or test hereunder, he/she shall be subject to immediate discharge for such failure. Any Driver found to have an alcohol concentration of 0.02 or greater but less than 0.04 shall not perform, nor be permitted to perform, any safety-sensitive functions for at least 24 hours, including driving a commercial motor vehicle. Any Driver found to have an alcohol concentration of 0.02 or greater but less than 0.04 will be subject to regular drug and/or alcohol testing for a period of twelve (12) months, similar to those employees participating in a drug and/or alcohol treatment program.

The Employer may conduct unannounced searches for illegal drugs or alcohol on Employer's property. Such searches are to be confined to Company property, but under no circumstances may the search include the employee's body or uniform being worn or the employee's personal motor vehicle.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0085

B 071

As a condition of employment, all applicants must undergo a blood or urine test for controlled substances. No applicant who tests positive and who has no alternate acceptable medical explanation will be hired.

Any employee tested hereunder shall be given the opportunity to have the blood or urine sample tested simultaneously by an independent certified laboratory. If the test by the independent laboratory is positive, the cost for it will be paid by the employee. If the result is negative, the cost will be paid by the Employer.

This Policy will be strictly enforced. If any employee is having an alcohol or drug-related problem and desires professional help, please contact your supervisor, the Pepsi-Cola Employee Relations Office, or Teamsters Local 830 – we will do all we can to help you.

Any employee testing positive as a result of a government regulation or legislation shall be given the opportunity to submit to a certified rehabilitation program in lieu of discipline, unless it is determined that such employee performed work while under the influence of drugs or alcohol. This, however, shall only apply to the first failure of a test.

## ARTICLE XXXI
### SEASONAL EMPLOYEES

Provided there are no employees laid off in a department, the Employer may hire seasonal employees in that department during the period of April 1, through September 10. Seasonal employees shall not receive benefits nor shall they accrue seniority, however they must become members of the bargaining unit. Pay for seasonal employees shall be 70% of the rate, (or base pay and commission) for the classification in which they work. This article shall not preclude the company from using casual employees to perform work that has not been exclusively performed by members of the bargaining unit or to cover manpower shortages (e.g. Any Injury, Government Mandated Absences, Approved absence for family emergency, etc.) It is not the intent of the Company to eliminate or restrict available overtime therefore the Company will attempt to exhaust all other reasonable means of covering these manpower shortages with bargaining unit employees before resorting to outside sources. The Company also agrees to limit the total number of casual employees used outside of the seasonal periods to no more than 5% of the total workforce.

## ARTICLE XXXII
### MERCHANDISING

It is understood and agreed that in all accounts a Route Salesman shall devote his working time to selling, advertising and merchandising the products of the Company and shall give regular and constant service as designated by the Company, to all customers on his route. Route Salesmen shall actively prospect for and solicit new customers and all Company policies regarding sales transactions and records will be strictly adhered to.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0086

B 072

## ARTICLE XXXIII
### RESETS

Route Salesmen will be responsible for performing, resets, however, they will not be solely responsible for major resets (defined as, Full Cold Vault, Full Aisle, Full Store or Large Cooler. Placement).

## ARTICLE XXXIV
### TERMINATION

The terms and conditions of this Agreement shall, except as herein otherwise expressly provided, become effective the first (1st) day of January, 2000 and shall continue in full force and effect up to and including the thirty-first (31st) day of December, 2004 and thereafter from year to year unless and until either party shall give to the other notice by registered mail at least two (2) months prior to the expiration date in 2004 or to the expiration date in any year thereafter, of an intention to terminate, cancel or modify the Agreement.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto, this 1st day of January, 2000.

**FOR THE COMPANY:**

**THE PEPSI BOTTLING GROUP**

BY: _Michael Gilligan_
**Michael Gilligan**
**Vice President, Human Resources**

**FOR THE UNION:**

**TEAMSTERS LOCAL 830**

BY: _Daniel H. Grace_
**Daniel H. Grace**
**Secretary-Treasurer**

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0087

B 073

## APPENDIX A
## WAGE SCHEDULE

The hourly rate for Bulk Drivers who were employed in the Sales Department on January 1, 1995 shall follow Bulk Schedule (A). The hourly rate for Bulk Drivers who are new to the Sales Department after January 1, 1995 shall follow Bulk Schedule (B).

**WAGES**

|  | Effective 1/1/00 | Effective 1/1/01 | Effective 1/1/02 | Effective 1/1/03 |
|---|---|---|---|---|
| **Combo Routing** Pre/Post Mix | $ 0.15 | | | |
| Cups | $ 1.15 | | | |
| CO2 (Roundtrip) | $ .65 | | | |
| Full Service | $ 0.46 | | | |
| **On-Premise** | $ 15.78 | $16.23 | $16.63 | $17.03 |
| Bulk Schedule A | $ 20.40 | $20.85 | $21.25 | $21.65 |
| Bulk Schedule B | $ 16.50 | $16.95 | $17.35 | $17.75 |
| Extra Men | $ 15.78 | $16.23 | $16.63 | $17.03 |
| **HOURLY:** Manufacturing | $ 14.90 | $15.35 | $15.75 | $16.15 |
| **Distribution** Transport | $ 15.50 | $15.95 | $16.35 | $16.75 |
| Satellite Warehouse | $ 14.90 | $15.35 | $15.75 | $16.15 |
| **Service** Mechanic A | $ 17.25 | $ 17.70 | $ 18.10 | $ 18.50 |
| Mechanic B | $ 16.25 | $ 16.70 | $ 17.10 | $ 17.50 |
| Mechanic C | $ 15.50 | $ 15.95 | $ 16.35 | $ 16.75 |
| Flex Week Premium | $ .30 | $ .30 | $ .30 | $ .30 |

Margolis Edelstein
Tillman, Mariayna v. Pepsi
0088

B 074

Effective upon ratification of this Agreement dated January 1, 2000 through December 31, 2004, the following one time lump sum ratification bonuses shall be made:

Conventional CRs:              One thousand dollars ($1,000)
Extra Men:                     Five hundred dollars ($500)
All other hourly employees:    One hundred dollars ($100)

For employees who were Conventional CRs prior to the Full Facility re-route in February 2000, and after the re-route they became Extra Men, the following would apply to their one time lump sum ratification bonus:

☐      If the Extra Man spends more than 50% of year 2000 (after moving into the Extra Man classification) in a commissioned job classification, the Company will pro-rate their lump sum ratification bonus based on the percent of time spent in a commissioned job classification in 2000.

The night shift premium is thirty-five cents ($.35). Night shift premium will be paid to all hourly paid employees whose work shift starts anytime between 12:00 p.m. (noon) and 4:00 a.m..

☐      On-Call Vending Mechanics will be compensated at twenty dollars ($20.00) per day. In the event an On-Call Vending Mechanic is called into service, he shall be guaranteed a minimum of two (2) hours of pay.

**Section 2. Step Rates:**    All newly-hired employees shall be paid according to the following Step Rate schedule:

| **Period of Employment** | **Rate of Pay** |
| --- | --- |
| 0 – 12 Months | 80% of Applicable Rate |
| 13 – 24 Months | 90% of Applicable Rate |
| 25 Months & Thereafter | 100% of Applicable Rate |

The Company reserves the right to waive Step Rates at any time. Step Rates shall not apply to commissioned Retail CRs.

**Section 3. Short Term Disability:**  The maximum payment for any employee out of Short Term Disability will be $350 per week.

Margolis Edelstein
Tillman, Mariayna v. Pepsi
0089

- 29 -

B 075

**APPENDIX B**
**MEMORANDUM OF AGREEMENT**
**REGARDING TOOL ALLOWANCE**

Effective with the week of March 18, 1991, the undersigned agree all employees within the Service Department will be issued all tools required to complete their regular and necessary work assignments. It is understood this tool purchase is on a one-time basis only. Should an issued tool become lost, stolen or rendered unusable during the performance of their regular work assignments, it will be replaced by the Company.

The below all inclusive listing of tools will form the basis for the extent and type of tools purchased.

**TOOLS FOR SERVICE MECHANICS**

- Set of open or closed wrenches 3/8" to 7/8"
- Set of nut drivers ¼", 5/16", 11/32", 3/8", 7/16", ½"
- Oetiker crimpers
- Pair of pinch-offs vise-grip
- (2) Screw drivers – slotted and Phillip's
- 10" adjustable wrench
- Vise-grip locking wrench
- Crescent multi-pliers
- Alligator pliers (about the same tool)
- Hose
- Needle-nose pliers
- Slip joint plier
- ¼" and 3/8" combination drive socket set
- Diagonal cutter or dikes
- Utility Knife
- Hammer
- Hex Key Set
- Torpedo Level
- File Flat
- Tool Box or Utility Pouch
- Flashlight
- Thermometer
- Wire Brush

**$100.00 Approximate Cost Per Employee**

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0090

B 076

## APPENDIX C
## WEST CHESTER, PA / WILMINGTON, DE
## PEPSI-COLA HOURLY PENSION PLAN
## EFFECTIVE JANUARY 1, 1995

**Effective Date**

January 1, 1995

**Eligibility**

All regular, full-time employees covered by this Labor Agreement.

**Participation**

Eligible employees become a participant on the date they:

☐     Are Age 21 or older and

☐     Have completed twelve (12) months of employment in which you are credited with 1,000 or more hours of employment. This twelve (12) month eligibility period will be measured from date of hire, or any subsequent January 1.

**Normal Retirement**

Age 65

**Early Retirement**

Age 55 and 10 years vesting service; 4% reduction factor per year prior to age 62.

**Disability Retirement**

10 years vesting service/6 month commencement from date of disability approved for social security disability award payable at age 65 (accrued benefit as of date of disability).

**Deferred Vested**

100% vested in pension plan, but have not met age and service requirements for early retirement. Benefit payable at age 65, or a reduced amount beginning on the first day of any month after you attain age 55. Reduction is the actuarial equivalent of the benefit payable at age 65, not the early retirement reduction factor.

**Qualified Pre-Retirement Survivor Annuity**

Automatic (no charge) -- Actives (Vested)
Elected (reduction charge) -- Deferred Vested

**Vested Service**

Years of service used to determine eligibility for benefits. Vesting date is date of hire.

**Vesting Schedule**

100% vested after 5 years

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0091

**Credited Service**

Years of service used to determine the amount of benefits at retirement or other termination of employment.

**Benefit Formula**

Dollar Multiplier x Years of Credited Service = Monthly Benefit; reduced by the Early Retirement Discount Factor (if any).

**Dollar Multiplier:**

Effective January 1, 2000:    $42.00

- 32 -

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0092

**APPENDIX D**
**INTENT OF CLASSIFICATION COMBINATION**

<u>Manufacturing Classification</u>

1.  **Can Team:**      Filler (High Cone, Tray, 24-Pack), Depal, Forklift,    Extra Person

2.  **2-Liter Team:**   Filler, Labeler, Shell Thrower, Palletizer, Forklift,    Extra Person

3.  **Syrup Team:**     Pre/Post Mix

❑   The intent of this proposal is twofold. First, we would like each employee to become familiar with all jobs within his/her Team. Second, the existing employees will not be disqualified or otherwise disciplined for failure to reach acceptable performance levels in all functions within a Team, provided there is a good faith effort.

❑   Each Team will be composed of two (2) regular shifts and one (1) additional shift during peak periods.

❑   No premium jobs.

❑   Each employee bids the Team and the shift they desire.

❑   The Company will decide with the Team which job each member of that Team will be performing. It behooves the Team to place individuals in jobs they feel most comfortable in and show the greatest aptitude.

❑   Each Team Member will be placed in his or her job according to seniority and classifications.

❑   The extra person on each Team will be used to rotate employees through the different jobs on his/her Team in order for those employees to receive the necessary training.

Margolis Edelstein
Tillman, Markyna v. Pepsi
0093

- 33 -

B 079

## LETTER OF UNDERSTANDING #1

### SENIORITY FOR SELECTING VACATIONS

The Company will honor the one time recommendation by the Union on how employees will pick their vacation (either by Department Seniority or by Company Seniority)

- 34 -

Margolis Edelstein
Tillman, Markayna v. Pepsi
0094

B 080

## LETTER OF UNDERSTANDING #2

### SELECTING VACATIONS

Vacation schedule will be posted by the end of November. Each employee, in order of seniority (department or Company to be determined by letter of understanding) will have three (3) days to select all of his/her vacation. If this employee does not select vacation weeks within this three day period they will go to the bottom of the list, and the next senior employee will select their vacation weeks. Once an employee has selected his/her weeks, (which should be completed by the end of December of the previous year) no other employee can displace that selection. Employees will be required to use their vacation as selected. Employees will only be allowed to turn down their vacation on case by case situation as mutually agreed upon by Management and the employee. If an employee's vacation week is switched, their old vacation week will be posted for bid. Employees trading vacation weeks will be disciplined.

Margolis Edelstein
Tillman, Mariayna v. Pepsi
0095

B 081

## LETTER OF UNDERSTANDING #3

## CR INVOLVEMENT IN PRICING, FEEDBACK ON NET REVENUE

It is the intent of Wilmington/West Chester management to include a representative selection of conventional commissioned Customer Representatives in the preliminary process of developing pricing in each Trimester of the year. This could include the following: requests for information on competitive pricing, feedback on various levels of pricing under consideration and feedback and ideas on various promotional programs.

In addition, as part of these Trimester pricing discussions, we'll also ask for CR input on the status of the Net Revenue Compensation system.

- 36 -

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0096

B 082

## LETTER OF UNDERSTANDING #4

### HANDLING OF PAYROLL MISTAKES

In the event there is a mistake of greater than $100.00 in an employee's regular weekly paycheck, the company will make every reasonable effort to correct that mistake and mail the correct compensation amount to the employee within 48 hours of being notified of such mistake, unless the company becomes aware of the mistake on a Friday after 10:00 a.m.. In the event the company is notified on a Friday after 10:00 a.m., the company will make every reasonable effort to have the corrected compensation amount mailed to the employee for delivery on Tuesday of the next workweek.

Any employee whose paycheck is incorrect should notify their immediate supervisor as soon as possible in order to correct the mistake. If the immediate supervisor is unavailable the employee should notify the local Human Resource Manager to correct the mistake.

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0097

B 083

## LETTER OF UNDERSTANDING #5

At the request of the union, the parties agree to schedule a meeting with two members of Local 830 to discuss issues pertaining to Flexible Benefits. This meeting will be conducted prior to a final decision on the subsequent year's benefits design. The Company will respond to reasonable requests for information on the benefits plan and will provide the employee representatives the opportunity to provide input and to identify their concerns and needs.

- 38 -

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0098

B 084

10/09/2002  04:54  3027644791          HR WILMINGTON                PAGE  01

DEPT. OF LABOR

OCT 0 8 2002



# *The Pepsi Bottling Group*
# *Wilmington, Delaware*

**To:** Julie
**Company:** Dept. of Labor
**Phone:**
**Fax:** 761 - 6601
**From:** Sara Swartz
**Phone:** (302) 761-4852
**Fax:** (302) 764-4791
**Date:** 10/8/02

**Pages Including
this cover page:**

**Comments:**

Julie —
The attachments are included in the mailed packet.
We are not going to fax the attachments, as there are
too many. If you would like us to hand deliver them
please give me a call 302.761-4852.
Thanks,
Sara

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0600

B 085

Before taking her CDL test, Ms. Tillman expressed interest in a warehouse position. Ms. Tillman interviewed for an open, union warehouse position with Product Availability Supervisor Glen Matthews (White male) in early April 2002. Ms. Tillman was offered and accepted the 2nd shift warehouse position.   Ms. Tillman's scheduled start date was April 29, 2002; however, before this date, she rescinded her acceptance and chose to remain in the Sales Department.

In early June 2002, Ms. Tillman approached Product Availability Manager Tom Riley (Black male) to express interest in the warehouse position again.  A second offer was made to Ms. Tillman and she began working in the warehouse on July 29, 2002.

**Allegation:  As recently as 9/27/02 I was falsely accused of leaving my shift without checking with the Supervisor on Duty.**

Response:

Ms. Tillman was instructed on more than one occasion that she must report to the Supervisor on Duty before leaving her shift.

On August 12, 2002, Ms. Tillman, along with another new warehouse employee Karl Riley (Black male), met with Mr. T. Riley and Mr. Matthews to discuss employment expectations and the rules and regulations of the Warehouse Department.  One topic of the conversation was to always report to the Supervisor on Duty before leaving at the end of the shift.  The following day, on August 13, 2002, Ms. Tillman left her assigned shift without checking with the Supervisor on Duty.  Because this was the first time Ms. Tillman left her assigned shift without checking with the Supervisor on Duty, Mr. Riley and Mr. Matthews reminded Ms. Tillman of the previous day's conversation and coached Ms. Tillman on PBG's expectations and procedures about completing a shift.  On August 27, 2002, Ms. Tillman was approached by Mr. Matthews regarding an allegation that Ms. Tillman left the facility the previous night without informing the Supervisor on Duty.  Ms. Tillman denied the allegation and once Mr. Matthews completed an investigation, no discipline was issued, as the findings were inconclusive.

**Allegation:  ...hold me to a higher standard than my white male coworkers with regards to rules and regulations.**

Response:

On October 2, 2002, Ms. Tillman complained that Mr. T. Riley confronted her about a safety violation.  Ms. Tillman admitted to having performed an unsafe act; however, she defended the unsafe act by stating that her coworkers trained her to operate the equipment as such.  When operating motorized equipment, all employees are trained to stay inside the equipment so as to avoid injuries, like being run over.  However, employees believe that performing this unsafe act helps them complete their job faster.  Mr. T. Riley saw Ms. Tillman walking in front of her motorized equipment and had a conversation with her about the safety concerns

-3-

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0602

associated with performing this act. This is the same conversation Riley, or any manager, would have and do have with other employees when they are observed performing similar unsafe acts.

**Allegation: Also, I am paid lower wages than my White male counterparts...**

Response:

Ms. Tillman was being paid the same as her male counterparts. When Ms. Tillman began the warehouse position (7/29/02), she earned $12.60 per hour, or 80% of the contract rate ($15.75). In addition, Ms.Tillman earned a $0.35 shift differential when her shift began after 12:00 p.m.. As stated in the collective bargaining agreement under Appendix A Wage Schedule (Attached):

> all newly hired employees shall be paid according to the following Step Rate schedule:

> | Period of Employment | Rate of Pay |
> |---|---|
> | 0 – 12 Months | 80% of applicable Rate |
> | 13 – 24 Months | 90% of applicable Rate |
> | 25 Months and Thereafter | 100% of applicable Rate |

After consideration, Plant Manager Phil Weber (White male) decided to increase Ms. Tillman's pay to the contract rate because Ms. Tillman was an internal PBG hire. Weber also did this for two additional employees (Stan Coleman – Black male and Bill Backer – White male), who were internal hires at about the same time. Ms. Tillman, along with the two employees, retroactively received the contract rate ($15.75) from her July 29, 2002 hire date.

**Allegation: I have been told that I could not get a Driver position because I am not in the Union.**

Ms. Tillman was not told that she could not get a Driver position because she was not in the Union. On the contrary, Ms. Tillman did not possess a Class A CDL. She was told that she needed to obtain a Class A CDL and she was given coaching and training. She was also told that she might consider a union warehouse position in order to build seniority for bidding purposes.

The Driver position is covered by the collective bargaining agreement (CBA) entered into between PBG and the International Brotherhood of Teamster Local 830. Article XVII (attached) of the CBA states:

> all job vacancies created by the Employer in the bargaining unit will be posted for a period of five (5) work days prior to being filled from outside the bargaining unit. Bargaining unit employees wishing to be considered for a job opening must file a written bid form with his/her immediate supervisor during the five (5) day posting period. Preference in bidding will be given to employees in the department in which the opening occurs. If no employees within the department bid on the position or does not qualify, qualified

-4-

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0603

B 087

she was given additional coaching and training opportunities in order to help her succeed.

Should you require further information, I can be reached at 302.761.4502

I hereby certify that the answers to the above questions are true and correct to the best of my knowledge, information and belief, and that I have made an inquiry into the facts and circumstances relating to the substance of the questionnaire.

Sincerely,

Rhonda N. Curry
Human Resources Manager
October 3, 2002

-7-

Margolis Edelstein
Tillman, Marlayna v. Pepsi
0606

B 088

10/17/02

DEPT. OF LABOR

OCT 1 8 2002

INDUSTRIAL AFFAIRS
OFFICE OF LABOR
LAW ENFORCEMENT

Ms. Sandra Marquez
Office of Labor Law Enforcement
4425 N. Market Street
Wilmington, DE 19802

Re:     Tillman v. Pepsi Bottling Group
        Case No.: 0209613/17CA200627

Dear Ms. Marquez:

I am the charging party in the above referenced case. I'd like to take this opportunity to
supply you with some information regarding the matter.

1.) It should be noted that within a week of filing my charge of discrimination,
specifically, the charge with regard to equal pay, my rate of pay was suddenly
boosted to be comparable (though not necessarily equal) with the male
counterparts in my department. However, within two weeks of the pay hike, I
was laid off from my position, along with several other male co-workers, though
there was no evidence a layoff was imminent or required. Within a week of the
initial layoffs, all male co-workers were recalled back to work, while I was not
recalled. As of this writing, I am in my fourth week of layoff status, with no
forecast as to when I will be recalled. *I believe I was laid off in retaliation* for
filing my charge of discrimination and would like this issue to be investigated in
conjunction with my original charge.

2.) Please be advised the human resources manager for the Pepsi Bottling Group,
Wilmington, DE plant is no longer Rhonda Curry. On or about 10/15/02 she was
transferred to our Somers, NY facility. Her replacement is *Ms. Tracy Dryzwycki.*

3.) Below find names of past and present Pepsi employees who may be able to
corroborate assertions I have stated in my original charging document (phone
numbers have been provided where possible):

James Felicetti (610) 869-7029
James Bell (302) 764-3338
Leon Earl (302) 286-0397
Jeffrey Felicetti (302) 325-2615
Greg Jabkowski (610) 328-7589
Charlie McClain (610) 874-5844
Mr. Jackie Miller (302) 832-1808
Howard Laws (302) 652-4699
Michael Johnson, Sr. (302) 455-0511
Dave Hitchens (610) 461-4065
Jeffrey Nau (302) 836-1383
Dan Patterson (302) 892-2193
Charlie Rodgers (610) 544-2658
Peyton Spencer (302) 324-0422

PBG 01033

Mr. Kimani Hasan (267) 205-9692
Dennis Spicer (302) 324-0338
Jeff Stanley (610) 534-2609
Dwight Cephas (302) 765-2242
Dan Cooney (302) 652-1420
Timothy Klein (302) 996-0976
Darrell Cephas (302) 323-0336
Stan Coleman (610) 485-0257
Bernard Stewart (302) 661-1474
Cleavon Thomas (302) 764-4141
Eric Bing (302) 764-7939

Also note that some employees could initially be reluctant to speak on the record in fear of retaliation by management, so confidentiality is of the utmost importance in this matter.

If you require my assistance in any phase of this investigation, please do not hesitate to contact me. Thank you for your efforts.

Regards,

Marlayna Tillman
P.O. Box 688
Claymont, DE 19703-0688
(302) 762-0415 home
(610) 457-9507 cell
(302) 762-7581 fax
e-mail: mgtillman@yahoo.com

cc: Susan S. Anders, Administrator, Office of Labor Law Enforcement
    Julie Cutler, Enforcement Officer, Office of Labor Law Enforcement

MGT/mgt

PBG 01035

B 090

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
 2               CIVIL ACTION NO. 04-1314
 3
     MARLAYNA G. TILLMAN,
 4               Plaintiff,
 5          vs.
 6   THE PEPSI BOTTLING GROUP, INC.
     AND TEAMSTERS LOCAL UNION 830,
 7               Defendants.
 8
                  ------------
 9          WEDNESDAY, FEBRUARY 28, 2007
                  ------------
10
11          Oral sworn deposition of SARA SWARTZ
     ALTMAN, taken at the law offices of BALLARD, SPAHR,
12   ANDREWS & INGERSOLL, 1735 Market Street,
     Philadelphia, Pennsylvania, on the above date,
13   commencing at 10:00 a.m., there being present:
14
            J. STEPHEN WOODSIDE, ESQUIRE
15          One Montgomery Plaza, suite 605
            Norristown, Pennsylvania 19401
16          Attorney for Plaintiff.
17
                  - - - - - -
18
19
                    TATE & TATE
20          The Lexington Building, Suite 5
                 180 Tuckerton Road
21          Medford, New Jersey  08055
            (856) 983-8484 - (215) 735-9088
22
23
24
25
```

B 091

USDC, District of Delaware        Tillman v. The Pepsi Bottling Group, Inc., et al        Wednesday
Civil Action No. 04-1314            Deposition of Sara Swartz Altman            February 28, 2007

Page 26

1  Q.    How about as regards the reports
2  themselves, did management ever give you any
3  feedback about the disparity in the gender makeup in
4  the Wilmington plant?
5            MS. CLEMONS: Same objection. Don't
6  answer it. The only time she pulled reports on race
7  and gender was about the affirmative action plan.
8  We objected and the court granted, the sustained our
9  objection to your right to have that information.
10           (At which time a break was taken.)
11           (Exhibit Altman 1, Wilmington
12  Employees 2001, was marked for identification.)
13           (Exhibit Altman 2, Wilmington
14  Employees 2002, was marked for identification.)
15           (Exhibit Altman 3, Wilmington
16  Employees 2003, was marked for identification.)
17           (Exhibit Altman 4, Wilmington
18  Employees 2004, was marked for identification.)
19  Q.    I will show the witness what's been marked
20  as Altman 1, 2, 3 and 4 and your counsel can look at
21  it with you.
22           MS. CLEMONS: You don't have copies
23  for me.
24           MR. WOODSIDE: I don't. You will have
25  to use the witness copies.

Page 27

1  Q.    Have you had a chance to look at what's
2  been marked Altman 1?
3  A.    Yes.
4  Q.    Do you recognize it?
5  A.    Yes.
6  Q.    Tell me what you recognize it to be.
7  A.    A document showed to me by my counsel.
8  Q.    Well, all right, beyond that, what is it?
9  A.    It is a Wilmington employees list for 2001.
10  Q.    Is this the kind of data that you told me
11  that you were working with in your employment at
12  Pepsi during your tenure?
13  A.    Can you repeat the question?
14  Q.    Was this the kind of -- report and/or data
15  that you were working with during your employment
16  and tenure that you described?
17  A.    Yes.
18  Q.    Did you actually make up this report or
19  this spread sheet?
20  A.    Not that I can recall.
21  Q.    How did you work with it?
22           MS. CLEMONS: Objection.
23  Q.    How did you work with it?
24           MS. CLEMONS: Objection.
25  Q.    What were you using it for?

Page 28

1            MS. CLEMONS: Using what for?
2            MR. WOODSIDE: Altman 1, what we are
3  talking about.
4            MS. CLEMONS: She --
5  Q.    Did you use the data on the report?
6  A.    No. This report was shown to me by my
7  counsel.
8  Q.    Before today, have you seen this report or
9  this information?
10           MS. CLEMONS: Objection. She said
11  three times she saw it with her counsel.
12  Q.    Prior to today, have you seen the report or
13  this information?
14  A.    Yes, with my counsel.
15  Q.    Well, aside from what you saw with your
16  counsel, you haven't seen this before that time
17  where you saw it with your counsel?
18  A.    Not that I can recall.
19  Q.    Did the Excel spread sheets or the
20  information you were working with, did it look
21  similar to this or was it similar to this
22  information?
23  A.    Yes.
24  Q.    And similar in terms of showing the
25  employee name, right?

Page 29

1  A.    Yes, at times.
2  Q.    And what is the DOH? Did the information
3  you were working with show date of hire?
4  A.    Yes.
5  Q.    Is that what DOH means? DOH means date of
6  hire and then term date is the termination date of
7  that particular employee?
8  A.    Yes.
9  Q.    And then gender is what is shown on your
10  gender, right?
11  A.    Yes.
12  Q.    That's what you were working with when you
13  were in your department in human resources?
14           MS. CLEMONS: Objection.
15  Q.    You were working with gender information
16  too on your Excel spread sheets, right? Were you?
17  A.    During my affirmative action plans.
18  Q.    Were you actually writing these plans?
19  A.    No.
20  Q.    But you were providing information to
21  management to write the plans, right?
22           MS. CLEMONS: Objection.
23  Q.    Were you? You can answer.
24           MS. CLEMONS: No, she can't. You are
25  not entitled to information about the affirmative

8 (Pages 26 to 29)

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al                    Wednesday
Civil Action No. 04-1314                    Deposition of Sara Swartz Altman                     February 28, 2007

**Page 42**

1  Q.    And then Tracey Drzewiecki?
2  A.    Yes.
3  Q.    What did they do when they got her
4  complaints, do you know?
5  A.    Firsthand, I know that she — that they
6  addressed Marlayna's issues with Marlayna, and I
7  know this because they had meetings, but I don't
8  know what was discussed.
9  Q.    Were you involved or attending any of these
10 meetings?
11 A.    Occasionally.
12 Q.    When you attended the meetings, how did it
13 come up?
14 A.    I don't remember.
15 Q.    Was she complaining that she was the only
16 female employee in the union position at Pepsi
17 during the time that she was working in the union
18 position?
19 A.    Not that I remember.
20 Q.    It didn't come up at the meetings that you
21 attended; is that right?
22 A.    Complaining or that it came up?
23 Q.    That it came up.  Did it come up at the
24 meetings that you attended?
25 A.    There were particular meetings that I

**Page 43**

1  remember that it came up, but I don't know that it
2  came up at every meeting.
3  Q.    Well, on the meetings where you remember it
4  coming up, how did the management handle it?
5  A.    Investigations, but I don't remember what
6  they said.
7  Q.    Well, was it investigations into her
8  complaints that she was the only woman working in
9  the union position at Pepsi?
10 MS. CLEMONS: Objection, she said it
11 wasn't a complaint already.
12 Q.    Well, you said that was investigated; is
13 that right?  Was that investigated?
14 A.    Was what investigated?
15 Q.    The fact that she complained she was the
16 only woman working in a union position in the
17 Wilmington plant.
18 A.    She did not complain, to my knowledge, that
19 she was the only woman working in the plant.  She
20 brought up the fact that she was the only woman
21 working in the Wilmington plant.
22 Q.    Didn't that come up in the context of her
23 complaining that she was the only woman and that
24 there was a work environment that was creating
25 trouble for her?  Isn't that the context that it

**Page 44**

1  came up?
2  A.    Yes.
3  Q.    So she was complaining about the
4  environment she was working in and it was because
5  she was the only woman working in a union position,
6  right?
7  MS. CLEMONS: Objection.
8  Q.    You know that?
9  MS. CLEMONS: And the judge has
10 dismissed her harassment case.  We're not going to
11 go over things the judge dismissed.  Her sexual
12 harassment case based on gender is dismissed.
13 MR. WOODSIDE: I didn't ask you about
14 sexual harassment.  I asked about work environment.
15 MS. CLEMONS: Hostile work environment
16 is what you are asking about and the case is
17 dismissed.
18 MR. WOODSIDE: I asked her about her
19 work environment.
20 MS. CLEMONS: Okay.
21 MR. WOODSIDE: That came up in the
22 context of her complaint, right, there was a general
23 work environment.
24 MS. CLEMONS: She said it wasn't a
25 complaint.  Stop putting words in her mouth.  You

**Page 45**

1  can answer, Sara.
2  A.    When Marlayna brought up, to my
3  recollection, the fact that she was the only female
4  with a sexual harassment complaint.
5  Q.    And that's the context that her complaint
6  about being the only female working in the union
7  position during her tenure at Pepsi in Wilmington
8  came up, right?
9  MS. CLEMONS: Objection.
10 MR. WOODSIDE: You need to say yes.
11 MS. CLEMONS: She did not complain
12 about that.
13 Q.    You are nodding your head.  You have to say
14 yes.
15 A.    Can you repeat the question?
16 Q.    Well, I saw that you were nodding your
17 head.  I assume that's your answer.
18 MS. CLEMONS: That's not her answer.
19 She was not nodding her head affirmatively and if
20 you want to ask her a question, that's appropriate
21 and stop skewing her answers to the previous
22 questions.
23 Q.    During your employment at the human
24 resources department, did you become aware of
25 certain rules of conduct dealing with discrimination

12 (Pages 42 to 45)

B 093

Page 94

1   A.    Yes.
2   Q.    It is a non-union position?
3   A.    Merchandising?
4   Q.    Merchandising.
5   A.    Yes.
6   Q.    If it's not a department, what is it?
7   A.    It is a job title.
8   Q.    It is a non-union job title. The job title
9   is to describe what those duties are?
10          MS. CLEMONS: Objection. Asked and
11  answered.
12  Q.    It describes the duties.
13          MS. CLEMONS: Sara, you can answer
14  again, but you don't have to change the answer.
15  A.    I don't think a title describes the duties.
16  Q.    What do you think it describes?
17  A.    It is their title.
18  Q.    What's it describing?
19  A.    Their position.
20  Q.    And the position will, in turn, allow me to
21  know what that person's duties are, right?
22  A.    I don't know.
23  Q.    Well, if Miss Tillman is working in
24  merchandising, that's a non-union position. What's
25  her job title in merchandising by way of example?

Page 95

1   A.    Merchandising.
2           MS. CLEMONS: Objection.
3           MR. WOODSIDE: She is answering.
4           MS. CLEMONS: That's not what she
5   said. It's not a department. It is a job title.
6           MR. WOODSIDE: She is answering the
7   question.
8           MS. CLEMONS: She answered it three
9   times already. You keep asking her the same thing
10  over and over again.
11          MR. WOODSIDE: Well, when she is --
12          MS. CLEMONS: It is getting harassing
13  and ridiculous.
14  Q.    Whether she is in merchandising, we know
15  she is in merchandising.
16  A.    What do you mean by in merchandising?
17  Q.    She is working in merchandising in some
18  non-union position at Pepsi? You are shaking your
19  head no.
20  A.    No.
21  Q.    Before Miss Tillman entered the union you
22  need to tell me what her job was, what the title was
23  and what the duties were. Maybe we can straighten
24  this out.
25  A.    Okay. She worked in the sales department

Page 96

1   in sales.
2   Q.    Before she entered the union?
3           MS. CLEMONS: Let her finish her
4   answer. Go ahead, Sara.
5   Q.    Is that the sales department as it appears?
6           MS. CLEMONS: Let her finish her
7   answer. She wasn't done.
8   A.    She worked in the sales department with the
9   job title as merchandiser.
10  Q.    Was that the sales department that appears
11  on page 17 of Altman 9? She is in that department?
12  A.    She is not in the sales department as
13  defined here.
14  Q.    She is in some other sales department?
15          MS. CLEMONS: Objection.
16  Q.    What sales department is she in?
17  A.    It is a department that is not defined in
18  here because there are non-union jobs within the
19  sales department.
20  Q.    They just don't appear here, right?
21  A.    That's not part of the contract.
22  Q.    But it is part of the makeup of the
23  company's organization, right?
24  A.    Say that again.
25  Q.    She is part of the makeup of the company's

Page 97

1   organization? She is in sales doing work with a job
2   title as merchandiser working non-union -- working
3   in a non-union capacity?
4   A.    Yes.
5   Q.    Is that on any kind of organizational chart
6   or document in anyway laying that out, that you are
7   aware of?
8   A.    Is what?
9   Q.    The job of merchandiser, at least job title
10  merchandiser as being part of sales but not part of
11  sales appearing in Altman 9, does that appear in any
12  kind of chart that you are aware of?
13  A.    A chart, no.
14  Q.    No kind of organizational or structure
15  chart of the plant would show that to me?
16  A.    I never did a chart for an hourly position.
17  Q.    You never saw one?
18  A.    No.
19  Q.    Who is the manager of the sales department
20  when Miss Tillman did the work with job title
21  merchandiser?
22  A.    Jack Crilley.
23  Q.    Spell it please.
24  A.    C-R-I-L-L-E-Y.
25  Q.    Who was the manager of the sales department

25 (Pages 94 to 97)

B 094

**Page 102**

1  2000 to December 31, 2004, the clean up that you are
2  describing didn't take place, or did it take place
3  before December 31, 2004?
4  A.    When I say clean up, I mean during
5  negotiations they didn't negotiate to take combo out
6  of the contract.
7  Q.    What is bulk?
8  A.    Bulk is a bulk driver that would deliver to
9  a grocery store.
10 Q.    How about extra men, is that supposed to be
11 man or men?
12 A.    I can't speak to what it's supposed to be.
13 Q.    What is it? What's that work?
14 A.    Extra man would be, an extra man would be a
15 person who would fill in for people who are out sick
16 or doing general duties as assigned to them.
17 Q.    What kind of general duties?
18 A.    Whatever the manager chose to assign to the
19 extra men.
20 Q.    Was Jack Crilley the only sales department
21 manager during the time you were working at Pepsi?
22 A.    No.
23 Q.    Who were the other managers?
24 A.    Lou Gamboli.
25 Q.    Did he replace Crilley or did he work with

**Page 103**

1  Crilley?
2  A.    Lou Gamboli was the area sales manager and
3  Jack Crilley became the sales manager for
4  Wilmington, the unit sales manager.
5  Q.    What do you mean the unit?
6  A.    The unit being Wilmington, the job title
7  was unit sales manager.
8  Q.    That was Crilley, right?
9  A.    Yes.
10 Q.    So Crilley was in charge of all of these
11 various, what do you want to call these under sales,
12 conventional combo, et cetera? What do we call
13 these things, sub departments?
14 A.    Sure.
15 Q.    Was Crilley the only one in charge of these
16 sub departments in sales appearing on Altman 9?
17 A.    No.
18 Q.    Who else was in charge?
19 A.    I mean if you want to define in charge, do
20 you want names of every manager? Do you want Jack
21 Crilley's boss' name? I'm not sure what you mean by
22 in charge.
23 Q.    Let me ask you this way. As regards all of
24 the work appearing in all of the union work
25 appearing in the sub departments and sales in Altman

**Page 104**

1  9, who are the managers who were in charge, if you
2  know?
3  A.    Of union employees?
4  Q.    Yes. Of that work.
5  A.    For what time period?
6  Q.    July 2001 through December 2004.
7       MS. CLEMONS: To the best of your
8  knowledge.
9  A.    To the best of my knowledge, okay, July
10 2001 to, so Jack Crilley, Jim Kelleher, Bob Ziegler.
11 Q.    Who else?
12 A.    Craig Nelson.
13 Q.    Who else?
14 A.    Chris Greicco, G-R-E-I-C-C-O.
15 Q.    Who else?
16 A.    Jamie Karp.
17 Q.    Who else?
18 A.    Rich McCarson.
19 Q.    Anybody else?
20 A.    You said December of 2004?
21 Q.    Yes.
22 A.    Dwayne Dixon.
23 Q.    These are all managers of union work
24 appearing in Altman 9 that you can think of?
25 A.    Yes.

**Page 105**

1  Q.    Did any of them manage the non-union work
2  that might be going on in the sales department
3  during the same time period?
4  A.    Yes.
5  Q.    All of them?
6  A.    No.
7  Q.    Who did, which ones?
8  A.    Who did manage union and non-union work?
9  Q.    To your knowledge, yes.
10 A.    Can I look at the list or can you repeat it
11 back?
12 Q.    Jim Kelleher?
13 A.    Managed union, yes.
14 Q.    And he is still at Pepsi today?
15 A.    Yes.
16 Q.    Bob Ziegler?
17 A.    Yes.
18 Q.    Still at Pepsi?
19 A.    Yes, to the best of my knowledge.
20 Q.    Craig Nelson?
21 A.    Yes.
22 Q.    He did both, managed both union and
23 non-union working sales?
24 A.    Yes.
25 Q.    He is still at Pepsi?

27 (Pages 102 to 105)

B 095

USDC, District of Delaware
Civil Action No. 04-1314

Tillman v. The Pepsi Bottling Group, Inc., et al
Deposition of Sara Swartz Altman

Wednesday
February 28, 2007

**Page 110**

1  Q.    Well, if I look at Altman 8, the bottom two
2  lines where she is Wilmington merchandiser where she is
3  non-exempt annual and she turns into hourly. What's
4  annual mean?
5  A.    Annual means yearly.
6  Q.    I see yearly $22,600. 40 hours a week?
7  A.    I can't speak to that. She was eligible
8  for overtime.
9  Q.    This says she is non-exempt. Does that
10  mean she is hourly?
11  A.    They all say non-exempt.
12  Q.    What means she is hourly on Altman 8, if
13  anything?
14  A.    What indicates that she is hourly?
15        MS. CLEMONS: On Altman 8 he is asking
16  you.
17  A.    I would have to say employee type.
18  Q.    Let's go back to non-union sales, either
19  hourly or salary, you gave me merchandiser and bulk
20  account rep. What else if anything?
21  A.    Hourly or salary?
22  Q.    Yes.
23  A.    Merchandising manager, territory
24  coordinator.
25  Q.    Sorry, what?

**Page 111**

1  A.    Territory coordinator.
2  Q.    That's another one?
3  A.    Territory sales manager, unit sales
4  manager, area sales manager, dispatch, sales admin.
5  I don't remember anything else.
6  Q.    Is the bulk account rep hourly or salary?
7  A.    That's a commission. It is basic
8  commission.
9  Q.    How about merchandising manager?
10  A.    Salary.
11  Q.    Territory coordinator?
12  A.    Salary.
13  Q.    Territory sales manager?
14  A.    Salary.
15  Q.    Unit sales manager?
16  A.    Salary.
17  Q.    Area sales manager?
18  A.    Salary.
19  Q.    Dispatch?
20  A.    Salary.
21  Q.    Sales admin?
22  A.    Salary with overtime.
23  Q.    Bulk account rep is commission only?
24  A.    No, commission and base.
25  Q.    And then merchandiser is hourly plus

**Page 112**

1  overtime or not?
2  A.    Just hourly.
3  Q.    Hourly. Any overtime on that position or
4  not?
5  A.    Yes.
6  Q.    And these are all the positions on the
7  non-union side of sales; is that right?
8  A.    For what period?
9  Q.    2001 through 2004.
10  A.    Yes, to the best of my knowledge.
11  Q.    So Tillman was in this non-union position
12  in the sales department as a merchandiser until July
13  of 2002, right?
14  A.    Yes.
15  Q.    I want you to give me the break down of
16  sales union positions.
17  A.    Sales union positions, from the same time
18  period?
19  Q.    Right.
20  A.    Bulk driver, conventional representative.
21  Q.    Conventional representative?
22  A.    Yes.
23  Q.    Is that called CR?
24  A.    Yes.
25  Q.    What else?

**Page 113**

1  A.    Extra man.
2  Q.    What else?
3  A.    Full service driver.
4  Q.    What else?
5  A.    Delivery driver.
6  Q.    These are all the union positions appearing
7  in the sales department on the union side, right?
8  A.    To the best of my knowledge.
9  Q.    Are there any that you gave me that are not
10  appearing on Altman 9 under sales?
11  A.    Everyone could fit into one of those
12  categories.
13  Q.    What is the work of the conventional rep,
14  the CR that you gave me? What's that work?
15  A.    What's the work?
16  Q.    Yes.
17  A.    Conventional rep will drive a conventional
18  truck. A conventional rep will sell and deliver to
19  customers. Conventional rep will handle money.
20  Q.    Whose money?
21  A.    Customers' money.
22  Q.    What else?
23  A.    And that's the majority of it to my
24  knowledge.
25  Q.    Is that conventional rep work you just told

29 (Pages 110 to 113)

B 096

**Page 114**

1  me the same kind of work that the conventional would
2  be describing as appears on Altman 9 under sales?
3  MS. CLEMONS: Objection, vague.
4  Q.  Is that the same work? You just described
5  for me the work under the sub department
6  conventional under sales in Altman 9?
7  A.  No, I just described to you the
8  conventional rep job.
9  Q.  Is there other work?
10  A.  Under the conventional?
11  Q.  Yes, look at Altman 9 where it has
12  conventional as a sub department of sales. What's
13  that work?
14  A.  To understand, this is under the layoff
15  article, and we did not use these to classify job
16  titles or -- we didn't use this I think the way that
17  you are trying to put it into a context. So it is
18  hard for me to describe to you what they meant by
19  conventional when I look at this.
20  Q.  Have you described all of the work that the
21  union positions would be involved with in the
22  conventional department in sales just now? Have you
23  described all of the work, all of the union work on
24  the conventional side of sales?
25  A.  No. I just described the conventional rep

**Page 115**

1  job duties.
2  Q.  That was my question. Is there other
3  conventional work, union work in sales that you
4  haven't described that would be called conventional
5  work?
6  MS. CLEMONS: Objection. I don't
7  understand what you are asking and she doesn't
8  either. It is confusing.
9  Q.  You gave me a definition of conventional
10  rep work.
11  A.  It is a job title.
12  Q.  Is there anything that would be deemed
13  conventional work outside of the conventional rep
14  work that you gave me in the union position side of
15  the sales department?
16  MS. CLEMONS: Objection. Confusing
17  and vague.
18  Q.  Is there?
19  A.  Is there anything outside of
20  conventional --
21  Q.  Rep work that could be called, that could
22  be as a job title that could be called conventional
23  work on the union side of the sales department?
24  MS. CLEMONS: Are you asking her about
25  the conventional representative job or the

**Page 116**

1  conventional area within sales? That's where the
2  confusion is? Are you talking about the
3  representative position or the --
4  MR. WOODSIDE: I think the witness
5  understands.
6  THE WITNESS: I don't.
7  MS. CLEMONS: She does not.
8  Q.  We're talking about conventional work.
9  We're on the union side of the sales department.
10  A.  Okay.
11  Q.  And aside from the conventional rep work
12  that you described, is there any other work that
13  could be called conventional work in the union side
14  on the sales department?
15  A.  On the union side?
16  Q.  Yes.
17  A.  A delivery driver and an extra man work
18  alongside the conventional rep to service the same
19  type of work. The difference would be bulk who
20  services a different type of the sales department.
21  (Exhibit Altman 10, E-mails between
22  Peterson, Church and Swartz dated 1/30/02, was
23  marked for identification.)
24  Q.  Let me show you what's been marked Altman
25  10. Before I ask you about Altman 10, I want to ask

**Page 117**

1  you in the conventional rep position, does that
2  require a different kind of license other than a
3  standard Pennsylvania driver's license?
4  A.  Yes.
5  Q.  Do all, does all of that work taking place
6  in the conventional rep department require a license
7  different than a standard Pennsylvania driver's
8  license?
9  MS. CLEMONS: Objection. There is no
10  conventional rep department. She said that 10
11  times.
12  Q.  Well, it is work. You understand what I'm
13  asking you. It is conventional rep work. Does all
14  of that conventional rep work require a license?
15  A.  Let's clarify. A conventional rep is
16  required to have a class A CDL in order to perform
17  his or her job duties.
18  Q.  That would be the delivery driver, right?
19  MS. CLEMONS: That's a different
20  question. Are you asking her that question?
21  Q.  That was something that you told me that a
22  conventional rep might be -- that that would be work
23  that would be taking place under the conventional
24  rep job title?
25  A.  No. I told you conventional rep, delivery

30 (Pages 114 to 117)

Page 118

1  driver, full service driver, do the same general
2  type of stores so they are going to use a truck with
3  roll up doors.
4  Q.    That requires a CDL class A, correct?
5  A.    Yes.
6  Q.    Have you ever heard of any employee doing
7  conventional rep work who did not have a CDL A
8  license?
9  A.    Do you mean conventional as to what I just
10  described to you?
11  Q.    Yes.
12  A.    Under the job title, no.
13  Q.    Have you ever known of any employees
14  assisting conventional reps doing work a
15  conventional rep might be doing without a CDL
16  license, but not driving?
17  A.    Not all the duties, no.
18  Q.    How about some of the duties?
19  A.    Yes.
20  Q.    What's the circumstances under which that
21  arose?
22  A.    In which a conventional rep would have a
23  helper?
24  Q.    Yes.
25  A.    If the conventional rep was injured and

Page 119

1  couldn't lift, you would allow the conventional rep
2  to drive and someone would go with that conventional
3  rep.
4  Q.    What else?
5  A.    If a conventional rep had a particular
6  heavy day, when I say heavy, I mean high volume, and
7  they asked for someone to help or someone was
8  available to help, they would have a helper.
9  Q.    A temporary type of assignment?
10  A.    A temporary assignment?
11  Q.    Yes:
12  A.    Yes.
13  Q.    That's how it comes up?
14  A.    As a temporary help. They don't typically
15  have someone on the truck with them every day
16  helping them out.
17  Q.    How long a period of time might that go on
18  for, to your knowledge?
19  A.    Might what go on?
20  Q.    The helper who is helping the conventional
21  rep either injured and/or can't lift.
22  A.    It would be — it could be anything. It
23  could be for the entire duration of their injury
24  until their restrictions are lifted for weight
25  capacity. It could be a day. It could be a week if

Page 120

1  it was 4th of July.
2  Q.    Could it be longer?
3  A.    Could it be longer?
4  Q.    Yes.
5  A.    For a consecutive period of time, not to my
6  knowledge.
7  Q.    Now, is this helper doing the work that the
8  conventional rep would otherwise be doing, but for
9  the fact that the driver might be injured and can't
10  lift?
11  A.    So might they be doing anything other than
12  helping the driver lift?
13  Q.    Right. You are doing — the helper is
14  doing the driver's or the conventional rep's work
15  because the conventional rep can't do it, that's
16  what they are doing?
17  A.    No.
18  Q.    Or they are a helper?
19  A.    They are helping.
20  Q.    Then they are helping the conventional rep
21  do his work, right?
22  A.    They are helping the conventional driver
23  lift.
24  Q.    And are they helping the conventional
25  driver do other things?

Page 121

1  A.    Not to my — perhaps merchandise. So if
2  you go into, I will give you the example of maybe a
3  Wawa and you find two liters on the shelf and 20
4  ounce in the cooler, the helper may do what they
5  call pack out a store, fill the shelves while the
6  conventional driver does other duties or helps that
7  person pack out the shelves.
8  Q.    What else?
9  A.    Nothing else that I know.
10  Q.    How about reset?
11  A.    Reset?
12  Q.    Yes.
13  A.    A conventional driver is not going to do a
14  reset during the day.
15  Q.    This helper could be doing anything that
16  the conventional rep would be doing, is that right,
17  except driving? They wouldn't be driving?
18        MS. CLEMONS: Objection. That is
19  asked and answered. She has told you no three
20  times.
21  Q.    That helper is doing conventional rep work?
22        MS. CLEMONS: Objection. Asked and
23  answered.
24  Q.    The helper is doing conventional rep work?
25        MS. CLEMONS: No.

31 (Pages 118 to 121)

B 098

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al                    Wednesday
Civil Action No. 04-1314                 Deposition of Sara Swartz Altman                         February 28, 2007

Page 122

1  A.    No.
2          MS. CLEMONS: That's not what she
3  said.
4  Q.    You told me the conventional rep does the
5  same things, pack out, whatever might be,
6  merchandise, that was your word. That's work that
7  the conventional rep is doing, right?
8  A.    A conventional rep will occasionally do
9  that, but I gave you the job description for a
10 conventional rep earlier, taking the money, they are
11 driving, they are making the sale, that's not
12 something that a helper would be doing.
13 Q.    Well, the helper is there to help the rep
14 do the rep's work, right; is that right?
15 A.    Part of the help.
16 Q.    Part of the rep's work. If the rep doesn't
17 have a helper, the rep does all the work that the
18 rep has to do, we know that?
19 A.    If the rep does the helper, yes, the rep
20 has to perform the job duties.
21 Q.    The helper is helping the rep under
22 circumstances or there could be a heavy day for a
23 short duration, right, on a temporary basis?
24 A.    Yes.
25 Q.    So what happens in Pepsi when the temporary

Page 123

1  basis becomes more of a long-term?
2  A.    It doesn't.
3  Q.    Like months?
4  A.    To my knowledge a driver has never had help
5  for months.
6  Q.    How about for weeks?
7  A.    To my knowledge the driver has never had
8  help for weeks.
9  Q.    How long did Tillman do work in the
10 conventional department? Sorry. How long did she
11 do conventional work?
12        MS. CLEMONS: Objection. Asked and
13 answered. You can answer it again, Sara.
14 A.    Marlayna Tillman, without specific dates,
15 was a merchandiser from May of 2001 through July of
16 2002.
17 Q.    And she was doing, by what you said, she
18 was doing merchandising duties in the conventional
19 department. That's your words. You said
20 conventional, a — in the conventional department?
21        MS. CLEMONS: She has clarified it and
22 said it was an area of the sales department. We can
23 go over it three times, but she said that already.
24 Q.    To assist with a space race campaign. That
25 was your full sentence.

Page 124

1  A.    Yes.
2  Q.    So she is temporarily assigned to perform
3  merchandising duties which would be a non-union
4  duty, right, a non-union rate duty?
5  A.    Uh-huh.
6  Q.    In the conventional department which we
7  know is a component of the sales department, right?
8  A.    Right.
9  Q.    Doing, to assist with the space race
10 campaign, right?
11 A.    Right.
12 Q.    Which the conventional representatives were
13 servicing, right?
14 A.    They were servicing those stores.
15 Q.    So she is doing, she is doing conventional
16 department work that she is doing the work that a
17 conventional rep needed help doing in connection
18 with a union position, we know that, right?
19 A.    No.
20 Q.    Yes.
21 A.    No.
22        MS. CLEMONS: No.
23 Q.    So she is working at a non-union rate doing
24 conventional department work in connection with
25 union work, rather work that gets paid out at union

Page 125

1  rates which is performed by a conventional rep?
2          MS. CLEMONS: Objection.
3  Q.    Right. That's what she is doing?
4          MS. CLEMONS: Vague, completely
5  confusing and I don't understand what you are
6  saying.
7  Q.    That's what she is doing?
8  A.    No.
9  Q.    Why don't we mark your affidavit since you
10 seem to be in complete disagreement with it now.
11        MS. CLEMONS: Are you going to use
12 this 10?
13        MR. WOODSIDE: I will get there.
14        (Exhibit Altman 11, Altman
15 verification, was marked for identification.)
16 Q.    Let me know when you have looked at it.
17 A.    I have.
18 Q.    Paragraph four is what I'm interested in.
19 A.    Okay.
20 Q.    You say "In around November of 2001." Are
21 you right about that date?
22 A.    To the best of my knowledge.
23 Q.    Where did you get that date from?
24 A.    I'm not sure.
25 Q.    Are you confused?

32 (Pages 122 to 125)

Page 142

1    Q.    Is that because —
2    A.    Maybe if you break it up into smaller
3    pieces.
4    Q.    I have a conventional rep on the sales, in
5    the sales department getting a union rate under the
6    bargaining unit agreement. That's a union job,
7    right?
8    A.    The duties I described are union job, the
9    conventional rep.
10   Q.    And for this limited period of time when
11   the rep can't do that work, I've got what you
12   described as a helper doing the same work that the
13   rep can't do because of some circumstance or injury
14   or temporary assignment, right?
15   A.    As I said before, they are not doing all
16   the duties.
17   Q.    But they are doing some of those duties.
18   They are doing the work the rep can't do. Let's
19   stick with that hypothetical, right?
20   A.    So hypothetically they are performing
21   duties that a restriction from the doctor says that
22   the rep can't do?
23   Q.    Well, or other reasons that you gave me
24   earlier about why there would be a helper needed,
25   right?

Page 143

1              MS. CLEMONS: It is your question,
2    frame it. Ask her a question.
3    Q.    Just follow me. We have a helper now who
4    is now doing the conventional rep work for whatever
5    reason, right?
6    A.    No.
7    Q.    No. He is doing some of the work the rep
8    can't do. You have told me that already.
9    A.    Yes, he is doing some of the work.
10   Q.    And so for the time period that person is
11   doing some of that work, for the length of that
12   assignment, have you ever known Pepsi to have that
13   helper go into the union or require that the worker,
14   that employee going into the union because of the
15   work that she or he is doing?
16   A.    Have I ever known Pepsi to require a
17   non-union helper to go into the union?
18   Q.    Because they are doing the work that the
19   rep can't do?
20             MS. CLEMONS: Objection. Same
21   objection.
22   Q.    Has that ever happened?
23   A.    I have never known, to the best of my
24   knowledge, of a non-union employee being a helper
25   and Pepsi required them to go into the union because

Page 144

1    they were helping.
2    Q.    That's the reason why, they are helping?
3    A.    I have never known Pepsi to require to the
4    best of my knowledge, a non-union employee to go
5    into the union.
6    Q.    Well, when that non-union employee starts
7    doing bargaining union work under one of the many
8    categories, isn't that employee required to enter
9    the union under the bargaining agreement between
10   Pepsi and the union?
11             MS. CLEMONS: Objection. Objection.
12   A.    If an employee is doing union work as
13   agreed upon by the union with the job description
14   then the employee is a union employee. I think we
15   said earlier the union may argue that if there is a '
16   gray line there, but we don't require people, if you
17   are not in a union job description, we don't require
18   you to pay union dues.
19   Q.    Well, union dues is only one piece. You
20   require, the union would require entering the union
21   right? That's what the union would be taking the
22   position on?
23             MR. GELMAN: Let's go off the record
24   for a second.
25             (Discussion off the record.)

Page 145

1              (At which time a lunch break was
2    taken.)
3    Q.    We're back on and do you have Altman 11 in
4    front of you?
5    A.    Yes.
6    Q.    I just want to go over something you said
7    earlier. Aside from Matt Fields and Craig Nelson,
8    there were no other non-union employees in the
9    Wilmington plant working on the space race campaign
10   during the time that Miss Tillman worked on it?
11   A.    No.
12             MS. CLEMONS: Objection. Go ahead.
13   It misstates her previous testimony.
14   A.    Yes. When I was giving the list of names
15   with Matt Fields you asked me who else worked as a
16   helper that was non-union. To the best of my
17   knowledge, Marlayna Tillman was the only
18   merchandiser that worked in the space race.
19   Q.    What was Matt Fields' position?
20   A.    Merchandiser.
21   Q.    He was a non-union merchandiser?
22   A.    Yes.
23   Q.    And Craig Nelson is the other person that
24   we talked about, right?
25   A.    Yes.

B 100

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al          Wednesday
Civil Action No. 04-1314          Deposition of Sara Swartz Altman          February 28, 2007

**Page 146**

1  Q.  Those are the three people, three employees
2  in the Wilmington plant who worked the space race
3  campaign?
4         MS. CLEMONS: Objection. Misstates.
5  Q.  Who were non-union workers during the time
6  that Tillman was working?
7         MS. CLEMONS: Objection. Misstates
8  her testimony. Go ahead.
9  A.  No. Matt Fields did not work on the space
10  race. I said to the best of my knowledge Marlayna
11  Tillman was the only merchandiser that worked on the
12  space race.
13  Q.  What was Fields' department?
14  A.  Fields did not work space race.
15  Q.  But Fields worked -- where was Fields
16  working when you gave me his name along with Craig
17  Nelson? For the five months Tillman was working
18  space race you gave me Matt Fields' name and some
19  category. What was it?
20         MS. CLEMONS: Objection. Misstates
21  her testimony.
22  Q.  I just asked you a question.
23  A.  Can you repeat it?
24  Q.  You gave me Matt Fields as a name during
25  the five months that Marlayna Tillman was working

**Page 147**

1  space race as a merchandiser and non-union
2  merchandiser. What was Matt Fields' position and
3  was he union or non-union during that period of
4  time?
5         MS. CLEMONS: Objection. That's not
6  what she said.
7  Q.  I just asked you a question.
8         MS. CLEMONS: You can ask her a
9  question which doesn't state what she didn't say.
10  You are misleading her, but you can answer if you
11  understand, Sara.
12  A.  Again, I did not say Matt Fields worked on
13  the space race.
14  Q.  I know that. I wrote that down.
15  A.  He wasn't employed during those months. I
16  gave you the context of you asked me if other people
17  who were non-union that helped drivers.
18         MS. CLEMONS: She is one of the
19  people, you asked her for one person. She gave you
20  one person. There are others. Do you want to ask
21  her that.
22         MR. WOODSIDE: Why are you hitting the
23  table?
24         MS. CLEMONS: Why are you asking
25  questions not based on facts.

**Page 148**

1         MR. WOODSIDE: What's the matter over
2  there?
3         MS. CLEMONS: You know what,
4  Mr. Woods, asked your questions and move on.
5  Q.  Who else besides Matt Fields who was
6  helping conventional reps in their work in 2001,
7  2002, 2003, 2004?
8  A.  Mark Maragus.
9  Q.  Can you spell his name please?
10  A.  M-A-R-A-G-U-S. I could be wrong though.
11  Q.  Who else?
12  A.  Dave Zimbala. I can't remember how to
13  pronounce it.
14  Q.  Anybody else?
15  A.  That I can remember.
16  Q.  What department or job title did Mark
17  Maragus have?
18  A.  Job title, merchandiser.
19  Q.  Non-union?
20  A.  Yes.
21  Q.  What about Dave Zimbala?
22  A.  Non-union merchandiser.
23  Q.  Do you know what time period Mr. Maragus is
24  doing this work as helper?
25  A.  I don't remember the time period.

**Page 149**

1  Q.  How about Mr. Zimbala?
2  A.  I don't remember the time period.
3  Q.  Was it one of the four years that I gave
4  you?
5  A.  Yes.
6  Q.  Were they both paid at non-union rates?
7  A.  They were paid the merchandiser rate.
8  Q.  The same rate as Tillman?
9  A.  I don't know.
10  Q.  What did Pepsi establish as a seniority
11  date for a particular employee?
12  A.  It depends.
13  Q.  Are there different seniority dates for
14  different employment events?
15  A.  Well, if you want to clarify the question
16  what you mean by seniority.
17  Q.  Is your seniority on the non-union side in
18  the sales department?
19  A.  There would be for pension and vacation
20  purposes, there is time and job or hire date.
21  Q.  How about for applying for another position
22  at Pepsi, would there be seniority date for that
23  non-union employee?
24  A.  I don't know what you are asking.
25  Q.  Well, if a non-union employee applied for a

38 (Pages 146 to 149)

USDC, District of Delaware
Civil Action No. 04-1314

Tillman v. The Pepsi Bottling Group, Inc., et al
Deposition of Sara Swartz Altman

Wednesday
February 28, 2007

Page 150

1 different position in a non-union position and
2 somebody else competed, would there be a seniority
3 date the company would look at?
4 A.    If you are looking at two people, both
5 non-union, applying for the same position, would we
6 look at hire date? Is that what you are asking me?
7 Q.    Is hire date seniority date in that
8 context?
9 A.    As I told you earlier with the pension and
10 whatnot. That's the only type of seniority you will
11 have for a non-union person.
12 Q.    So then if you had two equally balanced
13 employees who are non-union applying for another
14 non-union position, the hire date might come into
15 play?
16 A.    No.
17 Q.    Would it come into play?
18 A.    No.
19 Q.    Why not?
20 A.    It is a non-union position. We base it on
21 skill and ability.
22 Q.    So the only union position does the term
23 seniority apply or would it come into play in terms
24 of an employee's movement inside the company; is
25 that right?

Page 151

1         MS. CLEMONS: Objection. I don't know
2 what you mean by movement inside the company.
3         MR. WOODSIDE: Well, the assignment or
4 lateral move or a transfer, that kind of thing.
5         MS. CLEMONS: To a union or non-union.
6         MR. WOODSIDE: I said union.
7         MS. CLEMONS: Union moving to another
8 union.
9         MR. WOODSIDE: Union positions inside
10 the company, that kind of movement.
11 A.    Would seniority be taken into account?
12 Q.    Yes. Seniority is defined in that context
13 how?
14 A.    Two different types of seniority. There is
15 company seniority and department seniority.
16 Q.    What is company seniority?
17 A.    Hire date.
18 Q.    What is department seniority? Time in that
19 department?
20 A.    I suppose you could say there is union
21 seniority too, time in the union.
22 Q.    Do you have Altman 10 in front of you?
23 A.    Yes.
24 Q.    Look at the very bottom of Altman 10. You
25 see it says "Hi, Shelly?"

Page 152

1 A.    Yes.
2 Q.    Can you read that?
3 A.    "Attached are the spread sheets for the
4 non-union pay increases. Please note the effective
5 date 12/31/01. As an FYI, Kenneth Cartwright, a
6 part-time merchandiser, will be promoted to a bulk
7 CR effective 1/7/02. Kenneth is listed as a" and
8 then I don't have anything else.
9 Q.    Do you know who he is?
10 A.    Kenneth?
11 Q.    Yes.
12 A.    Yes.
13 Q.    Who wrote the "Hi, Shelly," you?
14 A.    I did.
15 Q.    What are you telling Shelly?
16 A.    When I say hi Shelly?
17 Q.    Yes. What are you saying to her in this?
18 You are telling her about a promotion for
19 Mr. Cartwright?
20 A.    I'm not telling her about the promotion.
21 I'm explaining or drawing something to her
22 attention.
23 Q.    As a part-time merchandiser, was he in the
24 union or non-union wage category?
25 A.    Non-union.

Page 153

1 Q.    Bulk CR, union or non-union?
2 A.    Non-union.
3 Q.    So he got promoted to a non-union position
4 from a non-union position?
5 A.    Yes.
6 Q.    What constitutes the promotion there?
7 A.    He went from his job as a merchandiser to
8 account rep. So he went from packing out the stores
9 to selling.
10 Q.    Still non-union though, right?
11 A.    Yes.
12         (Exhibit Altman 12, Personnel action
13 request dated 4/29/02, was marked for
14 identification.)
15 Q.    Here is Altman 12. Have you looked at it?
16 A.    Yes.
17 Q.    Is that your handwriting?
18 A.    For most of it.
19 Q.    Did you sign at the bottom?
20 A.    Yes.
21 Q.    What's the purpose of the document?
22 A.    To put in, it's called a personnel action
23 request. I submit those when there is a change to
24 anything from where you see the action codes, any
25 type of action.

39 (Pages 150 to 153)

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al          Wednesday
Civil Action No. 04-1314                    Deposition of Sara Swartz Altman          February 28, 2007

**Page 166**

1 qualification.
2 Q. Did you do anything with respect to this
3 e-mail that was sent to Glen by Marlayna?
4 A. Yes.
5 Q. What did you do?
6 A. I forwarded it to Tracey Drzewiecki.
7 Q. Why did you do that?
8 A. Because we did not handle Marlayna issues
9 at that point. Tracey had told Marlayna that she
10 should go to Tracey with any issues that she had,
11 other than general work.
12 Q. You told Tracey that Glen is not going to
13 respond?
14 A. Yes.
15 Q. Well, she is complaining she was the only
16 warehouse employee that the policy has not been
17 extended to. Do you have any firsthand information
18 whether or not that is true?
19 A. No.
20 Q. Did you ever look into it?
21 A. I did not personally look into this.
22 Q. Do you know whether Tracey did?
23 A. Tracey looked into this.
24 Q. Did she report to you what she found when
25 she looked into it?

**Page 167**

1 A. We discussed, I don't know that she
2 reported to me.
3 Q. What did you discuss?
4 A. That she was pulling payroll information.
5 Sorry, one second.
6 Not firsthand knowledge, but I believe what
7 was pulled, she had payroll records showing when she
8 swiped in and out to see if she was working less
9 than eight hours and not getting paid for the full
10 hours, but was going to leave early.
11 Q. Was Marlayna Tillman compensated for any of
12 the complaints she was making about or in this
13 e-mail to Mr. Matthews, do you know?
14 A. I don't know for this particular one.
15 Q. Do you know whether Miss Drzewiecki had
16 any, drew any conclusions about whether Miss Tillman
17 was entitled to pay in accordance with what she is
18 complaining about to Mr. Matthews in 2003?
19 MS. CLEMONS: If there is another
20 document that can help you, ask.
21 A. I don't know that there is another
22 document. I know that there is another time. I
23 know that at one point there was some difference in
24 pay, but I think it may have been something else. I
25 know that Tracey went back and looked at her payroll

**Page 168**

1 documents at one point that she did determine that
2 there was an amount of money that was owed to
3 Marlayna and she paid her. I don't remember if it
4 was for this one or not.
5 (Exhibit Altman 15, Transport jockey
6 job, was marked for identification.)
7 Q. Here is Altman 15.
8 MS. CLEMONS: Is there another
9 document here.
10 (Discussion off the record.)
11 Q. Have you had a chance to look at Altman 15?
12 A. Give me one more second.
13 Q. Have you looked at Altman 15?
14 A. Yes.
15 Q. Is that your handwriting at the top right,
16 awarded to, correct me if I'm wrong, awarded to Gary
17 DiProspero?
18 A. That is Tracey Drzewiecki's handwriting or
19 Gary's.
20 Q. Have you seen this before today, this
21 document?
22 A. Probably. I mean that's my handwriting
23 awarded to. So I had to have seen this before.
24 Q. Did Miss Tillman apply for this position?
25 A. She bid on it.

**Page 169**

1 Q. Was it timely?
2 A. Yes.
3 Q. Was she considered for it?
4 A. As any other job it would be.
5 Q. But she was considered for this?
6 A. Yes.
7 Q. And the same, was she considered in the
8 same fashion as the other men appearing on the bid
9 form, to your knowledge?
10 A. To my knowledge.
11 Q. Who considered her?
12 A. I don't remember.
13 Q. Was it inside your human resources
14 department?
15 A. It may have been.
16 Q. Did Tom Riley consider her, if you know?
17 A. He may have. He would have the seniority
18 list and he would know who was qualified for it. It
19 may have been joint review.
20 Q. And that would be based upon knowledge and
21 skills as well as seniority in terms of evaluating
22 the candidates on the bids, right?
23 A. Yes.
24 Q. Was Tillman qualified for this work?
25 A. Tillman was qualified in the sense that she

43 (Pages 166 to 169)

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al          Wednesday
Civil Action No. 04-1314                  Deposition of Sara Swartz Altman          February 28, 2007

### Page 170

1  was in the union. Tillman, to the best of my
2  knowledge, had not done the job.
3  Q.    The transport jockey replenishment job she
4  had not done?
5  A.    To the best of my knowledge.
6  Q.    Was that the reason she was not awarded the
7  position, to the best of your knowledge?
8  A.    Well, Gary had more seniority.
9  Q.    Gary DiProspero?
10  A.    Yes.
11  Q.    On the very last sheet I see handwritten
12  notes on that one page.
13  A.    Yes.
14  Q.    Are they yours?
15  A.    No.
16  Q.    Whose are they?
17  A.    Tracey Drzewiecki.
18  Q.    Did you talk to Miss Drzewiecki about what
19  she might have been doing here?
20  A.    Not that I remember.
21  Q.    Did it come up at all in terms of your work
22  in the company as regards this particular position
23  about what Marlayna Tillman may have been
24  complaining about for her application for it?
25  A.    I don't know that she was complaining about

### Page 171

1  anything.
2  Q.    Did she claim that she thought she would
3  have had or should have had this position?
4  A.    Not that I know.
5  Q.    Do you know whether, in fact, under this,
6  in the middle of that last page on the handwritten
7  notes I see a word is it seniority?
8  A.    Okay.
9  Q.    Right, I see Jim McCormick past
10  qualifications in, withdrew bid; is that true?
11  A.    I don't know if it's Tracey's handwriting.
12  Q.    Well, if you know.
13  A.    I don't remember.
14  Q.    Andy Purdy it says did not take test and
15  withdrew; is that true?
16  A.    I don't remember.
17  Q.    How about Gary DiProspero currently doing
18  position-qualified. Is that true?
19  A.    I don't remember.
20  Q.    Was he currently doing the position, do you
21  know?
22  A.    I don't remember.
23  Q.    Well, DiProspero bid on this position as a
24  person or an employee working in a warehouse as a
25  present position, do you see that?

### Page 172

1  A.    Uh-huh.
2  Q.    And this is his handwriting and signature
3  on page 02827? That's what I'm looking at.
4  A.    Are you asking me?
5  Q.    Yes.
6  A.    I don't know. I don't know if this is
7  Gary's signature.
8  Q.    It is a bid form with his name on it?
9  A.    We can assume it is Gary's.
10  Q.    And he is bidding for the transport jockey
11  job which is the position on the first page, right?
12  A.    Yes.
13  Q.    So how could he be doing the position if,
14  in fact, he was applying on the bid form as a
15  warehouse employee or an employee in the warehouse,
16  do you know?
17  A.    Yes.
18  Q.    How would that be?
19  A.    If the transport jockey called out and Gary
20  was able to do the job, Gary would fill in and not
21  do his warehouse job for the night, or in addition
22  to his warehouse job.
23  Q.    What department is this in, the transport
24  jockey replenishment job?
25  A.    Manufacturing.

### Page 173

1  Q.    You are sure about that?
2  A.    It might be a subset being transport, but
3  it falls under manufacturing operations, managed by
4  the plant manager at Wilmington.
5  Q.    Tom Riley was the hiring manager?
6  A.    Tom Riley was the manager.
7  Q.    Marlayna Tillman's name appears on that
8  last page with nothing after it. Do you know
9  anything about why her name was written there?
10  A.    No.
11  Q.    Did you receive any information from Miss
12  Drzewiecki why Miss Tillman wasn't selected?
13  A.    Not that I remember.
14  Q.    Did Mr. DiProspero accept this position, if
15  you know?
16  A.    I don't know.
17  Q.    Is he currently with Pepsi?
18  A.    No.
19  Q.    When did he leave?
20  A.    I don't remember.
21  Q.    Do you know where he is today?
22  A.    No.
23  Q.    Aside from the matter of seniority and the
24  fact that Mr. DiProspero might have been doing the
25  position in the manner you described, was Tillman

44 (Pages 170 to 173)

USDC, District of Delaware          Tillman v. The Pepsi Bottling Group, Inc., et al          Wednesday
Civil Action No. 04-1314            Deposition of Sara Swartz Altman                       February 28, 2007

Page 174

1  qualified for the position and didn't get it for the
2  reasons you explained?
3  A.    I don't know if she was qualified for the
4  position and I don't know why she didn't get the
5  role.
6  Q.    Is Mr. Riley dead?
7  A.    Yes.
8  Q.    When did he die?
9  A.    May of 2005.
10  Q.    Was he employed by Pepsi at the time of his
11  death?
12  A.    Yes.
13        (Exhibit Altman 16, E-Mail from Ms.
14  Tillman to Ms. Swartz dated 5/9/03, was marked for
15  identification.)
16  Q.    Altman 16.
17  A.    Okay.
18  Q.    You have looked at Altman 16?
19  A.    Yes.
20  Q.    Reading backwards on it, it is Marlayna
21  Tillman writing to you on May 7, 2003, right?
22  A.    Yes.
23  Q.    What is she complaining about?
24  A.    She is asking me to check the status of the
25  above mentioned job listing.

Page 175

1  Q.    Is that the transport jockey job that we
2  marked under the posting of Altman 15?
3  A.    Yes.
4  Q.    She writes to you that Riley talked to her
5  and gave her the impression the position was filled
6  by shop steward Gary DiProspero. We know that he
7  filled the job, right?
8  A.    I don't know, but it appears that he did.
9  Q.    Tillman writes that she has firsthand
10  knowledge that Gary did not want nor did he accept
11  the position. Do you know anything about that?
12  A.    I don't know or remember anything about
13  that other than what I see right here.
14  Q.    Let me jump ahead. When you got this
15  e-mail, did you look into any of the things that she
16  was writing to you on or about May 7, 2003?
17  A.    Tracey would have taken care of this.
18  Q.    Did you forward it to Tracey?
19  A.    It doesn't appear that way.
20  Q.    You would have at least forwarded it to
21  her, right?
22  A.    She could have line copied Tracey. I don't
23  remember forwarding it to Tracey and it doesn't show
24  that I forwarded it to Tracey.
25  Q.    Well, if you didn't forward it to Tracey,

Page 176

1  did you do anything about any of this information?
2  A.    Not that I remember.
3  Q.    Might have you done something but you just
4  don't remember now?
5        MS. CLEMONS: Objection.
6  Q.    Since it is four years ago.
7        MS. CLEMONS: She said Tracey took
8  care of it.
9  Q.    Did Tracey take care of it?
10  A.    This is what I referenced earlier,
11  everything was going through Tracey. Tracey told
12  Marlayna everything is to go through her. If it is
13  anything other than general work.
14  Q.    Do you know whether from your knowledge and
15  your position in human resources whether any of the
16  things that Miss Tillman said in this e-mail to you
17  on May 7, 2003 are not true from your personal
18  knowledge?
19  A.    Do I know from personal knowledge if
20  anything is not true?
21  Q.    Yes.
22  A.    Let me reread it.
23  Q.    Sure.
24  A.    Other than the first line that talks about
25  the job description being posted, I don't know

Page 177

1  anything to be true or false.
2  Q.    You don't have any personal knowledge one
3  way or the other about whether anything that she
4  writes either on the first or the second page except
5  for what you said is true or false?
6  A.    Not that I remember.
7  Q.    She claims on the second page near the
8  bottom of the long paragraph that it appears that
9  she is past over yet again for a position she
10  expressed an interest in for reasons she concluded
11  are race and/or gender bias related. Do you see
12  that?
13  A.    Yes.
14  Q.    Did you make any investigation with regard
15  to those allegations when you were in human
16  resources?
17        MS. CLEMONS: Objection. Asked and
18  answered. You can answer it again.
19  Q.    Did you?
20  A.    Not to my knowledge.
21  Q.    Did you talk to Miss Drzewiecki directly
22  about any of those allegations by Miss Tillman in
23  connection with Tillman's e-mail to you?
24  A.    Yes.
25  Q.    What did you talk about with her?

45 (Pages 174 to 177)

USDC, District of Delaware        Tillman v. The Pepsi Bottling Group, Inc., et al        Wednesday
Civil Action No. 04-1314                Deposition of Sara Swartz Altman              February 28, 2007

Page 178

1   A.   I don't remember specifics.
2   Q.   Do you remember anything generally?
3   A.   Generally if I would help her pull payroll
4   records or something she may need to know from an
5   administrative side.
6   Q.   So whatever was done in terms of any
7   investigation would be done by people who were above
8   you in the human resources department, to your
9   knowledge?
10  A.   Yes.
11  Q.   By the way, you didn't talk to
12  Mr. DiProspero at all about his employment in that
13  position, did you?
14  A.   Not that I remember.
15       (Exhibit Altman 17, Bid form for Leroy
16  Lewis, was marked for identification.)
17  Q.   I am giving you Altman 17.
18  A.   Okay.
19  Q.   These are documents Pepsi gave me in
20  discovery. I could not locate a posting sheet for
21  this position. Do you know if one existed?
22  A.   Yes.
23  Q.   Do you know where it might be?
24  A.   No.
25  Q.   Was there — do you know what it looked

Page 179

1   like?
2   A.   It would resemble —
3   Q.   The first page of Altman 15?
4   A.   Yes.
5   Q.   Do you know who was awarded this position?
6   A.   No.
7   Q.   It is called the bulk warehouse position.
8   It was called a route loader position; is that
9   right?
10  A.   I don't know who was awarded the bid.
11  Q.   Do you know what the position was?
12  A.   Yes.
13  Q.   Route loader?
14  A.   Yes.
15  Q.   What department?
16  A.   Manufacturing.
17  Q.   Who posted the position?
18  A.   I would assume myself.
19  Q.   Did you post it in Wilmington?
20  A.   If I posted it, yes.
21  Q.   Did you post it anywhere else?
22  A.   West Chester.
23  Q.   How about the one on Altman 15, did you
24  post that in Wilmington and West Chester?
25  A.   Yes.

Page 180

1   Q.   None of the names on here do you recognize
2   as being the people who were awarded the job?
3   A.   I know that Leroy Lewis and Chris Eastlack
4   both worked in routes. I believe Marlayna may have
5   worked in routes. Cephas worked in routes.
6       MS. CLEMONS: C-E-P-H-A-S.
7   A.   And Ron Brister I believe worked in routes,
8   but I don't think he ever came down from West
9   Chester.
10  Q.   Is that the reason why he wasn't awarded a
11  job, do you know?
12  A.   I don't know why.
13  Q.   Who was involved in awarding the position?
14  A.   The same people that are normally involved.
15  Q.   Who would that be?
16  A.   Someone from HR and the department.
17  Q.   Who in HR do you think was involved?
18  A.   Myself or Tracey.
19  Q.   That is jointly with the hiring manager; is
20  that right?
21  A.   Hiring manager or maybe in this case Ron
22  Brister's manager to make sure Ron Brister was
23  qualified had he been the person that was awarded
24  the bid.
25  Q.   This position is in manufacturing?

Page 181

1   A.   Yes.
2   Q.   Who do you think the manager might have
3   been if you know?
4   A.   I don't know in 2003.
5   Q.   Was Tom Riley the manager in manufacturing?
6   A.   Tom Riley was sort of a manager, department
7   head, oversaw a lot of different areas. There would
8   have been a supervisor as well that personally was
9   reported to.
10  Q.   Where was Tillman working?
11  A.   According to her bid, bulk warehouse.
12  Q.   Lewis was in bulk warehouse, right?
13  A.   Yes.
14  Q.   Eastlack was bulk warehouse?
15  A.   Yes.
16  Q.   I have this fellow in West Chester and
17  Tillman in bulk warehouse?
18  A.   Yes.
19  Q.   And Dwight Cephas in warehouse general,
20  right?
21  A.   Yes.
22  Q.   Do you know if Tillman was qualified for
23  the position, setting aside any issues of seniority?
24  A.   Probably only other qualification that
25  differentiates bulk from route is at one point you

(856) 983-8484                    Tate & Tate, Inc.                    (800) 636-8283
                        180 Tuckerton Road, Suite 5, Medford, NJ 08055

B 106

Wilmington Employees 2001

| EE Name | DOH | Term Date | Gender | Ethnic Group | Job Description |
|---|---|---|---|---|---|
| Arscott,Glenn D | 10/15/1974 | | M | White | Bulk Driver |
| Arthur Jr.,Charles M | 5/18/1969 | | M | White | Machine Operator |
| Bacale,Amie R | 6/18/1992 | | M | White | Prod Avail Supv |
| Balius,Kathleen A | 3/25/1995 | 12/8/2005 | F | White | Administrator |
| Bateman,David M. | 10/15/2001 | | M | White | Bulk Account Customer Rep (A) |
| Becker Jr.,William C | 10/31/1988 | 7/30/2005 | M | White | Technician |
| Bell Jr.,James A | 8/8/1991 | | M | Black/African American | Relief Customer Representative |
| Bing,Eric | 5/31/1996 | | M | Black/African American | Machine Operator |
| Bley,Raymond Y. | 1/18/2001 | | M | Black/African American | Merchandiser |
| Bleacher,Paul D | 3/19/1991 | | M | White | Trlr/Tmp Driver |
| Bowman,Kenneth D | 9/9/1987 | | M | White | Gen Labor |
| Bowman,Kimberly Dawn | 12/22/1997 | | F | White | Administrator |
| Boyd,Jeffry A | 8/22/1988 | 5/12/2004 | M | White | Trlr/Tmp Driver |
| Boyle Jr.,David W. | 6/18/2001 | 1/16/2001 | M | White | Warehouse Person |
| Bradford,Drew A. | 3/27/2001 | 5/17/2001 | M | Black/African American | Warehouse Person |
| Brinton,Scott Carter | 10/27/1998 | 1/21/2003 | M | White | Bulk Account Customer Rep (A) |
| Brown,Jermaine K | 6/6/2001 | 7/8/2001 | M | Black/African American | Merchandiser |
| Bryant,Bobby G. | 3/26/2001 | 8/22/2001 | M | Black/African American | Warehouse Person |
| Buckley Jr.,John A. | 12/14/1982 | | M | White | Trlr/Tmp Driver |
| Byerly Jr.,Howard W. | 5/28/1996 | | M | White | Bulk Account Customer Rep (A) |
| Cameron Jr.,John K | 11/7/1988 | 3/1/2005 | M | White | Machine Operator |
| Campbell,John R | 4/20/1993 | | M | White | Warehouse Person |
| Carson,David G | 4/25/1994 | 1/30/2003 | M | White | Machine Operator |
| Cartwright Jr.,Kenneth B. | 3/8/2001 | 7/31/2002 | M | Black/African American | Merchandiser |
| Cartwright,Justin E. | 3/5/2000 | 9/3/2005 | M | White | Bulk Account Customer Rep (A) |
| Casey,Matthew N | 12/8/1998 | | M | White | Conventional CR |
| Cephas Jr.,Dwight A. | 5/23/2001 | | M | Black/African American | Warehouse Person |
| Cephas,Darrell A. | 1/2/1990 | | M | Black/African American | Gen Labor |
| Charles,George P | 8/16/1992 | 5/28/2004 | M | White | Bulk Account Customer Rep (A) |
| Charles,Robert A | 8/30/1975 | | M | White | Bulk Driver |
| Clayton,Lawrence E | 1/12/1987 | 9/17/2005 | M | White | Prod Mgr |
| Cleaver,Matthew R. | 7/3/2001 | 8/13/2001 | M | White | Merchandiser |
| Clemens,Andrew P | 10/20/1997 | | M | White | Bulk Account Customer Rep (A) |
| Coale Sr.,Jeffrey M | 5/25/1994 | | M | White | Full Service Driver |
| Coggins Jr.,Robert H | 5/10/1993 | 7/17/2003 | M | White | Gen Labor |
| Coleman,Stanley D. | 1/16/2001 | 9/5/2002 | M | Black/African American | Technician |
| Collins,Wayne C | 1/22/1991 | | M | White | Prod Mech |
| Conte,Valentino L | 7/26/1976 | | M | White | Bulk Driver |
| Cooney,Daniel J. | 8/14/1995 | | M | White | Relief Customer Representative |



PBG 00005

Wilmington Employees 2001

| Name | Date 1 | Date 2 | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Carrigan,Jeffrey M. | 5/18/1998 | | M | White | Warehouse Person |
| Crilley Jr.,John J | 5/29/1990 | | M | White | Sales Manager |
| Crousa,Ryan D. | 1/6/2001 | | M | White | Merchandiser |
| Curtis,Christopher R | 8/19/1985 | 8/28/2002 | M | White | Conventional CR |
| Davis,Anthony M. | 5/23/2001 | | M | White | Merchandiser |
| Davla,Frederick J | 12/31/1990 | 8/31/2002 | M | White | Fleet Mechanic |
| Demby,Marshall L. | 7/9/1990 | | M | Black/African American | Machine Operator |
| Diubaldo,Domenic A. | 12/16/1999 | | M | Black/African American | Bulk Account Customer Rep (A) |
| Dongre,James P. | 5/14/2001 | 5/15/2001 | M | Asian/Pacific Islander | Warehouse Person |
| Earl,Leon S | 1/16/1978 | | M | Black/African American | Relief Customer Representative |
| Egan,Sean T | 12/16/1997 | | M | White | Fleet Mechanic |
| Eabln,Scott B | 12/31/1990 | | M | White | New Business Sales Rep |
| Evoy,Jonathan D | 5/11/2001 | 12/29/2003 | M | White | Production Supv |
| Falina,Robert A | 10/27/1991 | 6/14/2003 | M | White | Warehouse Person |
| Farmer,Roy E. | 5/14/2001 | 8/8/2001 | M | Black/African American | Gen Labor |
| Faulkner,Louis H | 5/22/1990 | | M | Black/African American | Trlr/Trnsp Driver |
| Felicetti,James L | 12/17/1973 | | M | White | Trlr/Trnsp Driver |
| Felicetti,Jeffrey S | 7/2/1984 | 1/26/2005 | M | White | Merchandiser |
| Fields,Matthew M. | 6/14/2001 | 7/9/2001 | M | White | Trlr/Trnsp Driver |
| Fillman,Kennebb D | 9/27/1976 | | M | White | Machine Operator |
| Finney,Howard L | 12/13/1989 | | M | Black/African American | Warehouse Person |
| Fleming,Alice R. | 6/7/2001 | 1/31/2002 | F | Black/African American | Warehouse Person |
| Flowers,Ronald A | 8/11/1990 | 1/21/2004 | M | Black/African American | Technician |
| Frederick Sr.,Russell W | 10/2/1985 | | M | White | Conventional CR |
| Fulvio,Christopher M | 1/13/1988 | | M | Asian/Pacific Islander | Merchandiser |
| Gage,Sean M.. | 3/1/2001 | 5/20/2002 | M | White | Production Supv |
| Gray,Christopher L. | 9/19/1994 | 9/26/2003 | M | White | Administrator |
| Green,Crystal Sharon | 4/15/1989 | 7/10/2003 | F | Black/African American | Merchandiser |
| Green,Herbert L. | 8/11/2001 | 10/29/2001 | M | Black/African American | TSM-On Premise |
| Gitoco,Chris A | 7/18/1984 | | M | White | Prod Avail Supv |
| Grundy,Robert B | 7/8/1985 | | M | Black/African American | Conventional CR |
| Hallen,Raymond E | 6/3/1985 | 3/29/2001 | M | White | Prod Mech |
| Hanstein,George E. | 11/8/1999 | | M | White | Merchandiser |
| Harrington,Christopher W. | 8/2/2000 | 5/16/2001 | M | White | Warehouse Person |
| Harris III,George A. | 1/17/2001 | 11/20/2001 | M | Black/African American | Sanitizer |
| Henderson,Bruce L | 3/24/1980 | | M | White | Prod Avail Supv |
| Hershfeld,Jeffrey L. | 9/10/2001 | 10/26/2005 | M | White | Trlr/Trnsp Driver |
| Hitchens,David | 7/8/1991 | | M | White | Warehouse Person |
| Iovacchini III,Vincent J. | 5/26/2001 | 1/22/2002 | M | White | Merchandiser |
| Jebkowski,Gregory M. | 7/3/2001 | 7/19/2002 | M | White | |

CONFIDENTIAL

Wilmington Employees 2001

| Name | | | Sex | Race | Position |
|---|---|---|---|---|---|
| Jackson,Dwayne E. | 5/23/2001 | 5/30/2001 | M | Black/African American | Warehouse Person |
| Jackson,Sean | 4/28/1993 | | M | White | Prod Avail Supv |
| Johnson Sr.,Michael A | 7/27/1992 | | M | Black/African American | Trlr/Tmsp Driver |
| Johnson,Eugene C | 1/30/1989 | | M | White | Prod Mech |
| Johnson,Matthew J | 1/11/1988 | 2/4/2004 | M | White | Full Service Driver |
| Johnson,Scott A | 6/1/1992 | | M | White | TSM-Bulk |
| Jones,DeJuan P. | 4/17/2001 | 4/17/2001 | M | Black/African American | Merchandiser |
| Kempmann,Leo E | 4/6/1970 | 2/27/2006 | M | White | Bulk Driver |
| Kemal,Stephen J | 4/3/1988 | | M | White | Warehouse Person |
| Kearney,David J. | 12/11/2000 | 1/2/2001 | M | White | Merchandiser |
| Kelleher,James W | 9/24/1990 | | M | White | TSM-Conv |
| Kelly,Andrew P. | 4/4/2001 | 5/28/2001 | M | White | Corvenidiser |
| Kern,Clifford Albert | 5/28/1998 | 5/18/2003 | M | White | Merchandiser |
| King,Howard A | 4/25/1990 | | M | White | Trlr/Tmsp Driver |
| Kuczkiewicz,Amanda L | 6/30/1986 | 9/28/2005 | F | White | Analyst-Customer Information |
| Klein,Timothy J | 11/21/1994 | | M | Black/African American | Relief Customer Representative |
| Laws,Howard M | 4/25/1991 | | M | White | Warehouse Person |
| Lawton Sr.,Alfred D | 7/28/1974 | | M | Black/African American | Technician |
| Lemon,Alton S. | 8/18/2001 | 3/7/2002 | M | White | Warehouse Person |
| Lebue,Thomas J | 5/20/1974 | 7/4/2004 | M | Black/African American | Bulk Driver |
| Loper Jr.,Ernest | 6/21/1990 | | M | White | Gen Labor |
| Lovins,Michael J. | 12/26/2001 | | M | White | Qc Lab Technician |
| Mastrati,Charles S | 7/17/2000 | | M | White | Prod Mech |
| Meley,Theone J | 3/1/1993 | | M | White | Gen Labor |
| Meal,Dean E | 10/30/1978 | | M | White | Convenional CR |
| Matthews,Merritt James | 2/8/1989 | 3/15/2004 | M | Black/African American | Bulk Driver |
| Matthews,William G | 9/7/1989 | | M | White | Warehouse Person |
| Meuragas,Mark Matthew | 12/17/2001 | 9/4/2006 | M | White | Prod Avail Supv |
| McClain Jr.,Charlie | 4/11/1995 | | M | Black/African American | Merchandiser |
| McCormick Jr.,James J. | 6/10/1996 | 7/22/2004 | M | White | Gen Labor |
| McFarland,David T. | 8/5/2001 | 11/1/2001 | M | White | Warehouse Person |
| McGallard,Richard W | 3/31/1978 | | M | White | Merchandiser |
| McGonigle,William J | 6/22/1987 | | M | White | Merchandiser |
| McHugh II,Donald F. | 6/11/2001 | 10/8/2002 | M | White | Bulk Driver |
| McKeil,Cory J. | 5/29/2001 | 7/5/2001 | M | White | Gen Labor |
| Mccarson,Richard W | 12/28/1988 | | M | Black/African American | Merchandiser |
| Meadow,Robin | 2/5/1990 | | M | White | Warehouse Person |
| Melore,Antonio A | 4/25/1985 | 7/31/2001 | M | White | Supervisor-Delivery |
| Middleton,Holly | 5/20/1991 | | F | White | Machine Operator |
| Millic,Eric D | 12/22/1997 | 8/5/2003 | M | White | Warehouse Person / Administrator / Bulk Account Customer Rep (A) |

CONFIDENTIAL

PBG 00007

Wilmington Employees 2001

| Name | Date | Sex | Race | Job Title |
|---|---|---|---|---|
| Miller,Daniel J. | 12/11/1985 | M | White | Warehouse Person |
| Miller,Jackie E | 10/4/1982 | M | Black/African American | Conventional CR |
| Mishaw,Angus W | 11/23/1982 | F | White | Delivery Driver |
| Morgan,Bert M. | 5/1/1985 | M | White | MU Financial Process Mgr |
| Morine,Shawn M. | 9/27/1989 | M | White | Merchandiser |
| Morrison,William C | 12/8/1986 | M | White | Warehouse Person |
| Mosby,Brock A. | 2/22/2005 | M | Black/African American | Merchandiser |
| Murphy,James | 8/25/1980 | M | White | Conventional CR |
| Nau,Jeffrey G | 4/25/1977 | M | White | Conventional CR |
| Nelson,Craig M | 5/23/1984 | M | White | Terr Support Coordinator |
| Newcomb,William J | 3/14/1994 | M | Black/African American | Forklift Oper |
| Newton,Herbert L | 5/25/1990 | M | Black/African American | Gen Labor |
| Nowell,Randy R. | 4/25/2000 | M | White | Warehouse Person |
| O'Connor,Thomas J | 4/16/1985 | M | White | Conventional CR |
| O'Donald Jr.,Richard W | 4/2/1979 | M | White | Conventional CR |
| O'Hara,Shawn M. | 4/26/1989 | M | White | Warehouse Person |
| Obama Jr.,John Charles | 12/28/1987 | M | White | Checker |
| Olowofela,Kenny O. | 5/28/2001 | M | Black/African American | Account Sales Rep |
| Osadak,John J | 10/13/1987 | M | White | Delivery Driver |
| Palladino Jr.,Ralph J | 7/8/1974 | M | White | Bulk Driver |
| Palmer Jr.,George R | 12/31/1980 | M | White | Fleet Mgr |
| Papili Jr.,Louis A | 10/31/1983 | M | White | Checker |
| Paquin Jr.,Arthur L | 5/19/1994 | M | White | Bulk Account Customer Rep (A) |
| Patterson,Daniel F | 7/5/1987 | M | White | Conventional CR |
| Payne,James D | 5/26/1982 | M | White | Trfr/Trnsp Driver |
| Peake,Thomas S | 12/8/1987 | M | White | Bulk Account Customer Rep (A) |
| Perez Jr.,Raul | 8/7/2000 | M | Hispanic | Bulk Account Customer Rep (A) |
| Pliska,Edward Paul | 1/12/1998 | M | White | Bulk Account Customer Rep (A) |
| Poore,Christopher | 7/28/1997 | M | White | Full Service Driver |
| Porter,Marvin L | 5/18/1992 | M | Black/African American | Technician |
| Purdy,Harold A | 5/4/1998 | M | White | Machine Operator |
| Pyle,Charles H | 6/30/1990 | M | White | Trfr/Trnsp Driver |
| Redden,Timothy W. | 5/7/2001 | M | White | Bulk Account Customer Rep (A) |
| Reilly,Kevin E | 8/11/1988 | M | White | Relief Customer Representative |
| Richards Jr.,Carl L. | 4/9/2001 | M | White | Warehouse Person |
| Riley,Thomas S | 1/17/1972 | M | Black/African American | Prod Avail Mgr |
| Rizzo Jr.,Joseph S | 4/11/1994 | M | White | Machine Operator |
| Roark,Michael S | 5/2/1988 | M | White | Warehouse Person |
| Robbins,Damian J. | 7/11/1995 | M | White | Bulk Account Customer Rep (A) |
| Robinson,Leonard J. | 4/15/1996 | M | Black/African American | Machine Operator |

CONFIDENTIAL

PBG 00008

B 110

Wilmington Employees 2001

| Name | Hire Date | Date | Race | Sex | Title |
|---|---|---|---|---|---|
| Robinson,Nathaniel J. | 3/2/1995 | 4/30/2001 | Black/African American | M | Delivery Driver |
| Rodgers,Charles J. | 8/25/1997 | | White | M | Delivery Driver |
| Rowe,Adam T. | 6/28/2001 | 6/28/2002 | White | M | Merchandiser |
| Royel,Carl M | 8/14/1993 | 6/23/2001 | Black/African American | M | Gen Labor |
| Sanders,Brooke L. | 9/24/2001 | 12/27/2001 | Black/African American | F | Technician |
| Saunders,Ringgold | 2/3/1986 | | Black/African American | M | Machine Operator |
| Schools,Sylvester L | 2/26/1990 | 5/16/2002 | Black/African American | M | Gen Labor |
| Sharkey,Steven A | 9/24/1979 | | White | M | Prod Mech |
| Shepherd,Christopher J. | 10/2/2000 | 7/21/2006 | White | M | Merchandiser |
| Sliwinski Jr.,Joseph A | 3/21/1989 | 5/31/2005 | White | M | Gen Labor |
| Sload,Ronald W | 3/26/1990 | 4/1/2001 | White | M | Bulk Driver |
| Smith,Clifton A. | 5/21/2001 | 6/7/2001 | Black/African American | M | Warehouse Person |
| Smith,Michael J. | 4/10/1998 | | White | M | Delivery Driver |
| Smyth,Thomas M | 3/6/1978 | 2/27/2004 | White | M | QC Mgr |
| Snyder,Andrew D. | 8/7/2001 | 11/2/2001 | White | M | Merchandiser |
| Spencer,Peyton E | 4/12/1991 | | Black/African American | M | Warehouse Person |
| Spicer,Dennis R | 9/5/1978 | | White | M | Conventional CR |
| Staib,David W. | 9/5/2000 | 9/5/2005 | White | M | Production Supv |
| Stanley,Jeffrey S | 2/29/1988 | | White | M | Gen Labor |
| Staton,William C. | 5/21/2001 | 5/22/2001 | Black/African American | M | Merchandiser |
| Steinrock,George F. | 8/22/1997 | | White | M | Prod Mech |
| Stewart,Bernard T | 5/15/2000 | 3/31/2004 | Black/African American | M | Warehouse Person |
| Stone,Vincent E. | 4/30/2001 | | Black/African American | M | Warehouse Person |
| Stringer,Joan A | 9/4/1968 | 3/31/2001 | White | F | Machine Operator |
| Thomas,Cleavon L. | 5/7/2001 | 5/25/2004 | Black/African American | M | Warehouse Person |
| Tillman,Kimani H. | 8/17/2001 | 4/7/2002 | Black/African American | M | Merchandiser |
| Tilman,Marfayna G. | 5/8/2001 | 12/12/2004 | Black/African American | F | Merchandiser |
| Tilton,David W | 3/22/1994 | 8/3/2001 | White | M | Prod Avail Supv |
| Trostla,Shannon J. | 7/1/1996 | 4/4/2003 | White | M | Production Supv |
| Turner Jr.,Ernest S | 9/3/1992 | | Black/African American | M | Machine Operator |
| Tweed,Edward E | 3/14/1987 | 3/30/2002 | White | M | Bulk Driver |
| VanScoyk,Diane M | 8/21/1999 | 9/20/2002 | White | F | Administrator |
| Vlahos,Nicholas | 9/25/2000 | | White | M | Merchandiser |
| Vlahos,Ted | 5/13/1996 | | White | M | Bulk Account Customer Rep (A) |
| Weber,Philip F | 12/30/1985 | 5/20/2004 | White | M | Plant Manager |
| Wells,Jack E | 1/25/1988 | | White | M | Fleet Mechanic |
| Westenberger Jr.,Francis C | 5/18/1998 | 6/20/2003 | White | M | Warehouse Person |
| Whary,Leigh A. | 8/23/2001 | 5/3/2002 | White | F | Technician |
| Willems III,Robert M. | 6/14/2001 | 8/6/2001 | White | M | Merchandiser |

CONFIDENTIAL

Wilmington Employees 2001

| Name | Date | | Sex | Race | Title |
|---|---|---|---|---|---|
| Williams Sr.,James K. | 11/27/1995 | 4/30/2005 | M | White | Sanitizer |
| Williams,William R | 9/23/1985 | | M | White | Technician |
| Wise,John D. | 4/20/2000 | | M | White | Warehouse Person |
| Wray III,Bruce E | 10/21/1997 | | M | White | Merchandising Manager |
| Wright,Jeffrey L | 8/18/1975 | | M | White | Conventional CR |
| Wyatt,Richard D | 5/10/1983 | 5/8/2002 | M | White | Delivery Driver |
| Young,Amy J | 6/5/2000 | 7/12/2002 | F | White | New Business Sales Rep |
| Zeil,Deborah A | 1/22/1984 | | F | White | KAM II OP (MU) |
| Zembala,David A. | 3/3/2001 | 5/28/2001 | M | White | Merchandiser |
| Ziegler,Robert A | 5/29/1989 | | M | White | TSM-Bulk |

CONFIDENTIAL

PBG 00010

B 112

# Wilmington Employees 2002

| EE Name | DOH | Term Date | Gender | Ethnic Group | Job Description |
|---|---|---|---|---|---|
| Arscott,Glenn D | 10/15/1974 | | M | White | Delivery Driver - Bulk |
| Arthur Jr.,Charles M | 6/18/1969 | | M | White | Machine Operator |
| Bacala,Amie R | 6/18/1992 | | M | Asian/Pacific Islander | Prod Avail Supv |
| Balluru,Kathleen A | 3/25/1985 | 12/6/2005 | F | White | Admin Assistant-S&D |
| Barr,David A. | 6/18/2002 | | M | Black/African American | Merchandiser |
| Bateman,David M. | 10/15/2001 | 8/9/2002 | M | White | CR - Bulk Account - A |
| Becker Jr.,William C | 10/31/1988 | 7/30/2005 | M | White | Warehouse Person |
| Bell Jr.,James A | 6/6/1991 | | M | Black/African American | Gen Labor |
| Bing,Eric | 5/31/1996 | | M | Black/African American | Machine Operator |
| Blay,Raymond Y. | 1/19/2001 | | M | Black/African American | Merchandiser |
| Bleacher,Paul D | 3/19/1991 | | M | White | Delivery Driver - Tfr/Trnsp |
| Boulden II,Mark F. | 7/22/2002 | 8/14/2003 | M | White | Merchandiser |
| Bowman,Kenneth D | 8/9/1987 | | M | White | General Labor/Ops |
| Bowman,Kimberly Dawn | 12/22/1997 | | F | White | Admin Assistant-S&D |
| Boyd,Jeffry A | 8/22/1988 | 5/12/2004 | M | White | Delivery Driver - Tfr/Trnsp |
| Brinton,Scott Carter | 10/27/1998 | 1/21/2005 | M | White | CR - Bulk Account - A |
| Buckley Jr.,John A. | 12/1/1982 | | M | White | Delivery Driver - Tfr/Trnsp |
| Byerly Jr.,Howard W. | 5/28/1996 | | M | White | CR - Bulk Account - A |
| Cameron Jr.,John K | 11/7/1988 | 3/1/2006 | M | White | Machine Operator |
| Campbell,John R | 4/20/1993 | | M | White | Warehouse Person |
| Carey,Jeffrey T. | 6/3/2002 | 6/8/2002 | M | White | Warehouse Person |
| Carson,David G | 4/26/1994 | 1/30/2003 | M | White | Machine Operator |
| Cartwright Jr.,Kenneth B. | 3/6/2001 | 7/31/2002 | M | Black/African American | Bulk Account Customer Rep (A) |
| Cartwright,Justin E. | 3/6/2000 | 9/3/2005 | M | White | Merchandiser |
| Casey,Matthew S. | 12/9/1998 | | M | White | Warehouse Person |
| Cephas Jr.,Dwight A. | 5/23/2001 | | M | Black/African American | Warehouse Person |
| Cephas,Darrell A | 1/2/1990 | | M | Black/African American | General Labor/Ops |
| Charles,Robert A | 6/30/1975 | | M | White | Bulk Driver |
| Charles,Robert A. | 6/30/1975 | | M | White | Delivery Driver - Bulk |
| Clarke,Lamont M. | 7/17/2002 | | M | Black/African American | Merchandiser |
| Clayton,Lawrence E | 1/12/1987 | 9/17/2005 | M | White | Prod Mgr |
| Clemens,Andrew P | 10/20/1997 | | M | White | CR - Bulk Account - A |
| Clemens,Daniel J. | 9/9/2002 | 2/2/2005 | M | White | Merchandiser |
| Coale Sr.,Jeffrey M | 5/25/1994 | | M | White | Delivery Driver - Full Service |
| Coggins Jr.,Robert H | 5/10/1993 | 7/17/2003 | M | White | General Labor/Ops |
| Coleman,Stanley D. | 1/16/2001 | 9/5/2002 | M | Black/African American | Technician |
| Coleman,Stanley D. | 1/16/2001 | 9/5/2002 | M | Black/African American | Warehouse Person |

CONFIDENTIAL

A. Litman 2
DEPOSITION
EXHIBIT
7-28-07
PEPSI-CO 000-109-0289

PBG 00011

## Wilmington Employees 2002

| Name | Hire Date | Date | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Collins,Wayne C | 1/22/1991 | | M | White | Mechanic - Production |
| Conte,Valentino L | 7/26/1976 | | M | White | Bulk Driver |
| Coorsey,Daniel J. | 8/14/1995 | | M | White | General Labor/Ops |
| Corrigan,Jeffrey M. | 5/18/1998 | | M | White | Warehouse Person |
| Crilley,Jr.,John J. | 5/29/1990 | 8/29/2002 | M | White | Unit Sales Manager |
| Crouse,Ryan D. | 1/8/2001 | | M | White | Merchandiser |
| Cullen,Jessica D. | 1/16/2002 | | F | White | New Business Sales Rep |
| Curtis,Christopher R | 8/19/1985 | | M | White | CR - Conventional |
| Davis Jr.,Rodric L. | 5/8/2002 | 5/10/2002 | M | Black/African American | Warehouse Person |
| Davis,Anthony M. | 5/23/2001 | 8/31/2002 | M | Black/African American | Merchandiser |
| Davis,Frederick J | 12/31/1990 | | M | White | Fleet Mechanic |
| Denby,Marshall L | 7/8/1990 | | M | Black/African American | Machine Operator |
| DiProspero,Gary | 8/11/1985 | | M | Black/African American | Warehouse Person |
| Dibaldo,Domenic A. | 12/16/1996 | 11/26/2003 | M | White | CR - Bulk Account - A |
| Dixon,Dwayne L. | 6/17/1996 | | M | Black/African American | KAM I RS (MU) |
| Doyle,David | 6/2/1995 | | M | White | CR - Conventional |
| Earl,Leon S | 1/16/1978 | | M | Black/African American | General Labor/Ops |
| Eastlack,Christopher T. | 5/6/2002 | 2/8/2006 | M | Black/African American | Warehouse Person |
| Egan,Sean T | 12/15/1997 | | M | White | Delivery Driver |
| Eskin,Scott B | 12/31/1990 | | M | White | Fleet Mechanic |
| Evoy,Jonathan D | 1/2/2001 | 12/29/2003 | M | White | New Business Sales Rep |
| Falina,Robert A | 10/27/1981 | 6/14/2003 | M | White | Production Supv |
| Farabaugh,Robert R. | 4/22/2002 | 4/27/2002 | M | White | Warehouse Person |
| Faulkner,Louis H | 5/22/1990 | | M | Black/African American | General Labor/Ops |
| Fellcelli,James S | 12/17/1973 | 1/26/2005 | M | White | Delivery Driver - Tnr/Trnsp |
| Fillman,Kenneth D | 7/2/1984 | | M | White | Delivery Driver - Tnr/Trnsp |
| Finney,Howard L | 6/27/1976 | 1/31/2002 | M | Black/African American | Delivery Driver - Tnr/Trnsp |
| Fleming,Alice R. | 12/13/1989 | 1/21/2004 | F | Black/African American | Machine Operator |
| Flowers,Ronald A | 6/7/2001 | | M | Black/African American | Warehouse Person |
| Ford,Michael H. | 6/11/1990 | 10/18/2002 | M | White | Warehouse Person |
| Frederick Sr.,Russell W | 9/17/2002 | | M | White | Merchandiser |
| Fulvio,Christopher M | 1/13/1986 | | M | White | Technician |
| Gage,Sean M. | 10/2/1985 | 5/20/2002 | M | White | CR - Conventional |
| Gaul,Jeffrey C. | 3/1/2001 | 4/6/2002 | M | Asian/Pacific Islander | Merchandiser |
| Gray,Christopher L. | 3/12/2002 | 9/26/2003 | M | White | Merchandiser |
| Green,Crystal Sharon | 8/19/1994 | 7/10/2003 | F | White | Production Supv |
| Gricco,Chris A | 4/16/1989 | | M | Black/African American | Admin Assistant-S&D |
| Grundy,Robert B | 7/18/1994 | | M | Black/African American | TSM-On Premise |
| Hairston,William L. | 7/8/1985 | | M | Black/African American | Prod Avail Supv |
| | 9/9/2002 | | M | Black/African American | Technician |

CONFIDENTIAL

PBG 00012

Wilmington Employees 2002

| Name | Date 1 | Date 2 | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Hanrahan,Bridget M. | 6/3/2002 | 9/9/2005 | F | White | Merchandising Manager |
| Hanrahan,George E. | 11/8/1999 | | M | White | Mechanic - Production |
| Herman,Glenn L. | 3/13/2002 | 11/26/2002 | M | White | Mechanic - Production |
| Harris,Ryan P. | 5/28/2002 | 9/28/2002 | M | White | Merchandiser |
| Henderson,Bryce L | 3/24/1980 | | M | White | Sanitizer |
| Hersh,Matthew H | 5/28/2002 | 8/8/2002 | M | White | Merchandiser |
| Hershfeld,Jeffrey L. | 9/10/2001 | 10/26/2005 | M | White | Prod Avail Supv |
| Hitchens,David | 7/8/1991 | | M | White | Delivery Driver - Trlr/Trnsp |
| Hockin,Paul B | 3/6/2002 | | M | White | Merchandiser |
| Howlett,Jeffrey R. | 8/3/2002 | 8/25/2002 | M | White | Merchandiser |
| Hudson,James V. | 3/5/2002 | | M | White | Merchandiser |
| Iovacchini III,Vincent J. | 8/26/2001 | 1/2/2002 | M | White | Merchandiser |
| Jabkowski,Gregory M. | 7/3/2001 | 7/19/2002 | M | White | Merchandiser |
| Jackson,Sean | 4/28/1993 | | M | White | Developmental Assign/Ops |
| Johnson Sr.,Michael A | 7/27/1992 | | M | Black/African American | Delivery Driver - Trlr/Trnsp |
| Johnson,Eugene C | 1/30/1989 | | M | White | Mechanic - Production |
| Johnson,Matthew J | 1/11/1988 | 2/4/2004 | M | White | Delivery Driver - Full Service |
| Johnson,Scott A | 6/1/1992 | | M | White | TSM-Bulk |
| Johnson,Stephen D. | 11/4/2002 | 3/20/2003 | M | White | Technician |
| Jones,Shareef M. | 8/19/2002 | 6/26/2003 | M | Black/African American | Merchandiser |
| Kemman,Leo E | 4/6/1970 | 2/27/2006 | M | White | Delivery Driver - Bulk |
| Kernal,Stephen J | 4/3/1989 | | M | White | Warehouse Person |
| Karp,Jaime B. | 6/17/2002 | | F | White | Territory Support Coordinator |
| Kelleher,James W | 9/24/1990 | | M | White | TSM-Conv |
| Kern,Clifford Albert | 5/29/1996 | 5/18/2003 | M | White | Merchandiser |
| King,Howard A. | 4/25/1990 | | M | White | Trlr/Trnsp Driver |
| Klecz&iewicz,Amanda L | 8/30/1998 | | F | White | Analyst-Customer Information |
| Kleh,Timothy J | 11/21/1994 | 9/28/2005 | M | White | General Labor/Ops |
| Krygier,Kenneth L. | 8/8/2002 | 2/23/2005 | M | White | Merchandiser |
| Laws,Howard M | 10/15/2002 | | M | Black/African American | Safety Mgr Mu |
| Lawton Sr.,Alfred D | 4/25/1991 | | M | White | Warehouse Person |
| Lemon,Alton S. | 7/23/1974 | | M | White | Technician |
| Levis,Leroy J. | 6/19/2001 | 3/7/2002 | M | Black/African American | Warehouse Person |
| Lobua,Thomas J | 6/20/1974 | | M | Black/African American | Warehouse Person |
| Loper Jr.,Ernest | 9/21/1990 | 7/4/2004 | M | White | Delivery Driver - Bulk |
| Lorber,Eric S. | 6/3/2002 | | M | Black/African American | General Labor/Ops |
| Lovins,Michael J. | 12/26/2001 | | M | White | Warehouse Person |
| Lyons,Jarrad V. | 6/17/2002 | 6/21/2002 | M | White | QC Lab Technician |
| | | | M | White | Warehouse Person |

CONFIDENTIAL

PBG 00013

B 115

Wilmington Employees 2002

| Name | Hire Date | Term Date | Gender | Race | Job Title |
|---|---|---|---|---|---|
| Mackrell,Charles S | 7/17/2000 | | M | White | Mechanic - Production |
| Maley,Thomas J | 3/1/1993 | | M | White | CR - Conventional |
| Mast,Dean E | 10/30/1978 | | M | White | Bulk Driver |
| Mast,Dean E | 10/30/1978 | | M | White | Delivery Driver - Bulk |
| Matthews,Merrill James | 2/8/1999 | 3/15/2004 | M | Black/African American | Warehouse Person |
| Matthews,William G | 8/7/1989 | | M | White | Prod Avail Supv |
| Mauregas,Mark Matthew | 12/17/2001 | 9/4/2005 | M | White | Merchandiser |
| Mcarson,Richard W | 12/23/1988 | | M | Black/African American | Supervisor-Delivery |
| McClain Jr.,Charlie | 4/1/1985 | | M | White | General Labor/Ops |
| McCormick Jr.,James J. | 6/10/1996 | 7/22/2004 | M | White | Warehouse Person |
| McGaillard,Richard W | 8/31/1978 | | M | White | Delivery Driver - Bulk |
| McGonigle,William J | 6/22/1987 | | M | White | General Labor/Ops |
| McHugh II,Donald F. | 6/11/2001 | 10/8/2002 | M | White | Merchandiser |
| McNeat,Wade M | 3/25/2002 | 5/18/2002 | M | White | Warehouse Person |
| Meadow,Robin | 2/5/1990 | | M | White | Machine Operator |
| Middleton,Holly | 5/20/1991 | | F | White | Admin Assistant-Operations |
| Millci,Eric D | 12/22/1987 | 8/5/2003 | M | White | Warehouse Person |
| Miller,Daniel J. | 12/11/1995 | | M | Black/African American | CR - Bulk Account - A |
| Miller,Jackie E | 10/4/1982 | 2/2/2005 | M | White | CR - Conventional |
| Mishaw,Angus W | 11/23/1982 | | M | White | Delivery Driver |
| Morgan,Brent M. | 5/1/1995 | 3/22/2004 | F | White | MU Financial Process Mgr |
| Morrison,William C | 12/8/1986 | | M | White | Warehouse Person |
| Murdoch Jr.,Robert W | 7/20/1990 | 11/17/2004 | M | White | General Labor/Ops |
| Murphy,James | 8/25/1980 | 3/6/2005 | M | White | CR - Conventional |
| Nau,Jeffrey G | 4/25/1977 | | M | White | CR - Conventional |
| Nelson,Craig M | 5/23/1994 | 2/13/2004 | M | White | New Business Sales Rep |
| Nelson,Craig M | 5/23/1994 | 2/13/2004 | M | White | Territory Support Coordinator |
| Newton,Herbert L | 5/25/1980 | 3/31/2003 | M | Black/African American | Gen Labor |
| Newton,Herbert L | 5/25/1980 | 3/31/2003 | M | Black/African American | General Labor/Ops |
| Obara Jr.,John Charles | 12/29/1997 | | M | White | Checker |
| O'Connor,Thomas J | 4/16/1985 | | M | White | CR - Conventional |
| O'Connor,Thomas J | 4/16/1985 | | M | White | Conventional CR |
| O'Donald Jr.,Richard W | 4/2/1979 | | M | White | CR - Conventional |
| O'Hara,Shawn M. | 4/26/1999 | | M | White | Warehouse Person |
| Olds,Adam J. | 5/28/2002 | | M | White | Warehouse Person |
| Olowofela,Kenny O. | 5/28/2001 | 7/15/2005 | M | Black/African American | Account Sales Rep |
| Olowofela,Kenny O. | 5/28/2001 | 7/15/2005 | M | Black/African American | TSM-Conv |
| Osciak,John J | 10/13/1987 | | M | White | Conventional CR |
| Osciak,John J | 10/13/1987 | | M | White | Delivery Driver - Trlr/Trnsp |
| Osik,Robert A. | 1/7/2002 | 2/3/2002 | M | White | Merchandiser |

CONFIDENTIAL

PBG 00014

Wilmington Employees 2002

| Name | Date | | Race | Job Title |
|---|---|---|---|---|
| Palladino Jr.,Ralph J | 7/8/1974 | M | White | Bulk Driver |
| Palladino Jr.,Ralph J | 7/8/1974 | M | White | Delivery Driver - Bulk |
| Palmer Jr.,George R | 12/31/1990 | M | White | Fleet Manager |
| Palmer Jr.,George R | 12/31/1990 | M | White | Fleet Mgr |
| Papili Jr.,Louis A | 10/31/1983 | M | White | Checker |
| Paquin Jr.,Arthur L | 5/16/1994 | M | White | Bulk Account Customer Rep (A) |
| Paquin Jr.,Arthur L | 6/16/1994 | M | White | CR - Bulk Account - A |
| Pednok,Kirankumar M. | 8/12/2002 | M | Asian/Pacific Islander | Technician |
| Patterson,Daniel P | 7/8/1897 | M | White | CR - Conventional |
| Payne,James D | 5/26/1992 | M | White | Delivery Driver - Trlr/Trnsp |
| Perez,Jr.,Raul | 8/7/2000 | M | Hispanic | Bulk Account Customer Rep (A) |
| Perez Jr.,Raul | 8/7/2000 | M | Hispanic | CR - Bulk Account - A |
| Pocro,Christopher | 7/28/1997 | M | White | Delivery Driver - Full Service |
| Porter,Marvin L | 5/18/1992 | M | Black/African American | Technician |
| Purdy,Harold A | 5/4/1998 | M | White | Machine Operator |
| Pyle,Charles H | 6/30/1980 | M | White | Delivery Driver - Trlr/Trnsp |
| Redden,Timothy W. | 5/7/2001 | M | White | Bulk Account Customer Rep (A) |
| Redden,Timothy W. | 5/7/2001 | M | White | CR - Bulk Account - A |
| Reilly,Kevin E | 8/11/1986 | M | White | CR - Conventional |
| Reilly,Kevin E | 8/11/1986 | M | White | Conventional CR |
| Riley,Karl G. | 7/29/2002 | M | Black/African American | Warehouse Person |
| Riley,Thomas S | 1/17/1972 | M | Black/African American | Prod Avail Mgr. |
| Rizzo Jr.,Joseph S | 4/11/1994 | M | White | Checker |
| Roark,Michael S | 5/2/1998 | M | White | Warehouse Person |
| Robbins,Damian J. | 7/11/1995 | M | White | Bulk Account Customer Rep (A) |
| Robinson,Leonard J. | 4/15/1996 | M | Black/African American | Machine Operator |
| Robles Jr.,Santos | 7/8/2002 | M | Hispanic | Warehouse Person |
| Rodgers,Charles J. | 9/25/1997 | M | White | Gen Labor |
| Rodgers,Charles J. | 9/25/1997 | M | White | General Labor/Ops |
| Rowe,Adam T. | 6/28/2001 | M | White | Merchandiser |
| Saunders,Ringgold | 2/3/1986 | M | Black/African American | Machine Operator |
| Schools,Sylvester L | 2/26/1990 | M | Black/African American | Gen Labor |
| Schools,Sylvester L | 2/26/1990 | M | Black/African American | Warehouse Person |
| Sharkey,Steven A | 9/24/1979 | M | White | Mechanic - Production |
| Sharkey,Steven A | 9/24/1979 | M | White | Prod Mech |
| Shemeld,Michael D | 7/31/1993 | M | White | Gen Labor |
| Shemeld,Michael D | 7/31/1993 | M | White | General Labor/Ops |
| Shepherd,Christopher J. | 10/2/2000 | M | Black/African American | Bulk Account Customer Rep (A) |
| Simmons Jr.,Certion W.. | 9/20/2002 | M | White | Merchandiser |
| Sinno,John | 4/29/2002 | M | White | Merchandiser |

CONFIDENTIAL

PBG 00015

B 117

## Wilmington Employees 2002

| Name | Date | Sex | Race | Title |
|---|---|---|---|---|
| Sliwinski Jr.,Joseph A | 3/21/1999 | M | White | General Labor/Ops |
| Smallwood,Delancy D. | 2/18/2002 | M | Black/African American | Warehouse Person |
| Smith,Michael J. | 4/10/1996 | M | White | Delivery Driver |
| Smyth,Thomas M | 3/8/1978 | M | White | QC Manager |
| Spencer,Payton E | 4/1/1991 | M | Black/African American | Warehouse Person |
| Spicer,Brian R. | 5/22/2002 | M | White | Warehouse Person |
| Spicer,Dennis R | 8/5/1978 | M | White | CR - Conventional |
| Stelb,David W. | 9/5/2000 | M | White | Production Supv |
| Stanley,Jeffrey S | 2/29/1996 | M | White | Machine Operator |
| Steinrock,George F. | 8/22/1997 | M | White | Mechanic - Production |
| Stewart,Bernard T | 5/15/2000 | M | Black/African American | Warehouse Person |
| Stone,Jason A. | 5/13/2002 | M | Black/African American | Warehouse Person |
| Stone,Vincent E. | 4/30/2001 | M | Black/African American | Warehouse Person |
| Szczeparski Jr.,William J. | 8/5/2002 | M | White | Merchandiser |
| Thomas,Cleavon L. | 5/7/2001 | M | Black/African American | Warehouse Person |
| Tillman,Kimani H. | 8/17/2001 | M | Black/African American | Merchandiser |
| Tillman,Mariayna G. | 5/8/2001 | F | Black/African American | Warehouse Person |
| Turner Jr.,Ernest S | 9/3/1992 | M | Black/African American | Machine Operator |
| Tweed,Edward E | 3/14/1987 | M | White | Bulk Driver |
| VanScoyk,Diane M | 8/2/1999 | F | White | Administrator |
| Vrahos,Nicholas | 9/26/2000 | M | White | Merchandiser |
| Vrahos,Ted | 5/13/1996 | M | White | Bulk Account Customer Rep (A) |
| Weber,Philip F | 12/30/1985 | M | White | Plant Manager |
| Wells,Jack E | 1/25/1988 | M | White | Fleet Mechanic |
| Werner,Michael J. | 8/17/2002 | M | White | Merchandiser |
| Westenberger Jr.,Francis C. | 5/18/1998 | M | White | Warehouse Person |
| Whary,Leigh A. | 8/23/2001 | F | White | Technician |
| Williams Sr.,James K. | 11/27/1995 | M | White | Santiizer |
| Williams,William R | 9/23/1985 | M | White | Technician |
| Wise,John D. | 4/20/2000 | M | White | Warehouse Person |
| Wise,John D. | 4/20/2000 | M | White | Gen Labor |
| Wray III,Bruce E | 10/21/1987 | M | White | Merchandising Manager |
| Wray III,Bruce E | 10/21/1997 | M | White | TSM-Bulk |
| Wright,Brent H. | 5/25/1995 | M | Black/African American | Machine Operator |
| Wright,Jeffrey L. | 8/18/1975 | M | White | Delivery Driver - Bulk |
| Wyatt,Richard D | 5/10/1993 | M | White | Delivery Driver |
| Young,Amy J | 6/5/2000 | F | White | New Business Sales Rep |
| Youngblood,Eric M. | 5/28/2002 | M | White | Warehouse Person |
| Zell,Deborah A. | 1/22/1984 | F | White | KAM I OP (MU) |
| Ziegler,Robert A | 5/29/1989 | M | White | TSM-Bulk |

CONFIDENTIAL

PBG 00016

Wilmington Employees 2003

| EE Name | DOH | Term Date | Gender | Ethnic Group | Job Description |
|---|---|---|---|---|---|
| Aiello,Thomas P. | 4/8/2003 | 11/14/2003 | M | White | Merchandiser |
| Arscott,Glenn D | 10/16/1974 | | M | White | Delivery Driver - Bulk |
| Arthur Jr.,Charles M | 6/18/1989 | | M | White | Machine Operator |
| Bacala,Annie R | 6/18/1992 | | M | Asian/Pacific Islander | Prod Avail Supv |
| Baltus,Kathleen A | 3/25/1985 | 12/6/2005 | F | White | Admin Assistant-S&D |
| Basquill,Joseph | 9/22/2003 | 6/1/2004 | M | White | Merchandiser |
| Bateman,David M. | 10/16/2001 | | M | White | CR-2 Person Bulk-VROT |
| Becker Jr.,William C | 10/31/1988 | 7/30/2005 | M | White | Warehouse Person |
| Bell Jr.,James A | 6/8/1981 | | M | Black/African American | General Labor/S&D |
| Bing,Eric | 5/31/1996 | | M | Black/African American | Machine Operator |
| Bishop,Khalilah L. | 11/13/2003 | 2/10/2006 | F | White | Admin Assistant-S&D |
| Bleacher,Paul D | 3/19/1991 | | M | White | Delivery Driver - Trf/Trnsp |
| Boulden II,Mark F. | 7/22/2002 | 8/14/2003 | M | White | Merchandiser |
| Bowman,Kenneth D | 9/8/1987 | | M | White | Forklift Oper |
| Bowman,Kimberly Dawn | 12/22/1997 | | F | White | Admin Assistant-S&D |
| Boyd,Jeffry A | 8/22/1988 | 5/1/2004 | M | White | Delivery Driver - Trf/Trnsp |
| Bradley,Chris A. | 7/15/2003 | 7/22/2003 | M | Black/African American | General Labor/Ops |
| Brinton,Scott Carter | 10/27/1998 | 1/21/2006 | M | White | Merchandiser |
| Buckley Jr.,John A | 12/1/1982 | | M | White | Delivery Driver - Trf/Trnsp |
| Bullock Jr.,Robert | 7/1/2003 | 7/17/2003 | M | Black/African American | General Labor/Ops |
| Burns Jr.,Brian J. | 3/3/2003 | | M | White | Merchandiser |
| Burton,Joshua L. | 6/16/2003 | 3/19/2004 | M | White | Management Trainee/Operations |
| Burton,Joshua L. | 5/16/2003 | 3/19/2004 | M | White | Production Supv |
| Byerly Jr.,Howard W. | 5/28/1996 | | M | White | CR-2 Person Bulk-VROT |
| Cameron Jr.,John K | 11/7/1988 | | M | White | Machine Operator |
| Campbell,John R | 4/20/1993 | | M | White | Warehouse Person |
| Carson,David G | 4/25/1994 | 1/30/2003 | M | White | Machine Operator |
| Cartwright,Justin E. | 3/6/2000 | 9/3/2005 | M | White | CR-2 Person Bulk-VROT |
| Casey,Matthew S. | 12/9/1996 | | M | White | Technician |
| Cassidy,William J. | 5/1/2003 | 5/31/2003 | M | Black/African American | Warehouse Person |
| Cephas Jr.,Darrell A. | 10/14/2003 | 8/22/2006 | M | Black/African American | Merchandiser |
| Cephas Jr.,Dwight A. | 5/23/2001 | | M | Black/African American | Delivery Driver - Trf/Trnsp |
| Cephas,Darrell A. | 1/2/1990 | | M | White | Forklift Oper |
| Charles,George P | 9/16/1992 | 5/28/2004 | M | White | CR-2 Person Bulk-VROT |
| Charles,Robert A | 6/30/1975 | | M | White | Delivery Driver - Bulk |



CONFIDENTIAL

PHSCAO 000-031-0960

DEPOSITION EXHIBIT

PBG 00017

B 119

Wilmington Employees 2003

| Name | Date 1 | Date 2 | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Clarke,Lamont M. | 7/1/2002 | 9/17/2005 | M | Black/African American | CR-2 Person Bulk-VROT |
| Clayton,Lawrence E | 1/12/1987 | | M | White | Mgr Production |
| Clemens,Andrew P | 10/20/1997 | | M | White | CR-2 Person Bulk-VROT |
| Clemens,Daniel J. | 9/9/2002 | 2/2/2005 | M | White | Merchandiser |
| Clineff Jr.,Mark S. | 5/27/2003 | 8/23/2004 | M | White | Warehouse Person |
| Coale Sr.,Jeffrey M | 5/26/1994 | | M | White | Delivery Driver - Full Service |
| Coggins Jr.,Robert H | 5/10/1993 | 7/17/2003 | M | White | Forklift Oper |
| Collins,Wayne C | 1/2/1991 | | M | White | Mechanic - Production |
| Conte,Valentino L | 7/26/1976 | | M | White | Delivery Driver - Bulk |
| Cooney,Daniel J. | 8/14/1995 | | M | White | General Labor/S&D |
| Corrigan,Jeffrey M. | 5/18/1998 | | M | White | General Labor/Ops |
| Crilley Jr.,John J | 5/29/1990 | | M | White | Unit Sales Manager |
| Curry,Howard F. | 4/22/2003 | 6/14/2003 | M | White | Warehouse Person |
| Curtis,Christopher R | 8/19/1985 | | M | White | CR - Conventional |
| Davis,Frederick J | 12/31/1990 | | M | White | Fleet Mechanic |
| Degolyer,Gary D | 9/16/2003 | 12/22/2003 | M | White | Merchandiser |
| Demby,Marshall L | 7/8/1980 | | M | Black/African American | Machine Operator |
| DiProspero,Gary | 8/11/1995 | 11/26/2003 | M | Black/African American | Warehouse Person |
| Diubaldo,Domenic A. | 12/16/1996 | | M | White | CR-2 Person Bulk-VROT |
| Dixon,Dwayne L. | 6/17/1996 | | M | Black/African American | TSM-Bulk |
| Doyle,David | 6/2/1995 | | M | White | CR - Conventional |
| Earl,Leon S | 1/16/1978 | | M | Black/African American | Forklift Oper : |
| Eastlack,Christopher T. | 5/6/2002 | 2/8/2006 | M | White | Warehouse Person |
| Egan,Sean T | 12/16/1997 | 4/13/2005 | M | White | Delivery Driver - Bay |
| Eller III,William T. | 8/5/2002 | | M | White | Warehouse Person |
| Esbin,Scott B | 12/31/1990 | 6/14/2003 | M | White | Fleet Mechanic |
| Falline,Robert A | 10/27/1981 | | M | White | Production Supv |
| Faulkner,Louis H | 5/22/1990 | | M | Black/African American | General Labor/Ops |
| Felicetti,James L | 12/17/1973 | 1/26/2005 | M | White | Delivery Driver - Trlr/frmsp |
| Felicetti,Jeffrey S | 7/2/1984 | | M | White | Delivery Driver - Trlr/frmsp |
| Fillman,Kenneth D | 9/27/1976 | 8/27/2003 | M | Black/African American | General Labor/Ops |
| Flis-Alme,Jeffrey C. | 7/15/2003 | | M | Black/African American | Machine Operator |
| Finney,Howard L | 12/18/1988 | 1/21/2004 | M | Black/African American | Warehouse Person |
| Flowers,Ronald A | 6/11/1990 | 9/17/2004 | M | Black/African American | Prod Avail Supv |
| Floyd,Timothy N | 8/26/2003 | | M | White | Technician |
| Frederick Sr.,Russell W | 1/13/1986 | | M | White | CR - Conventional |
| Fuhlo,Christopher M | 10/21/1985 | | M | | |

CONFIDENTIAL

PBG 00018

B 120

Wilmington Employees 2003

| Name | | | | | |
|---|---|---|---|---|---|
| Gray,Christopher L. | 9/19/1994 | 9/26/2003 | M | White | Production Supv |
| Green,Crystal Sharon | 4/15/1999 | 7/10/2003 | F | Black/African American | Admin Assistant-S&D |
| Grieco,Chris A | 7/18/1994 | | M | White | TSM-On Premise |
| Grove,DaJuan R. | 7/28/2003 | 9/5/2003 | M | Black/African American | General Labor/Ops |
| Grundy,Robert B | 7/8/1985 | | M | Black/African American | Prod Avail Supv |
| Hairston,William L. | 9/9/2002 | | M | Black/African American | Technician |
| Haley,Brian E | 8/8/1986 | | M | White | Unit Sales Manager |
| Hanrahan,Bridget M. | 6/3/2002 | 9/9/2005 | F | White | On Premise Sales Rep |
| Hanstein,George E. | 11/8/1999 | | M | White | Mechanic - Production |
| Henderson,Bruce L | 3/24/1980 | | M | White | Sanitizer |
| Hershfeld,Jeffrey L. | 9/10/2001 | 10/26/2005 | M | White | Production Supv |
| Hitchens,David | 7/8/1991 | | M | White | Delivery Driver - Trlr/Trnsp |
| Hocklin,Paul B | 3/6/2002 | | M | White | CR-2 Person Bulk-v-ROT |
| Hoffman,George W | 7/10/1978 | 8/1/1999 | M | White | General Labor/Ops |
| Hubbard,Charles M | 12/29/2003 | 8/13/2005 | M | Black/African American | Merchandiser |
| Hudson,James V. | 3/5/2002 | | M | White | CR-2 Person Bulk-V-ROT |
| Jackson,Sean | 4/28/1998 | | M | White | Developmental Assign/Ops |
| Johnson Sr.,Michael A | 7/27/1992 | | M | Black/African American | Delivery Driver - Trlr/Trnsp |
| Johnson,Eugene C | 1/30/1989 | | M | White | Mechanic - Production |
| Johnson,Matthew J | 1/11/1988 | 2/4/2004 | M | White | Delivery Driver - Full Service |
| Johnson,Shaka | 3/4/2003 | | M | Black/African American | Merchandiser |
| Johnson,Stephen D. | 11/4/2002 | 3/20/2003 | M | White | Technician |
| Jones Sr.,Donald E | 5/8/1959 | 2/9/1998 | M | White | Warehouse Person |
| Jones,Shareef M. | 8/19/2002 | 6/29/2003 | M | Black/African American | Merchandiser |
| Kampmann,Leo E | 4/5/1970 | 2/27/2006 | M | White | Delivery Driver - Bulk |
| Kamel,Stephen J | 4/8/1989 | | M | White | Forklift Oper |
| Karp,Jaime B. | 6/17/2002 | | F | White | Territory Support Coordinator |
| Kellaher,James W | 9/24/1990 | | M | White | TSM-Conv |
| Kern,Clifford Albert | 5/28/1998 | 6/18/2003 | M | White | Merchandiser |
| Klaczkiewicz,Amanda L | 6/30/1986 | | F | White | Analyst-Customer Information |
| Klein,Timothy J | 11/22/1994 | 9/28/2005 | M | White | General Labor/S&D |
| Kogler,Kenneth L | 8/8/2002 | 2/23/2005 | M | White | Merchandiser |
| Kuech,Tabatha J. | 10/15/2002 | | F | White | Safety Mgr Mu |
| Laws,Howard M | 4/26/1991 | | M | Black/African American | Warehouse Person |
| Lawton Sr.,Alfred D | 7/29/1974 | | M | White | Technician |
| Lewis,Leroy J. | 6/1/2002 | | M | Black/African American | Machine Operator |
| Liang,Raymond | 5/27/2003 | | M | Asian/Pacific Islander | General Labor/Ops |

CONFIDENTIAL

PBG 00019

B 121

## Wilmington Employees 2003

| Name | Date | Date | Sex | Race | Position |
|---|---|---|---|---|---|
| Lobue,Thomas J | 5/20/1974 | 7/4/2004 | M | White | Delivery Driver - Bulk |
| Loper Jr.,Ernest | 6/21/1990 | | M | Black/African American | Machine Operator |
| Lovins,Michael J. | 12/26/2001 | | M | White | QC Lab Technician |
| Lubrano,Angelo J. | 4/28/2003 | 6/27/2003 | M | White | Warehouse Person |
| Mackrell,Charles S | 7/17/2000 | | M | White | Mechanic - Production |
| Mackrell,Eric T. | 7/22/2003 | | M | White | General Labor/Ops |
| Maley,Thomas J | 3/1/1993 | | M | White | CR - Conventional |
| Mast,Dean E | 10/30/1978 | | M | White | Delivery Driver - Bulk |
| Mast,Dean E | 10/30/1978 | | M | White | Delivery Driver - Full Service |
| Matthews,Merrill James | 2/8/1999 | 3/16/2004 | M | Black/African American | Warehouse Person |
| Matthews,William G | 8/7/1989 | | M | White | Prod Avail Supv |
| Mauragas,Mark Matthew | 12/17/2001 | 9/4/2005 | M | White | Merchandiser |
| Mocarson,Richard W | 12/28/1998 | | M | White | Supervisor-Delivery |
| McClain Jr.,Charlie | 4/1/1995 | | M | Black/African American | Machine Operator |
| McCormick Jr.,James J. | 6/10/1996 | 7/22/2004 | M | White | Sanitizer |
| McDonald,Adam K. | 5/28/2003 | 3/1/2004 | M | White | Merchandiser |
| McGaillard,Richard W | 8/31/1978 | | M | White | Delivery Driver - Bulk |
| McGonigle,William J | 6/22/1987 | | M | White | General Labor/Ops |
| Meadow,Robin | 2/5/1990 | | F | White | Machine Operator |
| Middleton,Holly | 5/20/1991 | | M | White | Admin Assistant-Operations |
| Milid,Eric D | 12/22/1997 | 8/6/2003 | M | Black/African American | CR-2 Person Bulk-VROT |
| Miller Jr.,Jackie E | 7/9/2003 | 8/29/2003 | M | White | Warehouse Person |
| Miller,Daniel J. | 12/11/1995 | | M | White | Forklift Oper |
| Miller,Daniel J. | 12/11/1995 | | M | White | Warehouse Person |
| Miller,Jackie E | 10/4/1982 | 2/22/2006 | M | Black/African American | CR - Conventional |
| Mishaw,Angus W | 11/28/1982 | | M | White | Delivery Driver - Bay |
| Moody,Larry A. | 5/27/2003 | 8/30/2005 | M | Black/African American | Warehouse Person |
| Morgan,Bartt M. | 5/1/1995 | 3/22/2004 | F | White | Financial Process Mgr - MU |
| Morrison,William C | 12/8/1986 | | M | White | Warehouse Person |
| Murdoch Jr.,Robert W | 7/20/1990 | 11/17/2004 | M | White | General Labor/Ops |
| Murphy,James | 8/25/1980 | 3/8/2005 | M | White | CR - Conventional |
| Nau,Jeffroy G | 4/26/1977 | | M | White | CR - Conventional |
| Nelson,Craig M | 5/23/1994 | 2/13/2004 | M | White | On Premise Sales Rep |
| Newton,Herbert L | 5/26/1990 | 3/31/2003 | M | Black/African American | General Labor/Ops |
| Obara Jr.,John Charles | 12/29/1997 | | M | White | Checker |
| O'Connel,Thomas J | 4/16/1985 | | M | White | CR - Conventional |
| O'Donald Jr.,Richard W. | 4/2/1979 | | M | White | CR - Conventional |

CONFIDENTIAL

PBG 00020

B 122

Wilmington Employees 2003

| Name | Date | Date | Sex | Race | Position |
|---|---|---|---|---|---|
| O'Hara,Shawn M. | 4/26/1999 | | M | White | Machine Operator |
| Osciak,John J | 10/13/1987 | | M | White | Delivery Driver - Trf/Tmsp |
| Palladino Jr.,Ralph J | 7/8/1974 | | M | White | Delivery Driver - Bulk |
| Palmer Jr.,George R | 12/31/1990 | | M | White | Fleet Manager |
| Papili Jr.,Louis A | 10/31/1983 | | M | White | Checker |
| Paquin Jr.,Arthur L | 5/19/1994 | | M | White | CR-2 Person Bulk-V-ROT |
| Patterson,Daniel P | 7/8/1987 | | M | White | CR - Conventional |
| Payne,James D | 5/26/1992 | | M | White | Delivery Driver - Trf/Tmsp |
| Perez Jr.,Raul | 8/7/2000 | 9/4/2004 | M | Hispanic | CR-2 Person Bulk-V-ROT |
| Poore,Christopher | 7/28/1997 | | M | White | Delivery Driver - Full Service |
| Porter,Marvin L | 5/18/1992 | 2/10/2003 | M | Black/African American | Technician |
| Purdy,Harold A | 5/4/1998 | | M | White | Machine Operator |
| Pyle,Charles H | 6/30/1990 | | M | White | Delivery Driver - Trf/Tmsp |
| Radcliffe,Brian J. | 5/24/2003 | 8/29/2003 | M | White | Merchandiser |
| Redden,Timothy W. | 5/7/2001 | 7/4/2003 | M | White | CR-2 Person Bulk-V-ROT |
| Reilly,Kevin E | 8/11/1986 | 12/8/2004 | M | White | CR - Conventional |
| Ricca,Tuan J. | 4/28/2003 | | M | Asian/Pacific Islander | Warehouse Person |
| Riley,Thomas S | 1/17/1972 | 5/2/2005 | M | Black/African American | Product Availability Mgr |
| Rizzo Jr.,Joseph S | 4/11/1994 | | M | White | Production Supv |
| Roark,Michael S | 5/2/1998 | | M | White | Warehouse Person |
| Robbins,Damian J. | 7/11/1995 | | M | Black/African American | Merchandising Manager |
| Robinson,Leonard J. | 4/15/1996 | | M | Hispanic | Machine Operator |
| Robles Jr.,Santos | 7/9/2002 | | M | White | Machine Operator |
| Rodgers,Charles J. | 8/25/1997 | | M | White | General Labor/Ops |
| Rodgers,Charles J. | 8/25/1997 | | M | White | General Labor/S&D |
| Ryan Jr.,John J | 11/10/2003 | 8/20/2004 | M | White | QC Lab Technician |
| Ryan,Erin G. | 11/24/2003 | 6/14/2004 | F | White | General Labor/Ops |
| Saunders,Ringgold | 2/6/1986 | | M | Black/African American | Machine Operator |
| Sharkey,Steven A. | 9/24/1979 | | M | White | Mechanic - Production |
| Shemeld,Michael D | 7/31/1993 | | M | White | General Labor/S&D |
| Shepherd,Christopher J. | 10/22/2000 | 7/21/2006 | M | Black/African American | CR-2 Person Bulk-V-ROT |
| Simmons Jr.,Carlton W. | 6/20/2002 | | M | White | Merchandiser |
| Sinno,John | 4/29/2002 | | M | White | Merchandiser |
| Skinner,Donte L. | 7/22/2003 | 6/1/2004 | M | Black/African American | General Labor/Ops |
| Sliwinski Jr.,Joseph A | 3/21/1969 | 5/31/2005 | M | White | General Labor/Ops |
| Sload,Ronald W | 3/28/1960 | 4/1/2001 | M | White | Delivery Driver - Bulk |
| Smathers,Michael S. | 12/15/1999 | 2/12/2004 | M | White | Merchandiser |

CONFIDENTIAL

PBG 00021

Wilmington Employees 2003

| Name | Date | Date | Sex | Race | Title |
|---|---|---|---|---|---|
| Smith,Michael J. | 4/10/1996 | | M | White | Delivery Driver - Bay |
| Smyth,Thomas M | 3/6/1978 | | M | White | QC Manager |
| Spencer,Peyton E | 4/12/1991 | 2/27/2004 | M | Black/African American | Forklift Oper |
| Spicer,Dennis R | 9/6/1978 | | M | White | CR - Conventional |
| Stalb,David W. | 9/6/2000 | 9/5/2005 | M | White | Production Supv |
| Stanley,Jeffrey S | 2/29/1988 | | M | White | General Labor/Ops |
| Steinrock,George F. | 8/22/1997 | | M | White | Mechanic - Production |
| Stewart,Bernard T | 6/15/2000 | 3/31/2004 | M | Black/African American | General Labor/Ops |
| Stewart,Bernard T | 6/15/2000 | 9/31/2004 | M | Black/African American | Warehouse Person |
| Stone,Vincent E. | 4/30/2001 | | M | Black/African American | Machine Operator |
| Stringer,Joan A | 9/4/1988 | | F | White | Machine Operator |
| Tanteromano,Frank R. | 5/17/2003 | 6/31/2001 | M | White | Merchandiser |
| Thomas,Gleaven L. | 5/7/2001 | 5/17/2005 | M | Black/African American | Machine Operator |
| Tillman,Marlayna G. | 5/8/2001 | 5/25/2004 | F | Black/African American | Warehouse Person |
| Turner Jr.,Ernest S | 9/3/1982 | 12/1/2004 | M | Black/African American | Machine Operator |
| Vlahos,Nicholas | 9/26/2000 | | M | White | CR-2 Person Bulk-VROT |
| Vlahos,Ted | 5/13/1996 | | M | White | CR-2 Person Bulk-VROT |
| Walker II,Lawrence | 6/16/2003 | 6/27/2003 | M | White | Warehouse Person |
| Weber,Philip F | 12/30/1985 | 5/20/2004 | M | White | Plant Manager |
| Wells,Jack E | 1/25/1988 | | M | White | Fleet Mechanic |
| Westenberger Jr.,Francis C. | 5/18/1998 | 6/20/2003 | M | White | Warehouse Person |
| Williams Sr.,James K. | 11/27/1995 | 4/30/2006 | M | White | Sanitizer |
| Williams,William R | 9/23/1985 | | M | White | Technician |
| Williamson,William Henry | 1/6/2003 | 11/16/2003 | M | White | Merchandiser |
| Wintz,Robert | 8/18/2003 | | M | White | General Labor/Ops |
| Wise,John D. | 4/20/2000 | | M | White | General Labor/Ops |
| Wray III,Bruce E | 10/21/1997 | | M | White | TSM-Bulk |
| Wright,Brent H. | 5/28/1995 | 3/6/2003 | M | Black/African American | Machine Operator |
| Wright,Jeffrey L | 8/18/1976 | | M | White | Delivery Driver - Bulk |
| Zell,Deborah A | 1/22/1984 | | F | White | KAM I OP (MU) |
| Ziegler,Robert A | 5/29/1989 | | M | White | TSM-Bulk |

CONFIDENTIAL

FBG 00022

Wilmington Employees 2004

| EE Name | DOH | Term Date | Gender | Ethnic Group | Job Description |
|---|---|---|---|---|---|
| Arthur Jr.,Charles M | 8/18/1989 | | M | White | Machine Operator |
| Bacale,Amie R | 8/18/1992 | | M | Asian/Pacific Islander | Prod Avail Supv |
| Bathus,Kathleen A | 3/25/1985 | 12/6/2005 | F | White | Admin Assistant-S&D |
| Barkes,Christopher J | 5/13/2004 | 11/14/2004 | M | White | Merchandiser |
| Basquill,Joseph | 9/22/2003 | 5/1/2004 | M | White | Merchandiser |
| Bateman,David M. | 10/15/2001 | | M | White | CR-2 Person Bulk-VROT |
| Becker Jr.,William C | 10/31/1988 | 7/30/2005 | M | White | Machine Operator |
| Bell Jr.,James A | 6/6/1981 | | M | Black/African American | CR – PreSell - AOM |
| Berg,Raymond E. | 8/23/2004 | 5/21/2005 | M | White | Merchandiser |
| Bing,Eric | 5/8/1936 | | M | White | Machine Operator |
| Bird,Andrew J. | 6/14/2004 | 6/22/2004 | M | Hispanic | Warehouse Person |
| Bishop,Khalilah L. | 11/13/2003 | 2/10/2006 | F | Black/African American | Admin Assistant-S&D |
| Blaszka,Craig M. | 10/12/2004 | 12/23/2005 | M | White | Merchandiser |
| Bleacher,Paul D | 3/19/1991 | | M | White | Delivery Driver - Trfr/Trnsp |
| Bowman,Kenneth D | 9/9/1997 | | M | White | Forklift Oper |
| Bowman,Kimberly Dawn | 12/22/1997 | | F | White | Admin Assistant-Operations |
| Boyd,Jeffry A | 8/22/1988 | 5/12/2004 | M | White | Delivery Driver - Trfr/Trnsp |
| Brazas,Robert A. | 4/14/2004 | 4/21/2004 | M | White | Merchandiser |
| Brinton,Scott Carter | 10/27/1998 | 1/21/2006 | M | White | CR-2 Person Bulk-VROT |
| Bryant,Shawn L | 4/7/2004 | 4/8/2004 | M | Black/African American | Warehouse Person |
| Buckley Jr.,John A | 12/1/1982 | | M | White | Delivery Driver - Trfr/Trnsp |
| Burns Jr.,Brian J. | 3/3/2003 | | M | White | CR-2 Person Bulk-VROT |
| Burton,Joshua L. | 6/16/2003 | 3/19/2004 | M | White | Production Supv |
| Byerly Jr.,Howard W. | 5/28/1996 | | M | White | CR-2 Person Bulk-VROT |
| Cahill,Jason L. | 12/23/2004 | 2/10/2005 | M | White | CR-2 Person Bulk-VROT |
| Cameron Jr.,John K | 11/7/1988 | 3/1/2006 | M | White | Machine Operator |
| Campbell,John R | 4/20/1993 | | M | White | General Labor/Ops |
| Cardin,Christian N | 1/26/1998 | | M | White | Delivery Driver - Bay |
| Carrington,Michael C. | 3/30/2004 | 7/28/2006 | M | White | CR – PreSell - AOM |
| Cartwright,Justin E. | 3/6/2000 | 9/3/2005 | M | White | CR-2 Person Bulk-VROT |
| Casey,Matthew S. | 12/9/1996 | | M | White | Technician |
| Cephas Jr.,Darrell A. | 10/14/2003 | 8/22/2005 | M | Black/African American | CR-2 Person Bulk-VROT |
| Cephas Jr.,Darrell A. | 10/14/2003 | 8/22/2006 | M | Black/African American | Merchandiser |
| Cephas Jr.,Dwight A. | 5/23/2001 | | M | Black/African American | Warehouse Person |
| Cephas,Darrell A | 1/2/1990 | | M | Black/African American | Forklift Oper |

CONFIDENTIAL

DEPOSITION EXHIBIT

PBG 00023

## Wilmington Employees 2004

| Name | Date 1 | Date 2 | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Charles,George P | 9/16/1992 | 5/28/2004 | M | White | CR-2 Person Bulk-VROT |
| Charles,Robert A | 6/30/1976 | | M | White | Delivery Driver - Bulk |
| Clarke,Lamont M. | 7/17/2002 | | M | Black/African American | CR-2 Person Bulk-VROT |
| Clayton,Lawrence E | 1/12/1987 | 9/17/2005 | M | White | Product Availability Mgr |
| Clemens,Andrew P | 10/20/1997 | | M | White | CR-2 Person Bulk-VROT |
| Clemens,Daniel J. | 9/9/2002 | 2/2/2005 | M | White | CR-2 Person Bulk-VROT |
| Clement,James J. | 8/1/2004 | | M | White | CR-2 Person Bulk-VROT |
| Clineff Jr.,Mark S. | 5/27/2003 | 8/23/2004 | M | White | Warehouse Person |
| Coale Sr.,Jeffrey M | 5/26/1994 | | M | White | Delivery Driver - Full Service |
| Collins,Wayne C | 1/22/1981 | | M | White | Mechanic - Production |
| Conte,Valentino L | 7/26/1976 | | M | White | Delivery Driver - Bulk |
| Cooney,Daniel J. | 8/14/1995 | | M | White | Delivery Driver - Bay |
| Corrigan,Jeffrey M. | 5/18/1998 | | M | White | General Labor/S&D |
| Curtis,Christopher R | 8/18/1986 | | M | White | Delivery Driver - Bay |
| Davis,Frederick J | 12/31/1990 | | M | White | Fleet Mechanic |
| DeAngelis,Dawn Roberts | 3/15/2004 | | F | White | CR - PreSell - AOM |
| DeSimone,Mario V. | 10/25/1999 | | M | White | Warehouse Person |
| Demby,Marshall L | 7/8/1990 | | M | Black/African American | General Labor/Ops |
| Diubaldo,Domenic A. | 12/16/1996 | | M | White | CR-2 Person Bulk-VROT |
| Dixon,Dwayne L. | 5/17/1996 | | M | Black/African American | TSM-Bulk |
| Doyle,David | 6/2/1996 | | M | White | Delivery Driver - Bay |
| Earl,Leon S | 1/16/1978 | | M | Black/African American | Forklift Oper |
| Eastlack,Christopher T. | 5/6/2002 | 2/8/2006 | M | White | Warehouse Person |
| Edwards,Radshik G. | 10/12/2004 | | M | Black/African American | Warehouse Person |
| Egan,Sean T | 12/16/1997 | | M | White | Delivery Driver - Bay |
| Egan,Sean T | 12/16/1997 | | M | White | Delivery Driver - Fountain |
| Eller III,William T. | 8/5/2002 | 4/18/2005 | M | White | Warehouse Person |
| Esbin,Scott B | 12/31/1990 | | M | White | Fleet Mechanic |
| Faulkner,Louis H | 5/22/1990 | | M | Black/African American | Machine Operator |
| Felicetti,James L | 12/17/1973 | | M | White | Warehouse Person |
| Felicetti,Jeffrey S | 7/2/1984 | 1/26/2005 | M | White | Delivery Driver - Trlr/Trnsp |
| Filiman,Kenneth D | 9/27/1976 | | M | White | Delivery Driver - Trlr/Trnsp |
| Finney,Howard L | 12/3/1989 | | M | Black/African American | General Labor/Ops |
| Flowers,Ronald A | 6/11/1990 | 1/21/2004 | M | Black/African American | Warehouse Person |
| Floyd,Timothy N | 8/26/2003 | 9/17/2004 | M | Black/African American | Prod Avail Supv |
| Fontes,Domingos M. | 11/12/2004 | | M | Hispanic | CR-2 Person Bulk-VROT |
| Frederick Sr.,Russell W | 1/13/1986 | | M | White | Technician |

CONFIDENTIAL

PBG 00024

B 126

Wilmington Employees 2004

| Name | Date 1 | Date 2 | Gender | Race | Job Title |
|---|---|---|---|---|---|
| Frederick,Ronald | 6/28/2004 | | M | Black/African American | QC Lab Technician |
| Fulvio,Christopher M | 10/21/1985 | | M | White | CR - Conventional |
| Gardiner,Richard C | 3/30/2004 | | M | White | CR - PreSell - AOM |
| Goldberg,Edward F | 6/15/1998 | 9/1/2005 | M | White | Food Service Sales Rep |
| Goldberg,Edward F | 6/15/1998 | 9/1/2005 | M | White | TSM-Conv |
| Greene,Matthew M. | 4/28/2004 | 11/11/2004 | M | White | Warehouse Person |
| Grieco,Chris A | 7/18/1994 | | M | White | Sales Operations Manager |
| Grundy,Robert B | 7/8/1985 | | M | White | Safety Specialist |
| Guy,Louis O. | 9/14/2004 | 4/26/2006 | M | Black/African American | Merchandiser |
| Hairston,Donald E. | 6/13/2005 | 7/27/2005 | M | Black/African American | CR-2 Person Bulk-V/OT |
| Hairston,William L. | 9/8/2002 | | M | Black/African American | Technician |
| Haley,Brian E | 6/9/1986 | | M | White | KAM I RS (MU) |
| Halter,Jesse J. | 4/27/2004 | | M | White | Merchandiser |
| Hampton,Jerome E. | 8/14/2004 | 2/17/2005 | M | White | Merchandiser |
| Hampton,Timmy R. | 8/12/2004 | 10/4/2004 | M | Black/African American | Warehouse Person |
| Hanrahan,Bridget M. | 6/8/2002 | 9/3/2005 | F | White | KAM I RS (MU) |
| Hanstein,George E. | 11/8/1999 | | M | White | Mechanic - Production |
| Hawthorne,Joshua M. | 5/20/2004 | 12/21/2004 | M | White | Merchandiser |
| Henderson,Bruce L | 3/24/1980 | | M | White | Sanitizer |
| Hitchens,David | 7/8/1991 | | M | White | Warehouse Person |
| Hubbard,Charles M | 12/30/2003 | 8/13/2005 | M | Black/African American | Merchandiser |
| Hudson,James V. | 3/5/2002 | | M | White | Merchandising Manager |
| Jackson,Sean | 4/28/1993 | | M | White | Product Availability Mgr |
| Johnson Jr.,William N. | 6/29/2004 | 7/16/2004 | M | Black/African American | Warehouse Person |
| Johnson Sr.,Michael A | 7/27/1992 | | M | Black/African American | Delivery Driver - Ttr/Trnsp |
| Johnson,Eugene C | 1/30/1989 | | M | White | Mechanic - Production |
| Johnson,Matthew J | 1/11/1988 | 2/4/2004 | M | White | Delivery Driver - Full Service |
| Johnson,Scott A | 6/11/1992 | | M | White | TSM-Bulk |
| Johnson,Shaka | 3/4/2003 | | M | Black/African American | Warehouse Person |
| Jones,Charles E | 4/8/2004 | 6/22/2004 | M | Black/African American | Warehouse Person |
| Justis Jr.,Danna D. | 6/17/2004 | 8/16/2004 | M | White | Warehouse Person |
| Kampmann,Leo E | 4/5/1970 | 2/27/2005 | M | White | Delivery Driver - Bulk |
| Kamal,Stephen J | 4/3/1989 | | M | White | Forklift Oper |
| Kelleher,James W | 9/24/1990 | | M | White | KAM I RS (MU) |
| Klaczkiewicz,Amanda L | 5/30/1996 | | F | White | Customer Information Analyst |
| Klein,Timothy J | 11/21/1994 | 9/28/2005 | M | White | Delivery Driver - Bay |
| Kraus Jr.,Vernon P | 3/26/1996 | | M | White | Plant Manager |

PBG 00025

Wilmington Employees 2004

| Name | | | Sex | Race | Job Title |
|---|---|---|---|---|---|
| Koppler,Kenneth L. | 8/8/2002 | 2/23/2005 | M | White | CR-2 Person Bulk-VROT |
| Kuech,Tabatha J. | 10/15/2002 | | F | White | Safety Mgr Mu |
| Laws,Howard M | 4/25/1991 | | M | Black/African American | Warehouse Person |
| Lawton Sr.,Alfred D | 7/29/1974 | | M | White | Technician |
| Lewis,Leroy J. | 6/17/2002 | | M | Black/African American | Machine Operator |
| Liang,Raymond | 6/27/2005 | | M | Asian/Pacific Islander | General Labor/Ops |
| Lobue,Thomas J | 5/20/1974 | 7/4/2004 | M | White | Delivery Driver - Bulk |
| Loper Jr.,Ernest | 6/21/1990 | | M | White | Machine Operator |
| Lovins,Michael J. | 12/28/2001 | | M | White | QC Lab Technician |
| Mackrell,Charles S | 7/17/2000 | | M | White | Mechanic - Production |
| Mackrell,Eric T. | 7/22/2003 | | M | White | QC Lab Technician |
| Maley,Thomas J | 3/1/1993 | | M | White | Delivery Driver - Bay |
| Martin,Adam G. | 5/17/2004 | | M | White | Merchandiser |
| Mast,Dean E | 10/30/1978 | | M | White | Delivery Driver - Bay |
| Matthews,Merrill James | 2/8/1999 | 8/15/2004 | M | Black/African American | Warehouse Person |
| Matthews,William G | 8/7/1989 | | M | White | Prod Avail Supv |
| Mauragas,Mark Matthew | 12/17/2001 | 9/4/2006 | M | White | Merchandiser |
| McCann,Curtis J | 5/24/2004 | 8/7/2004 | M | White | Warehouse Person |
| McClain Jr.,Charlie | 4/11/1996 | | M | Black/African American | Machine Operator |
| McCormick Jr.,James J. | 6/10/1996 | 7/22/2004 | M | White | Sanitizer |
| McDaniel,Brian J. | 6/16/2004 | 7/30/2004 | M | White | Warehouse Person |
| McDonald,Adam K. | 5/28/2003 | 3/1/2004 | M | White | Merchandiser |
| McGaillard,Richard W | 8/31/1978 | | M | White | Delivery Driver - Bulk |
| McGonigle,William J | 6/22/1987 | | M | White | Warehouse Person |
| McMann,Timothy D. | 6/22/2004 | | M | White | CR-2 Person Bulk-VROT |
| Mccarson,Richard W | 12/28/1998 | | M | White | Supervisor-Delivery |
| Meadow,Robin | 2/5/1992 | | F | White | Machine Operator |
| Middleton,Holly | 5/20/1991 | | F | White | Admin Assistant-Operations |
| Miller,Daniel J. | 12/11/1995 | | M | White | Forklift Oper |
| Miller,Jackie E | 10/4/1982 | 2/22/2006 | M | Black/African American | CR - Conventional |
| Minshaw,Angus W | 11/28/1982 | | M | White | Delivery Driver - Full Service |
| Moody,Larry A. | 5/27/2003 | 8/30/2005 | M | Black/African American | Warehouse Person |
| Morgan,Britt M. | 5/1/1995 | 3/22/2004 | F | White | Mgr MU Compl & Cntl |
| Munson,Christine A. | 4/8/2004 | 6/3/2004 | F | Black/African American | Admin Assistant-S&D |
| Murdoch Jr.,Robert W | 7/20/1990 | 11/17/2004 | M | White | Delivery Driver - Bay |
| Murphy,James | 8/25/1980 | 3/8/2005 | M | White | Delivery Driver - Bay |
| Nau,Jeffrey G | 4/25/1977 | | M | White | Delivery Driver - Bulk |

PBG 00026

B 128

Wilmington Employees 2004

| Name | Date 1 | Date 2 | Sex | Race | Position |
|---|---|---|---|---|---|
| Nelson,Craig M | 5/23/1994 | 2/1/2004 | M | White | On Premise Sales Rep |
| O'Connor,Thomas J. | 4/18/1986 | | M | White | Delivery Driver - Bay |
| O'Donald Jr.,Richard W | 4/2/1979 | | M | White | Delivery Driver - Bay - VROT |
| O'Hara,Shawn M. | 4/26/1999 | | M | White | Machine Operator |
| Obara Jr.,John Charles | 12/28/1997 | | M | White | Prod Avail Supv |
| Olds,Adam J. | 5/29/2002 | | M | White | Prod Avail Supv |
| Olowofela,Kenny O. | 5/28/2001 | 7/15/2005 | M | Black/African American | TSM-AOM |
| Olowofela,Kenny O. | 5/28/2001 | 7/16/2005 | M | Black/African American | TSM-Bulk |
| Osciak,John J. | 10/13/1987 | | M | White | Delivery Driver - Trlr/Trnsp |
| Osciak,John J | 10/13/1987 | | M | White | Warehouse Person |
| Palladino Jr.,Ralph J | 7/8/1974 | | M | White | Delivery Driver - Bulk |
| Palmer Jr.,George R | 12/31/1990 | | M | White | Fleet Manager |
| Paoletti,Thomas N | 3/26/1990 | | M | White | Delivery Driver - Full Service |
| Papili Jr.,Louis A | 10/31/1983 | | M | White | Checker |
| Paquin Jr.,Arthur L | 5/18/1994 | | M | White | CR-2 Person Bulk-VROT |
| Patterson,Daniel P | 7/6/1987 | | M | White | CR - Conventional |
| Payne,James D | 5/28/1992 | | M | White | Delivery Driver - Trlr/Trnsp |
| Perez Jr.,Raul | 8/7/2000 | 9/4/2004 | M | Hispanic | Merchandiser |
| Pollitt,Edmund F | 6/10/2004 | | M | White | Delivery Driver - Bay |
| Sanders II,Arthur J. | 5/13/2004 | 8/6/2004 | M | Black/African American | Merchandiser |
| Saunders,Ringgold | 2/3/1986 | | M | Black/African American | Machine Operator |
| Schultheis,Brian J. | 9/30/2004 | | M | White | Merchandiser |
| Sharkey,Steven A. | 9/24/1979 | | M | White | Mechanic - Production |
| Shenfeld,Michael D | 7/8/1993 | | M | White | Delivery Driver - Bay |
| Shepherd,Christopher J. | 10/22/2000 | 7/21/2005 | M | White | CR-2 Person Bulk-VROT |
| Skinner,Donte L. | 7/22/2003 | 6/1/2004 | M | Black/African American | Warehouse Person |
| Sliwinski Jr.,Joseph A. | 3/21/1969 | 5/31/2005 | M | White | Machine Operator |
| Smathers,Michael S. | 12/15/1999 | 2/12/2004 | M | White | Merchandiser |
| Smith,Michael J. | 4/10/1996 | | M | White | Delivery Driver - Bay |
| Smyth,Thomas M | 9/6/1978 | 2/27/2004 | M | Black/African American | QC Manager |
| Spencer,Peyton E | 4/21/1981 | | M | White | Forklift Oper |
| Spicer Jr.,Dennis R. | 6/7/2004 | 9/4/2006 | M | White | Merchandiser |
| Spicer,Brian R. | 6/22/2002 | | M | White | Delivery Driver - Bay |
| Spicer,Dennis R | 9/6/1978 | | M | White | Delivery Driver - Bulk |
| Stab,David W. | 9/5/2000 | 9/5/2005 | M | White | Maintenance Mgr |
| Stanley,Jeffrey S | 2/29/1988 | | M | White | General Labor/Ops |
| Steinrock,George F. | 8/22/1997 | | M | White | Mechanic - Production |

PBG 00027

B 129

## Wilmington Employees 2004

| Name | Date 1 | Date 2 | Sex | Race | Position |
|---|---|---|---|---|---|
| Stewart,Bernard T | 5/15/2000 | 3/31/2004 | M | Black/African American | General Labor/Ops |
| Stoehr,Richard | 5/28/2004 | 6/28/2004 | M | White | QC Lab Technician |
| Williams Jr.,Keith F. | 7/6/2004 | 7/16/2004 | M | Black/African American | Warehouse Person |
| Williams Sr.,James K. | 11/27/1995 | 4/30/2005 | M | White | Warehouse Person |
| Williams,Edward J. | 5/17/2004 | | M | Black/African American | Warehouse Person |
| Williams,William R | 9/23/1985 | | M | White | Technician |
| Wintz,Robert | 8/18/2003 | | M | White | Warehouse Person |
| Wise,John O. | 4/20/2000 | | M | White | Warehouse Person |
| Wright,Jeffrey L | 8/18/1976 | | M | White | Delivery Driver - Bulk |
| Zell,Deborah A | 11/22/1984 | | F | White | KAM I FS (M.U.) |
| Ziegler,Robert A | 6/29/1989 | | M | White | TSM-Bulk |
| Pollitt,Edmund F | 6/10/2004 | | M | White | Delivery Driver - Bay - VROT |
| Poore,Christopher | 7/28/1997 | | M | White | Delivery Driver - Full Service |
| Purdy,Harold A | 5/4/1998 | | M | White | General Labor/Ops |
| Pyle,Charles H | 6/30/1990 | | M | White | Delivery Driver - Bay |
| Reilly,Kevin E | 8/11/1986 | 12/3/2004 | M | White | Forklift Oper |
| Ricca,Tuan J. | 4/28/2003 | | M | Asian/Pacific Islander | Product Availability Mgr |
| Riley,Thomas S | 1/17/1972 | 5/2/2005 | M | Black/African American | Production Supv |
| Rizzo Jr.,Joseph S | 4/11/1994 | | M | White | Warehouse Person |
| Roark,Michael S | 6/2/1998 | | M | White | TSM-Bulk |
| Robbins,Damian J. | 7/11/1995 | | M | White | Machine Operator |
| Robinson,Leonard J. | 4/16/1996 | | M | Black/African American | Machine Operator |
| Robles Jr.,Santos | 7/9/2002 | | M | Hispanic | Delivery Driver - Ttr/Trnsp |
| Rullo,Joseph M | 2/5/1990 | | M | White | Warehouse Person |
| Ryan Jr.,John J | 11/19/2003 | 8/20/2004 | M | White | QC Lab Technician |
| Ryan,Erin G. | 11/24/2003 | 5/14/2004 | F | White | Food Service Sales Rep |
| Sample,Valerie D. | 8/9/2004 | | F | Black/African American | Machine Operator |
| Stone,Vincent E. | 4/30/2001 | | M | Black/African American | Warehouse Person |
| Sweeney,Brian P. | 5/21/2004 | 6/24/2004 | M | White | Merchandiser |
| Talley,Brandon T | 4/27/2004 | 11/21/2004 | M | White | Merchandiser |
| Tenteromano,Frank R. | 5/17/2003 | 5/17/2005 | M | White | Warehouse Person |
| Thomas,Cleavon L. | 5/7/2001 | 6/25/2004 | M | Black/African American | Delivery Driver - Bay - VROT |
| Thomas,Mark G. | 5/17/2004 | 7/30/2005 | M | White | Delivery Driver - Ttr/Trnsp |
| Tillman,Marlayna G. | 6/8/2001 | 12/1/2004 | F | Black/African American | Merchandiser |
| Tucker Jr.,Johnny M. | 9/14/2004 | 4/26/2005 | M | White | TSM-ACM |
| Turnbull,Lauren A. | 1/26/2004 | | F | White | Forklift Oper |
| Turner Jr.,Ernest S | 9/8/1982 | | M | Black/African American | |

CONFIDENTIAL

PBG 00028

B 130

Wilmington Employees 2004

| | | | | |
|---|---|---|---|---|
| Vega,Wally P. | 7/28/2004 | 8/31/2004 | M | Black/African American | Warehouse Person |
| Venit,David T | 3/11/1985 | | M | White | Delivery Driver – Bay |
| Vlahos,Nicholas | 9/25/2000 | | M | White | CR-2 Person Bulk-V/ROT |
| Vlahos,Ted | 5/13/1996 | | M | White | CR-2 Person Bulk-V/ROT |
| Wallace,Derrick L. | 5/24/2004 | 5/24/2004 | M | Black/African American | Merchandiser |
| Washington Jr.,Brian K. | 6/8/2004 | | M | Black/African American | Merchandiser |
| Washington Jr.,James S. | 5/24/2004 | 5/24/2004 | M | Black/African American | Delivery Driver - Trtr/Trnsp |
| Weber,Philip F | 12/30/1985 | 5/20/2004 | M | White | Plant Manager |
| Wells,Jack E | 1/25/1988 | | M | White | Fleet Mechanic |

CONFIDENTIAL

PBG 00029

## CERTIFICATION OF SERVICE

I, Barbara H. Stratton, hereby certify that on April 23, 2007, J. Stephen Woodside caused

a true and correct copy of plaintiff's answering brief and appendix in opposition to defendants'

motions for summary judgment to be served upon the following, by first class United States

Mail, postage prepaid:

Lucretia Clemons, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51ST Floor
1735 Market Street
Philadelphia, PA 19103
(Attorney for The Pepsi Bottling Group, Inc.)

Marc L. Gelman, Esquire
JENNINGS SIGMUND, P.C.
510 Walnut Street
Philadelphia, PA 19106
(Attorney for Local 830)

KNEPPER & STRATTON

/s/ Barbara H. Stratton
Barbara H. Stratton, Esq.
1228 North King Street
Wilmington, DE 19801
(302) 658-1717
Delaware Bar ID#2785
bhs@knepperstratton.net
Attorney for Plaintiff

Pro Hac Vice Counsel:

J. Stephen Woodside, Esq.
J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated:   April 23, 2007