# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARLAYNA G. TILLMAN,       :
                                 :

        Plaintiff,        :        C.A. Number:  04-1314
                                 :

        v.                 :
                                 :

THE PEPSI BOTTLING GROUP, INC.,  :
and TEAMSTERS LOCAL UNION 830  :
                                 :

        Defendants.       :

---

**REPLY BRIEF OF DEFENDANT BOTTLING GROUP, LLC
IN FURTHER SUPPORT OF ITS  MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S CLAIMS AND ITS MOTION
FOR SUMMARY JUDGMENT AND SANCTIONS ON ITS
COUNTERCLAIMS AGAINST PLAINTIFF**

---

                                                 William M. Kelleher (#3961)
                                               Ballard Spahr Andrews & Ingersoll, LLP
                                             919 Market Street, 17th Floor
                                             Wilmington, DE 19801
                                             (302) 252-4460

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

Dated:  May 3, 2007

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS........................ 1

III.    ARGUMENT........................................................................................................ 3
        A.    PBG Is Entitled to Summary Judgment on All of Plaintiff's Claims. .................... 3
        B.    PBG Is Entitled to Summary Judgment On Its Counterclaims for Fraud
              And Unjust Enrichment. ..................................................................................... 13

IV.     CONCLUSION..................................................................................................... 15

## TABLE OF AUTHORITIES

*Bailey v. Principi*, No. 02-942, 2003 U.S. Dist. LEXIS 15538 (E.D. Pa. Aug. 25, 2003) .................................................................................................................... 13

*Bania v. Ford Motor Co.*, No. 91-2012, 1992 U.S. App. LEXIS 22054 (6th Cir. Sept. 2, 1992) ................................................................................................... 4

*Bates v. Tandy Corp.*, No. 03-5519, 2005 WL 1798825 (E.D. Pa. Aug. 1, 2005) ............. 8

*Childers  v. Joseph,* 842 F.2d 689 (3d Cir. 1988) ............................................................ 1

*Collins v. Board of Trustees of the University of Alabama*, No. 05-16268, 2006 U.S. App. LEXIS 29989 (11th Cir. Dec. 6, 2006) ......................................................... 7

*Devore v. City of Phila*, No. 04-3030, 2005 U.S. Dist. LEXIS 19582 (E.D. Pa. Sept. 7, 2005) ..................................................................................................... 5, 6, 12

*Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir.1992) ........................ 8

*Firestone v. S. Cal, Gas Co.*, 219 F.3d 1063 (9th Cir. 2000)............................................... 4

*Hackman v. Valley Fair*, 932 F.2d 239 (3d Cir. 1991) ....................................................... 8

*Haley v. City of Plainfield*, No. 05-2236, 2006 WL 267208 (3d Cir. 2006) ...................... 9

*Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001)........................................ 4

*Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988)............... 8, 10

*Rosario v. Ken-Crest Services*, No. 05-3378, 2006 U.S. App. LEXIS 13815 (3d Cir. June 5, 2006)......................................................................................................... 12

*Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir.1997) ....................................... 7

*Ryan v. General Machine Products*, 277 F. Supp. 2d 585 (E.D. Pa. 2003)........................ 7

*Sarullo v. United State Postal Service*, 352 F.3d 789 (3d Cir. 2003) ............................... 13

*Schulz v. Celotex Corp.*, 942 F.2d 204 (3d. Cir. 1991)...................................................... 1

*Vadino v. A. Valley Engineers*, 903 F.2d 253 (3d. Cir. 1990) ............................................ 3

*W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995)...................................................................... 12

*Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997) ....................................... 12

*Williams v. Rohm and Haas Co.,* 99-C 2003 U.S. Dist. LEXIS 26559 (E.D. Pa. May 2, 2003), aff'd 90 Fed. Appx. 627 (2004) ............................................................. 7

Williams v. Rohm and Haas Co., 90 Fed. Appx. 627, at 5 (3d Cir. 2004) ..................... 7, 8

## I.     INTRODUCTION

In a futile attempt to escape summary judgment, Plaintiff has resorted to relying on unsupported allegations that contradict the record evidence, contradicting her own deposition testimony, speculating about matters of which she has no personal knowledge, relying on inadmissible evidence and materially misrepresenting the record.

Plaintiff also attempts to misdirect the Court by literally throwing everything - including the kitchen sink - into her argument. On anything more than a cursory analysis, the arguments asserted by Plaintiff in her response to PBG's motion for summary judgment fail to create a genuine issue of material fact on any matter before this Court. As the Third Circuit "remarked in Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988), if the moving party has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the non-moving party must specify the portions of the record that would contradict the allegations supporting the motion. The burden is on the non-moving party to search the record and detail the material controverting the moving party's position." Schulz v. Celotex Corp., 942 F.2d 204, 209 (3d. Cir. 1991).

As set forth in PBG's initial brief and amplified below, because Plaintiff has failed to meet the requirements of Federal Rule of Civil Procedure 56 as explained in Childers, the Court should enter summary judgment in favor of PBG and against Plaintiff on all claims.

## II.     RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1.     All of the facts contained in PBG's statements of material and undisputed facts should be deemed admitted because Plaintiff did not, in her statement of material facts ("Plaintiff's SMF"), separately admit, deny or respond to each of PBG's facts. Instead, Plaintiff

has submitted her own rambling statement of "facts," the vast majority of which are neither material nor admissible.

      2.     Those facts asserted in Plaintiff's SMF that are not supported by citation to the record should be disregarded, as Local Rule 7.1.3 makes clear that a statement of facts must contain supporting references to the record or appendix.

      3.     Plaintiff's SMF is replete with unsupported allegations which directly contradict her own deposition testimony, material misrepresentations and inadmissible hearsay. For example, Plaintiff claims that she used he own car on the job and received a $150 per day period mileage stipend. Pl. Br. at 4. Yet, when specifically asked about this alleged stipend at her deposition, Plaintiff admitted that she did not receive a stipend but rather she was reimbursed for mileage. (Ex. 34, Pl. Dep. at 200). Similarly, Plaintiff contends that she worked in the extra man position during her temporary assignment in the conventional sub-department and that she "did the exact same work as conventional drivers". Pl. Br. at 5-6. However, at her deposition Plaintiff conceded that she did not have a CDL-A license during this time period, as required to carry out the primary function of the Relief Driver position.[1] (Ex. 34, Pl. Dep. at 242). Further, she admitted that she did not perform any of the Relief Driver's secondary functions during her temporary assignment, including selling product to customers, collecting revenue and detailing these transactions in a route book. (Ex. 3, Pl. Dep. at 241).

      In addition, Plaintiff materially misrepresents record evidence when she claims that PBG has no information about how much time Matt Fields, Mark Mauragas, or Dave Zembala worked as merchandisers in the conventional sub-department or what their rates of pay

---

[1]     The Relief Drive position is commonly called other names including extra man. (Ex. 8, Altman Verification ¶ 6).

were. Pl. Br. at 5. Contrary to Plaintiff's assertions: (1) PBG has provided Plaintiff with employee lists which show each employee's position and dates of employment (Ex. 35; Excerpts of Employee Lists); (2) Sara Swartz Altman, PBG's former Human Resources Representative, testified that each of these merchandisers worked as a temporary helper in the conventional sub-department between the years of 2001 and 2004 (Ex. 30, Altman Dep. at 145, 148); and (3) Ms. Altman further testified that both Mauragas and Zembala were paid at the merchandiser rate. (Id. at 148-49).[2]

Finally, as "proof" of discrimination, Plaintiff asserts that Merrill Matthews overheard Tom Riley state "she will be a problem for us if she comes over to the warehouse." Pl. Br. at 8. Additionally, Plaintiff claims that Ernest Turner "on different occasions" heard Larry Clayton state "I don't want her working in production" and "I just don't like her". Pl. Br. at 10. However, these statements are clearly inadmissible hearsay.

## III.   ARGUMENT

### A.   PBG Is Entitled to Summary Judgment on All of Plaintiff's Claims.

#### 1.   Plaintiff's FLSA Claim Fails As A Matter of Law.

Plaintiff fails to respond to, and therefore impliedly concedes, that her FLSA claim fails as a matter of law. Indeed, Plaintiff's answering brief is completely devoid of any mention of her FLSA claim. As set forth in PBG's initial brief, Plaintiff's claim for overtime is squarely based on the terms of the collective bargaining agreement and thus is not cognizable under the FLSA. See Vadino v. A. Valley Engineers, 903 F.2d 253, 265-66 (3d. Cir. 1990) (holding that plaintiff's claim "which rest[ed] on interpretations of the underlying collective

---

[2]      Matt Fields was also paid at the merchandiser rate. (Ex. 36, Second Altman Verification ¶ 3).

bargaining agreement must be resolved pursuant to the procedure contemplated under the

LMRA."); see also Martin v. Lake County Sewer Co., 269 F.3d 673, 679 (6th Cir. 2001); Bania

v. Ford Motor Co., No. 91-2012, 1992 U.S. App. LEXIS 22054, at *3-4 (6th Cir. Sept. 2, 1992);

Firestone v. S. Cal. Gas Co., 219, F.3d 1063, 1067 (9th Cir. 2000).

As Plaintiff has failed to raise any argument to the contrary, her FLSA claim fails

as a matter of law.

2.    PBG Is Entitled to Summary Judgment on Plaintiff's EPA Claims.

As Plaintiff's brief illuminates, Plaintiff's EPA claim is premised on the incorrect

assertion that the work she performed as a Merchandiser during her temporary assignment in the

conventional sub-department of the Sales Department, is equal to the work of a Relief Driver,

thus entitling her to the Relief Driver rate. Pl. Br. at 19. However, Plaintiff has failed to produce

a shred of evidence, other than her own subjective belief, and the mistaken belief of some former

co-workers, to support this contention. PBG's responses on this issue are focused:

a.    Plaintiff's novel claim that she did the exact same work as the

conventional drivers during her temporary assignment in the conventional sub-department,

contradicts her own deposition testimony and is unsupported by the record evidence. Pl. Br. at

19. As set forth in PBG's opening brief, the differences between the Merchandiser and Relief

Driver positions are stark. The primary function of a Relief Driver is to drive single-handedly, a

tractor trailer to deliver soda, and this primary function requires a valid CDL-A license. (Ex. 8,

Altman Verification ¶ 6; Ex. 9, Relief Driver - Sales Job Posting). However, as Plaintiff

admitted in he deposition, she did not have a CDL-A license while she was a Merchandiser. (Ex.

34, Pl. Dep. at 242). Nor did Plaintiff perform any of the Relief Driver's secondary functions,

including selling product to customers, collecting revenue and detailing these transactions in a

route book. (Ex. 3, Pl. Dep. at 241). Plaintiff's reliance on her own unsubstantiated claims, and those of her brother, who, like Plaintiff, worked as a Merchandiser at PBG, that many accounts were pre-sold and that tractor trailer drivers did not keep log books, Pl. Br. at 19, is pure speculation and is insufficient to defeat summary judgment. See Devore v. City of Phila, No. 04-3030, 2005 U.S. Dist. LEXIS 19582, at *11 (E.D. Pa. Sept. 7, 2005) ("mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base a denial of summary judgment").

                    b.      Similarly, Plaintiff's contention that the work she performed during her temporary assignment in the conventional sub-department is equivalent to that of the "extra man" position misses the mark. Pl. Br. at 22. Plaintiff fails to appreciate that the extra-man and Relief Driver position is the same position. (Ex. 8, Altman Verification ¶ 6). As detailed above, the work that Plaintiff performed as a Merchandiser is simply not equal to the work performed by Relief Drivers. Moreover, even if the Merchandiser positions and Relief Driver positions are deemed equal, Plaintiff has produced no evidence to dispute that any differences in pay rate are supported by the collective bargaining agreement, which does not govern the Merchandiser position, a non-union position. (Ex. 5, CBA 1).

                    c.      Plaintiff's bald assertion that there were no non-union employees, and no merchandisers, working in the conventional sub-department is unsupported by competent record evidence. To the contrary, as Sara Swartz Altman, PBG's former Human Resources Representative, testified, it was not uncommon at the Wilmington facility for non-union employees to temporarily assist the conventional sub-department. (Ex. 30, Altman Dep. at 129). In fact, several male employees including Matt Fields, Craig Nelson, Mark Mauragas and Dave Zembala, like Plaintiff, temporarily worked in the conventional sub-department. (Id. at 129-30,

148). Further, three of these employees, Matt Fields, Mark Maragus and Dave Zimbala, were non-union merchandisers who were paid at the merchandiser rate. (Id. at 145, 148-49; Ex. 36, Second Altman Verification ¶ 3). Indeed, PBG has provided Plaintiff with employee lists which show these employees' titles as well as their dates of employment. (Ex.35, Excerpts of Employee List). That Plaintiff is unaware of these employees working in the conventional sub-department while she was employed at PBG is beside the point and does nothing to diminish the fact, fatal to Plaintiff's claim, that like Plaintiff, several male non-union employees temporarily worked in the conventional sub-department.[3]

Because Plaintiff has failed to raise a genuine issue of material fact as to any element of her EPA claim, PBG is entitled to summary judgment.[4]

> 3.    Plaintiff Cannot Establish A Claim for Disparate Treatment
>        Discrimination.

Despite the clear and uncontroverted case law cited in PBG's opening brief, Plaintiff claims in her brief, that she can establish a *prima facie* case of disparate treatment discrimination. PBG's responses on this issue are focused:

a.    Plaintiff fails to adequately rebut that her claims for failure to promote related to the loader and jockey positions are barred, as they were not encompassed in her Charge of Discrimination. (Ex. 11, Charge of Discrimination). Plaintiff does not dispute that these claims were not included in her Charge. Instead, Plaintiff cites cases that permit the

---

[3]    Plaintiff's conclusory assertion that her temporary assignment in the conventional sub-department had nothing to do with the space race campaign is unsupported by record evidence. As set forth above, Plaintiff cannot rely on her own bare allegations to defeat summary judgment. Devore v. City of Phila, No. 04-3030, 2005 U.S. Dist. LEXIS 19582, at *11.

[4]    For these same reasons, PBG is entitled to summary judgment on Plaintiff's Title VII claim for unequal pay.

assertion of claims, in Title VII cases, that were never presented to the EEOC when such claims occur during the pendency of the department's proceedings and before a right to sue letter is issued. Pl. Br. at 27.  However, these cases are inapposite, as the Third Circuit has made clear that failure to promote is a discrete claim, and thus each promotion denial triggers a duty to file a charge with the EEOC.  See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir.1997) (holding that district court erred by treating failure to promote claims as a continuing violation, despite Plaintiff having alleged ongoing disparate treatment and harassment, stating that failure to promote claims comprised discrete instances of discrimination and "[we]re not susceptible to a continuing violations analysis");  See also Ryan v. Gen. Mach. Prods., 277 F.Supp.2d 585, 592-93 (E.D. Pa. 2003) ("if [the plaintiff] had wanted to challenge these alleged discriminatory failures to promote, she was required timely to file charges with the EEOC or the PHRC [h]er failure to do so was fatal, and these stale claims cannot be resuscitated by the continuing violation theory").

Because Plaintiff simply failed to exhaust her administrative remedies, her claims for failure to promote related to the loader and jockey positions should be dismissed.

b.    Plaintiff fails to rebut, and thus impliedly concedes that she was not qualified for and/or did not apply for a number of positions on which she bases her claim for failure to promote.  Specifically, because she cannot, Plaintiff does not deny that she was not qualified for a number of driver positions for which she applied, because those positions required a valid CDL-A license before she obtained her CDL-A license. See e.g., Collins v. Board of Trustees of the University of Alabama, No. 05-16268, 2006 U.S. App. LEXIS 29989, at *3 (11th Cir. Dec. 6, 2006) (plaintiff was not qualified for promotion where he did need possess the requisite Associate's degree); Williams v. Rohm and Haas Co., 99-CV-5203, 2003 U.S. Dist.

LEXIS 26559, at * 36-37 (E.D. Pa. May 2, 2003), aff'd 90 Fed. Appx. 627 (2004) (plaintiff was not qualified for two promotions where he failed to meet experiential requirements for the positions).

Similarly, because she cannot, Plaintiff does not deny that she did not apply for a number of "promotional opportunities" on which she now bases her claims.[5] Given that it is undisputed that Plaintiff did not apply for any of these positions, she cannot rely on them to support her claim for denial of promotion. Williams v. Rohm and Haas Co., 90 Fed. Appx. 627, at *5 (3d Cir. 2004) (affirming district court's holding that plaintiff's failure to apply for posted jobs was fatal to his *prima facie case*); Bates v. Tandy Corp., No. 03-5519, 2005 WL 1798825 *16 (E.D. Pa. Aug. 1, 2005) (holding plaintiffs' failure to apply for training program precluded them from stating *prima facie* case for failure to promote).

In fact, the only positions Plaintiff references in her answering brief, with respect to her claims for failure to promote, are the loader and jockey positions which were not included in her Charge for Discrimination.[6] As set forth above, these claims are time-barred and should be dismissed.[7]

---

[5] Although not raised in her brief, Plaintiff asserts in her counter-statement of facts that she requested a transfer from human resources on at least three occasions, but that these requests were denied. Pl. Br. at 11, ¶ 37. However, when specifically asked at her deposition whether she ever applied for any transfer, Plaintiff admitted that she had not. (Ex. 3, Pl. Dep. at 162-66). It is well settled in this Circuit that a Plaintiff's averments that contradict Plaintiff's own prior deposition testimony should be disregarded on a motion for summary judgment. Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988); Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991).

[6] Despite Plaintiff's claims to the contrary, the loader and jockey positions paid the exact same rate Plaintiff received in the warehouse. (Ex. 5, CBA 1).

[7] Plaintiff also mistakenly alleges that the number of female employees at the Wilmington plant is germane to her case. Pl. Br. at 29. Plaintiff again misses the mark. The Court of Appeals rejected a similar attempt in Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983
(continued...)

c.      Because she cannot, Plaintiff does not dispute that the driver, loader and jockey positions for which she allegedly applied were awarded to other employees who had more seniority than she. Instead, in a fruitless attempt to demonstrate pretext Plaintiff suggests that her low seniority was a result of the alleged sex discrimination. Specifically, Plaintiff contends that despite her desire for a warehouse position, PBG transferred her back to merchandising in May 2002 and then hired three new male employees directly into the warehouse who were able to surpass her in seniority. Pl. Br. at 32. Plaintiff also baldly asserts, without citation to the record, that her low seniority was not the "real reason" she was not awarded the loader and jockey positions. Pl. Br. at 31. She further contends that Gary DiProsperos, who was awarded the jockey position, was forced to take the position by Tom Riley, and that Tom Riley said he did not have to train her. Pl. Br. at 31. Plaintiff's incoherent assertions are completely without merit.

First, Plaintiff conveniently omits that in early April 2002, she applied for, was offered and accepted a position in the warehouse which was scheduled to begin on April 29, 2002. (Ex.36, Second Altman Verification ¶ 1). Yet, for reasons unbeknownst to PBG, Plaintiff rescinded her acceptance and instead chose to remain in the Sales Department. (Id.). Thereafter,

---

(...continued)

F.2d 509, 542 (3d Cir.1992). In Ezold, plaintiff tried to show pretext by offering evidence that only five of a law firm's 107 partners were women. Id. The Court of Appeals affirmed the district court's holding that the "statistical evidence" was not probative because plaintiff's "[r]aw numerical comparisons ... [were] not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period." See also Haley v. City of Plainfield, No. 05-2236, 2006 WL 267208, *3 (3d Cir. 2006) ("discrimination plaintiff who offers such evidence must account for the qualified applicant pool ...; mere summary of the demographic composition of the applicant pool is insufficient" to show that discrimination was more likely than not a reason for the employer's actions).

in or around June 2002, Plaintiff again applied for and accepted a position in the warehouse. (Ex. 8, Altman Verification ¶ 11). However, between Memorial Day and Labor Day the demand for PBG's products increases dramatically and Plaintiff's transfer was thus delayed slightly based on business needs. (Id.). Plaintiff does not dispute that she was not the only employee so affected. Like Plaintiff, John Osciak, a white employee, was awarded a job bid on May 27, 2002, but was not moved into his position until August 6, 2002. (Id.).

Second, notwithstanding the fact that she relies on inadmissible hearsay to support her contention that Gary DiProsperos was "forced" to take the jockey position, Plaintiff's claims in this regard are completely irrelevant. As set forth above, Plaintiff's claim for failure to promote related to the jockey position is barred, as she failed to exhaust her administrative remedies. Moreover, Plaintiff offers no evidence whatsoever to dispute, and in fact concedes that Mr. DiProsperos had more seniority than she. Pl. Br. at 31. And Plaintiff does not offer any admissible evidence, other than her own unsupported allegations, to prove that her seniority was anything but the real reason she was not awarded the position.

Third, although Plaintiff contends that Tom Riley refused to train her, she cites a document which refutes this very contention. Indeed, the notes that Plaintiff cites at B039 make clear that Plaintiff was asked twice if she wanted to train. Moreover, despite her suggestion that she was denied training, during her deposition Plaintiff conceded that during the period she was performing merchandising duties in the conventional sub-department, she was permitted to train for a CDL-A license by driving with licensed employees. (Ex. 3, Pl. Dep. at 245). While Plaintiff may not like her prior testimony, she is nonetheless bound by it. Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988). Finally, although she claims HR ignored her complaints about training, Plaintiff cites to an e-mail in which Tracy Drzewiecki,

PBG's Human Resources Manager, requested a meeting with Plaintiff to address those very complaints. B 040. Moreover, Plaintiff does not dispute that even after she failed the written test for a CDL-A in May 2002, PBG offered her additional opportunities to train for her CDL. (Ex. 8, Altman Verification ¶ 9). Specifically, PBG offered Plaintiff the use of a PBG truck to train during her non-working hours. (Id.). Plaintiff was also required to drive trucks in PBG's yard in the course of performing her duties. (Id.). Additionally, PBG researched local truck driving schools for Plaintiff and agreed to permit her to take a leave of absence to attend one of the schools. (Id.). Plaintiff declined this offer. (Id.).

        d.     Plaintiff also tries to raise an inference of discrimination by asserting that: (1) both before and after she began working in the warehouse she was "the subject of repeated sexual innuendo and harassment from male co-workers"; (2) on one occasion Merrill Matthews overheard Tom Riley tell Phil Weber that Plaintiff "will be a problem for us if she comes over to the warehouse. I don't want her in the warehouse."; (3) Mr. Matthews also overheard comments by supervisors Glenn Matthews and Bob Grundy that they did not want Plaintiff working in the warehouse; and (4) Ernest Turner heard production manager Dave Staib say on many occasions about Plaintiff: "I do not want her working here" and "I don't like her, there will be a problem, just wait." Pl. Br. at 29-30. However, these arguments fail for several reasons.

        First, this Court has already dismissed Plaintiff's claims for sexual harassment. Thus Plaintiff's reliance on these claims is wholly inappropriate and is a blatant attempt by Plaintiff to misdirect the Court.

        Second, the statements alleged in Mr. Matthews' and Mr. Turner's verifications are inadmissible hearsay, and, in the case of Tom Riley, are conveniently attributed to a man

who has died and who thus cannot rebut them. Plaintiff's citation to these hearsay statements is not evidentiary support for her allegations. Rosario v. Ken-Crest Services, No. 05-3378, 2006 U.S. App. LEXIS 13815 *4 (3d Cir. June 5, 2006) (hearsay statement taken by itself was insufficient to defeat summary judgment); W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995) ("Summary judgment is appropriate when there are no issues of material fact presented in *admissible form* and the moving party is entitled to judgment as a matter of law." (emphasis added)).

Third, even if the statements that Mr. Matthews and Mr. Turner allegedly overheard were admissible, they in no way implicate Plaintiff's sex or race. Indeed, Mr. Turner concedes in his verification that Mr. Staib never gave reasons for his alleged statements. B 005.

Fourth, the alleged statements, to the extent that they can even be considered discriminatory which PBG urges they cannot, are attributed to non-decisionmakers, as it was Human Resources that determined whether an employee was qualified for and had sufficient seniority to be awarded a job bid. (Ex.36, Altman Verification ¶ 2). Accordingly, these alleged statements are inadmissible to prove discrimination. See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997) (holding that stray remarks in the workplace and statements by *nondecisionmakers* do not constitute direct evidence of discrimination) (emphasis added).

In short, Plaintiff has offered no evidence, other than her own speculation, to demonstrate that she was denied a promotion based on sex or race. This is clearly insufficient. See Devore v. City of Phila., No. 04-3030, 2005 U.S. Dist. LEXIS 19582, at *11. Indeed, "the plaintiff still must demonstrate the existence of sufficient facts to allow him [or her] to prove by a preponderance of the evidence that a *prima facie* case of discrimination exists that goes beyond

the plaintiff's mere speculation." Bailey v. Principi, No. 02-942, 2003 U.S. Dist. LEXIS 15538,

at *18 (E.D. Pa. Aug. 25, 2003).

Because Plaintiff has failed to produce any evidence whatsoever to support her

claims for disparate treatment discrimination, summary judgment should be entered in PBG's

favor.

4.    Plaintiff Cannot Prove A Claim of Retaliation.

Plaintiff points to no evidence whatsoever to support her claim for retaliation.

Although she asserts that she was retaliated against on the basis of several actions, she fails to

demonstrate how any of these actions were adverse or retaliatory. Further, while she contends

that PBG's internal investigation "reached into Pepsi's management", she fails to proffer any

evidence, as she must, that Mr. Weber, Mr. Matthews or Mr. Riley knew that she filed a Charge

or acted with retaliatory motive. See Sarullo v. United State Postal Service, 352 F.3d 789, 800-

01 (3d Cir. 2003) (affirming entry of summary judgment against plaintiff where he could not

establish that the decisionmaker in his termination was aware of plaintiff's protected activity).

Plaintiff's speculation is not evidence and should be disregarded.

**B.    PBG Is Entitled to Summary Judgment On Its Counterclaims for Fraud And Unjust Enrichment.**

Because she cannot, Plaintiff does not refute the key factual assertions underlying

PBG's claims for fraud and unjust enrichment. Specifically, Plaintiff does not dispute the

following: (1) that she applied for and accepted employment with RJM Vending ("RJM") during

the period between November 6, 2003 and April 18, 2004, when she was on medical leave from

PBG (Ex. 3, Pl. Dep. at 41-42); (2) that she did not disclose the fact of this employment to PBG

(Ex. 8, Altman Verification ¶ 14); (3) that in June 2004 she signed a settlement agreement, which

clearly stated that her settlement with PBG was for a claim of temporary total disability from the

period of November 6, 2003 to April 18, 2004 (Ex. 32, Documents received from Beverly Bove);

(4) that she acquired monetary compensation from PBG as a result of her representations (Ex.

17, Settlement Agreement and related documents); and (5) that she retained this compensation

from PBG. Although Plaintiff attempts to deflect responsibility for her actions by blaming

everyone but herself, and attempts to conceal her fraud by claiming ignorance, Plaintiff has

failed to refute these material facts.

Moreover, because she cannot, Plaintiff does not dispute that this was not the last

time she falsely represented to PBG the nature of her injuries and her ability to work. Indeed, on

two more occasions, while Plaintiff was still employed by PBG and while on leave from PBG

under the pretense that she was medically unable to work, Plaintiff again applied for and

accepted employment with other companies. (Ex. 3, Pl. Dep. at 47, 60; Ex. 8, Altman

Verification ¶ 16).

Because Plaintiff has failed to dispute the key factual assertions underlying PBG's

claims for fraud and unjust enrichment, and because any inference of Plaintiff's innocence is

eviscerated by the fact that she falsely represented to PBG that she was injured and unable to

work and then worked for other employers on at least two more occasions, PBG is entitled to

summary judgment on its counterclaims.

## IV.    CONCLUSION

For all of the foregoing reasons, summary judgment should be entered in favor of

PBG and against Plaintiff on all claims.

Respectfully submitted,

Dated:  May 3, 2007

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 17th Floor
Wilmington, DE  19801
(302) 252-4460

Attorneys for Defendant
Bottling Group, LLC

OF COUNSEL:
Daniel V. Johns
Lucretia C. Clemons
Aisha M. Barbour
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500